No. 25-10898

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff - Appellee

v.

STATE OF TEXAS,
Defendant - Appellee

STUDENTS FOR AFFORDABLE TUITION; LA UNION DEL PUEBLO
ENTERO; AUSTIN COMMUNITY COLLEGE; OSCAR SILVA
Movants - Appellants

On Appeal from the United States District Court for the Northern
District of Texas, No. 7:25-cv-00055
The Hon. Reed O'Connor, U.S. District Judge

## MOVANTS-APPELLANTS LA UNIÓN DEL PUEBLO ENTERO, AUSTIN COMMUNITY COLLEGE, AND OSCAR SILVA'S OPPOSED MOTION FOR STAY PENDING APPEAL

Andrés Correa
LYNN PINKER HURST &
SCHWEGMANN, LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Tel.: (214) 981-3800
Fax: (214) 981-3839
acorrea@lynnllp.com

i

# CERTIFICATE OF INTERESTED PARTIES

## No. 25-10898, *United States v. Students*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

ACLU Foundation of Texas

ACLU of Texas

Austin Community College

Bernie, Andrew

Berroa Rodriguez, Marlene Nathalie

Brewer, Simon Christopher

Broder, Tanya

Corning, Sarah

Correa, Andres

Democracy Forward Foundation

Desai, Yaman

Dolling, Zachary

Donatti, David A.

Ensign, Drew C.

Fascett, Lauren

Fleming, Angel

Gardner, Kyle Aaron

Gonzalez, Kassandra

Hatoum, Daniel

Johnson, Wade Allen

La Unión del Pueblo Entero

Lynn Pinker Hurst & Schwegmann

Kambli, Abhishek

Kercher, Ryan

Molina, Ralph Michael

National Immigration Law Center

Netter, Brian David

Olivares, Efren Carlos

Patton, Christopher W.

Perez, Elianis N.

Perryman, Skye L.

Petchenik, Molly

Pinon, Adriana Cecilia

Saldivar, Edgar

Salzman, Joshua Marc

Silva, Oscar

Skedzielewski, Sean

Students for Affordable Tuition

Tenny, Daniel

Texas Civil Rights Project

Walters, Ryan David

Wolfson, Paul

Woodward, Daniel

Xu, Zhenmain

/s/ Andrés Correa

*Attorney of record for Movant-Appellants LUPE, ACC, and Oscar Silva*

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................3

    A.    The Texas Dream Act..........................................................................3

    B.    Procedural History..............................................................................4

ARGUMENT .......................................................................................................7

    A.    LUPE Intervenors Are Likely to Succeed on the Merits. ....................8

        1.    LUPE Intervenors are likely to succeed on their challenge to denial of intervention..............................8

        2.    The consent decree was entered without jurisdiction and is wrong on the merits. ......................................14

    B.    Absent a Stay, LUPE Intervenors Will Likely Suffer Irreparable Harm. ................................................................20

    C.    The Balance of Equities and Public Interest Favor a Stay.................22

CONCLUSION ...................................................................................................23

# TABLE OF AUTHORITIES

## CASES

*Benisek v. Lamone*, 585 U.S. 155 (2018)…………………………………………22

*Brown v. Watkins Motor Lines, Inc*., 596 F.2d 129 (5th Cir. 1979)…………..……14

*Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014)…………………………….10, 11

*Cameron v. EMW Women's Surgical Ctr., P.S.C.,* 595 U.S. 267 (2022)………….10

*City of Houston v. American Traffic Solutions, Inc.,*

    668 F.3d 291 (5th Cir. 2012)……………………………………………..11

*Edwards v. City of Houston,* 78 F.3d 983 (5th Cir. 1996)………………….……...19

*Gregory v. Ashcroft*, 501 U.S. 452 (1991)………………………………………...18

*In re Lease Oil Antitrust Litig.,* 570 F.3d 244 (5th Cir. 2009)……………………11

*Kaley v. United States*, 571 U.S. 320 (2014)……………………………………...12

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne,* 659 F.3d 421

    (5th Cic. 2011)…………………………………………………...…9, 12

*Louisiana v. Becerra,* 20 F.4th 260 (5th Cir. 2021)…………………….…....…..22

*Martinez v. Regents of Univ. of Cal.,* 241 P.3d 855 (Cal. 2010)…………….……18

*Moore,* 402 U.S. 47……………………………………………………….……….15

*Murphy v. Nat'l Collegiate Athletic Ass'n,* 584 U.S. 453 (2018)………….……...18

*Nelson v. Adams USA, Inc.,* 529 U.S. 460 (2000)…………………………..……..12

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.,* 434 U.S. 1345 (1977)….…...23

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.,* 732 F.2d 452

    (5th Cir. 1984)……………………………………………………….…8

*Pool v. City of Houston,* 87 F.4th 733 (5th Cir. 2023)…………….…..………2, 15, 17

*Printz v. United States,* 521 U.S. 898 (1997)……………………………………...19

*Richardson v. Texas Sec'y of State,* 978 F.3d 220 (5th Cir. 2020)…………..………7

*Sch. of Tex. v. U.S. Dep't of Educ.,* 98 F.4th 220 (5th Cir. 2024)…………………20

*Sierra Club v. Espy,* 18 F.3d 1202 (5th Cir. 1994)…………………………………...11

*Stallworth v. Monsanto Co.,* 558 F.2d 257 (5th Cir. 1997)…………………………9

*Texas v. United States*, 805 F.3d 657………………………………………………...10

*United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1997)…………………………..9

*United States v. Texas, No.*, 2024 24-5014 (5th Cir. 2024)………………..………16

*Young Conservatives of Tex. Found. v. Smatresk,* 73 F.4th 304 (5th Cir. 2023)…..14

**STATUTES**

8 U.S.C. § 1623……………………………………………………………5, 17

Tex. Educ. Code § 54.052(a)(3)…………………………………………………4, 18

Tex. Educ. Code § 54.053(3)(B)…………………………………………………4, 18

**FEDERAL RULES**

Fed. R. Civ. P. 12…………………………………………………………………12

Fed. R. Civ. P. 24……………………………………………………………...2, 8

Fed. R. Civ. P. 59………………………………………………………………...9

Fed. R. Civ. P. 60...………………………………………………………………9

**OTHER AUTORITIES**

Office of the Att'y Gen. of Tex., Opinion No. GA-0732 (July 23, 2009),

    https://perma.cc/7DHB-MUKH.................................................................14

# **INTRODUCTION**

For more than twenty years, the Texas Dream Act has enabled certain graduates of Texas high schools to pay in-state tuition at Texas public colleges and universities, without regard to their immigration status. After a recent attempted repeal of the Dream Act failed, the United States and Texas collaborated to have the statute judicially enjoined.

The United States sued, alleging that key provisions of the Dream Act are preempted by a federal statute. Within hours, the Texas Attorney General waived service and co-signed a Joint Motion for Entry of Consent Judgment. That same day, the district court, without the benefit of any adversarial briefing, accepted Texas's capitulation and entered final judgment enjoining Texas and its employees from providing the benefits of the Dream Act to students without lawful presence.

The fallout from the consent judgment has been immediate and severe. For thousands of Texas students, education has become prohibitively expensive, forcing them to interrupt or forgo their studies. In addition to denying students educational opportunities, the consent judgment will deprive colleges and universities of the benefit of admitting numerous students, and it may impose new obligations to ascertain the immigration status of their applicants.

Given the Texas Attorney General's abdication of his duty to defend the Dream Act, two separately represented groups promptly moved to intervene. One

set ("LUPE Intervenors") moved to stay and vacate the consent judgment, citing the lack of adversity and their right to be heard. But the district court denied intervention without ever addressing whether LUPE Intervenors satisfied the requirements of Federal Rule of Civil Procedure 24. Instead, the court summarily determined that the Dream Act is preempted and, thus, there would be no point in allowing intervenors to demonstrate otherwise.

LUPE Intervenors now respectfully move for a stay pending appeal of the district court's Final Order and Judgment effectuating the consent judgment. LUPE Intervenors—an individual student who benefited from the Dream Act, an organization serving affected students, and an affected school—have direct, substantial, and legally protectable interests in the Dream Act and have had their rights impeded by a consent judgment summarily terminating that statute's protections. No party ever attempted to represent the interests of LUPE Intervenors. To the contrary, the Texas Attorney General has bragged about working hand-in-hand with the federal government to have the statute invalidated, describing the decision enjoining a democratically enacted Texas statute as a "major victory." ROA.339.

On the merits, LUPE Intervenors are likely to prevail because such "faux" litigation cannot produce a valid judgment under Article III. *See Pool v. City of Houston*, 87 F.4th 733, 733–34 (5th Cir. 2023). From the get-go, this case was a joint

effort by the United States and the Texas Attorney General to achieve a shared political aim through a pre-negotiated consent judgment, not a good-faith dispute. Moreover, the judgment is erroneous: the Dream Act is not preempted, as LUPE Intervenors would have shown given the opportunity to fully brief the merits.

The remaining equitable factors also favor a stay. LUPE Intervenors and the broader public face irreparable harm, and the equities weigh heavily in their favor. The United States and Texas, by contrast, will suffer no adverse consequences if the Dream Act's longstanding protections remain in effect pending genuine adversarial testing. A stay would simply restore the status quo that prevailed for more than twenty years before the parties engineered the consent judgment. That consent judgment should be stayed pending appeal.[1]

## BACKGROUND

### A. The Texas Dream Act

Nearly twenty-five years ago, a bipartisan majority of the Texas Legislature passed, and then-Governor Rick Perry signed, the Texas Dream Act. The Dream Act amended the Texas Education Code to provide an additional avenue for students to qualify for in-state tuition at higher education institutions if they: (1) graduated from a Texas high school; (2) maintained a residence in Texas for at least three years prior

---

[1] The United States and Texas both oppose this motion and will file responses. Movant-appellant Students For Affordable Tuition supports this motion.

to their high-school graduation; and (3) maintained a residence in Texas for the year preceding enrollment in a higher education institution. Tex. Educ. Code § 54.052(a)(3). To qualify, a person who is not already "a citizen or permanent resident of the United States" must submit "an affidavit stating that the person will apply to become a permanent resident of the United States as soon as the person becomes eligible to apply." *Id.* § 54.053(3)(B).

The Dream Act opened the door to higher education for tens of thousands of Texas students. ROA.238. Without the need to pay out-of-state tuition rates that are typically three times higher than in-state rates, Dream Act students have contributed millions of additional dollars in tax revenue to the State, tuition dollars to educational institutions, and built careers driving economic activity in their communities. ROA.321. The Texas Legislature has consistently declined to modify or repeal the statute, including during the most recent legislative session ending on June 2, 2025. ROA.239.

### B. Procedural History

1. On June 4, 2025—two days after the Texas Legislature adjourned without repealing the Dream Act—the United States sued Texas, alleging that provisions of the Dream Act are preempted by a federal statute imposing conditions on when "an alien who is not lawfully present in the United States" can "be eligible on the basis

of residence within a State . . . for any postsecondary education benefit." 8 U.S.C. 1623(a). ROA.25. Hours later, Texas and the United States submitted a joint motion seeking a consent judgment declaring the challenged provisions unlawful and unconstitutional as applied to persons not lawfully present in the United States, and enjoining enforcement of those provisions by Texas's agents or employees. ROA.47–48. That same day, the district court entered the requested consent judgment. ROA.52.

2. Just twenty days later, LUPE Intervenors—graduate student Oscar Silva, Austin Community College, and La Unión del Pueblo Entero ("LUPE")—filed emergency motions to intervene (ROA.115), to vacate the consent decree (ROA.150), and to stay the consent decree (ROA.183). The intervention motion explained that the consent judgment had adversely impacted the rights of the LUPE Intervenors and caused them significant and immediate harm.

**Oscar Silva:** Silva is a 24-year-old graduate student who has lived in Texas since he was one year old. Silva graduated from elementary, middle, and high school in the state. ROA.355. He is now a joint bachelor's and master's student at the University of North Texas ("UNT") working toward graduation in Spring 2026. *Id.* Because of the Dream Act, Silva is eligible for in-state tuition. *Id.* The consent judgment upends his eligibility because, if UNT asked him to provide documentation

showing lawful presence, Silva would be unable to do so. ROA.653. The resulting additional financial burden means that Silva faces uncertainty regarding whether he will be able to graduate as expected in Spring 2026. ROA.356–357.

**Austin Community College:** ACC is one of the largest community college systems in the country and provides access to quality education to develop and enrich communities in Central Texas, especially for individuals from historically underrepresented and economically disadvantaged backgrounds. ROA.359. Like most community colleges, ACC's budget is heavily dependent on tuition and fees. ACC estimates that the consent judgment impacts about 440 of its students. ROA.359–60. Without a stay, ACC will face irreparable harm to its finances, campus community, and mission. ROA.362.

**LUPE:** Founded in 1989, LUPE is a membership organization that advocates and provides services for low-income communities, including undocumented individuals, in Texas's Rio Grande Valley. ROA.329–30. The organization runs programming to help undocumented students and staff at local high schools understand eligibility for in-state tuition through the Dream Act. ROA.332–33. Since the Consent Order, LUPE staff have had to divert resources to better support students. ROA.334–36. At least six members have spoken with LUPE because they "are anxious and uncertain about their college futures." ROA.336.

3. The district court ordered the government and Texas to respond only to the intervention motion, and it stayed briefing of the motions to stay and vacate. ROA.486. On August 15, 2025, the district court denied intervention solely on the reasoning that the challenged Dream Act provisions are preempted and, thus, it would be futile to allow the intervenors to participate in the case to show otherwise. ROA.735. The court then denied LUPE Intervenors' motions to vacate and stay the consent judgment as moot without briefing. ROA.753.[2]

## ARGUMENT

A stay pending appeal is warranted when the applicant demonstrates likely success on the merits; irreparable injury absent a stay; that a stay will not substantially injure other parties interested in the proceeding; and that the public interest supports relief. *See Richardson v. Texas Sec'y of State*, 978 F.3d 220, 228 (5th Cir. 2020).

The district court's consent judgment enjoining the Dream Act should be stayed. The LUPE Intervenors are entitled to intervene as of right, given the Texas Attorney General's refusal to defend the Dream Act. And the stay factors are met because the consent judgment: (a) was not the product of a case or controversy, (b) is legally flawed, as the Dream Act is not preempted by a valid federal statute, and (c)

---

[2] LUPE Intervenors unsuccessfully sought a stay pending appeal from the district court. Dkt. No. 96 (attached as Ex. D).

irreparably harms LUPE Intervenors, along with countless Texas students, schools, and organizations.

## A. LUPE Intervenors Are Likely to Succeed on the Merits.

LUPE Intervenors have appealed the denial of their intervention motion and the denial of their motion to vacate the consent judgment. LUPE Intervenors are likely to show both that they were entitled to intervene and that the district court's order should be vacated because it was entered without jurisdiction and was legally erroneous.

### 1. LUPE Intervenors are likely to succeed on their challenge to denial of intervention.

LUPE Intervenors are likely to succeed in showing they were entitled to intervene as of right to challenge the consent judgment. *See* Fed. R. Civ. P. 24(a)(2). To intervene as of right, LUPE Intervenors must show that: (1) their motion to intervene was timely; (2) they have an interest in the subject of the action; (3) the disposition of the action may impair that interest; and (4) their interest was inadequately represented by the existing parties. *See New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984). Each factor is readily satisfied here.

### a. LUPE Intervenor's intervention was timely.

LUPE Intervenors sought to intervene expeditiously. The United States filed suit, Texas agreed to the relief sought, and the Court entered final judgment all in a

matter of hours. *See* ROA.24, 46, 52. LUPE Intervenors could not have learned of this suit or its adverse effects on their interests any earlier. Once they learned of the action, they filed their motion just twenty days later. *See* ROA.115. This Court has repeatedly held that proposed intervenors who file within that short timeframe "discharge[] their duty to act quickly." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 267 (5th Cir. 1977) (intervention sought three weeks after consent order affected proposed intervenors); *League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 434 (5th Cir. 2011) (intervention sought four weeks after entry of order modifying consent decree). LUPE Intervenors sought intervention within the deadlines for filing post-judgment motions under Federal Rules of Civil Procedure 59(e) and 60, confirming their diligence. *Cf. United Airlines, Inc. v. McDonald*, 432 U.S. 385, 390 (1977) (intervention timely "within the 30-day period for an appeal to be taken").

Moreover, no party would suffer prejudice from intervention such a short time after litigation commenced. *See Stallworth*, 558 F.2d at 267 (no prejudice after one month); *United Airlines*, 432 U.S. at 393 n.14 (no prejudice three weeks after final judgment). The parties cannot manufacture any prejudice from the brief period between entry of the Consent Order and LUPE Intervenors' defense of the Dream Act: they "may have hoped" no one would defend the law, "but they had no legally

cognizable expectation." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 282 (2022).

Exacerbating these problems is the highly irregular nature of this case. The United States filed suit just two days after the Texas Legislature declined to repeal the Dream Act. When the parties failed to achieve their goal through the democratic process, the United States coordinated with the Texas Attorney General for him to abandon any defense of State law and agree summarily to a judicial decree. These unusual circumstances demonstrate intervention is necessary to protect LUPE Intervenors' interests.

b.  LUPE Intervenors' significant interests are impaired by the injunction and unprotected by any Party.

LUPE Intervenors have "direct, substantial, legally protectable interest[s] in the proceedings" that entitle them to intervene. *Texas v. United States*, 805 F.3d at 657. ACC stands to lose students and crucial revenue dollars, and it may be forced to engage in administratively burdensome immigration assessments; Silva faces financial burdens, putting his graduation date at risk; and LUPE must pour scarce resources into supporting its members through this drastic change. ROA.333–36, 356, 360–61, 653.

This Court held similar interests sufficient for intervention to challenge a potential consent decree in *Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014). There, intervening parents had a sufficient interest where a judgment potentially barred

certain vouchers and scholarships, meaning "some students who otherwise would get vouchers might not get them or might not get to select a particular school they otherwise would." *Id.* at 344. This Court deemed that interest in educational access sufficient for intervention. The consent judgment here impairs the same interests by reducing many Texas students' access to educational opportunities. *See* ROA.225, 320–21, 333–36, 356, 360–61, 653.

The denial of intervention frustrates LUPE Intervenors' ability to protect those interests. *Sierra Club v. Espy*, 18 F.3d 1202, 1206–07 (5th Cir. 1994). Absent intervention, no party will defend the Dream Act. Silva and LUPE's members consequently "will not be able to claim the interest" in educational benefits under State law, which will cause financial and other harms to ACC and other schools. *See In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 251 (5th Cir. 2009).

Finally, the parties do not adequately represent LUPE Intervenors' interests. Although a governmental entity is ordinarily presumed to adequately represent its citizens, Texas's litigation conduct refutes that presumption. *See, e.g.*, *City of Houston v. American Traffic Solutions, Inc.*, 668 F.3d 291, 294 (5th Cir. 2012) (concluding Houston's representation was inadequate where the city "might well be inclined to settle the litigation on terms that preserve the adverse ruling" that hurt the intervenors). That Texas has consented to—indeed, welcomed—an outcome to which LUPE Intervenors object demonstrates profoundly divergent interests. *See*

*LULAC*, 659 F.3d at 435 ("The existing parties [including a governmental entity] oppose the relief that [the intervenor] seeks; thus, they do not adequately represent his interest."). The district court's failure to consider these factors was clear error, and LUPE Intervenors have a right to intervene.

### c. The district court's futility analysis was improper and erroneous.

The district court nonetheless denied intervention. In doing so, the court did not discuss, much less dispute, the sufficiency of LUPE Intervenors' showings under the Rule 24(a)(2) factors. Instead, citing Federal Rule of Civil Procedure 12(b)(6), it denied intervention as futile because it agreed with the parties' statutory preemption claim. *See* ROA.735.

The district court's analysis was triply flawed. *First*, the court was wrong to embark on a futility analysis that, in essence, required the LUPE Intervenors to prove the merits of their claims before being afforded an opportunity to participate in the proceeding. While the district court may have thought that full adversarial briefing would be unable to change the court's view of the merits, "[j]udicial predictions about the outcome of hypothesized litigation cannot substitute" for a true adversarial presentation. *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 462 (2000). After all, "the adversarial process leads to better, more accurate decision-making." *Kaley v. United States*, 571 U.S. 320, 338 (2014). Yet in denying intervention on futility grounds, the only briefing the court considered that defended the Dream Act on the merits

was the LUPE Intervenors' reply in support of intervention (ROA.614), which contained a necessarily compressed overview of the arguments they would press if permitted to intervene. The court improperly rushed to enjoin a consequential state statute without providing LUPE Intervenors an opportunity to be heard on their arguments with full briefing.

*Second*, the court employed an inapplicable standard in assessing futility. The court invoked the motion-to-dismiss standard under Rule 12(b)(6) and concluded that LUPE Intervenors had failed to state a cognizable claim and would not be able to file a viable amended complaint. ROA.740. But LUPE Intervenors sought to intervene to defend the Dream Act, not to state any claim challenging it. This distinction is no mere technicality when their very first argument was that the district court lacked jurisdiction to enter the consent judgment—an argument that would never be asserted in an amended complaint, but which would provide a basis for vacating the district court's order.

*Third*, the court's futility analysis contained significant gaps and errors. The LUPE Intervenors identified three arguments that they would make if allowed to intervene to challenge the consent judgment: (1) the court lacked Article III jurisdiction to enter the consent judgment because the United States and Texas were not adverse and there was never a controversy between them (ROA.634); (2) Section 1623(a) does not preempt the challenged provisions of the Dream Act (ROA.637);

and (3) to the extent that Section 1623 preempts the Dream Act, it is inconsistent with the Tenth Amendment (ROA.638). Yet in finding that intervention would be futile, the district court considered only the second argument (ROA.740-746), ignoring the two other independent and potentially dispositive arguments.

Moreover, the court's futility analysis was deficient even as to the one issue it did consider. The court viewed further briefing of the preemption merits as unnecessary in view of a passage in *Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304 (5th Cir. 2023), but the court acknowledged that the passage was "dicta." ROA.744. And, as explained further below, the Dream Act is best read as consistent with Section 1623(a). *See infra* pp. 17-18. At a minimum, the preemption issues are not so clear-cut as to warrant dispensing with adversarial briefing. When then-Texas Attorney General Greg Abbott was asked to opine on whether Section 1623(a) preempts the Dream Act, he was unable to offer a confident prediction on how courts would resolve the question. *See* Office of the Att'y Gen. of Tex., Opinion No. GA-0732 (July 23, 2009), https://perma.cc/7DHB-MUKH.

### 2. The consent decree was entered without jurisdiction and is wrong on the merits.

LUPE Intervenors are also likely to prevail in showing the district court's judgment should be vacated.

1. Article III does not permit federal courts to hear friendly disputes where both sides "desire precisely the same result." *Brown v. Watkins Motor Lines, Inc.*,

596 F.2d 129, 132 (5th Cir. 1979). Consequently, when "all parties have agreed from the beginning of th[e] case that" the statutory provisions in question "are unconstitutional," there is insufficient adversity to support federal-court jurisdiction. *Pool*, 87 F.4th at 734; *see Moore*, 402 U.S. at 47–48 (concluding that when "both litigants desire precisely the same result"—an order holding the "statute is unconstitutional"—there is no case or controversy).

Three facts confirm that the consent judgment resulted from a "faux dispute." *Pool*, 87 F.4th at 734. *First*, the sequence of events on June 4 display a degree of choreography incompatible with a genuine legal dispute. To begin, the United States filed this action just two days after the Texas Legislature adjourned without repealing the Dream Act, removing the possibility of achieving the parties' desired outcome through the democratic lawmaking process. Almost immediately, an attorney entered an appearance on behalf of Texas, ROA.40, and Texas waived service. ROA.44. Within hours, the parties filed a three-page Joint Motion for Entry of Consent Judgment. ROA.46–49. Such procedural velocity in a constitutional lawsuit is extraordinary. When the parties are truly in an adversarial stance, they do not produce a joint stipulation conceding every legal issue within hours.

*Second*, the United States and the Texas Attorney General have acknowledged working in concert to achieve a jointly desired outcome. The day of the consent judgment, Texas Attorney General Ken Paxton—counsel for the putative

defendant—issued a press release trumpeting his work in "[s]uccessfully [s]trik[ing] [d]own" the Dream Act, emphasizing that his office had "entered a joint motion with the Trump Administration" to achieve "a major victory for Texas." ROA.339. He separately described his role in the litigation as "stand[ing] with Attorney General Bondi and the Trump Administration to stop" the Dream Act. ROA.350. The United States Department of Justice correspondingly "commend[ed]" Attorney General Paxton "for swiftly working with us" in the litigation. *Id.* In a speech made shortly after the consent judgment, a Justice Department official elaborated that the United States and Attorney General Paxton had "talk[ed] in advance" to eliminate "a statute that's been a problem for the state." ROA.435.

*Third*, Texas made concessions in the consent judgment that it would not have made if the Attorney General had any interest in defending the Dream Act. For example, when the proposed consent judgment was submitted, Texas had a pending case before this Court in which it had argued "the federal government" has no "statutory cause of action to enforce the Supremacy Clause" and this Court should not allow the United States to enforce the Supremacy Clause through a suit in equity. Appellants' Br. 13, 16, *United States v. Texas*, No. 24-50149 (5th Cir. Mar. 13, 2024). Texas insisted it would be "breathtaking" if the United States could "seek an injunction of any law passed by any State, despite Congress's failure to grant such authority." *Id.* at 20. Yet, when the United States filed a single-count complaint

asserting the Dream Act is preempted under the Supremacy Clause, ROA.34, Texas never argued the United States lacked a valid cause of action. Instead, Texas promptly joined a motion agreeing the district court had "authority" to enjoin the Dream Act "under the Supremacy Clause" and "its inherent equitable powers." ROA.47.

Despite *Pool*'s clear holding that in such circumstances there is no Article III case or controversy, 87 F.4th at 734, the district court never addressed its own jurisdiction. Instead, the court skipped ahead to its flawed preemption analysis. ROA.741. But "[j]urisdiction is always first." *Pool*, 87 F.4th at 733 (citation omitted). The court thus erred in overlooking the dispositive threshold flaw in the consent judgment. This Court is likely to order that the consent judgment be vacated on that basis alone, rendering irrelevant the specifics of the preemption question.

2. In any event, the district court's legal analysis—reached without full merits briefing—is erroneous. The district court accepted the United States's argument that the Dream Act is preempted by 8 U.S.C. § 1623(a), which restricts eligibility for education benefits provided "on the basis of residence." But the Dream Act bases eligibility for in-state tuition on factors beyond residency. Section 54.052(a)(3) of the Texas Education Code, for instance, provides that a student can meet the requirements by: (1) graduating from a Texas high school, (2) maintaining a residence in Texas for the three years prior to graduating high school, and (3)

maintaining a residence in Texas for the year preceding enrollment in a higher education institution. Tex. Educ. Code § 54.052(a)(3). Additionally, a person who is not a citizen or permanent resident must submit an "affidavit stating that the person will apply to become a permanent resident of the United States as soon as the person becomes eligible." *Id.* § 54.053(3)(B). Under the law's plain language, in-state status depends on factors beyond "residence." *See Martinez v. Regents of Univ. of Cal.*, 241 P.3d 855, 863 (Cal. 2010) (upholding California's analogue to the Dream Act against preemption challenge).

Reading the Dream Act as consistent with Section 1623(a) is appropriate because the federal statute threatens to invade core state prerogatives that raise grave doubts regarding its constitutionality. As interpreted by the district court, Section 1623(a) dictates to Texas whom it may regard as Texas residents and how tuition at state educational institutions is to be calculated. But courts should avoid statutory constructions that would usurp "decision[s] of the most fundamental sort for a sovereign" State. *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). Congress lacks "the power to issue direct orders to the governments of the States." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 471 (2018). If Congress meant to coerce states into abandoning their higher-education policies. it would have spoken unambiguously.

Moreover, the United States lacks authority to commandeer officials at state universities to enforce federal policies by requiring them to verify the immigration status of students. *See Printz v. United States*, 521 U.S. 898 (1997). Yet the district court's injunction imposes such requirements and directs state officials to take steps to avoid charging in-state tuition to certain Texans. Thus, to the extent § 1623(a) is read to conflict with the Texas Dream Act, it is void under the Tenth Amendment.

3. In district court, Texas and the United States argued that a stay is unwarranted because until intervention is granted, the LUPE Intervenors are not parties entitled to challenge the consent judgment. Dkt. No. 95. But this Court has vacated a consent decree based only on a finding that the district court erred in denying intervention. *See Edwards v. City of Houston,* 78 F.3d 983, 1006 (5th Cir. 1996) (en banc)*.* In any case, the LUPE Intervenors have appealed from both the denial of their intervention motion and the denial of their motion to vacate the consent judgment (Dkt. No. 92), and both issues will be before the Court. While the Court may address the intervention question first, once it concludes that intervention was warranted, it will be able to then proceed to the question of vacatur. For the reasons explained, when it does so, the Court is likely to conclude that the consent judgment is invalid and should be vacated. Accordingly, it should be stayed now.

## B. Absent a Stay, LUPE Intervenors Will Likely Suffer Irreparable Harm.

LUPE Intervenors will suffer irreparable harm without a stay. LUPE Intervenors have a significant interest in access to education, for themselves, their students, and their members. Loss of education access has myriad adverse consequences that cannot be remedied after the fact, through financial means or otherwise.

**Oscar Silva:** Silva's education has been made possible by the Dream Act. He has been eligible—by meeting the statutory criteria and signing the required affidavit—for in-state tuition. ROA.355. But Silva cannot present the required documentation to show his lawful presence in the United States, and the consent judgment increases his financial burden and threatens his Spring 2026 graduation date. *See* ROA.653.

**Austin Community College:** ACC faces irreparable harm to its mission and finances from the Consent Order. ROA.360–62; *see Career Colls. & Sch. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 235 (5th Cir. 2024) (irreparable harms include "costs of compliance" and "necessary alterations in operating procedures" required by new rules on universities), *cert. granted on other grounds*, 145 S. Ct. 1039 (2025). Specifically, the injunction adversely implicates ACC's revenues, enrollment, prospective students, reputation, administrative processes, recruitment, public

relations, scholarships, fundraising, campus life, academic programs, and student support services. ROA.360–62.

ACC is funded through a combination of sources, including, in significant part, tuition and fees from enrolled students. ROA.359. ACC estimates that charging out-of-state tuition to former Dream Act beneficiaries would lead hundreds of students to withdraw. ROA.360. The tuition increase will also deter prospective students from enrolling. *Id.* As ACC's Chancellor explained, the loss of revenue and "loss of these students will have a cascading effect on campus life, academic programs, and student support services." ROA.361–62. ACC may also face administrative burdens if required to take steps to comply with the consent judgment. ROA.327, 361.

**LUPE:** LUPE staff have spent hours supporting members whose lives have been upended by the consent judgment. LUPE must retrain organizers to deliver college-access curricula, and the organization is scrambling to rewrite its flagship Undocumented Student Guide so families have accurate information about college tuition. ROA.333–34. LUPE's Executive Director and staff have spent hours daily fielding panicked calls, coordinating volunteers, and pressing state and university officials for clarity on the injunction's implementation. ROA.335. LUPE has redirected its LUPE_Youth social-media platforms to provide real-time updates, convened a virtual town hall, and diverted resources from other programs. ROA.334,

336. Unless the Consent Order is stayed, LUPE will be forced to continue pouring resources into rapid response, leaving its other priorities behind.

The human stakes for LUPE are immediate: since June 4, 2025, at least six student members have sought LUPE's counsel in navigating unaffordable out-of-state tuition, which placed their education out of reach. ROA.336–37. Each day the consent judgment continues to operate, LUPE must continue its crisis response at considerable cost to its mission and the futures of the young people it serves. ROA.333–37.

### C. The Balance of Equities and Public Interest Favor a Stay.

Unlike the significant harms LUPE Intervenors imminently stand to suffer, the parties face no prejudice or irreparable harm from a stay. Indeed, the public interest favors granting a stay pending final resolution of the case.

The balance of equities weighs in favor of a stay. Preserving the status quo "is an important equitable consideration in the stay decision." *Louisiana v. Becerra*, 20 F.4th 260, 263 (5th Cir. 2021) (citation omitted). The Dream Act was the status quo for more than two decades, and neither Texas nor the United States have argued that they are injured by the Dream Act. *Cf. Benisek v. Lamone*, 585 U.S. 155, 160 (2018) (weighing "years-long" delay in seeking injunctive relief in the balance of the equities).

The public interest also supports a stay, as "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers). Further, absent a stay, countless students will be forced to make the life-altering decision to give up on higher education, to no one's benefit. A stay will allow the proper time for rigorous testing of the United States's claims, to ensure the interest of all Texans in an educated public receives its due defense. Consequently, the balance of equities and public interest favor a stay.

## CONCLUSION

LUPE Intervenors respectfully request this Court grant a stay of the district court's Order and Final Judgment pending disposition of this appeal.

Dated: August 29, 2025

Respectfully submitted,

*/s/ Andrés Correa*

David Donatti
Adriana Pinon
Edgar Saldivar
**ACLU FOUNDATION OF TEXAS**
P.O. Box 8306
Houston, TX 77288
(713) 942-8146
ddonatti@aclutx.org

Kassandra Gonzalez
Zachary Dolling
**TEXAS CIVIL RIGHTS PROJECT**
P.O. Box 17757
Austin, TX 78760
(512) 474-5073 ext. 182 Telephone
(512) 474-0726 Facsimile
kassandra@texascivilrightsproject.org

Daniel Hatoum
**TEXAS CIVIL RIGHTS PROJECT**
1017 W. Hackberry Ave.
Alamo, TX 78516
(512) 474-5073 ext. 182 Telephone
(512) 474-0726 Facsimile
daniel@texascivilrightsproject.org

Efrén C. Olivares
Texas Bar No. 24065844
Federal Bar No. 1015826
**NATIONAL IMMIGRATION LAW CENTER**
P.O. Box 34573
Washington, DC 20005-9997
(213) 674-2817 Telephone
olivares@nilc.org

Andrés Correa
Christopher Patton
Yaman Desai
Kyle A. Gardner
Zhenmian Xu
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800 Telephone
(214) 981-3839 Facsimile
acorrea@lynnllp.com

Joshua M. Salzman
Brian D. Netter
Paul R.Q. Wolfson
Skye L. Perryman
Simon C. Brewer*
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, D.C. 20043
Tel: (202) 448-9090
jsalzman@democracyforward.org

*Not admitted to practice law in the District of Columbia; practicing under the supervision of Democracy Forward lawyers who are members of the D.C. Bar.

**ATTORNEYS FOR MOVANT-APPELLANTS LA UNIÓN DEL PUEBLO ENTERO, AUSTIN COMMUNITY COLLEGE, AND OSCAR SILVA**

**CERTIFICATE OF COMPLIANCE**

This motion complies with the typeface and type-volume limitations in Federal Rule of Appellate Procedure 27(d)(1)(E) and 27(d)(2)(A) because it contains 5,144 words according to the count generated by Microsoft Word, and has been prepared in a proportionally spaced typeface using 14-point Times New Roman font.

Dated: August 29, 2025          _/s/ Andres Correa_
                                                Andres Correa

# ADDENDUM

## ADDENDUM TABLE OF CONTENTS

Ex. A – Order and Final Judgment, Dkt. No. 8 (ROA.52)

Ex. B – Order denying Motion to Intervene, Dkt. No. 88 (ROA.735-746)

Ex. C – Order denying Motion for Relief from Judgment, Dkt. No. 91 (ROA.753)

Ex. D – Order denying Stay Pending Appeal, Dkt. No. 96 (not in ROA)

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | CIVIL No. 7:25-cv-00055 |
| v. | **Proposed Order and Final Consent Judgment** |
| STATE OF TEXAS, | |
| Defendant. | |

**ORDER AND FINAL JUDGMENT**

Before the Court is the Parties' **Joint Motion for Entry of a Consent Judgment**. ECF No. 6. Having considered the Motion, the Complaint, and applicable law, the Court GRANTS the Motion. Accordingly, the Court hereby **DECLARES** that the challenged provisions, Texas Education Code §§ 54.051(m), 54.052(a), as applied to aliens who are not lawfully present in the United States, violate the Supremacy Clause and are unconstitutional and invalid.

The Court also hereby **PERMANENTLY ENJOINS** Defendant as well as its successors, agents, and employees, from enforcing Texas Education Code § 54.051(m) and § 54.052(a), as applied to aliens who are not lawfully present in the United States.

This final judgment is issued pursuant to Federal Rule of Civil Procedure 58(a). The Clerk of the Court shall transmit a true copy of this judgment to the Parties.

SO ORDERED on this 4th day of June 2025.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | **Civil Action No. 7:25-CV-00055-O** |
| | § | |
| **STATE OF TEXAS** | § | |
| | § | |
| **Defendant.** | § | |

**ORDER**

Before the Court are Proposed Intervenor Students for Affordable Tuition's ("SAT")

Motion to Intervene and Brief in Support (ECF Nos. 9–10), filed June 11, 2025; Defendant Texas's

Response (ECF No. 47), filed July 2, 2025; Plaintiff United States's Response (ECF No. 48), filed

July 2, 2025; and SAT's Replies (ECF Nos. 54, 56), filed July 16, 2025. Also before the Court are

Proposed Intervenors Austin Community College ("ACC"), Oscar Silva, and La Unión del Pueblo

Entero's ("LUPE") (collectively, the "LUPE Intervenors") Emergency Motion to Intervene (ECF

No. 16), filed June 24, 2025; Defendant Texas's Response (ECF No. 50), filed July 14, 2025;

Plaintiff United States's Response (ECF No. 51), filed July 14, 2025; LUPE Intervenors' Reply

(ECF No. 63), filed July 21, 2025.

The above-mentioned Motions are fully briefed and ripe for the Court's review. Upon

reviewing the briefing and applicable law, the Court hereby **DENIES** SAT's Motion to Intervene

(ECF No. 9) and **DENIES** LUPE Intervenors' Motion to Intervene (ECF No. 16).

1

## I.    BACKGROUND

Congress in 1996 passed the Illegal Immigration Reform and Immigrant Responsibility

Act. Relevant to the instant litigation is Section 1623(a) of the Act, which provides the following:

> Notwithstanding any other provision of law, an alien who is not lawfully present
> in the United States shall not be eligible on the basis of residence within a State
> (or a political subdivision) for any postsecondary education benefit unless a citizen
> or national of the United States is eligible for such a benefit (in no less an amount,
> duration, and scope) without regard to whether the citizen or national is such a
> resident.

8 U.S.C. § 1623(a).

### A.  Relevant Procedural History

On June 4, 2025, the United States filed suit seeking to permanently enjoin Texas from

enforcing "certain provisions of the Texas Education Code that expressly and directly conflict with

federal immigration law."[1] The specific Texas provisions at issue are Sections 54.051(m) and

54.052(a) of the Texas Education Code.

Section 54.051(m) provides that "[u]nless the student establishes residency or is entitled or

permitted to pay resident tuition as provided by this subchapter, tuition for a student who is a

citizen of any country other than the United States of America is the same as the tuition required

of other nonresident students." TEX. EDUC. CODE § 54.051(m). Section 54.052(a) articulates three

ways for a student to establish residency in Texas:

> (1) a person who: (A) established a domicile in this state not later than one year
> before the census date of the academic term in which the person is enrolled in an
> institution of higher education; and (B) maintained that domicile continuously for
> the year preceding that census date;
>
> (2) a dependent whose parent: (A) established a domicile in this state not later than
> one year before the census date of the academic term in which the dependent is
> enrolled in an institution of higher education; and (B) maintained that domicile
> continuously for the year preceding that census date; and

---

[1] U.S. Compl. 1–2, ECF No. 1.

2

> (3) a person who: (A) graduated from a public or private high school in this state or received the equivalent of a high school diploma in this state; and (B) maintained a residence continuously in this state for: (i) the three years preceding the date of graduation or receipt of the diploma equivalent, as applicable; and (ii) the year preceding the census date of the academic term in which the person is enrolled in an institution of higher education.

*Id.* § 54.052(a). In its Complaint, the United States maintains that Sections 54.051(m) and 54.052(a)(3) of the Texas Education Code are preempted by Section 1623(a), running afoul of the Supremacy Clause of the United States Constitution.[2]

The same day the United States filed its Complaint, the parties filed a Joint Motion for Entry of Consent Judgment.[3] There, the parties informed the Court they "agree that federal law at 8 U.S.C. § 1623(a) expressly preempts the Texas Education Code provisions—§§ 54.051(m), 54.052(a)—that grant benefits to aliens, who are not lawfully present in the United States."[4] Consequently, the parties requested the Court enter a final judgment declaring Sections 54.051(m) and 54.052(a) violate the Supremacy Clause, rendering them unconstitutional and invalid.[5] The Court granted the Joint Motion and issued a Consent Order and Final Judgment, specifically declaring the Texas provisions unconstitutional and invalid and enjoining Texas from enforcing the provisions to aliens unlawfully present in the United States.[6]

A flurry of activity has since followed. On June 11, 2025—one week after the Court entered its Final Judgment—SAT filed its Motion to Intervene.[7] Soon after, on June 24, 2025, the LUPE Intervenors filed their Motion to Intervene.[8] These Motions are fully briefed and ripe for the Court's review.

---

[2] *Id.* at 8–11.
[3] *See* Mot. Entry Consent J., ECF No. 6.
[4] *Id.* at 2.
[5] *Id.*
[6] Order & Final J. 1, ECF No. 8.
[7] *See* SAT Mot. Intervene, ECF No. 9.
[8] *See* LUPE Mot. Intervene, ECF No. 16.

25-10898.737

### B. Proposed Intervenors

SAT is an unincorporated association "comprised of college students without lawful immigration status who are united for the purpose of advocating for and ensuring access to affordable higher education in Texas, including maintaining the state's reduced in-state tuition rates for residents without lawful immigration status."[9] SAT's members include recipients of Deferred Action for Childhood Arrivals ("DACA") and also individuals "who do not have DACA or any other immigration status."[10] SAT maintains that, because of the Court's Consent Order, "SAT's members face increases of up to 810% of their higher education costs."[11] SAT seeks to intervene in this action for purposes of pursuing an appeal.[12]

The LUPE Intervenors consist of ACC, LUPE, and Oscar Silva. "ACC is a public education institution serving Central Texas" and "provides access to quality education to develop and enrich communities, especially for individuals from historically underrepresented and economically disadvantaged backgrounds."[13] "ACC has 440 enrolled students affected by the Consent Order, who qualified for in-state tuition under the Dream Act."[14] Because of the Consent Order, ACC anticipates "significant reductions in its enrollment and retention" and "many students to withdraw from ACC."[15]

LUPE, a membership organization, has "advocat[ed] for the low-income community in Texas's Rio Grande Valley since 2003."[16] "LUPE provides students and schools with information on higher education, and assists undocumented students, and those with [DACA] to understand

---

[9] SAT Br. Supp. Mot. Intervene 1, ECF No. 10.
[10] SAT Reply 4, ECF No. 54.
[11] SAT Br. Supp. Mot. Intervene 4, ECF No. 10.
[12] *Id.* at 5.
[13] LUPE Br. Supp. Mot. Intervene 6, ECF No. 16.
[14] *Id.* at 6–7.
[15] *Id.* at 7.
[16] *Id.*

4

eligibility for in-state tuition."[17] LUPE maintains "[t]he Consent Order has affected [its] staff, outreach, advocacy, social media, print materials, and community relationships."[18]

Finally, Oscar Silva is a student at the University of North Texas.[19] Silva has received in-state tuition because of the Dream Act, but now "fears his tuition could skyrocket before the August 20, 2025 payment deadline, and he may be forced to give up on his plans for his career and his future."[20]

Collectively, the LUPE intervenors seek reconsideration of the Court's Consent Order or, alternatively, an appeal.[21] On August 4, 2025, SAT and the LUPE Intervenors filed Protective Notices of Appeal.[22]

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 24(a) requires courts to permit a movant to intervene as a matter of right provided (1) the movant's application for intervention is timely, (2) the movant has an interest related to the action, (3) the movant's interest would be impaired or impeded by the instant case, and (4) the movant's interest is not adequately represented by the existing parties to the suit. FED. R. CIV. P. 24(a)(2); *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 247 (5th Cir. 2009). And though, as the movant, the would-be intervenor carries the burden of establishing all four elements for intervention as of right, that burden is "minimal," albeit cognizable. *Texas v. United States*, 805 F.3d 653, 661 (5th Cir. 2015). In making its determination, a court is to accept the movant's factual allegations as true. *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022). "Failure to satisfy any one requirement precludes intervention of right." *Haspel &*

---

[17] *Id.* at 7–8.
[18] *Id.* at 8.
[19] *Id.* at 9.
[20] *Id.* at 10.
[21] *Id.* at 18–19.
[22] *See* SAT Protective Notice of Appeal, ECF No. 80; LUPE Protective Notice of Appeal, ECF No. 81.

25-10898.739

*Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of the Orleans Levee Dist. & State of La.*, 493 F.3d 570, 578 (5th Cir. 2007) (citation omitted).

Rule 24(b) also permits a movant to seek permissive intervention at the discretion of a district court, provided the applicant (1) files a timely motion, (2) shows it "has a claim or defense that shares with the main action a common question of law or fact," and (3) the court determines that intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1)(B), (b)(3).

## III.    ANALYSIS

Among other arguments, the United States and Texas contend the Court should deny SAT and the Lupe Intervenors' Motions to Intervene because their intervention is legally futile.[23] The Court agrees.

"[A] proper basis for denying leave to intervene may be a finding that the proposed intervention would fail to state a claim." *Saavedra v. Murphy Oil U.S.A., Inc.*, 930 F.2d 1104, 1109 (5th Cir. 1991); *see also King v. Flowers Foods, Inc.*, No. CV 21-579-BAJ-SDJ, 2023 WL 2731041, at *2 (M.D. La. Mar. 30, 2023) ("If the intervening party's legal claim fails on the merits under clearly-established law or a prior decision in the case, the motion to intervene can be dismissed as futile." (citation omitted)). "The Fifth Circuit defines futility to mean that the amended complaint would fail to state a claim upon which relief could be granted." *King*, 2023 WL 2731041, at *2 (internal quotation marks and citation omitted). To determine whether intervention is futile, a "court applies the same standard as it would apply in considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), *i.e.*, whether the complaint include[s]

---

[23] Tex. Resp. 9–10, ECF No. 47; U.S. Resp. 5–7, ECF No. 48; Tex. Resp. 16–18, ECF No. 50; U.S. Resp. 6–9, ECF No. 51.

25-10898.740

enough facts to state a claim to relief that is plausible on its face." *Id.* (alteration in original) (internal quotation marks and citations omitted).

Applying the Rule 12(b)(6) standard, the Court concludes SAT and the LUPE Intervenors' Motions to Intervene are futile because federal law—specifically, 8 U.S.C. § 1623(a)— preempts the challenged Texas provisions, Sections 54.051(m) and 54.052(a) of the Texas Education Code. So, SAT and the LUPE Intervenors fail to state a plausible claim.

Federal preemption is rooted in the Constitution's Supremacy Clause, which provides the following:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. CONST. art. VI, cl. 2. Under the Supremacy Clause, "[s]tate law is preempted when (1) a federal statute expressly preempts state law ('express preemption'); (2) federal legislation pervasively occupies a regulatory field ('field preemption'); or (3) a federal statute conflicts with state law ('conflict preemption')." *Deanda v. Becerra*, 96 F.4th 750, 760–61 (5th Cir. 2024).

"A federal statute expressly preempts a state law when Congress 'adopts express language defining the existence and scope of preemption.'" *Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 311 (5th Cir. 2023) (quoting *Est. of Miranda v. Navistar, Inc.*, 23 F.4th 500, 504 (5th Cir. 2022)). "And when the statute contains an express preemption clause, the court does not indulge 'any presumption against preemption but instead focus[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent.'" *Id.* (alteration in original) (quoting *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016)). "Evidence of preemptive purpose is sought in the text and structure of the statute at issue,

and in the first instance we focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent." *Id.* (internal quotation marks and citation omitted).

The Fifth Circuit in *Young Conservatives* already determined that "Section 1623(a) contains an express preemption clause," which the United States relies on.[24] *Id.* at 312. Indeed, Section 1623(a) provides that:

> "[n]otwithstanding any other provision of law," an illegal alien "shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident."

*Id.* (alterations in original) (quoting 8 U.S.C. § 1623(a)). Under the Fifth Circuit's interpretation, "the statute expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same. No matter what a state says, if a state did not make U.S. citizens eligible, illegal aliens *cannot* be eligible." *Id.* at 313 (emphasis added).

Here, Sections 54.051(m) and 54.052(a) of the Texas Education Code "allow aliens not lawfully present in the United States to qualify for in-state tuition based solely on Texas residency, while *explicitly denying* resident tuition rates to U.S. citizens who do not meet Texas residency requirements."[25] Section 54.051(m) states "[u]nless the student establishes [Texas] residency or is entitled or permitted to pay [Texas] resident tuition as provided by this subchapter, tuition for a student *who is a citizen of any country other than the United States of America* is the same as the tuition required of other nonresident students." TEX. EDUC. CODE § 54.051(m) (emphasis added).

Central to this litigation, Section 54.052(a) articulates three ways for a student to establish residency in Texas:

---

[24] *See* U.S. Resp. 7, ECF No. 48; U.S. Resp. 9, ECF No. 51.
[25] U.S. Resp. 7, ECF No. 51 (emphasis added).

8

> (1) a person who: (A) established a domicile in this state not later than one year before the census date of the academic term in which the person is enrolled in an institution of higher education; and (B) maintained that domicile continuously for the year preceding that census date;
>
> (2) a dependent whose parent: (A) established a domicile in this state not later than one year before the census date of the academic term in which the dependent is enrolled in an institution of higher education; and (B) maintained that domicile continuously for the year preceding that census date; and
>
> (3) a person who: (A) graduated from a public or private high school in this state or received the equivalent of a high school diploma in this state; and (B) maintained a residence continuously in this state for: (i) the three years preceding the date of graduation or receipt of the diploma equivalent, as applicable; and (ii) the year preceding the census date of the academic term in which the person is enrolled in an institution of higher education.

*Id.* § 54.052(a). None of these provisions require lawful presence in the United States. Texas currently charges resident students "$50 per semester credit hour." *Id.* § 54.051(c). By contrast, nonresident students pay a higher rate of tuition in an amount set by the "coordinating board . . . each academic year." *Id.* § 54.051(d).

Examining these provisions together, "Texas charges students who satisfy certain residency requirements lower tuition than it charges to nonresident students." *Young Conservatives*, 73 F.4th at 307–08 (citing TEX. EDUC. CODE §§ 54.051(c)–(d), 54.052). Section 54.051(m) explicitly states "a student who is a citizen of any country *other than* the United States of America" must pay the same tuition rate as nonresident students "*[u]nless* the student establishes *residency*." TEX. EDUC. CODE § 54.051(m) (emphasis added). In other words, "[s]o long as they satisfy the statute's residency requirements, illegal aliens are eligible for Texas resident tuition. Out-of-state, nonresident American citizens are not." *Young Conservatives*, 73 F.4th at 308.

Federal law—Section 1623(a)—bars such a disparity. It charges that an illegal alien "shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit

unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). Sections 54.051(m) and 54.052(a) are expressly preempted because they "grant benefits to aliens, who are not lawfully present in the United States, based on their residency in Texas, that are not available to all U.S. citizens regardless of residency."[26] That is, these Texas provisions "grant illegal aliens benefits when U.S. citizens haven't received the same." *Young Conservatives*, 73 F.4th at 313.

SAT argues the United States's reliance on *Young Conservatives* is misplaced.[27] Specifically, SAT argues *Young Conservatives* "addressed Texas Education Code § 54.051(d)—a provision not at issue here—and explicitly held that it was not preempted by 8 U.S.C. § 1623(a)."[28] It is true that *Young Conservatives* addressed a different provision in the Texas Education Code than the provisions at issue in this action. The Fifth Circuit made clear Section 54.051(d) of the Texas Education Code "calculates and imposes a nonresident tuition rate (for U.S. citizens, foreign nationals, and immigrants alike) [and] has *nothing to do* with § 1623(a)'s mandate that illegal aliens are ineligible for in-state benefits unless U.S. citizens are." *Id.* at 313–14 (emphasis added).

Tellingly, the Fifth Circuit said in dicta that "a different, *unchallenged* portion of Texas' scheme *seems to conflict* with § 1623(a)." *Id.* at 314 (second emphasis added). Those provisions, as demonstrated above, are Sections 54.051(m) and 54.052(a). And, unlike Section 54.051(d), which "does nothing more than set the tuition price for nonresident students, citizens or not," Sections 54.051(m) and 54.052(a) expressly conflict with Section 1623(a) by granting "improper benefits for illegal aliens." *Id.* at 313. The Court thus rejects SAT's argument that the United

---

[26] Mot. Entry Consent J. 2, ECF No. 6.
[27] SAT Reply 6–7, ECF No. 56.
[28] *Id.* at 6.

States's reliance on *Young Conservatives* is misplaced merely because it addressed a different provision of the Texas Education Code.

Additionally, both SAT and the LUPE Intervenors argue that Section 1623(a) does not squarely preempt Texas law because Texas law is broader.[29] That is, Section 1623(a) restricts eligibility for education benefits only "on the basis of residence," but under the plain language of the Texas provisions at issue here, "in-state status depends on factors beyond mere 'residence.'"[30]

The Fifth Circuit in *Young Conservatives* explained that "Texas charges students who satisfy certain residency requirements lower tuition than it charges to nonresident students." 73 F.4th at 307–08. The Fifth Circuit recognized that Texas law has certain residency requirements, i.e., the "factors beyond mere 'residence'" articulated in Section 54.052(a).[31] The Fifth Circuit interpreted Section 1623(a) in light of Texas's residency factors and held "the statute expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same." *Id.* at 313. So, the fact that Texas law evaluates different factors to determine residency does not place Sections 54.051(m) and 54.052(a) outside the purview of Section 1623(a)'s express preemption clause. The Court thus rejects SAT and the LUPE Intervenors' argument that Sections 54.051(m) and 54.052(a) are not preempted merely because they regard eligibility for in-state tuition beyond residency alone.

In sum, Section 1623(a) expressly preempts Sections 54.051(m) and 54.052(a). Accordingly, SAT and the LUPE Intervenors' Motions to Intervene are legally futile, because they fail to state a claim under Rule 12(b)(6).

---

[29] *See* LUPE Reply 19, ECF No. 63; SAT Reply 6–7, ECF No. 56.
[30] LUPE Reply 19, ECF No. 63 (quoting 8 U.S.C. § 1623(a)); *see also* SAT Reply 6–7, ECF No. 56 ("Section 1623(a) prohibits states from offering postsecondary education benefits to undocumented immigrants based *solely* on residency. However, Texas Education Code §§ 54.051(m) and 54.052(a) do not confer such benefits solely on the basis of residency.").
[31] LUPE Reply 19, ECF No. 63 (quoting 8 U.S.C. § 1623(a)).

25-10898.745

## IV.    CONCLUSION

For the reasons set out above, the Court **DENIES** SAT's Motion to Intervene (ECF No. 9) and the LUPE Intervenors' Emergency Motion to Intervene (ECF No. 16). The Court **DENIES as moot** Texas's Motion to Strike (ECF No. 62) and the LUPE Intervenors' Motion for Leave to Supplement Emergency Motion to Intervene Record (ECF No. 64).

**SO ORDERED** on this **15th day** of **August, 2025**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

12

# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:25-CV-00055-O** |
| | § | |
| **STATE OF TEXAS** | § | |
| | § | |
| **Defendant.** | § | |

**<u>ORDER</u>**

On August 15, 2025, the Court denied Austin Community College, Oscar Silva, and La Unión del Pueblo Entero's (collectively, "LUPE Intervenors") Emergency Motion to Intervene (ECF No. 88). Accordingly, the LUPE Intervenors' Emergency Motion for Relief from Judgment (ECF No. 17) and Emergency Motion for Stay of Judgment (ECF No. 18) are **DENIED as moot**.

**SO ORDERED** on this **18th day** of **August, 2025**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

1

25-10898.753

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:25-CV-00055-O** |
| | § | |
| **STATE OF TEXAS** | § | |
| | § | |
| **Defendant.** | § | |

## ORDER

Before the Court is the Emergency Motion to Stay Pending Appeal (ECF No. 93), filed by Proposed Intervenors La Unión del Pueblo Entero ("LUPE"), Austin Community College ("ACC"), and Oscar Silva (collectively "Proposed Intervenors"). Proposed Intervenors request a ruling on this by August 25, 2025. In light of the request for expedited ruling, the Court directed any response in opposition to be filed by 3:00 pm August 25, 2025 (ECF No. 94). The parties to this litigation responded and oppose Proposed Intervenor's request (ECF No. 95).

For the reasons stated in the parties' response in opposition, Proposed Intervenor's Emergency Motion to Stay Pending Appeal is **DENIED.**

**SO ORDERED** on this **25th day** of **August, 2025**.

Reed O'Connor
**CHIEF UNITED STATES DISTRICT JUDGE**