# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

STUDENTS FOR AFFORDABLE
TUITION, LA UNIÓN DEL PUEBLO ENTERO,
AUSTIN COMMUNITY COLLEGE,
AND OSCAR SILVA,
*Movants-Appellants*,

v.

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*

and

STATE OF TEXAS
*Defendant-Appellee*

On Appeal from the United States District Court
for the Northern District of Texas

## UNITED STATES' OPPOSITION TO MOVANTS' MOTION FOR A STAY PENDING APPEAL

BRETT A. SHUMATE
  *Assistant Attorney General*

NANCY E. LARSON
  *Acting United States Attorney*

MARK R. FREEMAN
DANIEL TENNY
ANDREW M. BERNIE
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7539*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3511*

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

STATEMENT........................................................................................................3

    A.    Statutory Background................................................................................3

    B.    Factual Background ...................................................................................5

ARGUMENT.........................................................................................................6

I.    Appellants have no likelihood of success on the merits. ......................................7

    A.    Appellants' challenge to the district court's judgment is meritless. ...........7

    B.    Appellants' procedural objections are beside the point and in any event without merit. ..........................................................................................15

II.    The other stay factors strongly favor the government. .......................................17

CONCLUSION ...................................................................................................19

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

*Atkins v. Gen. Motors Corp.*,
    701 F.2d 1124 (5th Cir. 1983) ....................................................................16

*Clark v. Martinez*,
    543 U.S. 371 (2005) ....................................................................................12

*FDA v. Alliance for Hippocratic Medicine*,
    602 U.S. 367 (2024) ....................................................................................18

*INS v. Chadha*,
    462 U.S. 919, (1983) ...................................................................................13

*Martinez v. Regents of Univ. of Cal.*,
    241 P.3d 855 (Cal. 2010) .............................................................................10

*Murphy v. National Collegiate Athletic Association*,
    584 U.S. 453 (2018) ....................................................................................13

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................................................ 6, 7

*Plyler v. Doe*,
    457 U.S. 202 (1982) ....................................................................................11

*Pool v. City of Houston*,
    87 F.4th 733 (5th Cir. 2023) ......................................................................14

*Rhode Island Federation of Teachers., AFL-CIO v. Norberg*,
    630 F.2d 850 (1st Cir. 1980) .......................................................................16

*Saavedra v. Murphy Oil U.S.A., Inc.*,
    930 F.2d 1104 (5th Cir. 1991) ....................................................................16

*Texas v. United States*,
    40 F.4th 205, 229 (5th Cir. 2022) .................................................................7

*United States v. Windsor,*
  570 U.S. 744 (2013) ........................................................... 13, 14

*Young Conservatives of Texas Foundation v. Smatresk,*
  73 F.4th 304 (5th Cir. 2023) .......................................... 1, 3, 8, 9, 12

## Statutes

8 U.S.C. § 1601(2)(B) ...........................................................18

8 U.S.C. § 1623 ....................................................................3

8 U.S.C. § 1623(a) .................................................... 1, 3, 7, 9, 10, 11

Pub. L. No. 104-208, 110 Stat. 3009 (1996) ...............................3

Tex. Educ. Code § 54.051(c) ...................................................3

Texas Educ. Code § 54.051(m) ......................................... 4, 5, 7, 9

Tex. Educ. Code § 54.051(d) ...................................................3

Tex. Educ. Code § 54.052(a) ......................................... 4, 8, 10

Tex. Educ. Code § 54.053(3)(B) ....................................... 8, 11

# INTRODUCTION

"Texas allows illegal aliens who satisfy residency requirements to pay" in-state tuition rates at public state colleges, even as U.S. citizens from other states must pay higher tuition rates. *Young Conservatives of Texas Foundation v. Smatresk*, 73 F.4th 304, 307 (5th Cir. 2023). That scheme—set forth in Sections 54.051(m) and 54.052(a) of the Texas Education Code—is preempted by federal law, which provides that "an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a).

The United States sought invalidation of Sections 54.051(m) and 54.052(a). Because Texas agreed with the United States that Section 1623(a) expressly preempts these provisions, the parties requested that the district court enter a consent judgment. The district court granted the motion and issued a final judgment declaring the state provisions preempted and enjoining Texas from enforcing them as to aliens unlawfully present in the United States. Proposed Intervenors (Appellants) then sought intervention. Although the district court had entered a final judgment, the court did not sidestep the motion on procedural grounds. The court instead squarely addressed the merits, and held that, because the Texas provisions are preempted as a matter of law, the motion for intervention was legally futile. Appellants now seek a stay of the final

judgment pending resolution of their appeal of the order denying intervention. This Court should reject that request.

Proposed intervenors have no possibility (let alone a likelihood) of success in challenging that judgment. The district court's conclusion that Section 1623(a) expressly preempts the Texas Education Code provisions is clearly correct, dictated both by the text of the relevant state and federal provisions and this Court's decision in *Young Conservatives*.

Appellants complain at length about the way this case was litigated in the district court, but their procedural criticisms are, as a practical matter, largely beside the point. The district court decided the purely legal question whether the Texas Education Code provisions were preempted and did so following adversarial briefing. And Appellants do not identify any flaws in that conclusion—indeed, their motion to stay devotes less than two pages to the merits, and Appellants' cursory arguments are clearly wrong.

Finally, the district court's denial of intervention was also well within the court's discretion, and consistent with well-established case law holding that intervention is properly denied when a proposed intervenor's claims or defenses fail as a matter of law. In any event, Appellants can and have appealed the denial of intervention—any error in denying intervention would not be a basis for staying the judgment that afforded relief to which the United States is clearly entitled as a matter of law.

**STATEMENT**

**A.    Statutory Background**

**1**. In 1996, Congress passed, and President Clinton signed, the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). *See* IRRIRA, Pub. L. No. 104-208, Div. C, §§ 306, 308, 110 Stat. 3009–546 (1996).

As relevant here, IIRIRA included a clear "[l]imitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." 8 U.S.C. § 1623. Section 1623(a) provides as follows:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

*Id.* § 1623(a).

**2**. Like many states, Texas charges its "residents one price for public college and charge[s] those who live elsewhere much more." *Young Conservatives*, 73 F.4th at 307. The tuition for resident students is generally limited to $50 per semester credit hour. Texas Educ. Code § 54.051(c). The tuition for nonresidents is based on an average of the undergraduate tuition charged to Texas residents in each of the five most populous states other than Texas, which results in tuition that is higher by approximately an order of magnitude. *Id.* § 54.051(d); *see Young Conservatives*, 73 F.4th at 308 (stating that at the university at issue in that case, out-of-state tuition was $458 per semester credit hour).

In 2001, Texas enacted House Bill 1403, commonly known as the Dream Act, under which all students, including unlawfully present students, have access to in-state tuition rates at public colleges and universities if they establish residency in the state. The specific Texas provisions at issue are Sections 54.051(m) and 54.052(a) of the Texas Education Code. Section 54.051(m) provides that "*[u]nless the student establishes residency or is entitled or permitted to pay resident tuition* as provided by this subchapter, tuition for a student who is a citizen of any country other than the United States of America is the same as the tuition required of other nonresident students." Texas Educ. Code § 54.051(m) (emphasis added).

Section 54.052—titled "Determination of Resident Status"—provides three ways for a student to establish Texas residency. *Id.* § 54.052(a):

> (1) a person who: (A) established a domicile in this state not later than one year before the census date of the academic term in which the person is enrolled in an institution of higher education; and (B) maintained that domicile continuously for the year preceding that census date;

> (2) a dependent whose parent: (A) established a domicile in this state not later than one year before the census date of the academic term in which the dependent is enrolled in an institution of higher education; and (B) maintained that domicile continuously for the year preceding that census date; and

> (3) a person who: (A) graduated from a public or private high school in this state or received the equivalent of a high school diploma in this state; and (B) maintained a residence continuously in this state for: (i) the three years preceding the date of graduation or receipt of the diploma equivalent, as applicable; and (ii) the year preceding the census date of the academic term in which the person is enrolled in an institution of higher education.

*Id.*

## B.  Factual Background

**1.** On June 4, 2025, the United States filed suit seeking to permanently enjoin Texas from enforcing Sections 54.051(m) and 54.052(a)(3). The United States contended that, as applied to aliens not lawfully present in the United States, these provisions were preempted and thus unconstitutional under the Supremacy Clause. ROA.25, 31-34.

Although Texas was still applying the challenged provisions according to their terms, Texas "agree[d] that federal law [Section 1623(a)] expressly preempts the Texas Education Code provisions—§§ 54.051(m), 54.052(a)—that grant benefits to aliens, who are not lawfully present in the United States." ROA.47. Accordingly, the parties filed a Joint Motion for Entry of Consent Judgment the same day that the United States filed its complaint. The district court granted the motion and issued a final judgment declaring that the challenged provisions violate the Supremacy Clause and permanently enjoining "Defendant as well as its successors, agents, and employees, from enforcing Texas Education Code § 54.051(m) and § 54.052(a), as applied to aliens who are not lawfully present in the United States." ROA.52.

**2.** Appellant Students for Affordable Tuition then filed a motion to intervene on June 11. ROA.53-55. Appellants Austin Community College, Oscar Silva, and La Unión del Pueblo Entero filed a separate motion to intervene on June 24. ROA.115-48. Following full briefing on the intervention motions, the district court denied the

motions to intervene on August 15. ROA.735-46. "Applying the Rule 12(b)(6) standard," the district court concluded that motions to intervene were futile because Section 1623(a) expressly preempts Sections 54.051(m) and 54.052(a) of the Texas Education Code. ROA.741. The district court noted that, in *Young Conservatives*, this Court squarely held that Section 1623(a) contains an express preemption clause. ROA.742. And the district court further pointed out that unlawfully present aliens who satisfy Texas's residency requirements are eligible for Texas resident tuition while United States citizens who are not residents of Texas do not. ROA.743. "Federal law— Section 1623(a)—bars such a disparity." ROA.743. "Accordingly," the district court concluded, the motions to intervene were "legally futile, because they fail to state a claim under Rule 12(b)(6)." ROA.745.

**3.** Appellants filed a motion to stay the district court's June 4 final judgment. Dkt. No. 93. The district court denied the motion on August 25. Dkt. No. 96. Four days later, Appellants filed in this Court a motion to stay the district court's judgment pending appeal.

## ARGUMENT

Courts addressing a motion for a stay pending appeal consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 426

(2009) (quotation marks omitted). The final two "factors merge when the Government is the opposing party." *Id.* at 435. Appellants are not entitled to a stay pending appeal.

Appellants have no possibility—let alone a likelihood—of prevailing on their defense of Texas Education Code § 54.051(m) and § 54.052(a). That itself warrants denial of the motion. *See Texas v. United States*, 40 F.4th 205, 229 (5th Cir. 2022). In any event, the other *Nken* factors likewise weigh against relief.

## I. Appellants have no likelihood of success on the merits.

### A. Appellants' challenge to the district court's judgment is meritless.

Appellants have no viable challenge to the final judgment in this case.

**1.** Section 1623(a) provides that "an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). Section 1623(a) thus directs that illegal aliens are ineligible for in-state tuition based on residence within the state if that same tuition rate is not made available to U.S. citizens without regard to their state residency.

Sections 54.051 and 54.052 of the Texas Education Code are thus preempted. Section 54.051(m) allows a student to pay the lower in-state tuition rate if that student establishes residency. Texas Educ. Code § 54.051(m). And Section 54.052(a) states that,

to establish residency (and thus qualify for in-state tuition), a student need only establish and maintain domicile continuously, graduate from a public or private Texas high school, or acquire the equivalent of a high school diploma and maintain a residence continuously for a set period. *Id.* § 54.052(a). Section 54.052 thus makes aliens who are not lawfully present in the United States (but who qualify as Texas residents) eligible for the lower in-state rate of tuition specified in Section 54.051(c). Indeed, a separate provision directly references the availability of resident status to noncitizens and nonpermanent residents by imposing a requirement that such individuals state that they will become permanent residents as soon as they are eligible to apply. Texas Educ. Code § 54.053(3)(B).

This is a benefit that is not made available to out-of-state American citizens, who pay substantially higher tuition. As the district court correctly concluded, Section 1623(a) preempts this scheme. Section 1623(a) "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same." *Young Conservatives*, 73 F.4th at 313.

The invalidity of the Texas scheme is thus apparent from the plain text of Section 1623(a), but if there were any doubt, this Court's decision in *Young Conservatives* would eliminate it. As noted, this Court in that case confirmed that Section 1623(a) contains an express preemption clause. 73 F.4th at 312. It explained that the statute imposes "a condition precedent to granting a benefit to aliens," *id.*—i.e., it makes unlawfully present

aliens ineligible for in-state tuition (or any other postsecondary education benefit) based on residency unless all U.S. citizens are eligible for that same benefit.

The Court in *Young Conservatives* ultimately held that a different provision of the Texas Education Code—Tex. Educ. Code § 54.051(d)—was not preempted because that provision did "nothing more than set the tuition price for nonresident students, citizens or not," and took "no stance on whether illegal aliens are eligible for a cheaper price." 73 F.4th at 313. The challenge to section 54.051(d) failed because Section "1623(a) doesn't impose *any* duty to grant the same benefits to U.S. citizens." *Id.* But this Court made clear that "a different, *unchallenged* portion of Texas' scheme seems to conflict with § 1623(a)." *Id.* at 314. And the Court was clearly referring to the provisions of Texas law at issue here, which do provide in-state benefits to illegal aliens. *See id.* at 313 (noting that "the problem with Texas' system relevant to § 1623(a) is that it grants illegal aliens in-state benefits").

**2.** Appellants assert only cursory defenses of the challenged state provisions. None have merit.

Appellants primarily insist that the Dream Act is not preempted because Section 1623(a) restricts eligibility for education benefits "on the basis of residence" and, according to Appellants, "the Dream Act bases eligibility for in-state tuition on factors beyond residency." Mot. at 17. That is incorrect. Section 54.051(m) allows all noncitizens, including illegal aliens, to pay in-state tuition if "the student establishes residency." Tex. Educ. Code § 54.051(m). Section 54.052(a) provides that "the

following persons are considered residents of this state for purposes of this title," Tex. Educ. Code § 54.052(a), and the three subsections then delineate three separate *ways* a person can establish residency, *id.* §§54.052(a)(1)-(3). Those three ways—one based on maintaining domicile for the year preceding the academic term, one based on a parent's maintaining that domicile (in the case of a dependent), and one based on graduation from a high school in Texas and residing in Texas continuously for three years before graduation (including for the year preceding the academic term)—are based on residency. Indeed, they are entirely *conventional* ways of defining residency. If this scheme is not precluded by 8 U.S.C. § 1623(a), the federal statute would be essentially ineffectual.[1]

Appellants also note that, in a separate provision—titled "Information Required to Establish Resident Status"—Texas law requires a person who "applies for resident status under Section 54.052(a)(3)" and "who is not a citizen or permanent resident" to

---

[1] Appellants note that the California Supreme Court upheld a California provision that provided in-state tuition to individuals who attended high school in California for at least three years. *See Martinez v. Regents of Univ. of Cal.*, 241 P.3d 855 (Cal. 2010). Even if that state-court decision was correct, it would have no bearing on this case. The court there emphasized that high-school attendance could be separate from residency. *See id.* at 864 (holding that the "exemption cannot be deemed to be based on residence for the simple reason that many *nonresidents* may qualify for it"). Here, every facet of the law is premised on residency. The Court thus need not decide whether *Martinez* was correct. In any event, *Martinez* was not correct. Attendance at high school within a state for purposes of in-state college tuition is plainly a proxy for residency, even if it is theoretically possible to identify some marginal exceptions (such as residents of towns on state borders or individuals who subsequently move and apply to college later). Section 1623(a) cannot be evaded this easily.

submit an "affidavit stating that the person will apply to become a permanent resident of the United States as soon as the person becomes eligible." *Id.* § 54.053(3)(B). But this additional limitation on the group of people entitled to in-state tuition does not change the fact that Texas law grants some illegal aliens who satisfy residency requirements post-secondary education benefits (and that it does not provide those same benefits to all U.S. citizens). Once again, if a state could grant residency-based benefits merely by imposing some additional condition, there would not be much left of 8 U.S.C. § 1623(a).

Appellants also briefly make constitutional avoidance arguments, contending that "[r]eading the Dream Act as consistent with Section 1623(a) is appropriate because the federal statute threatens to invade core state prerogatives that raise grave doubts regarding its constitutionality." Mot. at 18. But there is nothing constitutionally suspect about Congress—pursuant to its broad powers over immigration and foreign affairs— directing that aliens who are not lawfully present in the United States are ineligible for benefits based on their (unlawful) residence within a State that are denied to United States citizens. *See Plyler v. Doe*, 457 U.S. 202, 225 (1982) ("Although it is a routine and normally legitimate part of the business of the Federal Government to classify on the basis of alien status, and to take into account the character of the relationship between the alien and this country, only rarely are such matters relevant to legislation by a State." (quotation marks and citations omitted)). And constitutional avoidance "is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises

serious constitutional doubts." *Clark v. Martinez*, 543 U.S. 371, 381 (2005). For the reasons discussed above, Appellants' construction of Section 1623(a) is not plausible. Nor do Appellants offer an alternative reading that would avoid the supposed constitutional concerns to which they vaguely gesture without simply eliminating the provision entirely.

Appellants' additional arguments, which are not well developed, also lack merit. Section 1623(a) does not "dictate[] to Texas whom it may regard as Texas residents and how tuition at state educational institutions is to be calculated." Mot. at 18. It simply directs that, whatever test(s) for residency a state establishes, illegal aliens are ineligible for postsecondary education benefits based on residency where United States citizens are denied those same benefits. Appellants' attempted invocation of a clear statement principle—"If Congress meant to coerce states into abandoning their higher-education policies[,] it would have spoken unambiguously," Mot. at 18—is not well taken. Congress *did* speak clearly in Section 1623(a), which "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same." *Young Conservatives*, 73 F.4th at 313. The only question is whether Sections 54.051 and 54.052 fall within the statute's preemptive scope. They do.[2]

---

[2] Appellants' contention that Section 1623(a) runs afoul of anti-commandeering principles also lacks merit. Section 1623(a) does not "requir[e]" officials at state universities "to verify the immigration status of students." Mot. at 20. It simply declares unlawfully present aliens ineligible for discounted tuition rates and other postsecondary education benefits that are denied to United States citizens, preempting Texas law to

*Continued on next page.*

12

**3.** Unable to refute the district court's merits analysis, Appellants primarily argue that the district court lacked jurisdiction to enter the judgment in the first place. That is plainly incorrect. The United States filed this lawsuit because Texas continued to apply the state provisions to provide lower in-state tuition and other post-secondary educational benefits to illegal aliens in violation of federal law. *See* Mot. at 1. Appellants could not plausibly dispute that the United States had Article III standing to challenge a state's application of a law that interferes with the immigration policy set out by Congress. Instead, they urge that Texas stripped the district court of jurisdiction by adopting a litigating position that aligned with the position taken by the United States. The Supreme Court has squarely rejected that argument. *See United States v. Windsor*, 570 U.S. 744, 758-59 (2013) (parties' agreement that Defense of Marriage Act was unconstitutional did not deprive the district court or appellate courts of jurisdiction where, among other things, the United States continued to comply with the statute and would not pay money to plaintiff absent a court order requiring it to do so); *INS v. Chadha*, 462 U.S. 919, 939-40 (1983) (parties' agreement that statute allowing one House of Congress to order the Executive to deport the respondent did not deprive courts of jurisdiction where the Executive would in fact deport the respondent unless courts prohibited it from doing so).

---

the contrary. That sort of ordinary operation of an express preemption provision does not constitute impermissible commandeering of state government. *Murphy v. National Collegiate Athletic Association*, 584 U.S. 453, 471 (2018) (Supremacy Clause "means that when federal and state law conflict, federal law prevails and state law is preempted").

Like *Windsor* and *Chadha*, Texas's continued enforcement means that the district court's decision had genuine meaning and redressed an actual injury of the United States: if the United States obtained a favorable judgment, Texas would be barred from granting in-state tuition and other post-secondary education benefits to illegal alien residents, whereas otherwise Texas would continue to grant those benefits. *See Chadha*, 469 U.S. at 939-40 ("[O]ur decision will have real meaning: if we rule for Chadha, he will not be deported; if we uphold § 244(c)(2), the INS will execute its order and deport him." (quotation marks omitted)). Indeed, even the dissenters in *Windsor*—while contending that the Supreme Court and Ninth Circuit did not have jurisdiction to entertain appeals of the district court's judgment—did not doubt that the district court had jurisdiction notwithstanding the parties' agreement on the unconstitutionality of the Defense of Marriage Act. 570 U.S. at 781 (Scalia, J., dissenting) ("Windsor's injury was cured by the judgment in her favor."). Texas's continued enforcement of the Dream Act prior to the judgment here also clearly distinguishes this case from *Pool v. City of Houston*, 87 F.4th 733 (5th Cir. 2023), on which Appellants heavily rely. *See id.* at 734 ("The City also agreed that it 'would and could not enforce the provisions.'").

Relatedly on this point, Appellants' position is untenable. On Appellants' theory, the United States (or any other litigant) would lack a remedy as to an unconstitutional law whenever its counterparty *expresses agreement* on the merits of the United States' legal position—even if they continue to enforce the unconstitutional law. Indeed, on this logic, a party could perhaps even immunize a law, regulation, or allegedly unlawful

practice merely by purporting to agree with a plaintiff's legal position while continuing the challenged practice. That is not the law.

The same logic provides a complete answer to any prudential concerns that might arise when the parties to the case agree on the legal issues. The answer cannot be that the plaintiff is deprived of a remedy, regardless of whether its legal position is correct. And here, no prudential considerations could plausibly warrant disturbing the judgment for reasons already explained: the district court ultimately received adversarial briefing on the relevant merits issue (whether the Texas provisions are preempted) and resolved it on the merits. And any such concerns do not in any event implicate the district court's subject-matter jurisdiction.

**B.    Appellants' procedural objections are beside the point and in any event without merit.**

Appellants' various criticisms of the procedural history of this case provide no basis for staying the judgment. Even if those criticisms are correct, that would *at most* suggest that the district court should have delayed ruling on the motion for entry of a consent judgment, allowed them to intervene, and *then* ruled on the legality of Sections 54.051 and 54.052 of the Texas Education Code. But as noted, in denying intervention the district court squarely addressed the merits and its conclusion that federal law preempts these provisions is clearly correct. If this Court agrees with that legal conclusion, everything else is beside the point.

In any event, the district court's denial of intervention was correct. "[A] proper basis for denying leave to intervene may be a finding that the proposed intervention would fail to state a claim." *Saavedra v. Murphy Oil U.S.A., Inc.*, 930 F.2d 1104, 1109 (5th Cir. 1991) (quotation marks omitted); *accord Atkins v. Gen. Motors Corp.*, 701 F.2d 1124, 1130 n.5 (5th Cir. 1983) (district court properly denied certain plaintiffs intervention where their claims were barred by the applicable statute of limitations).

The district court properly denied intervention based on futility here. This is not a case, as Appellants suggest, where their inability to participate in the proceedings somehow prejudiced their ability to prove their assertions. Where, as here, the relevant question is a pure question of law—of the sort that would be properly resolved at the motion-to-dismiss stage—denial of intervention is appropriate if the resolution to that question is clear.

Appellants also contend that the motion to dismiss standard is inapplicable here because "Intervenors sought to intervene to defend the Dream Act, not to state any claim challenging it." Mot. at 13. This is a distinction without a difference. At least where, as here, the underlying suit involves a pure question of law, a proposed intervention can be legally futile for failing to state a legally viable defense to a preempted law, just as it can be legally futile for failing to state a claim. *See, e.g.*, 7C Federal Practice & Procedure, § 1914 (3d ed.) ("The proposed pleading must state a good claim for relief or a good defense." (footnotes omitted)); *Rhode Island Federation of Teachers., AFL-CIO v. Norberg*, 630 F.2d 850, 854-55 (1st Cir. 1980) (parents not entitled

to intervene as of right in a suit for declaratory and injunctive relief against Rhode Island statute where they did not plead a colorable defense to the challenged statute). Appellants do not explain how a contrary rule would make any practical sense: if the intervenor has no viable defense, there is no reason to prolong or complicate proceedings. Here, Appellants have no viable defense of Sections 54.051 and 54.052. The district court appropriately denied intervention on that basis.[3]

## II. The other stay factors strongly favor the government.

Because Appellants have no likelihood of success on the merits, the Court should deny a stay without consideration of the remaining stay factors. In any event, consideration of these factors only underscores that the relief Appellants seek is not warranted.

A stay of the district court's judgment would reinstate implementation of Texas state-law provisions that are plainly preempted by federal law. On the other side of the ledger, Appellants have not established irreparable injury warranting extraordinary relief. Appellants' motion discusses only one individual specifically, Appellant Oscar Silva, and any difficulties Mr. Silva might endure would not warrant an order that would effectively reinstate a clearly preempted law *throughout Texas*. And even Mr. Silva conspicuously does not assert that the judgment in this case applies to him; rather, he

---

[3] Appellants could face additional procedural hurdles to obtaining relief from the judgment, since they would first need to establish party status by succeeding in their motion to intervene and then prevail in an appeal on the merits. But the Court need not address those issues to conclude that a stay is not warranted.

stated "it is my understanding that I still qualify for in-state tuition rates" but that he was "afraid that the consent order in this case will obligate [the University of North Texas] to reassess [his] status." ROA.356. As to Austin Community College, it speculates "that charging out-of-state tuition to former Dream Act beneficiaries would lead hundreds of students to withdraw," and deter other students from enrolling. Mot. at 21. But the school's submissions on these points are utterly speculative, ROA.360-362, and the school cannot litigate on behalf of its students in any event.

Appellants also assert that the school will face "administrative burdens if required to take steps to comply with the consent judgment." Mot. at 21. LUPE similarly alleges that, inter alia, its staff has spent "hours" assisting its members in navigating the injunction, that it conducted a virtual town hall, that it has had to conduct new training for its organizers, and that it "is scrambling to rewrite its flagship Undocumented Student Guide so families have accurate information about college tuition." Mot. at 21. The Supreme Court has recently clarified that this sort of diversion of resources is inadequate even to satisfy Article III standing requirements, *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 395 (2024); at an absolute minimum, it is not nearly enough to warrant a stay pending appeal.

Finally, even assuming that Appellants established irreparable injury, any such injury is outweighed by the public interest in faithful implementation of Congress's judgment that "the availability of public benefits" should "not constitute an incentive for immigration to the United States," 8 U.S.C. § 1601(2)(B), and that aliens who are

not lawfully present in the United States should not have access to reduced tuition at public state colleges, even as U.S. citizens from other states must pay higher tuition rates. A stay pending appeal is unwarranted.

## CONCLUSION

The Court should deny Appellants' motion for a stay pending appeal.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

NANCY E. LARSON
*Acting United States Attorney*

MARK R. FREEMAN
DANIEL TENNY

*/s/ Andrew M. Bernie*
ANDREW M. BERNIE
*Attorneys, Appellate Staff*
*Civil Division, Room 7539*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-3511*

September 2025

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4,857 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

/s/ Andrew M. Bernie
ANDREW M. BERNIE