No. 25-10898

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff - Appellee

v.

STATE OF TEXAS,
Defendant - Appellee

STUDENTS FOR AFFORDABLE TUITION; LA UNION DEL PUEBLO
ENTERO; AUSTIN COMMUNITY COLLEGE; OSCAR SILVA
Movants - Appellants

On Appeal from the United States District Court for the Northern
District of Texas, No. 7:25-cv-00055
The Hon. Reed O'Connor, U.S. District Judge

## MOVANTS-APPELLANTS LA UNIÓN DEL PUEBLO ENTERO, AUSTIN
## COMMUNITY COLLEGE, AND OSCAR SILVA'S REPLY IN SUPPORT
## OF MOTION FOR STAY PENDING APPEAL

Andrés Correa
LYNN PINKER HURST &
SCHWEGMANN, LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Tel.: (214) 981-3800
Fax: (214) 981-3839
acorrea@lynnllp.com

# CERTIFICATE OF INTERESTED PARTIES

## No. 25-10898, *United States v. Students*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

ACLU Foundation of Texas

ACLU of Texas

Austin Community College

Bernie, Andrew

Berroa Rodriguez, Marlene Nathalie

Brewer, Simon Christopher

Broder, Tanya

Corning, Sarah

Correa, Andres

Democracy Forward Foundation

Desai, Yaman

Dolling, Zachary

Donatti, David A.

Ensign, Drew C.

Fascett, Lauren

Fleming, Angel

Gardner, Kyle Aaron

Gonzalez, Kassandra

Hatoum, Daniel

Johnson, Wade Allen

La Unión del Pueblo Entero

Lynn Pinker Hurst & Schwegmann

Kambli, Abhishek

Kercher, Ryan

Molina, Ralph Michael

National Immigration Law Center

Netter, Brian David

Olivares, Efren Carlos

Patton, Christopher W.

Perez, Elianis N.

Perryman, Skye L.

Petchenik, Molly

Pinon, Adriana Cecilia

Saldivar, Edgar

Salzman, Joshua Marc

Silva, Oscar

Skedzielewski, Sean

Students for Affordable Tuition

Tenny, Daniel

Texas Civil Rights Project

Walters, Ryan David

Wolfson, Paul

Woodward, Daniel

Xu, Zhenmain

/s/ Andrés Correa

*Attorney of record for Movant-Appellants LUPE, ACC, and Oscar Silva*

# TABLE OF CONTENTS

INTRODUCTION ................................................................1

ARGUMENT ...................................................................2

    I.     LUPE Intervenors Are Likely To Prevail On Their Challenge To Denial Of Intervention ...................................................2

    II.    Intervenors Are Also Likely To Overturn The Denial Of Their Motion To Vacate..................................................................6

    III.   The Remaining Factors Decisively Favor A Stay................................9

         a.    Intervenors will suffer irreparable harm. ....................................9

         b.    The Parties suffer no injury from a stay of an order barring enforcement of a democratically enacted statute. ........10

CONCLUSION ...................................................................12

# TABLE OF AUTHORITIES

## Cases

*Castillo v. Cameron Cnty., Tex.*, 238 F.3d 339 (5th Cir.2001) ................................5

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579 (5th Cir. 2013) ........................................................9

*Diamond Alternative Energy, LLC v. EPA*, 145 S. Ct. 2121 (2025) ......................10

*Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996) .................................. 4, 11

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ........................................10

*INS v. Chadha*, 462 U.S. 919 (1983) .....................................................................7

*La Unión Del Pueblo Entero v. Abbott*, --F.4th--, 2025 WL 2489464 (5th Cir. Aug. 29, 2025) ........................................................8

*League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831 (5th Cir. 1993) ........................................................1

*Martinez v. Regents of Univ. of California*, 50 Cal. 4th 1277 (2010) ......................8

*McDonald v. E. J. Lavino Co.*, 430 F.2d 1065 (5th Cir. 1970) ..............................11

*Moore v. Tangipahoa Parish Sch. Bd.*, 507 F. App'x 389 (5th Cir. 2013) ..............5

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345 (1977) ........................................................................................11

*NLRB v. Constellium Rolled Prods. Ravenswood, LLC*, 43 F.4th 395 (4th Cir. 2022) ........................................................7

*Pool v. City of Houston*, 87 F.4th 733 (5th Cir. 2023) .............................................6

*Rhode Island Fed'n of Tchrs., AFL-CIO v. Norberg*, 630 F.2d 850 (1st Cir. 1980) ........................................................3

*Rumsfeld v. Padilla*, 542 U.S. 426 (2004) ..............................................................8

*S.E.C. v. Forex Asset Mgmt. LLC*, 242 F.3d 325 (5th Cir. 2001) ..........................5

*Saldano v. Roach*, 363 F.3d 545 (5th Cir. 2004) ......................................6

*United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826 (5th Cir. 1975) ....................................................................................6

*United States v. Texas*, 97 F.4th 268 (5th Cir. 2024) ...............................1

*United States v. Windsor*, 570 U.S. 744 (2013) .......................................7

*Williams & Humbert Ltd. v. W. & H. Trade Marks (Jersey) Ltd.*, 840 F.2d 72 (D.C. Cir. 1988) .................................................................3

*Young Conservatives of Texas Found. v. Smatresk*, 73 F.4th 304 (5th Cir. 2023) ..........................................................................................7

**Other Authorities**

50 Tex. Reg. 5523 (Aug. 29, 2025) .........................................................11

50 Tex. Reg. 5863 (Sept. 5, 2025) ..........................................................11

8 U.S.C § 1623(a) ......................................................................................8

Tex. Educ. Code § 54.052(a)(3) ................................................................8

**Rules**

Federal Rule of Civil Procedure 24(a)(2) ..................................................2

**INTRODUCTION**

Texas and the United States do not meaningfully dispute that they were merely putative adversaries collaborating to strip thousands of Texans of affordable education through a federal court ruling. The Texas Attorney General hailed the invalidation of this democratically enacted statute as a "major victory" (ROA.339), having declined to press any defense, including one he now maintains (Tex. Br. 13) has merit.[1] This faux dispute did not belong in an Article III court and defies this Court's admonition against the Texas Attorney General pursuing "his own policy preferences" by enlisting "the injunctive power of the federal court to achieve a result that the Attorney General and plaintiff[] were not able to achieve through the political process." *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831, 840, 845 (5th Cir. 1993). Given the Attorney General's abdication, those adversely affected by his capitulation were entitled to intervene.

The parties insist that the Court can overlook the district court's disregard for LUPE Intervenors' right to be heard because, in their view, the United States' ultimate success was assured. But the district court assumed that result without

---

[1] Texas claims it did not press the argument because it was foreclosed by the divided, stay-stage opinion in *United States v. Texas*, 97 F.4th 268 (5th Cir. 2024). But Texas was concurrently arguing the stay decision should be reconsidered or vacated. Tex. Ltr. Br. 10-11, No. 24-50149 (5th Cir. Mar. 21, 2025).

adversarial briefing and without even addressing all of LUPE Intervenors' arguments. While those defects in process alone warrant reversal, the district court also reached the wrong result: the consent judgment was issued without jurisdiction and was wrong on the merits because the Dream Act is not preempted.

This Court has appellate jurisdiction to stay the district court's invalid consent judgment and, given the harm the judgment is inflicting on LUPE Intervenors and thousands of other Texans, the Court should do so.

## ARGUMENT

### I. LUPE Intervenors Are Likely To Prevail On Their Challenge To Denial Of Intervention

This Court is likely to conclude that LUPE Intervenors were entitled to intervene. Like the district court, the parties ignore the four-part test for intervention as of right under Federal Rule of Civil Procedure 24(a)(2). Mot. 8-14. Presumably, that is because LUPE Intervenors promptly acted upon learning of the consent judgment (issued six hours after litigation was filed), have an interest in the Dream Act, are adversely affected by the injunction, and were abandoned by the Texas Attorney General. They were entitled to an opportunity to protect their interests.

1. Instead, the parties insist intervention was properly denied as futile because the Dream Act is preempted. That assertion is incorrect. But the Court need not reach the question because, as the parties' own cases show, LUPE

Intervenors were not required to demonstrate that they will ultimately prevail before even being afforded an opportunity to be heard. *See Williams & Humbert Ltd. v. W. & H. Trade Marks (Jersey) Ltd.*, 840 F.2d 72, 75 (D.C. Cir. 1988) (explaining the test is "not whether the applicant is likely to prevail on the merits"); *Rhode Island Fed'n of Tchrs., AFL-CIO v. Norberg*, 630 F.2d 850, 855 (1st Cir. 1980) (applying "colorable defense" standard). The parties fail to identify any authority endorsing the counterintuitive proposition that a district court should decide the merits without the benefit of adversarial briefing to determine whether such adversarial briefing would be worthwhile.

The asserted defenses here deserve full-throated briefing and consideration. LUPE Intervenors at least colorably alleged that the consent judgment was issued without jurisdiction and that it violates the Tenth Amendment. Likewise, the preemption question is, at minimum, not clear cut, as then-Attorney General Greg Abbott previously agreed. *See* Mot. 14.

The United States incorrectly insists (at 15) the district court "ultimately received adversarial briefing." The district court expressly refused to entertain full merits briefing. ROA.486 (staying briefing on concurrently filed Motion for Relief from Judgment). The only merits briefing the district court considered was in LUPE Intervenors' reply in support of intervention, which contained a necessarily compressed overview of some of the arguments they would make if permitted to

intervene. There was no resemblance to motion-to-dismiss proceedings. *Contra* U.S. Br. 16.

More egregiously still, the district court's futility analysis did not even consider LUPE Intervenors' jurisdictional and Tenth Amendment arguments. Mot. 13-14. The district court cannot have properly concluded any challenge to the consent judgment would be futile when it failed to confirm its own jurisdiction or consider constitutional implications. The parties offer no defense of this omission.

2. Texas seeks to sidestep the intervention inquiry, asserting that this Court lacks jurisdiction to stay the consent judgment. Yet in *Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996) (en banc), the Court dismissed putative intervenors' appeal from an order approving a consent decree but still vacated that same consent decree because intervention should have been authorized. *Id.* at 993, 1006. Thus, an appeal from a denial of intervention placed the validity of a consent decree before this Court. Texas argues (at 7) that this Court's appellate jurisdiction expanded after the Court reversed the denial of intervention on the merits but offers no coherent account of why that would be so.

Texas instead relies on cases in which putative intervenors appealed merits rulings while their intervention motions in district court remained unresolved. Tex. Br. 5-6. Because those movant-appellants could not properly invoke this Court's jurisdiction to seek review of an intervention denial, the Court could not hear their

appeals. Here, by contrast, there is no dispute that this Court has appellate jurisdiction over the denial of intervention.

Texas separately overlooks that LUPE Intervenors filed not only a protective notice of appeal from the consent judgment itself (ROA.708), but also an appeal (Dkt. 92) from the denial of their motion for relief from the consent judgment (ROA.150–180), which the district court denied as moot (ROA.753). LUPE Intervenors can surely appeal the denial of their own motion, thereby placing a challenge to the consent judgment directly before the Court.

Regardless, LUPE Intervenors are entitled to appeal the consent judgment because it affects their interests. *See S.E.C. v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 329 (5th Cir. 2001) ("[I]f the decree affects a third party's interests, he is often allowed to appeal.") (quoting *Castillo v. Cameron Cnty., Tex.*, 238 F.3d 339, 349 (5th Cir.2001)). Here, LUPE Intervenors participated in the litigation to the fullest extent permitted. The equities weigh in their favor, as they stand to suffer financial and educational loss. And each unmistakably has a personal stake in the outcome. *See Castillo*, 238 F.3d at 350 (State, though a non-party, had interests conferring standing to appeal); *see also Moore v. Tangipahoa Parish Sch. Bd.*, 507 F. App'x 389 (5th Cir. 2013) (granting non-parties a stay pending appeal).

## II. Intervenors Are Also Likely To Overturn The Denial Of Their Motion To Vacate

While the incorrect denial of intervention alone warrants a stay, LUPE Intervenors are also likely to prevail on the merits of their challenge to the consent judgment.

1. Neither party meaningfully disputes the glaring lack of adversity between them. They instead attack strawmen, making the uncontroversial point that courts do not lose jurisdiction merely because the parties agree to a settlement. However, most such cases do not involve a State Attorney General "working with" the U.S. Department of Justice in a joint effort to "stop[]" a democratically enacted State statute. ROA.339, ROA.350. This is a paradigmatic "faux" dispute that cannot be heard in an Article III court. *See Pool v. City of Houston*, 87 F.4th 733, 734 (5th Cir. 2023).

The parties' citations only underscore the artificiality of this suit. This case resulted from coordination between the United States and an Attorney General "proud to stand with" a politically aligned administration (ROA.350), not "six months of intensive, hard-fought negotiations" preceding proper entry of a consent decree, as in *United States v. Allegheny-Ludlum Indus., Inc.*, 517 F.2d 826, 834 (5th Cir. 1975). Likewise, in *Saldano v. Roach*, 363 F.3d 545, 554 (5th Cir. 2004), there was "no indication" the "Attorney General [was] acting contrary to the will of the State." Here, the Attorney General hailed the invalidation of a Texas law—

one the Texas legislature repeatedly declined to repeal—as a "major victory." ROA.339.

The United States cites "Texas's continued enforcement of the Dream Act prior to the judgment" as a basis for Article III jurisdiction. U.S. Br. 14; *see also United States v. Windsor*, 570 U.S. 744, 754 (2013) (noting the President had declared that the challenged statute "will continue to be enforced by the Executive Branch"); *INS v. Chadha*, 462 U.S. 919, 939 (1983) (similar). But Texas distances itself from enforcement of the Dream Act, emphasizing "the tuition rules are not enforced by the Attorney General, but the public universities who charge and collect those funds." Tex. Br. 12. *Windsor* is thus inapplicable. *See NLRB v. Constellium Rolled Prods. Ravenswood, LLC*, 43 F.4th 395, 402 (4th Cir. 2022) (noting *Windsor* applies only when the defendant is withholding a remedy sought by the plaintiff). On Texas's own telling, the United States appears to be adverse to non-party public universities, not the State itself.[2]

2. The parties are also wrong in arguing that the Dream Act is preempted. They emphasize passing *dicta* from *Young Conservatives of Texas Found. v. Smatresk*, 73 F.4th 304 (5th Cir. 2023), that the provisions challenged here

---

[2] *Chadha* also recognized "prudential . . . concerns about sanctioning the adjudication" of a constitutional challenge in the "absence of any participant supporting the validity of" the statute. 462 U.S. at 940. Those concerns are exemplified here.

"seem[]" preempted. *Id.* at 314. That comment—made without the benefit of full or adversarial briefing—is inconsistent with preemption principles and the plain text of both laws.

Section 1623(a) pertains to education, a traditional province of the state, requiring a "clear and manifest purpose" of Congress to find preemption. *See La Unión Del Pueblo Entero v. Abbott*, -- F.4th --, 2025 WL 2489464, at *9 (5th Cir. Aug. 29, 2025). The section's plain language prohibits educational benefits granted strictly "on the basis of residence." 8 U.S.C § 1623(a). The parties acknowledge, however, that Dream Act eligibility turns not only on maintenance of a residence, but also on other factors, such as high school attendance. Tex. Br. 10; Tex. Educ. Code § 54.052(a)(3). They insist this is irrelevant, because other criteria are "residence-adjacent." Tex. Br. 10. But Section 1623(a)'s prohibition applies only when residence is "the basis"—not one of several criteria—for education benefits. *See Martinez v. Regents of Univ. of California*, 50 Cal. 4th 1277, 1292 (2010) (interpreting Section 1623(a) consistent with its plain language); *see also Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (holding that the "use of the definite article" indicates a single referent).

Section 1623(a) also invades a traditional area of State authority, triggering Tenth Amendment considerations. Texas insists (at 11) the provision does not regulate the States, but if that were true, it is difficult to fathom why it would be

proper to enjoin the State and its officials based on a purported conflict with a statute that does not regulate them.

## III. The Remaining Factors Decisively Favor A Stay

### a. Intervenors will suffer irreparable harm.

The consent judgment wiped away a decades-old law, leaving students with increased costs and schools with diminished revenues and student bodies. The parties depict LUPE Intervenors' significant and irreparable injuries as merely speculative, but Texas's own case confirms that foreseeable harms, even if not yet fully realized, can constitute irreparable injuries. *See Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013). The injuries here readily clear that bar.

Oscar Silva cannot provide his school with documentation showing his lawful presence in the United States, and if required to pay out-of-state tuition, he would likely be forced to withdraw from school before completing his degree. ROA.653. Even a temporary interruption in his education would constitute obvious irreparable harm, with implications for future employment, earnings, and well-being.

ACC likewise faces significant disruptions to its operations, reputation, and mission. *See* ROA.360–62. ACC relies on tuition to fund its programs, *see* ROA.359, and expects hundreds of students to withdraw should permanent tuition

increases go into effect—along with innumerable students who will be unable to enroll in the first place, *see* ROA.360. The loss of these students will affect campus life beyond financial consequences. ROA.361–62. The parties attempt to minimize ACC's harm as dependent on third parties' actions. But "[w]hen third party behavior is predictable, commonsense inferences may be drawn" in line with "economic realities." *Diamond Alternative Energy, LLC v. EPA*, 145 S. Ct. 2121, 2136 (2025). Here, a massive tuition hike would predictably force some students to withdraw from school, harming ACC's finances and student body.

Finally, education access is core to LUPE's mission, and LUPE has invested significantly in resources for members in the wake of the consent judgment, at the expense of its other programming. ROA.333–35. Its injuries go beyond advocacy against a disfavored policy. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (finding cognizable injury to organization engaged in both issue advocacy and direct counseling). LUPE's injuries resemble those recognized by this Court and the Supreme Court.

> b. *The Parties suffer no injury from a stay of an order barring enforcement of a democratically enacted statute.*

The Parties have no comparable injuries. The United States gestures at a desire to avoid incentivizing illegal immigration but offers no evidence that the Dream Act affects immigration to any meaningful degree.

For its part, Texas argues broadly against the propriety of intervention post-judgment, claiming prejudice from a disruption of the judicial process and an interest in encouraging settlements. Tex. Br. 16-17. But this Court has repeatedly exercised its authority, within the "orderly judicial process," Tex. Br. 16, to review denial of post-judgment intervention, including after settlement. *See*, *e.g.*, *Edwards*, 78 F.3d at 1006. Indeed, Texas cites *McDonald v. E. J. Lavino Co.*, which called post-judgment intervention "[a]t the most" a "minor inconvenience." 430 F.2d 1065, 1072–73 (5th Cir. 1970).

Moreover, Texas's purported concern for the integrity of court proceedings is suspect when the entire litigation was designed to flout meaningful court review of the parties' agreement. Any concern for promoting negotiated agreements pales in comparison to the public's interest in the operation of its democratically enacted laws. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers).

Relief is needed now. The consent judgment has unleashed disruption and uncertainty, underscored by the Texas Higher Education Coordinating Board's issuance of two separate proposed rules purporting to comply with the consent judgment. 50 Tex. Reg. 5523 (Aug. 29, 2025); 50 Tex. Reg. 5863 (Sept. 5, 2025). If adopted, the rules will likely go into effect on September 28, 2025 and October

5, 2025. This Court should act now to prevent further disruptions that will need to be unwound when the consent judgment is vacated.

**CONCLUSION**

This Court should grant a stay pending appeal of the district court's Order and Final Judgment.

Dated: September 15, 2025

Respectfully submitted,

*/s/ Andrés Correa*

David Donatti
Adriana Pinon
Edgar Saldivar
**ACLU FOUNDATION OF TEXAS**
P.O. Box 8306
Houston, TX 77288
(713) 942-8146
ddonatti@aclutx.org

Kassandra Gonzalez
Zachary Dolling
Molly Petchenik
**TEXAS CIVIL RIGHTS PROJECT**
P.O. Box 17757
Austin, TX 78760
(512) 474-5073 ext. 182 Telephone
(512) 474-0726 Facsimile
kassandra@texascivilrightsproject.org

Daniel Hatoum
**TEXAS CIVIL RIGHTS PROJECT**
1017 W. Hackberry Ave.
Alamo, TX 78516
(512) 474-5073 ext. 182 Telephone
(512) 474-0726 Facsimile
daniel@texascivilrightsproject.org

Efrén C. Olivares
Marlene Berroa Rodriguez
**NATIONAL IMMIGRATION LAW CENTER**
P.O. Box 34573
Washington, DC 20005-9997
(213) 674-2817 Telephone
olivares@nilc.org

Andrés Correa
Christopher Patton
Yaman Desai
Kyle A. Gardner
Zhenmian Xu
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 981-3800 Telephone
(214) 981-3839 Facsimile
acorrea@lynnllp.com

Joshua M. Salzman
Brian D. Netter
Paul R.Q. Wolfson
Skye L. Perryman
Simon C. Brewer*
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, D.C. 20043
Tel: (202) 448-9090
jsalzman@democracyforward.org

*Not admitted to practice law in the District of Columbia; practicing under the supervision of Democracy Forward lawyers who are members of the D.C. Bar.

**ATTORNEYS FOR MOVANT-APPELLANTS LA UNIÓN DEL PUEBLO ENTERO, AUSTIN COMMUNITY COLLEGE, AND OSCAR SILVA**

## CERTIFICATE OF COMPLIANCE

This motion complies with the typeface and type-volume limitations in Federal Rule of Appellate Procedure 27(d)(1)(E) and 27(d)(2)(A) because it contains 2,535 words according to the count generated by Microsoft Word, and has been prepared in a proportionally spaced typeface using 14-point Times New Roman font.

Dated: September 15, 2025                                    */s/ Andres Correa*
                                                                          Andres Correa