Case No.: 25-10898

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff - Appellee*

v.

STATE OF TEXAS,
*Defendant - Appellee*

STUDENTS FOR AFFORDABLE TUITION; LA
UNION DEL PUEBLO ENTERO; AUSTIN
COMMUNITY COLLEGE; OSCAR SILVA,
*Movants – Appellants*

On Appeal from the United States District Court for the Northern District of Texas,
No. 7:25-cv-00055 The Hon. Reed O'Connor, U.S. District Judge

**BRIEF OF *AMICUS CURIAE* LAWYERS DEFENDING
AMERICAN DEMOCRACY IN SUPPORT OF MOVANTS-
APPELLANTS STUDENTS FOR AFFORDABLE TUITION
ET AL.**

BRIAN WOLFMAN
(Counsel of Record)
600 New Jersey Avenue NW
Washington, D.C. 20001
(202) 661-6582
wolfmanb@georgetown.edu

MITT REGAN
600 New Jersey Avenue NW
Washington, D.C. 20001
(202) 662-9414
regan@georgetown.edu

*Attorneys for* amicus curiae *Lawyers Defending American Democracy*

## CERTIFICATE OF INTERESTED PERSONS

*No. 25-10898, United States v. Students*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| | |
|---|---|
| ACLU Foundation of Texas | Lynn Pinker Hurst & Schwegmann |
| ACLU of Texas | Kambli, Abhishek |
| Austin Community College | Kercher, Ryan |
| Bernie, Andrew | Molina, Ralph Michael |
| Berroa Rodriguez, Marlene Nathalie | National Immigration Law Center |
| Brewer, Simon Christopher | Netter, Brian David |
| Broder, Tanya | Olivares, Efren Carlos |
| Corning, Sarah | Patton, Christopher W. |
| Correa, Andres | Perez, Elianis N. |
| Democracy Forward Foundation | Perryman, Skye L. |
| Desai, Yaman | Petchenik, Molly |
| Dolling, Zachary | Pinon, Adriana Cecilia |
| Donatti, David A. | Saldivar, Edgar |
| Ensign, Drew C. | Salzman, Joshua Marc |
| Fascett, Lauren | Silva, Oscar |
| Fleming, Angel | Skedzielewski, Sean |
| Gardner, Kyle Aaron | Students for Affordable Tuition |
| Gonzalez, Kassandra | Tenny, Daniel |
| Hatoum, Daniel | Texas Civil Rights Project |

Johnson, Wade Allen

La Unión del Pueblo Entero

Walters, Ryan David

Wolfson, Paul

Woodward, Daniel

Xu, Zhenmain

Brian Wolfman

s/Brian Wolfman

*Attorney of record for* amicus curiae *Lawyers Defending American Democracy*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS……………………...…………ii-iii

TABLE OF AUTHORITIES……………………………………………....v-vi

I. INTEREST OF AMICI CURIAE.........................................................................1

II. SUMMARY OF ARGUMENT...........................................................................4

III. ARGUMENT ...................................................................................................6

CERTIFICATE OF COMPLIANCE……………………………………...……19

CORPORATE DISCLOSURE STATEMENT…………………………....…19

CERTIFICATE OF SERVICE…………………………………………...….20

# TABLE OF AUTHORITIES

**Cases**

- *Arizona v. United States*, 567 U.S. 387 (2012)................................................7
- *City of Chicago v. Barr*, 961 F.3d 882 (7th Cir. 2020) ..........................16, 17
- *Gregory v. Ashcroft*, 501 U.S. 452 (1991) ................................................6, 14
- *Milliken v. Bradley*, 418 U.S. 717 (1974) ....................................................10
- *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453 (2018) …………………………………………………………………………..6, 7, 8, 9, 10
- *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979)………………15
- *New York v. United States*, 505 U.S. 144 (1992) ......................7, 8, 9, 10, 11
- *Printz v. United States*, 521 U.S. 898 (1997) ....................................7, 12, 14
- *Texas v. White*, 74 U.S. (7 Wall.) 700, 19 L. Ed. 227 (1869) .....................12
- *United States v. Texas, et al.,* No. 25-10898 (5th Cir. Sept. 29, 2025)………9
- *Zadvydas v. Davis*, 533 U.S. 678 (2001) ....................................................16

**Statutes**

- 8 U.S.C. § 1623(a) (2018) .............................................................................2-15, 17, 18
- 8 U.S.C. § 1621(d) (2018) .............................................................................13
- 34 U.S.C. § 10153 (2018) .............................................................................16
- Tex. Educ. Code Ann. §§ 54.051(m), 54.052(a) (West 2012) ......................2
- Tex. H.B. 232, 89th Leg., R.S. (2025) .........................................................8

**Constitutional Provision**

- U.S. Const. amend. X .............................................................................6

**Secondary Authorities**

- The Federalist No. 15 (Alexander Hamilton) (Clinton Rossiter ed., 1961) ................................................................................................7
- The Federalist No. 39 (James Madison) (Clinton Rossiter ed., 1961) ..........6
- U.S. Dep't of Educ., *The Federal Role in Education*, https://www.ed.gov/about/ed-overview/federal-role-in-education (last visited Sept. 25, 2025) ...........................................................................11

## I.      IDENTITY AND INTEREST OF AMICUS CURIAE[1]

Lawyers Defending American Democracy (LDAD) is a non-profit, non-partisan organization devoted to encouraging the legal profession to enforce and uphold principles of democracy and the rule of law, consistent with our obligations as lawyers; demanding accountability from lawyers and public officials; and identifying attacks on legal norms and prescribing redress for them.

LDAD has a significant interest in this case because the District Court's denial of the Motion to Intervene by Movants-Appellants Students for Affordable Tuition, La Unión Del Pueblo Entero, Austin Community College, and Oscar Silva ("LUPE Intervenors") raises serious concerns about a summary and rushed District Court decision that had significant consequences for (1) parties affected by the Court's order and (2) the balance of power between federal and state government. Granting the LUPE Intervenors' Motion to Intervene would have enabled consideration of these potential impacts to be considered in a full and fair adversarial proceeding.

---

[1] This brief is submitted under Federal Rule of Appellate Procedure 29(a). All parties have consented in writing to its filing. Undersigned counsel for *amici curiae* certifies that this brief was not authored in whole or part by counsel for any of the parties; no party or party's counsel contributed money for the brief; and no one other than *amici* and their counsel have contributed money for this brief.

1

LUPE Intervenors make two requests for relief from this Court. The first is that the consent judgment entered below be vacated because the District Court wrongly denied intervention, the Court lacked jurisdiction under Article III because there was no case or controversy, and the judgment was entered without any notice to or opportunity to participate by affected parties. The second is that if the Court reaches the merits, it should reverse the District Court's decision because the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, div. C, 110 Stat. 3009-546 (1996) ("IIRIRA"), specifically 8 U.S.C § 1623(a), does not preempt Texas Education Code §§ 54.051(m) and 54.052(a) (the "Texas Education Law") or, if interpreted to do so, (2) it violates the Tenth Amendment.

This *amicus* brief details why interpreting § 1623(a) to preempt the Texas Education Law governing eligibility for in-state tuition raises significant federalism concerns under the Tenth Amendment. This brief supports all LUPE Intervenors' requests for relief. With respect to their request to vacate the judgment, this brief underscores that substantial constitutional issues raised by the federal government's lawsuit would have received adequate attention if the Court had granted the LUPE Intervenors' Motion to Intervene. With respect to the request that the Court reverse the District Court decision on the merits if the Court reaches them, it demonstrates that the District Court's conclusion about the

2

preemptive effect of § 1623(a), rendered without the benefit of a full adversarial process, led to an interpretation of § 1623(a) that renders that statute unconstitutional under the Tenth Amendment. This *amicus* brief then explains why the LUPE Intervenors' proposed interpretation of § 1623(a) would avoid the need to consider the constitutionality of that statute.

## II.    SUMMARY OF ARGUMENT

The Tenth Amendment prohibits the federal government from commandeering states in the service of federal policy by either dictating the content of state law, or by conscripting state employees into implementing that policy. The anticommandeering doctrine prevents undue concentration of power in the federal government and buttresses the states' proper role as sovereigns within our federal system. It also preserves political accountability by ensuring that state law reflects the will of the people as expressed in state legislation.

Throughout U.S. history, education has been predominantly the concern of state and local governments. States' decisions about which of its residents are eligible for in-state tuition reflects states' judgments about what best serves the interests of the people for whose benefit they govern. Congress has the authority to use its enumerated immigration power to preempt state law that purports to govern *immigration*. It may not, however, use that power to displace state *education* law to further federal immigration policy.

Interpreting § 1623(a) to preempt Texas Education Law regarding eligibility for in-state tuition at colleges and universities within the state would mean that the federal government would be dictating the content of Texas law by replacing it with a rule that serves federal immigration priorities. It also would make it highly

foreseeable that the federal government would demand that state education employees assume the significant burden of verifying in every billing cycle the immigration status of every person eligible for in-state tuition at every state college and university in Texas. This would conscript state employees into service as federal immigration enforcement agents. For these reasons, interpreting § 1623(a) to preempt the Texas Education Law would run afoul of Tenth Amendment anticommandeering doctrine.

Consistent with the canon of constitutional avoidance, § 1623(a) should be interpreted so that these serious constitutional concerns do not arise. The LUPE Intervenors have offered interpretations that would avoid these constitutional issues. But the District Court's denial of their Motion to Intervene foreclosed this opportunity, and, in turn, consideration of these critical Tenth Amendment issues, in a full and fair adversarial proceeding.

## III.   ARGUMENT

**I.   Interpreting 8 U.S.C. § 1623(a) to preempt Texas law governing eligibility for in-state tuition at state postsecondary educational institutions would mean that the statute likely violates the Tenth Amendment.**

The Tenth Amendment to the Constitution states that "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X.  This reflects the fact that "[t]he Constitution limited but did not abolish the sovereign powers of the States, which retained 'a residuary and inviolable sovereignty.'" *Murphy v. Nat'l Collegiate Athletic Ass'n,* 584 U.S. 453, 470 (2018) (quoting The Federalist No. 39, at 245 (James Madison) (Clinton Rossiter ed., 1961)). As a result, "both the Federal Government and the States wield sovereign powers, and that is why our system of government is said to be one of 'dual sovereignty.'" *Id.* (quoting *Gregory* v. *Ashcroft*, 501 U. S. 452, 457 (1991)).

A basic tenet of our federalist structure is that the federal government may not commandeer states in service of federal laws by dictating the content of state law. "While Congress has substantial powers to govern the Nation directly, including in areas of intimate concern to the States, the Constitution has never been understood to confer upon Congress the ability to require the States to govern according to Congress' instructions. The Court has been explicit about this distinction." *New York v. United States,* 505 U.S. 144, 162 (1992) (citation in

6

original omitted).  The nation's earliest jurisprudence supports this principle, as

Justice Scalia noted in citing Alexander Hamilton in The Federalist No. 15: "The

Framers' experience under the Articles of Confederation had persuaded them that

using the States as the instruments of federal governance was both ineffectual and

provocative of federal-state conflict." *Printz v. United States*, 521 U.S. 898, 919

(1997). This anticommandeering doctrine "is simply the expression of a

fundamental structural decision incorporated into the Constitution, *i.e.*, the decision

to withhold from Congress the power to issue orders directly to the States."

*Murphy,* 584 U.S. at 475.

**A.     Interpreting § 1623(a) to preempt Texas law is unconstitutional commandeering because the federal government would be dictating to Texas the content of its law on eligibility for in-state tuition at postsecondary educational institutions.**

Congress has enumerated authority to regulate immigration and to preempt

states from doing so if it chooses. *See, e.g., Arizona v. United States*, 567 U.S. 387

(2012) (finding that the federal government, not an individual state, has plenary

authority to regulate immigration). Texas could not, for instance, adopt its own

regulations governing the requirements for becoming a United States citizen.

Congress may also determine what *federal* rights and benefits it will provide

individuals with differing immigration statuses. What the federal government may

not do—and what it attempts to do here—is use federal immigration law to further

7

federal immigration policy by dictating to states the content of a state's law regarding its own education system.

As the Court emphasized in *New York*, "[T]he Framers explicitly chose a Constitution that confers upon Congress the power to regulate individuals, not States." 505 U.S. at 166. Consequently, "[t]he anticommandeering doctrine does not apply when Congress evenhandedly regulates an activity in which both States and private actors engage." *Murphy*, 584 U.S. at 476. But if interpreted to preempt the Texas Education Law, 8 U.S.C. § 1623(a) would apply only to *state* postsecondary educational institutions because private institutions do not draw a distinction for tuition purposes between persons who are residents of the state in which those institutions are located and persons who are not.

The Texas Legislature just this year declined to enact legislation that would have made undocumented Texas residents ineligible for in-state tuition. Tex. H.B. 232, 89th Leg., R.S. (2025). Using § 1623(a) to achieve the same result commandeers the State legislative process by preventing the will of the State legislature from having effect and by prohibiting State educational officials from acting in accordance with it: It would require that Texas' education law reflect the federal government's decisions about federal immigration policy, rather than Texas's sovereign judgment about what is in the best interests of the education of its population.

8

The usurpation of Texas sovereignty sought here by the federal government illustrates the point that the Court made in *Murphy*: "the anticommandeering rule promotes political accountability." 584 U.S. at 472.  If § 1623(a) is interpreted to preempt the Texas Education Law, Texas would be denying eligibility for in-state tuition to persons who meet Texas's residency requirement not because the people of Texas desire this, and not because the Texas legislature has required it, but because the federal government has used federal immigration law to force it to do so. This conflicts with the basic principle of federalism that "[t]he Constitution . . . contemplates that a State's government will represent and remain accountable to its own citizens." *New York,* 505 U.S. at 168–69.  This affront to political accountability is underscored by the fact that the federal government filed suit in this case only two days after the end of a legislative session in which the Texas legislature rejected proposals to repeal this very Texas Education Law. *See* Opening Brief of Movants-Appellants La Unión Del Pueblo Entero, Austin Community College, and Oscar Silva at 8, *United States v. Texas, et al.,* No. 25-10898 (5th Cir. Sept. 29, 2025).  Having lost in the legislature, opponents of the Act colluded with the federal government to seek the Act's demise just six hours after the complaint was filed.

Whether federal immigration policy is wise or misguided does not change the character of the Government's interpretation of § 1623(a) as a federal

command to the Texas legislature to make a substantive change to its education law. As the Supreme Court said in *New York*, "no Member of the Court has ever suggested that even 'a particularly strong federal interest' would enable Congress to command a state government to enact state regulation." 505 U.S. at 178. Nor do federal needs, however urgent, enable Congress to prohibit a state government from enacting state regulation. *See generally, Murphy,* 584 U.S. 453. As the Court in *New York* further declared: "The Constitution protects us from our own best intentions: It divides power among sovereigns and among branches of government precisely so that we may resist the temptation to concentrate power in one location as an expedient solution to the crisis of the day." 505 U.S. at 187.

Giving § 1623(a) preemptive effect therefore would commandeer Texas education law in service of federal immigration policy. It would allow federal legislators to dictate to Texas legislators the content of law in an area that is historically a primary concern of state and local government. *Milliken v. Bradley*, 418 U.S. 717, 741-42 (1974) ("No single tradition in public education is more deeply rooted than local control over the operation of schools."). Every state constitution establishes that state's authority over education law and policy.

Indeed, the federal Department of Education today emphasizes that education is fundamentally a state and local concern:

> "Education is primarily a State and local responsibility in the United States. It is States and communities, as well as public and private organizations of all kinds, that establish schools and colleges, develop curricula, and determine requirements for enrollment and graduation. The structure of education finance in America reflects this predominant State and local role."

https://www.ed.gov/about/ed-overview/federal-role-in-education (last visited Sept. 25, 2025). The federal government in this case is, at the very least, contradicting its own position on the importance of state responsibility for education.

Texas has a fundamental sovereign interest in enacting laws regulating and establishing tuition rates for its own population based on its assessment of their needs and interests. Interpreting § 1623(a) to preempt Texas law would annul a section of the Texas education statute dealing with in-state tuition, replace it with a rule based on federal immigration policy, and require that eligibility for in-state tuition comply with this federal rule. That kind of direct federal command regarding the content of Texas law would enable the federal government to do what the Court in *New York* said it cannot do: "While Congress has substantial powers to govern the Nation directly, including in areas of intimate concern to the States, the Constitution has never been understood to confer upon Congress the

ability to require the States to govern according to Congress' instructions." 505

U.S. at 162.

**B.     If § 1623(a) is interpreted to preempt the Texas Education Law, the federal government likely would seek to commandeer Texas employees to assume the onerous burden of determining on an ongoing basis the citizenship status of all persons eligible for in-state tuition.**

Anticommandeering doctrine prohibits the federal government from

conscripting states, acting through state employees, to further federal policy or

programs. *See, e.g., Printz v. United States*, 521 U.S. 898 (1997). In *Printz*, for

instance, the Court reviewed federal legislation that imposed on the chief law

enforcement official of each local jurisdiction "the obligation to 'make a

reasonable effort to ascertain within five business days whether receipt or

possession [of a handgun] would be in violation of the law, including research in

whatever State and local recordkeeping systems are available and in a national

system designated by the Attorney General, 18 U. S. C. §922(s)(2).'" 521 U.S. at

933. The Court found this requirement unconstitutional because it commandeered

local officials to enforce federal law. Writing for the majority, Justice Scalia stated:

> It is an essential attribute of the States' retained sovereignty that they
> remain independent and autonomous within their proper sphere of
> authority. See *Texas v. White*, 7 Wall., at 725. It is no more
> compatible with this independence and autonomy that their officers be
> "dragooned" . . .  into administering federal law, than it would be
> compatible with the independence and autonomy of the United States
> that its officers be impressed into service for the execution of state
> laws. *Id.* at 928.

Here, Texas postsecondary educational institutions and their employees are state actors, just as the law enforcement officials were in *Printz*. *See id.* Just as the law enforcement officials in that case could not be "dragooned" into administering federal law, neither can Texas' postsecondary education employees. *See id.*

Notably, § 1623(a) is written in the passive voice to apply to individuals: "an alien who is not lawfully present in the United States shall not be eligible. . . for any postsecondary education benefit." 8 U.S.C. § 1623(a). The Government's interpretation of that language, however, would apply the statute to states—that they may not allow persons not lawfully present to pay in-state tuition even if those persons would otherwise qualify for it. Congress clearly did not intend for § 1623(a) to be read this way; if it were, it would also nullify 8 U.S.C. § 1621(d), which expressly preserves state authority to offer undocumented immigrants postsecondary education benefits. *See* 8 U.S.C. § 1621(d) ("A State may provide that an alien who is not lawfully present in the United States is eligible for any State or local public benefit for which such alien would otherwise be ineligible under subsection (a) only through the enactment of a State law after August 22, 1996, which affirmatively provides for such eligibility.").

If the Government's interpretation prevails, it is easy to foresee that the federal government would attempt to require that State employees at every Texas

postsecondary education institution during every billing cycle verify the citizenship status of every student asserting eligibility for in-state tuition when registering for any instructional period. These State employees thus would be required to devote considerable time and effort on an ongoing basis—at State expense—to enforce federal immigration policy. This would conscript State employees into service as federal immigration enforcement workers, imposing enormous costs and administrative burdens on the state and its institutions. This type of conscription is precisely what anticommandeering doctrine prohibits.

Commandeering is forbidden under the Constitution not simply because of the costs that it can impose on states, but because "a healthy balance of power between the States and the Federal Government will reduce the risk of tyranny and abuse from either front." *Gregory v. Ashcroft,* 501 U.S. 452, 458 (1991). As the Court observed in *Printz*, "The power of the Federal Government would be augmented immeasurably if it were able to impress into its service—and at no cost to itself—the police officers of the 50 States." 521 U.S. at 922.

LUPE Intervenors note that since passage of the Texas Dream Act (of which the Texas Education Law is part), more than twenty states have passed laws similar to it. Opening Brief of Movants-Appellants at 6.  Construing § 1623(a) to preempt Texas law regarding eligibility for in-state tuition would open the door to significantly concentrating the federal government's power over state education by

enabling it to (1) invalidate state law on in-state tuition in almost half the states in the country so that it conforms to federal immigration law, and (2) demand that state employees ensure that no prospective student covered by this law is able to pay in-state tuition. This accumulation of federal power over state education through use of Congress's authority over immigration policy would seriously disrupt the balance between federal and state sovereignty that federalism is meant to maintain.

## II.    The Court should apply the canon of constitutional avoidance to interpret § 1623(a) as consistent with the Texas Education Law.

The canon of constitutional avoidance weighs in favor of the LUPE Intervenors. Under that canon, when a statute is susceptible to more than one interpretation, courts will construe the statute to avoid an interpretation that might render the statute unconstitutional. *See, e.g., NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979). For the reasons described above, construing § 1623(a) to preempt the Texas Education Law creates serious constitutional questions under the Tenth Amendment. The LUPE Intervenors thus could prevail on the argument that § 1623(a) should be interpreted so as not to preempt the Texas Education Law. At a minimum, such a determination requires a full adversarial proceeding that the denial of the LUPE Intervenors' Motion foreclosed.

The Supreme Court has held that it is a "cardinal principle" of statutory interpretation that when an Act of Congress raises a serious doubt as to that Act's constitutionality, the Court "'will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.'" *Zadvydas v. Davis*, 533 U.S. 678, 689, (2001) (*quoting Crowell v. Benson*, 285 U.S. 22, 62 (1932)). The Court has used the avoidance canon to "read significant limitations into other immigration statutes to avoid their constitutional invalidation." *Id.*

The Seventh Circuit has applied the same principle to a different section of IIRIRA. In *City of Chicago v. Barr.* 961 F.3d at 882 (7th Cir. 2021), Chicago sought injunctive relief against conditions placed on a federal grant requiring it to share information with immigration authorities under IIRIRA, 8 U.S.C. § 1373, which purported to nullify state laws that restrict state and local officials from sharing information with federal immigration authorities. *Barr,* 961 F.3d at 887–90.

The federal government relied on 34 U.S.C. § 10153, regulating federal grants to the city, to impose the challenged conditions. *Barr,* 961 F.3d at 896. Section 10153(5)(D) requires grant recipients to certify that they will comply with "all other applicable Federal laws." This, the federal government asserted, permitted the Government to require grantees to certify compliance with § 1373, because § 1373 constituted "applicable Federal law." *Id.*

16

The District Court in *Barr* found that § 1373 unconstitutionally commandeered state authority. *Id.* at 898. The District Court thus had concluded that the federal government could not require compliance with § 1373. *Id.* at 897. If § 1373 was unconstitutional, it could not be an "applicable Federal law" with which grant recipients had to certify compliance under § 10153(5)(D). *Id.*

The Seventh Circuit declined to follow the District Court's approach, observing that, where possible, federal courts must construe statutes to avoid problems of constitutionality. *Barr,* 961 F.3d at 898. The court therefore interpreted § 10153(5)(D)'s reference to "any applicable Federal law" narrowly and held that § 1373 was not an "applicable Federal law" under § 10153. *Id.* at 909. Thus, the Federal Government could not demand compliance with § 1373 as part of the grant awards to the city. *Id.* The court accordingly did not reach the constitutionality of § 1373 under the doctrine of constitutional avoidance. *Id.*

*Chicago v. Barr* demonstrates that the canon of constitutional avoidance is an issue significant enough to warrant full consideration in an adversary proceeding in this case. Just as § 1373 there commandeered state authority by prohibiting states from restricting cooperation with immigration authorities, a broad reading of § 1623(a) here would commandeer state authority to set tuition rates and admissions procedures at state colleges. As in *Chicago v. Barr*, the appropriate course would be to adopt the LUPE Intervenors' construction of §

17

1623(a), thereby avoiding preemption of the Texas Education Law and the need to consider the constitutionality of the federal statute. Denial of the Motion to Intervene unjustifiably prevented consideration of this issue.

Respectfully submitted,

/s/Brian Wolfman

BRIAN WOLFMAN
(Counsel of Record)
600 New Jersey Avenue NW
Washington, D.C. 20001
(202) 661-6582
wolfmanb@georgetown.edu

MITT REGAN
600 New Jersey Avenue NW
Washington, D.C. 20001
(202) 662-9414
regan@georgetown.edu

Counsel for *amicus curiae* Lawyers Defending American Democracy

October 4, 2025

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, *amicus* Lawyers Defending American Democracy has no parent corporation and no stock.

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 3,718 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman font size 14.

/s/Brian Wolfman

Brian Wolfman
Counsel for *amici curiae* Lawyers Defending American Democracy

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the

United States Court of Appeals for the Fifth Circuit by using the appellate

CM/ECF system. I further certify that all participants in the case are registered

CM/ECF users and that service will be accomplished by the appellate CM/ECF

system.


/s/Brian Wolfman

Brian Wolfman
Counsel for *amici curiae* Lawyers Defending American Democracy