## No. 25-10898

# United States Court of Appeals
# for the Fifth Circuit

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*

– v. –

STATE OF TEXAS,

*Defendant-Appellee*

STUDENTS FOR AFFORDABLE TUITION; LA UNION DEL PUEBLO
ENTERO; AUSTIN COMMUNITY COLLEGE; OSCAR SILVA

*Movants-Appellants*

On Appeal from the United States District Court for the Northern District of Texas
No. 7:25-cv-00055

**BRIEF OF *AMICUS CURIAE* FOR MEXICAN AMERICAN LEGISLATIVE
CAUCUS IN SUPPORT OF MOVANTS-APPELLANTS' MOTION TO
INTERVENE**

Mercedes G. Molina
*Counsel of Record*
**MEXICAN AMERICAN
LEGISLATIVE CAUCUS (MALC)**
Texas Bar No. 24147107
mercedes@malc.org
1108 Lavaca Street, Suite 1108-351
Austin, Texas 78701
Telephone: (817) 692-6141
Counsel for *Amicus Curiae*

# CERTIFICATE OF INTERESTED PARTIES

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

ACLU Foundation of Texas

ACLU of Texas

Austin Community College

Bernie, Andrew Marshall

Berroa Rodriguez, Marlene Nathalie

Brewer, Simon Christopher

Broder, Tanya

Cole, William Francis

Corning, Sarah

Correa, Andres

Democracy Forward Foundation

Desai, Yaman

Dolling, Zachary

Donatti, David A.

Ensign, Drew C.

Fascett, Lauren Elizabeth

Fleming, Angel

Gardner, Kyle Aaron

Gonzalez, Kassandra

Hatoum, Daniel

Johnson, Wade Allen

Kambli, Abhishek

Kercher, Ryan

La Union del Pueblo Entero

Lozada, Luis Leonardo

Lynn Pinker Hurst & Schwegmann

Molina, Ralph Michael

Mexican American Legal Defense and Education Fund

National Immigrant Law Center

Netter, Brian David

Nunez, Fernando

Olivares, Efren Carlos

Patton, Christopher W.

Perales, Nina

Perez, Elianis N.

Perryman, Skye L.

Petchenik, Molly

Pinon, Adriana Cecilia

Plemons, Nathaniel Anson

Saldivar, Edgar

Salzman, Joshua Marc

Silva, Oscar

Skedzielewski, Sean

Students for Affordable Tuition

Tenny, Daniel

Texas Civil Rights Project

Walters, Ryan David

Wolfson, Paul

Woodward, Daniel

Xu, Zhenmain

/s/ Mercedes G. Molina

Mercedes G. Molina
*Counsel of Record for Amicus*
**MEXICAN AMERICAN LEGISLATIVE CAUCUS (MALC)**
Texas Bar. No. 24147107
mercedes@malc.org
1108 Lavaca Street, Suite 110-351

Austin, Texas 78701
Telephone: (817) 692-6141

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................vi

I.     STATEMENT OF INTEREST OF AMICUS CURIAE....................1

II.    INTRODUCTION & SUMMARY OF ARGUMENT......................1

III.   BACKGROUND..................................................................3

    A. The Texas Legislature has a longstanding interest in
       expanding access to higher education for immigrants..................4

    B. How Texas Legislators passed the Texas Dream Act....................6

    C. How Texas Legislators protected the Texas Dream Act................11

IV.    ARGUMENT....................................................................13

    A. The Texas Attorney General has failed to represent the
       will and interests of the Legislature.....................................14

    B. The Legislature does not have concerns of federal
       preemption, as it already addressed the issue in its 2005
       amendments to the Texas Dream Act.....................................17

    C. The Attorney General's actions pose serious risks to
       the role of the Texas Legislature.........................................20

V.     CONCLUSION..................................................................22

CERTIFICATE OF SERVICE..........................................................24

CERTIFICATE OF COMPLIANCE....................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                      **Pages**

*Berger v. N. Carolina State Conf. of the NAACP*, 597 U.S. 179 (2022)………......16

*Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 570 (Tex. 2014)…………......21

*In re Turner*, 627 S.W.3d 654, 660 (Tex. 2021)…………………………….......22

*United States v. Texas*, No. 7:25-CV-00055-O, 2025 LEXIS 164869
    (N.D. Tex. Aug. 15, 2025)……………………………………………….13

*Young Conservatives of Tex. Found v. Smatresk*, 73 F. 4th 304 (2022)………....19

**Statutes**

H.B. 130, 70th Leg., Reg. Sess. (Tex. 1987)……………………………………...6

H.B. 158, 77th Leg., Reg. Sess. (Tex. 2001)……………………………………...8

H.B. 201, 73rd Leg., Reg. Sess. (Tex. 1993)……………………………………..6

H.B. 328, 74th Leg., Reg. Sess. (Tex. 1995)……………………………………..6

H.B. 507, Tex. House Reps., 50th Leg., Reg. Sess. (1947) (enacted)………….......4, 5

H.B. 901, 77th Leg., Reg. Sess. (Tex. 2001)……………………………………...8

H.B. 1355, 72nd Leg., Reg. Sess. (Tex. 1991)…………………………………….6

H.B. 1456, 71st Leg., Reg. Sess. (Tex. 1989)…………………………………......6

H.B. 1403, 77th Leg., Reg. Sess. (Tex. 2001)…………………………………......8

H.B. 1629, 75th Leg., Reg. Sess. (Tex. 1997)………………………………….......6

H.B. 1657, Tex. House Reps., 62d Leg., Reg. Sess. § 54.057 (1971)
    (enrolled)………………………………………………………………….5

H.C.R. 106, The Texas Charter for Public Higher Education, Tex. House Reps., 70th Leg., Reg. Sess. (1987)……………………………………...2

S.B. 360, 64th Leg., Reg. Sess. (Tex. 1975)…………………………………............5

S.B. 1528, 79th Leg., Reg. Sess. (Tex. 2005)………………………………………11

8 U.S.C. § 1623(a)………………………………………………………17, 19, 20

TEX. EDUC. CODE § 54.051(m)……………………………………………...19, 20

TEX. EDUC. CODE § 54.052(a)……………………………………............19, 20

TEX. CONST., art. II, § 1……………………………………………….........20, 21

TEX. CONST., art. III, § 1……………………………………………..………20

TEX. CONST., art. IV, § 22…………………………………………............20

TEX. GOV'T CODE § 402.021……………………………………………............21

**Other Authorities**

ALEJANDRA RINCON, UNDOCUMENTED IMMIGRANTS AND HIGHER EDUCATION: SI SE PUEDE! (Steven J. Gold & Ruben G. Rumbaut eds., LFB Scholarly Publishing 2008)…………………………………6, 7, 8

Andrew Guy, Jr., *Law Professor Fights for Issues Dear to His Heart*, HOUS. CHRON., June 4, 2001……………………………………............10

Audiotape: Texas State Library and Archives, Tex. House Reps. 64th Leg., Reg. Sess., Tape 16 Side 2 (1975), https://tsl.access.preservica.com/uncategorized/IO_d3ba9798-5b8f-47d3-9b1b-016240385985/ …………………………………....6

Clay Robison & R.G. Ratcliffe, *Perry to Stick by Law Giving Tuition Breaks to Illegal Immigrants*, HOUS. CHRON., Jan. 12, 2007………..............13

Crystal Yednak, *Immigrant Education Bill Advances*, FORT WORTH STAR-TELEGRAM, May 25, 2001…………………………………..............7

Eric Berger, *Legislature's Moves Reflect Growing Clout of Immigrants*, HOUS. CHRON., May 29, 2001……………………………………………………11

Fed. R. Civ. P. 24(a)(2)……………………………………………………………..16

H. COMM. HIGHER ED. REP. FOR H.B. 1403, 77th Leg., Reg. Sess. (Tex. 1993)………………………………………………………………10

*Hearing on H.B. 1403 Before H. Comm. on Higher Ed.*, 77th Leg., Reg. Sess. (Tex. 1993)……………………………………………………9

H. Rsch. Org., *Bill Analysis*, H.B. 1403, 77th Leg., Reg. Sess. (Tex. 2005) (introduced)…………………………………………………..9

Juan Castillo, *Immigrant Tuition Law Challenge Fended Off*, AUSTIN AMERICAN-STATESMAN, May 10, 2007……………………………………12

Karen Brooks, *Anchia, Businesses to Fight Migrant Bills*, DALL. MORNING NEWS, Feb. 16, 2007……………………………………………13

Meeting Minutes May 5, 1993 Hearing Before H. Comm. on Higher Ed., Tex. House Reps., 73d Leg., Reg. Sess. (1993)……………………………..6

MEXICAN AM. LEGIS. CAUCUS, TEX. HOUSE REPS., REPORT OF THE TASK FORCE ON PUBLIC SCHOOL FINANCE (April 2004)…………………………...1

Mexican Am. Legis. Caucus, *About: How We Started*, https://malc.org/about/ …………………………………………………………3

Mexican Am. Legis. Caucus, *Policy Priorities: 89th Legislative Session Priorities*, https://malc.org/policy/ ………………………………………..4

Press Release, Texas Attorney General Ken Paxton, Attorney General Ken Paxton Successfully Strikes Down Unconstitutional Law that Gave In-State Tuition to Illegal Aliens, (June 4, 2025) https://www.texasattorneygeneral.gov/news/releases/attorney-general-ken-paxton-successfully-strikes-down-unconstitutional-law-gave-state-tuition …………………………………………………...21

ix

Reply Brief for Respondent, *United States v. Texas*, 2025 U.S.
Dist. LEXIS 164869, No. 7:25-CV-00055-O, (N.D. Tex. 2025)…………...…16, 17

Respondent Texas's Brief in Opposition to Students for Affordable
    Tuition's Motion to Intervene, *United States v. Texas*, 2025
    U.S. Dist. LEXIS 164869, No. 7:25-CV-00055-O, (N.D. Tex.
    2025)……………………………………………………………………..15

Ryan J. Reilly, *DOJ Coordinated With Texas AG to Kill Texas Dream
    Act, Trump Official Says*, NBC NEWS, (June 26, 2025) https://
    www.nbcnews.com/politics/justice-department/doj-coordinated-
    texas-ag-kill-texas-dream-act-trump-official-says-rcna214871 ………17, 21

S.B. 1798 History, Tex. Legis. Online, https://capitol.texas.gov/Bill
    LookupHistory.aspx?LegSess=89R&Bill=SB1798………………………..13

S. Rsch. Org., *Bill Analysis*, S.B. 1528, 79th Leg., Reg. Sess. (Tex.
    2005) (introduced)……………………………………………………………18

Tex. Att'y Gen. Op. No. GA-0732 (July, 23, 2009)………………………………19

TEX. HIGHER ED. COORDINATING BOARD, OVERVIEW: ELIGIBILITY
    FOR IN-STATE TUITION AND STATE FINANCIAL PROGRAMS
    (Dec. 2018)……………………………………………………………...10, 12, 19

TEX. HIGHER ED. COORDINATING BOARD, OVERVIEW: RESIDENCY
    AND IN-STATE TUITION (Sept. 2008)………………………………………18

Tex. H.J., 77th Leg., Reg. Sess. (Tex. 2001)………………………………………10

Tex. House Rules Manual, Rule 1, § 9 (2025)…………………………………...12

Tex. S.J., 77th Leg., Reg. Sess. (Tex. 2001)……………………………………..10

Tex. S.J., 79th Leg., Reg. Sess. (Tex. 2005)……………………………………..12

Videotape: H. Chamber May 24, 2005, Tex. House Reps., 79th Leg.,
    Reg. Sess. (2005), https://house.texas.gov/videos/10468 .........................12

Videotape: S. Subcomm. Higher Ed., S. Comm. Education, April
    18, 2005, 79th Leg., Reg. Sess. (2005), https://senate.texas.gov/
    videoplayer.php?vid=18553&lang=en ....................................11, 18

## I.    INTEREST OF AMICUS CURIAE

As set forth in the accompanying motion for leave, *Amicus*, the Mexican American Legislative Caucus (MALC) is a bipartisan legislative caucus of the Texas House of Representatives comprised of members who are of Latino descent and/or represent Texas House districts with Latino populations of 50% or greater. MALC is considered the oldest Latino state legislative caucus in the country and is among the largest, with a current membership of forty-two (42) members. MALC was founded in 1973 with the primary purpose of increasing the influence of Latino legislators in Texas and to tackle issues that impacted Latinos in Texas the most— including education. MALC submits this brief to provide additional legislative history and context on the issue of resident tuition rates for certain immigrants; describe why it believes the will of the Texas Legislature is not represented by the current parties; and explain why it believes the decision below threatens the power of the legislature.

## II.    INTRODUCTION & SUMMARY OF ARGUMENT

"The future of our state's economy and the promise of prosperity for all Texans rests in our ability to provide not just an adequate, but an excellent, education for *all* children."[1] Chairman Noriega's words in 2004 were not a new proposition, but an

---

[1] MEXICAN AM. LEGIS. CAUCUS, TEX. HOUSE REPS., REPORT OF THE TASK FORCE ON PUBLIC SCHOOL FINANCE, ii (April 2004) (citing Letter to Members of the Mexican American Legislative Caucus from Chairman Rick Noriega dated April 20, 2004).

echo of the Texas Charter for Public Higher Education, passed by the 1987 Legislature.[2] The Texas Legislature has long understood the value of higher education for all in our state. Despite persistent splintering attacks to this concept, the Texas Legislature has remained steadfast in its dedication to enacting legislation that expands access to higher education, the most notable of those measures being the passage of the Texas Dream Act in 2001. The issues before this court today, and the process that led the parties here, challenge not only the endurance of this idea of education for all, but the very legislature that promulgated it.

In just days following the Texas Legislature's refusal to take up legislation that would repeal the Texas Dream Act, the Texas Attorney General took matters into his own hands, agreeing with the United States to effectively repeal the Texas Dream Act. The move came just hours after the United States' challenge to the law. Following the court's entry of the mutual consent judgment, the parties applauded their clear usurpation of the Texas Legislature. The facts of this case make clear that the Attorney General has not and can not adequately represent the interests of movants before the Court, nor of the legislative body whose very laws he is tasked with defending.

---

[2] "Student financial status shall not be a barrier to participation in higher education, because the state can achieve its full economic and social potential only if every individual has the opportunity to contribute to the full extent of his or her capabilities." H.C.R. 106, The Texas Charter for Public Higher Education, Tex. House Reps., 70th Leg., Reg. Sess. (1987).

2

*Amicus* MALC submits this brief to provide the court with additional legislative context for the Texas Dream Act, particularly from the perspective of a group of bipartisan members who have consistently championed the law. With that context in mind, MALC argues that Texas' Attorney General failed to represent the interests of both the Texas Legislature and the constituents it serves in this matter by refusing to defend the law in this action. This brief examines the parties' arguments that the Texas Dream Act is preempted by federal law, arguing any such issues of preemption were in fact addressed by the Texas Legislature in its 2005 amendments to the law. Finally, MALC urges the Court to consider the potential repercussions on legislative power should the District Court's ruling stand.

Presently, all Proposed-Intervenors ask is an opportunity to be heard. MALC members believe such clear impropriety on the part of the Attorney General, at the very least, warrants that request. MALC prays this court reverse the District Court's decision and allow intervention by Proposed Intervenors.

## III.   BACKGROUND

In 1973, Latino legislators formed MALC "for the purpose of strengthening their numbers and better representing a united Latino constituency across the state."[3] Early on, MALC members recognized the impact of Texas' education laws on Latino

---

[3] Mexican Am. Legis. Caucus, *About: How We Started*, https://malc.org/about/ (last visited Sept. 22, 2025).

communities and designated access to education "at every level" as a MALC policy priority—a priority that remains for the Caucus today.[4] MALC members understood the presence of overlapping interests between Latino and immigrant communities, noting the Latino community would benefit as a whole from expansion of access to education for immigrants. While MALC members spurred the ultimate passage of the law, however, the Texas Legislature at large has long understood the value of such laws and historically supported similar legislation.

## A. The Texas Legislature's longstanding interest in expanding access to higher education for immigrants via tuition rates.

The Texas House first addressed the issue of tuition resident status for immigrants in 1947, when the Legislature passed H.B. 507, which allowed for "an alien who has applied for naturalization in the United States and who has received his first citizenship papers" to qualify as a resident for tuition purposes at state institutions. H.B. 507, Tex. House Reps., 50th Leg., Reg. Sess. (1947) (enacted). While the legislation impacted only students who were in the final steps of the immigration process, it recognized the lengthy nature of such proceedings. The Legislature's unanimous passage of H.B. 507 reflected the will of a body that understood the

---

[4] MALC describes its top priority as access to education at all levels, stating that "all Texas students deserve support at every level of their education." Mexican Am. Legis. Caucus, *Policy Priorities: 89th Legislative Session* Priorities, https://malc.org/policy/ (last visited Sept. 22, 2025).

burden of higher tuition rates and acknowledged that certain immigrants should be exempt from that burden.[5]

The Texas Legislature again took up the issue multiple times in the 1970s. In 1971, the Legislature passed H.B. 1657, amending and reenacting Title 3 of the Texas Education Code. This bill included § 54.057 which allowed "an alien who is living in this county under a visa permitting permanent residence or who has filed with the proper federal immigration authorities a declaration of intention to become a citizen" to qualify for resident tuition rates. H.B. 1657, Tex. House Reps., 62d Leg., Reg. Sess. § 54.057 (1971) (enrolled). This bill also included a state reciprocity provision to allow for payment of resident tuition by "[a] resident alien residing in a junior college district located immediately adjacent to the Texas boundary lines." *Id.*

While the reciprocity program was not explicitly extended to non-citizens in areas along the U.S.-Mexico Border, the language paved the way to allow for such use. In fact, that exact issue was raised by Mexican-American legislators in 1975 when the Legislature again adjusted reciprocity provisions. *See* S.B. 360, 64th Leg., Reg. Sess. (Tex. 1975) (amending § 54.060; providing for tuition charges to certain nonresident students).[6] Such inquiries set the stage for MALC advocacy on the issue.

---

[5] H.B. 507 passed on second reading with no record vote recorded. On third reading, it passed unanimously, with 116 "yeas" and the remaining 32 members absent. Tex. House J. 50th Leg., R. Sess., 1388 (April 9, 1947).

[6] During House floor debate on S.B. 360, Rep. Preston described the State's resident reciprocity agreement for certain junior colleges and how the bill would expand the colleges to which this agreement applied. Rep. Matias "Matt" Garcia inquired about the bill's application to college

Beginning in 1987 with H.B. 130, authored by founding MALC member Rep. Paul Moreno, MALC members filed legislation seeking to expand Chapter 54 to include more immigrant groups in every subsequent legislative session. [7]

**B. How Texas Legislators passed the Texas Dream Act.**

In the 1990s, the issue of in-state tuition for immigrant students finally gained traction. In 1993, Representative Flores filed H.B. 2510, which sought to expand eligibility for in-state tuition rates to a student who had "graduated from [a Texas] high school, who is waiting for final approval of a visa permitting residence and whose parents have a visa permitting residence."[8] Representatives Irma Rangel and Paul Moreno, influential members on the House Committee on Higher Education at the time and founding members of MALC, played a pivotal role in the bill's movement to the House floor for approval by the body. Meeting Minutes May 5,

---

districts along the U.S.-Mexico Border. As part of his inquiry, Garcia pointed out that Laredo's junior college borders the Mexican state of Coahuila and that the bill's language could allow Mexican students from Coahuila to obtain resident tuition rates. Audiotape: Texas State Library and Archives, Tex. House Reps. 64th Leg., Reg. Sess., Tape 16 Side 2 at 1:40:00 (1975), https://tsl.access.preservica.com/uncategorized/IO_d3ba9798-5b8f-47d3-9b1b-016240385985/.

[7] *See, e.g.*, H.B. 130, 70th Leg., Reg. Sess. (Tex. 1987) (relating to tuition and fees payments at institutions of higher education); H.B. 1456, 71st Leg., Reg. Sess. (Tex. 1989) (relating to tuition paid by certain foreign students enrolled in a public junior college); H.B. 1355, 72nd Leg., Reg. Sess. (Tex. 1991) (relating to the payment of tuition by foreign students enrolled in certain institutions of higher education); H.B. 201, 73rd Leg., Reg. Sess. (Tex. 1993) (relating to tuition charged to certain students at public institutions of higher education); H.B. 328, 74th Leg., Reg. Sess. (Tex. 1995) (relating to tuition for a resident of Mexico who registers at a component of the Texas State Technical College System); H.B. 1629, 75th Leg., Reg. Sess. (Tex. 1997) (relating to the tuition charged to certain foreign students with financial need at certain public institutions of higher education).

[8] ALEJANDRA RINCON, UNDOCUMENTED IMMIGRANTS AND HIGHER EDUCATION: SI SE PUEDE! 67, note 5 (Steven J. Gold & Ruben G. Rumbaut eds., LFB Scholarly Publishing 2008).

1993 Hearing Before H. Comm. on Higher Ed., Tex. House Reps., 73d Leg., Reg. Sess., 2-3 (1993) (vote on H.B. 2510). The measure ultimately failed in the Texas Senate, but represented the Legislature's increasing will to pass such a law.

The necessary component for success, however, came from advocacy at the local level. In 1997, Dallas County Community College became the first college district to allow undocumented immigrant students to register for classes and pay in-district, or "resident", fees.[9] Tarrant County College followed suit.[10] Representative Rick Noriega sought to replicate the local policy change in the Houston Community College System (HCCS).[11] Noriega partnered with impacted students, teachers, and other community members to form the Coalition of Higher Education for Immigrant Students.[12] Their organization effected policy change at the HCCS level in February 2000.[13]

Seeking to maintain momentum on the issue, Noriega whipped fellow MALC members on the topic and formulated a plan to bring about change statewide.[14] MALC identified the State's special in-state tuition program for Mexican students

---

[9] RINCON, *supra* note 12, at 68.

[10] *See* Crystal Yednak, *Immigrant Education Bill Advances*, FORT WORTH STAR-TELEGRAM, May 25, 2001 (noting how Tarrant County College began allowing undocumented students to pay in-district tuition in the fall 2000 if they could prove they lived in Tarrant County).

[11] RINCON, supra note 12, at 70-74.

[12] *Id.* at 74-75.

[13] *Id.* at 76-77.

[14] "Noriega also approached the Mexican American Legal Caucus [sic], and he urged his fellow legislators to write letters to THECB, pointing out that the board's language excluded immigrants who had formally signaled their intent to become citizens." *Id.* at 81.

in border regions as a potential place for alleviating tuition burdens on immigrant students.[15] MALC members successfully petitioned the Texas Higher Education Coordinating Board (THECB) for expansion of this program to account for many immigrant students who were stuck in immigration process backlogs.[16]

In 2001, at the start of the 77th Legislative Session, MALC members Rick Noriega and Domingo Garcia introduced two bills that would address the tuition issue for many longtime immigrants without status. *See* H.B. 158, 77th Leg., Reg. Sess. (Tex. 2001) (relating to the eligibility of certain persons to qualify as residents of this state for purposes of higher education tuition and to qualify for higher education financial aid); H.B. 901, 77th Leg., Reg. Sess. (Tex. 2001) (relating to the eligibility of certain persons to qualify as residents of this state for purposes of higher education tuition or to pay tuition at the rate provided for residents of this state). Those bills were referred to the House Committee on Higher Education, chaired by Representative Irma Rangel, and consolidated under H.B. 1403.[17] The bill amended

---

[15] At the time, the THECB provided for a special program, approved by the 1987 Legislature, that offered resident tuition to certain Mexican students attending institutions along the U.S.-Mexico Border who exhibited specific financial need. It also allowed for up two Mexican students per 1,000 students enrolled to qualify for resident tuition at non-border institutions. RINCON, supra note 12, at 82-83.

[16] Noriega and MALC members recognized the THECB special program provided for admission of more Mexican students at resident rates than were utilizing the program at the time. While THECB did not increase resident reciprocity allowances under this program, they did agree to partially rollback parts of the rules, allowing for "individuals in the last stages of the permanent residency process" to be eligible for resident rates. RINCON, supra note 12, at 82-83.

[17] RINCON, supra note 12, at 86. *See* H.B. 1403, 77th Leg., Reg. Sess. (Tex. 2001) (relating to the eligibility of certain persons to qualify as residents of this state for purposes of higher education tuition).

three sections of the Texas Education Code, Chapter 54, to expand access to higher education for immigrant students:

1. § 54.057 was amended to allow noncitizens with a pending petition for lawful status to be treated the same as a U.S. citizen for tuition residency purposes;

2. § 54.052 was amended to classify students as residents for tuition purposes if they were living with a parent or guardian while attending high school in Texas and graduated from a Texas high school or equivalent, lived in the state for at least one year prior to graduation, and registered at an institution of higher education from the fall 2001 semester or later; and

3. § 54.060 was amended to exempt students from foreign student tuition rates if they "were citizens of a nation situated adjacent to Texas; registered in any general academic teaching institution or public junior college; and met the qualifications for residency" in Sec. 54.052 of the bill. H. Rsch. Org., *Bill Analysis*, H.B. 1403, 77th Leg., Reg. Sess., at 2–3 (Tex. 2005) (introduced).

MALC members worked together throughout the legislative process to inform fellow House members of the issue present law posed for higher education attainment among minority students and the benefits H.B. 1403 could bring about. During the House Committee on Higher Education, all witnesses present testified in favor of the bill. *Hearing on H.B. 1403 Before H. Comm. on Higher Ed.*, 77th Leg., Reg. Sess., at 16 (Tex. 1993) (witness testimony). It passed unanimously in

committee. H. COMM. HIGHER ED. REP. FOR H.B. 1403, 77th Leg., Reg. Sess., (Tex. 1993). By the time the bill arrived to the floor for a vote, 23 representatives had been designated joint authors or co-authors of the bill. *Id.* at 9. H.B. 1403 was passed almost unanimously in the Texas House, with 142 yeas, 1 nay, and 2 members present but not voting. Tex. H.J., 77th Leg., Reg. Sess., at 1390–91 (Tex. 2001).

In the Senate, two amendments were added to the bill, increasing the time period for which a student had to physically reside in the state from one to three years and requiring noncitizen students to "provide[] to the institution an affidavit stating that the individual will file an application to become a permanent resident at the earliest opportunity the individual is eligible to do so." Tex. S.J., 77th Leg., Reg. Sess., at 2679–80 (Tex. 2001).[18] House bill authors worked with the bill's Senate sponsor, Senator Leticia Van de Putte to negotiate amendments and ultimately pass H.B. 1403. Even after the bill was passed in both chambers, MALC members continued their campaign on the issue to avoid a last-minute veto by the Governor.[19] On June

---

[18] The inclusion of the affidavit provision in the Senate which ultimately became law led to the term "affidavit students" to describe students taking advantage of resident tuition rates under the bill's provisions. *See* TEX. HIGHER ED. COORDINATING BOARD, OVERVIEW: ELIGIBILITY FOR IN-STATE TUITION AND STATE FINANCIAL PROGRAMS (Dec. 2018) (defining "affidavit students" as "persons who are not U.S. Citizens or permanent residents but meet the Texas residency requirements in TEC 54.052(a)(3)").

[19] Despite H.B. 1403 passing with overwhelming bipartisan support in both chambers, Gov. Perry had not provided any signal for his intent to support the legislation during session. Members of the Legislature and the public eagerly awaited the Governor's signature. During this time, MALC members and members of the Coalition of Higher Education for Immigrant Students, including University of Houston Law Center professor Michael Olivas and Rep. Noriega, continued to raise public awareness on the issue, regularly interviewing with statewide media outlets. *See, e.g.*, Andrew Guy, Jr., *Law professor Fights for Issues Dear to His Heart*,

16, 2001, Governor Rick Perry signed H.B. 1403 into law. The legislation came to be known as The Texas Dream Act.

## C. How Texas Legislators protected the Texas Dream Act.

In the over-twenty years since passage of the Texas Dream Act, the Legislature as a whole has continued to support and strengthen the law. In 2005, S.B. 1528 filed by Senator Judith Zaffirini proposed amendments to the law to expand the groups of students who qualified for resident tuition under its provisions. S.B. 1528, 79th Leg., Reg. Sess. (Tex. 2005) (relating to the payment of tuition and fees at public institutions of higher education and the determination of Texas residency for that purpose). The purpose of these amendments was to alleviate any unintended consequences of omitting students who were domiciled outside of Texas.[20] The amendments allowed students to access resident tuition rates from three different avenues:

---

HOUS. CHRON., June 4, 2001 (describing Olivas' and Noriega's work during the 77th Leg., Sess. R. to pass H.B. 1403).

It is worth noting that Gov. Perry did veto a bill passed during this session that would have allowed undocumented Texans to obtain state drivers licenses. The drivers license bill and H.B. 1403 were frequently grouped together in media reporting to show the State's trend towards increased opportunity for immigrants. *See* Eric Berger, *Legislature's Moves Reflect Growing Clout of Immigrants*, HOUS. CHRON., May 29, 2001 (describing how the Legislature's passing of H.B. 1403 and the drivers license bill indicated growing clout for immigrants in Texas).

[20] Videotape: S. Subcomm. Higher Ed., S. Comm. Education, April 18, 2005, 79th Leg., Reg. Sess., at 48:50:00 (2005), https://senate.texas.gov/videoplayer.php?vid=18553&lang=en (C.S.S.B. 1528 bill layout by Sen. Zaffirini, describing her intent in authoring the bill).

1. § 54.052(a)(1) the student could reside in Texas the year preceding enrollment and individually establish domicile;

2. § 54.052(a)(2) the student could reside in Texas the year preceding enrollment and establish their parents' domicile; or

3. § 54.052(a)(3) the student could reside in Texas for the year preceding enrollment and graduate from a Texas high school and have resided in Texas for the three years preceding graduation.[21]

The Legislature's support for S.B. 1528 was overwhelming, with bipartisan sponsorship, unanimous votes in favor of the bill in both chambers, and even audible cheers from members when the bill passed in the House on second reading.[22]

In 2007, the Legislature again signaled its support with a successful procedural challenge in the House on an attempted repeal of the law, supported by Speaker Craddick's ruling and the House's decision to not recall the legislation.[23] Despite

---

[21] TEX. HIGHER ED. COORDINATING BOARD, OVERVIEW: ELIGIBILITY FOR IN-STATE TUITION AND STATE FINANCIAL PROGRAMS (Dec. 2018).

[22] Videotape: H. Chamber May 24, 2005, Tex. House Reps., 79th Leg., Reg. Sess., at 13:56:08 (2005), https://house.texas.gov/videos/10468 (second reading for S.B. 1528); Tex. S.J., 79th Leg., Reg. Sess., at 1510 (Tex. 2005).

[23] "After Speaker Tom Craddick, R-Midland, upheld a challenge to House Bill 159 on a technicality, the legislation's sponsor, Rep. Bill Zedler, R-Arlington, said it was too late to bring the bill back to the floor." Juan Castillo, *Immigrant Tuition Law Challenge Fended Off*, AUSTIN AMERICAN-STATESMAN, May 10, 2007. Under the Texas House Rules of Procedure, the Speaker (or other member acting as Chair) is the ultimate arbiter of decisions on procedural challenges. *See* Tex. House Rules Manual, Rule 1, § 9, at 9 (2025) ("The speaker shall decide on all questions of order.").

subsequent failed challenges, broad support for the Texas Dream Act continued and persists to date.[24]

While MALC has kept a spotlight on the issue over the years, the Texas Legislature has signaled its quiet support of the Texas Dream Act by shutting down legislative attempts at repealing the law. Most recently, during the 89th Session, the Legislature declined to take action on ten different measures that would have either repealed or severely limited the law.[25]

## IV.   ARGUMENT

The question before the Court on appeal is whether the district court erred in denying the Proposed Intervenors' Motions to Intervene. *United States v. Texas*, No. 7:25-CV-00055-O, 2025 LEXIS 164869 (N.D. Tex. Aug. 15, 2025) (denying Proposed Intervenors Students for Affordable Tuition ("SAT"), Austin Community College ("ACC"), Oscar Silva, La Union del Pueblo Entero ("LUPE") Motions to

---

[24] *See* Clay Robison & R.G. Ratcliffe, *Perry to Stick by Law Giving Tuition Breaks to Illegal Immigrants*, HOUS. CHRON., Jan. 12, 2007 (describing then-Governor Perry's support of the Texas Dream Act); Karen Brooks, *Anchia, Businesses to Fight Migrant Bills*, DALL. MORNING NEWS, Feb. 16, 2007 (describing broad support for the Texas Dream Act from the business community, including organizations like Texas Association of Business, Texas Association of Mexican-American Chambers of Commerce, Texas Employers for Immigration Reform, League of United Latin American Citizens, Mexican American Legal Defense Fund, and American Civil Liberties Union).

[25] During the 89th Legislative Session eight House bills and two Senate bills were filed that either directly repealed the Texas Dream Act or severely limited who would qualify for resident tuition rates at Texas colleges and universities. Of those bills, only S.B. 1798 received a public hearing, which was held late in the session. While the bill was voted out of committee, it did not advance from the Senate intent calendar for a floor vote. *See* S.B. 1798 History, Tex. Legis. Online, https://capitol.texas.gov/BillLookup/History.aspx?LegSess=89R&Bill=SB1798 (last visited Sept. 23, 2025).

Intervene). MALC believes the proposed intervenors are best situated to argue the likelihood of success of their claims on the merits. As such, this argument largely focuses on the Attorney General's failure to represent the will of the Texas Legislature. MALC argues legislative history shows clear support for the Texas Dream Act. The history also shows that the Legislature has already addressed concerns of federal preemption raised by the parties, and therefore no longer possesses such concerns as a body. Finally, MALC urges the Court consider the impact of the consent judgment entered in this case on the Legislature's lawmaking power. MALC argues that allowing the Attorney General to be the sole representative of the State's interests in this matter is not only inappropriate, but poses real threats to the doctrine of separation of powers.

## A. The Texas Attorney General has failed to represent the will and interests of the Legislature.

Since 1947, the Texas Legislature has exhibited a desire to expand in-state tuition for Texas' immigrant population.[26] That support culminated with passage of the Texas Dream Act in 2001—a bill that garnered broad bipartisan support at the time of its passing and since. While the movement to repeal the law has been a loud voice in conservative circles, it has still remained a minority view among the body

---

[26] *See* The Texas Legislature's longstanding interest in expanding access to higher education for immigrants via tuition rates, *supra* Sec. III.A. (discussing various proposed and passed legislative measures aimed at allowing immigrants to access resident or in-state tuition rates).

at large. In fact, when presented with the option to repeal the law, the Texas Legislature has consistently declined to do so, instead choosing to strengthen its provisions.[27] Such robust legislative history on the subject shows a clear intent that the Legislature wishes to keep the Texas Dream Act in place. Despite the Legislature's intent to keep the law, the Attorney General's Office took swift action following the conclusion of the regular legislative session to repeal the Texas Dream Act.

The State argues the Court should presume adequate representation of the proposed intervenors—and of the State as a whole—in the present case under the doctrine of *parens patriae*. Respondent Texas's Brief in Opposition to Students for Affordable Tuition's Motion to Intervene at 18, *United States v. Texas*, 2025 U.S. Dist. LEXIS 164869, No. 7:25-CV-00055-O, (N.D. Tex. 2025). The basic premise of the State's argument is that the Attorney General, in his capacity as the State's lawyer, is best suited to represent the interests of all its citizens and to defend the State's laws. However, in failing to actually mount a defense of the Texas Dream Act, the Attorney General failed to represent the interests of its citizens, and surely did not represent the interests of the very legislature that passed the law.

---

[27] *See* How Texas Legislators protected the Dream Act, *supra* Sec. III.C. (discussing various failed attempts at repeal of the Texas Dream Act).

The Federal Rules of Civil Procedure promise intervention to interested parties when those interests may be impaired or impeded "unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). While courts have recognized a presumption that legally authorized government agents can adequately represent the public's interest in its chosen laws, that presumption can be overcome. Reply Brief for Respondent at 14, *United States v. Texas*, 2025 U.S. Dist. LEXIS 164869, No. 7:25-CV-00055-O, (N.D. Tex. 2025). The Supreme Court recognized situations of plaintiffs cherry-picking their preferred defendants as one instance in which that presumption can be overcome in *Berger v. North Carolina State Conference of the NAACP*, 597 U.S. 179, 195 (2022).

In *Berger,* the Court considered a situation where the interests of individual legislators and a state's attorney general diverged, a situation not unlike the one before this Court today. *Id.* The Supreme Court noted that "a plaintiff who chooses to name this or that official defendant does not necessarily and always capture all relevant state interests." *Id.* An instance of plaintiff-picked-defendants, can be sufficient to overcome a presumption of adequate representation as "a full consideration of the State's practical interests may require involvement of different voices with different perspectives." *Id.* at 181.

All evidence of this case points to collusion between the State and the United States. Officials from the U.S. Attorney General's Office even confirmed as such.[28] Surrendering immediately to a challenge cannot rightly be considered an adequate defense, nor can it be considered mere discretion as the State argues. The desire of proposed intervenors to be heard is not a desire to "supersed[e] the State's interest in defending its own statutes", as the State would have the Court believe. Reply Brief for Respondent at 14, *United States v. Texas*, 2025 U.S. Dist. LEXIS 164869, No. 7:25-CV-00055-O, (N.D. Tex. 2025). Rather, it is a blatant refusal to defend a widely popular, duly passed law because of personal disagreement. The presumption of adequate representation, therefore, cannot stand.

## B. The Legislature does not have concerns of federal preemption, as it already addressed the issue in its 2005 amendments.

The parties argue that the law is unconstitutional as it is expressly preempted by federal law, namely 8 U.S.C. § 1623(a). The crux of the parties' argument is that the Texas Dream Act provides preferential treatment to undocumented immigrants over U.S. citizens, which is expressly prohibited by § 1623(a). While the Texas Dream Act as originally drafted in H.B. 1403 may have had the unintended effect of preferring in-state undocumented students over out-of-state U.S. citizens, the Texas

---

[28] Ryan J. Reilly, *DOJ Coordinated With Texas AG to Kill Texas Dream Act, Trump Official Says*, NBC NEWS, (June 26, 2025) https://www.nbcnews.com/politics/justice-department/doj-coordinated-texas-ag-kill-texas-dream-act-trump-official-says-rcna214871.

Legislature's 2005 amendments to the Texas Dream Act resolved any concerns of the Legislature.

As previously noted, S.B. 1528 expanded access to resident tuition rates by "tying [requirements] to the census residency regulations." S. Rsch. Org., *Bill Analysis*, S.B. 1528, 79th Leg., Reg. Sess., at 1 (Tex. 2005) (introduced). The bill's provisions eliminated any affirmative requirement by the State to give resident tuition rates to undocumented students and instead put an obligation on the student themselves to establish their residency under the law. S.B. 1528's provisions amended the Texas Dream Act to apply equally to citizens and noncitizens alike. In fact, in the bill's initial layout in the Senate Committee on Higher Education, Senator Zaffirini explicitly stated that its intent was to "allow[] U.S. citizens and immigrants to have the *same opportunity* to base residency on long term residence and high school graduation" (emphasis added).[29]

Following the passage of S.B. 1528, THECB issued public guidance affirming that the bill allowed for citizens and noncitizens alike to qualify for resident tuition rates.[30] "Citizens, Permanent Residents and certain non-immigrant students could

[29] Videotape: S. Subcomm. Higher Ed., S. Comm. Education, April 18, 2005, 79th Leg., Reg. Sess., at 48:50:00 (2005), https://senate.texas.gov/videoplayer.php?vid=18553&lang=en (bill layout by Senator Judith Zaffirini, describing her intent in authoring the bill).
[30] *See* TEX. HIGHER ED. COORDINATING BOARD, OVERVIEW: RESIDENCY AND IN-STATE TUITION (Sept. 2008) (describing how S.B. 1528 (2005) allowed for citizens, permanent residents, and certain non-immigrant students to qualify for resident tuition rates at Texas institutions of higher education, expanding on provisions from H.B. 1403 (2001)).

establish a claim to residency following [S.B. 1528]'s provision."[31] In 2018, THECB

doubled-down, reaffirming that S.B. 1528 extended residency "to all U.S. citizens"

and even noted that S.B. 1528 was meant to address the inadvertent exclusion of

citizens from attaining residency status.[32] Then-Attorney General Greg Abbot also

addressed the issue in a 2009 opinion. Tex. Att'y Gen. Op. No. GA-0732 (July, 23,

2009). On the issue of federal preemption, Abbott's opinion concluded that "to the

extent of the conflict with the federal law [8 U.S.C. § 1623], given the paucity of

judicial precedent, we cannot predict with certainty that a court would so find

[preemption]." *Id.* at 4.

Finally, in 2022, this very Court addressed some concerns of judicial preemption

in *Young Conservatives of Tex. Found v. Smatresk.* 73 F. 4th 304 (2022). *Young*

*Conservatives* considered the question of whether one portion of the Texas Dream

Act, § 54.051(d), was preempted by 8 U.S.C. § 1623(a), finding neither express nor

implied preemption. The parties in the present case grasp onto one phrase from

*Young Conservatives* as the basis for this lawsuit, where the Court stated that part of

the Texas Dream Act "seems to conflict" with federal law. However, this phrase is

hardly an admission that the sections of the Education Code currently at issue,

54.051(m) and 54.052(a), are actually in conflict as the Court has yet to fully asses

---

[31] *Id.*

[32] TEX. HIGHER ED. COORDINATING BOARD, OVERVIEW: ELIGIBILITY FOR IN-STATE TUITION AND STATE FINANCIAL PROGRAMS (Dec. 2018).

the merits of preemption for these sections. TEX. EDUC. CODE §§ 54.051(m), 54.052(a). A passing glance and a minor comment is far from determinative and it surely was not an issue the Legislature felt prodding further.

Indeed, §§ 54.051(m) and 54.052(a), when read together, are in full compliance with 8 U.S.C. § 1623 as they provide the same opportunity to access resident tuition rates for U.S. citizens and immigrant students. Further analysis of the Texas Dream Act arguably can even be said to impose *more stringent requirements* on immigrant students to achieve resident rates, though *Amicus* will not tease the details of this proposition.

## C. The Attorney General's actions pose serious risks to the role of the Texas Legislature.

While the focus of litigation is rightfully on the students impacted by this decision, the risks the procedural posture of this case poses to legislative power should not be understated.

The Texas Constitution is the guiding document for the roles and responsibilities of each branch of government in the state. It divides the state's government into three distinct branches and describes the roles and responsibilities of each. TEX. CONST., art. II, § 1. The Texas Legislature, as the legislative branch, is charged with creating laws, while the Attorney General, as part of the executive branch, is charged with defending those laws. TEX. CONST., art. III, § 1; TEX. CONST., art. IV, § 22. *See also*

TEX. GOV'T CODE § 402.021. Each branch is subject to the limitations of what is "expressly permitted" by the Constitution, nothing more even when the executive desires such. *See Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 570 (Tex. 2014) ("Exceptions to the constitutionally mandated separation of powers are never to be implied in the least; they must be 'expressly permitted' by the Constitution itself.") (quoting TEX. CONST., art. II, § 1).

The action before the Court today can be described in simplest terms as an overreach by the executive branch. In declining to defend the Legislature's duly sanctioned actions, the executive branch thrusted itself into the lawmaking arena. The Attorney General's intention to do so was made clear by his own office's press statement taking credit for repeal of the law: "Attorney General Ken Paxton Successfully Strikes Down Unconstitutional Law that Gave In-State Tuition to Illegal Aliens."[33] Deputy Associate U.S. Attorney General Abhishek Kambli confirmed the parties' intention to repeal the law through the consent decree shortly after it was entered, saying "a statute that's been a problem for the state for 24 years, we got rid of it in six hours."[34]

---

[33] Press Release, Texas Attorney General Ken Paxton, Attorney General Ken Paxton Successfully Strikes Down Unconstitutional Law that Gave In-State Tuition to Illegal Aliens, (June 4, 2025) https://www.texasattorneygeneral.gov/news/releases/attorney-general-ken-paxton-successfully-strikes-down-unconstitutional-law-gave-state-tuition.

[34] Reilly, *supra* note 46.

But what happens to our democratic systems if the official tasked with upholding a state's laws becomes the very party that challenges them? If the executive can contravene the legislature to invalidate laws it finds distasteful, does this render the legislature's power obsolete? And where, then, is the end to such an encroachment, if at all? The State refuses to consider these questions or to probe the Texas Constitution's careful balance of power among the branches at all.

"Concerns over the separation of powers involve not only disagreements between the executive and legislative branches, when they arise, but also the judiciary's intervention." *In re Turner*, 627 S.W.3d 654, 660 (Tex. 2021). The doctrine of separation of powers demands the Court step in as a safety valve to stop the flow of the Attorney General's persistent and gushing disdain for the Texas Legislature.

## V. CONCLUSION

Neither the interests of the Texas Legislature nor the interests of Texans are adequately represented by the parties in this case. Even more, the parties present in this case and the manner in which the parties were able to enter a consent judgment poses serious risks to the Legislature and the doctrine of separation of powers in Texas and beyond. As such, the MALC urges this Court to reverse the district court's decision denying proposed intervenors' motions to intervene and allow proposed intervenors to proceed with their claims on the merits.

Dated: October 5, 2025

Respectfully submitted,

/s/ Mercedes G. Molina

Mercedes G. Molina
*Counsel of Record*
**MEXICAN AMERICAN
LEGISLATIVE CAUCUS (MALC)**
Texas Bar. No. 24147107
mercedes@malc.org
1108 Lavaca Street, Suite 110-351
Austin, Texas 78701
Telephone: (817) 692-6141

*Counsel for Amicus Curiae*

**CERTIFICATE OF COMPLIANCE**

This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) and 5th Cir. R. 32(b), this document contains 7,458 words according to the word count function of Microsoft Word.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ Mercedes G. Molina

Mercedes G. Molina
Date: October 5, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2025, a true and accurate copy of the foregoing motion was electronically filed with the Court using the MC/ECF system. Service on counsel for all p0arties will be accomplished through the Court's electronic filing system.

/s/ Mercedes G. Molina

Mercedes G. Molina
Date: October 5, 2025
