No. 25-10898

In The

# United States Court of Appeals
## for the Fifth Circuit

———

UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

*v.*

STATE OF TEXAS,

*Defendant – Appellee*

STUDENTS FOR AFFORDABLE TUITION;
LA UNION DEL PUEBLO ENTERO;
AUSTIN COMMUNITY COLLEGE; OSCAR SILVA,

*Movants – Appellants.*

———

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

———

**BRIEF FOR *AMICUS CURIAE* GIVEDUCATION
IN SUPPORT OF MOVANT–APPELLANT
STUDENTS FOR AFFORDABLE TUITION**

———

Joel Reese
Margaret D. Terwey
REESE MARKETOS LLP
750 N. St. Paul Street, Suite 600
Dallas, TX 75201
Tel.: (214) 382-9810
joel.reese@rm-firm.com
margaret.terwey@rm-firm.com

*Counsel for Amicus Curiae*

ii

## SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS
### No. 25-10898, *United States v. Students*

Pursuant to this Court's Rule 29.2 and Federal Rule of Appellate Procedure 26.1, *amicus curiae* Giveducation submits this supplemental certificate of interested persons to fully disclose all those with an interest in this brief and provide the required information as to their corporate status and affiliations.

In addition to the persons and entities listed in the briefs of the parties, the undersigned counsel of record certifies that the following persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal:

A. *Amicus curiae* **Giveducation** is a non-profit, non-stock corporation. It has no parent corporation, and no publicly traded corporation has an ownership interest in it of any kind.

B. The above-listed *amicus curiae* is represented by **Joel Reese** and **Margaret D. Terwey** of **Reese Marketos LLP**.

*/s/ Margaret D. Terwey*
Margaret D. Terwey
Counsel for *Amicus Curiae*
Giveducation

NOVEMBER 5, 2025

iii

# TABLE OF CONTENTS

Page

Supplemental Certificate of Interested Persons........................................ ii

Table of Authorities....................................................................................... iv

Interest of *Amicus Curiae* ............................................................................. 1

Summary of Argument................................................................................... 2

Argument ......................................................................................................... 4

    I. THE TEXAS DREAM ACT IS NOT PREEMPTED BY FEDERAL LAW .......... 4

        A. Of The Three Routes To In-State Tuition, Only One Potentially Conflicts With Federal Law..................................... 5

        B. The Meaning Of "Residence" In § 1623(a) Is Different From Its Meaning In Texas's Dream Act .................................. 8

            1. Congress expressly and intentionally limited "residence" as used in § 1623(a) to a person's principal dwelling. ................................................................. 9

            2. Texas's Dream Act defines "residence" more broadly. ........ 12

        C. Because The Statutes Define "Residence" Differently, There Is No Conflict Between State And Federal Law, And Thus, No Federal Preemption..................................... 15

            1. Section 54.052(a)(3) does not grant undocumented immigrants in-state tuition benefits on the basis of their § 1623(a)-defined residence. ...................................... 15

            2. Even if § 54.052(a)(3) does award eligibility to undocumented immigrants on the basis of their § 1623(a)-defined residence, that benefit is available to all U.S. citizens and nationals without regard to residence................................................................. 19

Conclusion......................................................................................................... 21

Certificate of Compliance............................................................................... 22

Certificate of Service ...................................................................................... 23

iv

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Akridge v. Alfa Ins.*,
  93 F.4th 1181 (11th Cir. 2024) ........................................................ 16

*Alcarez-Garcia v. Ashcroft*,
  293 F.3d 1155 (9th Cir. 2002) ........................................................... 9

*BedRoc Ltd. v. United States*,
  541 U.S. 176 (2004) .......................................................................... 13

*Bostock v. Clayton County*,
  590 U.S. 644 (2020) ..................................................................... 8, 16

*Burgess v. United States*,
  553 U.S. 124 (2008) .................................................................. 10, 11

*Dowelanco v. Benitez*,
  4 S.W.3d 866 (Tex. App.–Corpus Christi 1999) ............................. 12

*Elkins v. Moreno*,
  435 U.S. 647 (1978) ............................................................................ 7

*Helvering v. Morgan's, Inc.*,
  293 U.S. 121 (1934) .......................................................................... 10

*Natofsky v. City of New York*,
  921 F.3d 337 (2d Cir. 2019) ............................................................. 16

*Nyquist v. Mauclet*,
  432 U.S. 1 (1977) ................................................................................ 7

*Rowland v. California Men's Colony,*
  *Unit II Men's Advisory Council*,
  506 U.S. 194 (1993) .......................................................................... 11

*Safeco Ins. Co. of America v. Burr*,
  551 U.S. 47 (2007) ............................................................................ 17

*Savorgnan v. United States*,
  338 U.S. 491 (1950) ............................................................................ 9

v

# TABLE OF AUTHORITIES

(continued)

*Snyder v. Pitts,*
    150 Tex. 407, 241 S.W.2d 136 (1951) ................................. 12

*Tanzin v. Tanvir,*
    592 U.S. 43 (2020) ................................................................ 10

*Wyeth v. Levine,*
    555 U.S. 555 (2009) ................................................................ 5

*Young Conservatives of Tex. Found. v. Smatresk,*
    73 F.4th 304 (5th Cir. 2023) ............................................. 4, 19

## Statutes

8 U. S. C. § 1101(a)(33) ........................................................ 9, 12

8 U. S. C. § 1623(a) ........................................................... passim

8 U. S. C. § 1641 .................................................................... 9

Tex. Educ. Code § 54.0501(3) ............................................. 6, 13

Tex. Educ. Code § 54.0501(6) ................................................ 12

Tex. Educ. Code § 54.052(a)(1) ............................................... 5

Tex. Educ. Code § 54.052(a)(2) ............................................... 6

Tex. Educ. Code § 54.052(a)(3) ....................................... 6, 14, 15

Tex. Educ. Code § 54.241(g)(2)(A) .......................................... 14

## Other Authorities

"Federal Role in Education," U.S. DEP'T OF EDUC.,
    online at https://perma.cc/2JNJ-HUV2
    (last accessed Nov. 4, 2025) ................................................... 5

A. Scalia & B. Garner, Reading Law:
    The Interpretation of Legal Texts 225 (2012) ......................... 8

## INTEREST OF *AMICUS CURIAE*[1]

*Amicus* Giveducation is a Texas-based non-profit organization whose mission is to expand access to educational resources for underprivileged students by removing the financial barrier to such resources. To that end, *amicus* operates a range of programs that provide free tutoring and academic support to students from low-income backgrounds, including a scholarship program that awards free classes at professional learning centers to motivated students. Since our founding in 2020, we have awarded scholarships with a combined value of over $268,000, served over 1,600 students, and received commendation from the United States Congress for our work.

The majority of our students do not have legal status in this country. Thus, the outcome of this case has a direct impact on whether they will have access to affordable tuition at Texas state universities. It also threatens to impede our mission of breaking down the financial barriers to education.

---

[1] This brief was not authored in whole or part by counsel for a party, and no one other than *amicus curiae* or their counsel made a monetary contribution to the preparation or submission of the brief. Counsel for all parties have consented to its filing.

## SUMMARY OF ARGUMENT

Section 1623(a) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 prohibits an "alien who is not lawfully present in the United States" from being "eligible on the basis of residence within a State … for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit … without regard to whether the citizen or national is such a resident." 8 U. S. C. § 1623(a). Appellees argue, and the district court agreed, that Texas's Dream Act grants undocumented immigrants in-state tuition benefits on the basis of their residence and thus is expressly preempted by the federal proscription in § 1623(a). But that's not the case. Texas's Dream Act is not preempted by § 1623(a) because it doesn't provide a postsecondary education benefit to undocumented immigrants on the basis of their residence—as defined by the federal statute—within a State.

How can this be? Simply put, it's because Congress explicitly defined "residence" in § 1623(a) to mean one thing, while Texas defined "residence" to mean another, and Congress's definition is narrower than Texas's. Accordingly, when Texas grants eligibility for in-state tuition to

undocumented immigrants under § 54.052(a)(3) on the basis of *its* definition of "residence," it doesn't do so on the basis of § 1623(a)-defined "residence." And the other two pathways to eligibility for in-state tuition at issue today, §§ 54.052(a)(1)–(2), don't implicate § 1623(a) because § 54.052(a)(1) is inaccessible to undocumented immigrants, and § 54.052(a)(2) is open to all U.S. citizens and nationals without regard to whether the students are residents of Texas.

Thus, Texas's statute doesn't offend the proscription in § 1623(a), and the challenged provisions of the Dream Act are not preempted by federal law. Appellants' intervention is not legally futile, and this Court should reverse the district court's incongruous holding.

# ARGUMENT

## I.  THE TEXAS DREAM ACT IS NOT PREEMPTED BY FEDERAL LAW

The central substantive issue this case raises is whether the Texas Education Code § 54.052(a)(3)—a provision of the Texas Dream Act—conflicts with or is preempted by 8 U. S. C. § 1623(a), which limits postsecondary education benefits for individuals who are not lawfully present in the United States. "Federal law can preempt state law when (1) Congress expressly commands it so; (2) the state law and federal law actually conflict; or (3) Congress 'so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Young Conservatives of Tex. Found. v. Smatresk*, 73 F.4th 304, 312 (5th Cir. 2023) (quoting *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992)).

Although this Court previously observed that § 1623(a) contains an express preemption clause, *id.*, there is nothing in the Texas statute that implicates the prohibition under federal law, and there is no actual conflict between the Texas Dream Act and federal law such that the federal statute preempts Texas's law. The Texas Act does not grant in-state tuition on the basis of "residence within a State" as that phrase is

defined by Congress, and even if overlap exists, the state provision neither conflicts with nor frustrates federal objectives. And education is typically a legislative field occupied by the State, not the federal government. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009); *see also* "Federal Role in Education," U.S. DEP'T OF EDUC., online at https://perma.cc/2JNJ-HUV2 (last accessed Nov. 4, 2025) ("Education is primarily a State and local responsibility in the United States. It is States and communities, as well as public and private organizations of all kinds, that establish schools and colleges, develop curricula, and determine requirements for enrollment and graduation."). A correct application of federal preemption principles confirms that both laws can coexist without interference.

## A. Of The Three Routes To In-State Tuition, Only One Potentially Conflicts With Federal Law

The challenged provisions of Texas's Dream Act offer three ways that a person may qualify for in-state tuition:

**Section 54.052(a)(1):** [A] person who: (A) established a domicile in this state not later than one year before the census date of the academic term in which the person is enrolled in an institution of higher education; and (B) maintained that domicile continuously for the year preceding that census date[.] Tex. Educ. Code § 54.052(a)(1).

**Section 54.052(a)(2):** [A] dependent whose parent: (A) established a domicile in this state not later than one year before the census

date of the academic term in which the dependent is enrolled in an institution of higher education; and (B) maintained that domicile continuously for the year preceding that census date[.] Tex. Educ. Code § 54.052(a)(2).

**Section 54.052(a)(3):** [A] person who (A) graduated from a public or private high school in this state or received the equivalent of a high school diploma in this state; and (B) *maintained a residence* continuously in this state for: (i) the three years preceding the date of graduation or receipt of the diploma equivalent, as applicable; and (ii) the year preceding the census date of the academic term in which the person is enrolled in an institution of higher education. Tex. Educ. Code § 54.052(a)(3) (emphasis added).

The first two subsections do not implicate § 1623(a) and thus do not raise any preemption issues.

*i.* Undocumented immigrants cannot claim Texas resident tuition benefits under § 54.052(a)(1) because their unlawful status precludes them from being considered "domiciled" in Texas. To establish domicile under § 54.052(a)(1), an individual must demonstrate that he maintains a "principal, permanent residence to which [he] intends to return after any temporary absence." Tex. Educ. Code § 54.0501(3). But the permanence and subjective intent to remain elements are out of reach for undocumented immigrants, whose presence in this country is unauthorized—much less demonstrably permanent. In fact, even many lawfully-admitted, non-immigrant aliens cannot establish permanent

7

residency. *See, e.g.*, *Elkins v. Moreno*, 435 U.S. 647, 663 (1978) (noting that in some scenarios "federal law creates a 'legal disability'" preventing certain nonimmigrant aliens from demonstrating sufficient intent to remain for establishing domicile within a State, "which States are bound to recognize under the Supremacy Clause") (internal citations omitted); *Nyquist v. Mauclet*, 432 U.S. 1, 4 (1977) (holding that "many aliens, such as those here on student visas, may be precluded by federal law from establishing a permanent residence in this country"). If even lawfully admitted aliens may not be able to establish domicile in Texas, undocumented immigrants cannot either, so their door to eligibility under § 54.052(a)(1) remains shut.

*ii.* Section 54.052(a)(2) bases eligibility for in-state tuition on the residence status of a person's parents, making it available to all U.S. citizens and nationals without regard to whether the specific citizen or national—the student—is a resident of Texas. As the federal proscription is pacified if citizens and nationals are eligible "without regard to whether *the citizen or national* is such a resident," with no mention of parents, there is no conflict between the federal provision and § 54.052(a)(2). 8 U. S. C. § 1623(a) (emphasis added).

Only the third subsection, which references the student's residence, could possibly implicate the federal statute. But, as this brief demonstrates, no such conflict exists that supports federal preemption of the Texas Dream Act.

## B. The Meaning Of "Residence" In §1623(a) Is Different From Its Meaning In Texas's Dream Act

When legislators define the terms used in statutes, those definitions "are to be carefully followed." A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 225 (2012). As the Supreme Court reminds us, "[w]hen the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law, and all persons are entitled to its benefit." *Bostock v. Clayton County*, 590 U.S. 644, 653 (2020).

Congress provided a definition for "residence" as used in § 1623(a), and the Texas legislature offered its own meaning of the word in the Dream Act. The two definitions are distinct and significantly so. Because of these differences, there is neither an express nor an implied conflict between the federal and state laws, and thus, no preemption.

### 1. Congress expressly and intentionally limited "residence" as used in § 1623(a) to a person's principal dwelling.

Section 1101(a) of the Immigration and Nationality Act governs the definition of "residence" as used in § 1623(a). *See* 8 U. S. C. § 1641 ("Except as otherwise provided in this chapter, the terms used in this chapter have the same meaning given such terms in section 101(a) of the Immigration and Nationality Act [8 U. S. C. 1101(a)]."). It provides, "The term 'residence' means the place of general abode; the place of general abode of a person means his *principal*, actual dwelling place in fact, without regard to intent." 8 U. S. C. § 1101(a)(33) (emphasis added).

One's § 1623(a)-defined residence—one's *principal* dwelling—is determined objectively, as § 1101 forbids analysis of intent. 8 U. S. C. § 1101(a)(33). Under this definition, what makes a dwelling one's *principal* dwelling is simply physical presence. *See Savorgnan v. United States*, 338 U.S. 491, 506 (1950); *see also Alcarez-Garcia v. Ashcroft*, 293 F.3d 1155, 1158 (9th Cir. 2002) (following *Savorgnan* in "[emphasizing] the importance of physical presence in determining 'residence'"); *id.* at 1157–58 (using a physical presence test to determine one's "*principal* place of dwelling" (internal quotation marks omitted)).

As demonstrated by the careful wording of the provision, Congress intended to define "residence" in a specific, narrow way, and its definition controls in any application of § 1623(a). "Congress supplanted the ordinary meaning of [residence] with a different, express definition." *Cf. Tanzin v. Tanvir*, 592 U.S. 43, 52 (2020) (discussing Congress's intent in defining "government"). And as the Supreme Court held there, "When a statute includes an explicit definition, we must follow that definition, even if it varies from a term's ordinary meaning." *Id.* Further, because Congress defined "residence" in § 1101 using the operative word "means," the meaning of "residence" must be limited to the express language used in that statute. This is required for two reasons.

*First*, "As a rule, a definition which declares what a term 'means' … excludes any meaning that is not stated." *Burgess v. United States*, 553 U.S. 124, 130 (2008) (quoting *Colautti v. Franklin*, 439 U.S. 379, 392–93, n. 10 (1979)) (cleaned up). Congress *could* have instead defined "residence" using the operative word "includes," in which case an argument could be made that the definition merely "imports a general class, some of whose particular instances are those specified in the

definition." *Helvering v. Morgan's, Inc.*, 293 U.S. 121, 125, n. 1 (1934). But it did not do so here.

*Second*, as the Supreme Court in *Burgess* noted, when Congress intends to regulate more general cases of a particular term in addition to the specific case, it "often … [repeats] a discretely defined word … to incorporate the definition of a particular word into the definition of a compound expression." *Burgess*, 553 U.S. at 130–31 (cleaned up). For example, Congress could have defined "residence" to mean a person's "actual dwelling place in fact" and "primary residence" to mean a person's "principal residence," in which case § 1623(a) would take on a different meaning. But again, it did not do so.

All told, "If Congress had meant to point further afield … it would have [used] a more spacious phrase." *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 200 (1993). "Residence" as used in § 1623(a) thus refers strictly to a person's *principal*, actual dwelling place in fact, and this Court must reject any effort to expand that definition.

12

## 2. Texas's Dream Act defines "residence" more broadly.

*a.* Like Congress, the Texas legislature explicitly defined "residence" as used in § 54.052(a) of the Dream Act. However, it intentionally defined "residence" to mean something much broader than how the term is used in the federal statute. In the Texas code, "'Residence' means a person's home or other dwelling place." Tex. Educ. Code § 54.0501(6). The state and federal definitions, then, stack up like this:

> **Texas Statute:** "'Residence' means a person's home or other dwelling place." Tex. Educ. Code § 54.0501(6).
>
> **Federal Statute:** "The term 'residence' … of a person means his *principal*, actual dwelling place in fact, without regard to intent." 8 U. S. C. § 1101(a)(33) (emphasis added).

Texas's definition of "residence" differs from Congress's definition in that it does not contain a principality element. This is not a linguistic quirk that can be overlooked—it means Texas's definition describes a broader set of persons than the federal definition does.

Texas's "residence" allows for the possibility of an individual having multiple residences, which the federal provision does not. *See Snyder v. Pitts*, 150 Tex. 407, 413, 241 S.W.2d 136, 139 (1951) (Affirming the possibility of a "second residence away from a domicile," as "…there can

be but one domicile and several residences"); *Dowelanco v. Benitez*, 4 S.W.3d 866, 871 (Tex. App.–Corpus Christi 1999, no pet.) ("An individual may have more than one residence."). Thus, it is enough for an individual to maintain a secondary dwelling within Texas to be considered a resident under § 54.052(a) of the Dream Act, but this same individual would not be considered as having "residence within" Texas under § 1623(a) of the federal statute. Accordingly, the set of people who are § 1623(a)-defined "residents" of Texas is a different, narrower population than the set of people who are Texas-defined "residents" of Texas.

**b.** Crucially, the Texas legislature could have used another word had it wanted to include a principality element: "domicile," a term it employs in multiple other statutes and which it defines as "a person's *principal*, permanent residence to which the person intends to return after any temporary absence." Tex. Educ. Code § 54.0501(3) (emphasis added). If the state legislature intended to base eligibility for in-state tuition on a student's principal residence, it could easily have done so. *See BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires us to presume that

the legislature says in a statute what it means and means in a statute what it says there.") (cleaned up).

In fact, the Texas legislature *did* use "domicile" in another provision of the Texas Education Code granting military spouses access to in-state tuition, which contains language mirroring that of § 54.052(a)(3), with the exception of the word "residence." *Compare* Tex. Educ. Code § 54.241(g)(2)(A) ("…(A) graduated from a public or private high school in this state or received the equivalent of a high school diploma in this state; and (B) maintained a *domicile* in this state continuously…" (emphasis added)) *with* Tex. Educ. Code § 54.052(a)(3) ("…(A) graduated from a public or private high school in this state or received the equivalent of a high school diploma in this state; and (B) maintained a *residence* continuously…" (emphasis added)).

All told, the Texas legislature specifically chose to use "residence," rather than the readily available term "domicile," in the provisions at issue in this case. That choice should not be discounted by this Court.

### C. Because The Statutes Define "Residence" Differently, There Is No Conflict Between State And Federal Law, And Thus, No Federal Preemption.

Section 54.052(a)(3) of the Texas statute makes a person eligible for in-state tuition if he:

> (A) graduated from a public or private high school in this state or received the equivalent of a high school diploma in this state; and (B) *maintained a residence* continuously in this state for: (i) the three years preceding the date of graduation or receipt of the diploma equivalent, as applicable; and (ii) the year preceding the census date of the academic term in which the person is enrolled in an institution of higher education. Tex. Educ. Code § 54.052(a)(3) (emphasis added).

Relying on dicta from a prior Fifth Circuit opinion and conducting no real textual analysis of its own, the district court found that, because § 54.052(a)(3) makes undocumented immigrants eligible for in-state tuition on the basis of residence, it contradicts 8 U. S. C. § 1623(a). ROA.52. That's wrong.

### 1. Section 54.052(a)(3) does not grant undocumented immigrants in-state tuition benefits on the basis of their § 1623(a)-defined residence.

Section 54.052(a)(3) grants undocumented immigrants eligibility on the basis of *Texas-defined "residence"* (and additional other requirements), not on the basis of *§ 1623(a)-defined "residence."* As

discussed earlier, Texas's definition of "residence" does not contain a principality element.[2] That makes the federal definition of "residence" *narrower* than Texas's. A law that provides benefits on the basis of an individual being a member of a broader group cannot be said to grant those benefits on the basis of their membership in a narrower group, even if there is significant overlap between the groups. Because Texas law does not grant in-state tuition *on the basis of* an individual establishing a principal dwelling in Texas, the federal statute is not implicated by the Texas law.

*a.* Precedent supports this reasoning. Courts have long considered "on the basis of" synonymous with "because of," which promulgates a but-for causation standard. *See*, *e.g.*, *Akridge v. Alfa Ins.*, 93 F.4th 1181, 1192

---

[2] The requirement that a student graduate from a Texas high school or receive a high school diploma in Texas does not *necessarily* mean that the student ever maintained a principal dwelling in Texas. There are several ways an undocumented immigrant can qualify for in-state tuition under § 54.052(a)(3) without ever *principally* residing in Texas. A student with separated parents, one of whom lives in a bordering State, could graduate from a Texas high school living a couple days a week with her Texas-resident parent without that Texas residence ever counting as her principal one. Likewise, a student could have a residence in Texas and receive their diploma through an online, accredited Texas high school program like Texas Connections Academy or iUniversity Prep, while principally living in another state. Upon graduation, both of these students would be eligible for in-state tuition under § 54.052(a)(3) despite having their *principal* residence outside of the state.

(11th Cir. 2024) ("'on the basis of' … invokes but-for causation"); *Natofsky v. City of New York*, 921 F.3d 337, 349 (2d Cir. 2019) ("We find no reason to hold that there is any meaningful difference between 'on the basis of,' 'because of,' or 'based on,' which would require courts to use a causation standard other than 'but-for.'"); *accord Bostock*, 590 U.S. at 656 (2020) ("In the language of law, [the] 'because of' test incorporates the simple and traditional standard of but-for causation." (internal quotation marks omitted)); *see also Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 63 (2007) (holding that "the phrase 'based on' indicates a but-for causal relationship and thus a *necessary logical condition*" (emphasis added)). As the Supreme Court instructs, "[A] but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause." *Bostock*, 590 U.S. at 656.

Undocumented immigrants who qualify for Texas in-state tuition under § 54.052(a)(3) don't need to have maintained their principal dwelling in Texas; principality isn't a "necessary logical condition" to eligibility under § 54.052(a)(3). *See Safeco*, 551 U.S. at 63. Accordingly, they don't receive in-state tuition *on the basis of* having a principal dwelling in Texas. We can confirm this intuition using the factor-

changing test from *Bostock*: For each undocumented immigrant who qualifies for in-state tuition under § 54.052(a)(3), we could change his residence in Texas from principal to secondary without affecting his § 54.052(a)(3) eligibility whatsoever.[3] *See Bostock*, 590 U.S. at 656. Thus, we have not found a but-for cause, and we can be certain that undocumented immigrants *do not* qualify for in-state tuition under § 54.052(a)(3) on the basis of 8 U. S. C. § 1623(a)-defined "residence within a State." The federal statute is not implicated.

**b.** To read the issue any other way would defy logic. Consider a café that offers a discount to teachers. Assume Jesse, a full-time teacher, visits the shop and receives the discount. It would be inaccurate to say he received the discount "on the basis of" his being a *full-time teacher* (narrower group)—his full-time status wasn't a but-for cause of his eligibility, so it wasn't a "basis of" his qualification, *even if* most teachers are, in fact, full-time. Jesse received the benefit on the basis of his membership in the broader group, teachers. Likewise, a student who

---

[3] Unless, of course, he qualified without maintaining a principal residence in Texas to begin with, in which case there's no question that he did not qualify on the basis of his § 1623-defined "residence within a State."

qualifies for in-state tuition in Texas under § 54.052(a)(3) does so on the basis of having *a* residence in Texas, not on the basis of having a *principal* residence in Texas.

*    *    *

Properly read, § 1623(a) only prohibits States from granting tuition benefits to undocumented immigrants on the basis of their satisfying *at least all* conditions required by the term "residence within a State." No canon of interpretation supports reading § 1623(a) to preclude States from granting those benefits to undocumented immigrants on the basis of their satisfying merely *some* of those conditions.[4]

**2. Even if § 54.052(a)(3) does award eligibility to undocumented immigrants on the basis of their § 1623(a)-defined residence, that benefit is available to all U.S. citizens and nationals without regard to residence.**

As discussed, § 54.052(a)(3) doesn't grant undocumented immigrants eligibility for in-state tuition "on the basis of" their 8 U. S. C.

---

[4] In fact, reading § 1623(a) as governing *subsets* of the conditions necessary for having "residence within a State" would invite absurd outcomes. Consider that (1) being a live human being and (2) having a dwelling are two conditions necessary for "residence within a State." Does § 1623(a) suddenly prohibit Texas from granting a tuition benefit to all living human beings who have a dwelling? The onus is on appellees to explain why this Court should bless interpreting § 1623(a) to govern *one* subset of the conditions necessary for "residence within a State" (Texas-defined residence, *i.e.*, maintaining a dwelling in Texas), but not others.

§ 1623(a)-defined "residence within a State." Even if it did, however, § 54.052(a)(3) still doesn't offend the federal proscription because eligibility under this provision is available to all U.S. citizens and nationals "without regard to whether the citizen or national is such a resident."

Section 1623(a) "simply requires that all U.S. citizens be eligible for a benefit, without regard to residency, before any alien be able to receive the same benefit (based on residency)." *Young Conservatives*, 73 F.4th at 312. Texas's Dream Act does just that. Those who are non-residents of Texas (as "residence" is defined under the federal statute, *i.e.*, those whose *principal* residence is not in Texas) can qualify for the same benefit under § 54.052(a)(3). If a U.S. citizen or national "graduated from a [Texas] public or private high school … or received the equivalent of a high school diploma in [Texas]" and maintained a sufficient period of § 54.0501(6)-defined residency, but never *principally* resided in Texas during that period, that citizen or national would qualify for Texas in-state tuition under § 54.052(a)(3).[5] But he was never a § 1623(a)-defined resident of Texas, so this citizen or national qualified for the same benefit

---

[5] For examples of how this can be the case, see *supra* n.2.

available to undocumented immigrants "without regard to whether the citizen or national [was] such a resident," thus satisfying the federal statute.

## CONCLUSION

For the foregoing reasons, Texas's Dream Act is not preempted by 8 U. S. C. § 1623(a), and the judgment of the district court should be reversed.

Respectfully submitted,
*/s/ Margaret D. Terwey*

Joel Reese
Margaret D. Terwey
REESE MARKETOS LLP
750 N. St. Paul Street, Suite 600
Dallas, TX 75201
Tel.: (214) 382-9810
joel.reese@rm-firm.com
margaret.terwey@rm-firm.com

*Counsel for Amicus Curiae Giveducation*[6]

NOVEMBER 5, 2025

---

[6] *Amicus* thanks Benjamin Who of Giveducation for his role in drafting this brief.

# CERTIFICATE OF COMPLIANCE

1. This document complies with Federal Rule of Appellate Procedure 32(a)(7)(B), because, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f), it contains 4,156 words.

2. This document complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and Federal Rule of Appellate Procedure 32(a)(6), because this document has been prepared in a proportionally spaced typeface in 14-point Century Schoolbook font using Microsoft Word.

/s/ *Margaret D. Terwey*
MARGARET D. TERWEY

*Counsel for Amicus Curiae Giveducation*

NOVEMBER 5, 2025

23

# CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2025, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Margaret D. Terwey*
MARGARET D. TERWEY

*Counsel for Amicus Curiae Giveducation*

NOVEMBER 5, 2025