No. 25-10898

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*

v.

STATE OF TEXAS
*Defendant-Appellee*

STUDENTS FOR AFFORDABLE
TUITION, LA UNIÓN DEL PUEBLO ENTERO,
AUSTIN COMMUNITY COLLEGE,
AND OSCAR SILVA,
*Movants-Appellants*,

———————————

On Appeal from the United States District Court
for the Northern District of Texas

———————————

## UNITED STATES' ANSWERING BRIEF
———————————

BRETT A. SHUMATE
   *Assistant Attorney General*

ERIC D. McARTHUR
   *Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL TENNY
ANDREW M. BERNIE
   *Attorneys, Appellate Staff*
   *Civil Division*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 514-3511*

## CERTIFICATE OF INTERESTED PARTIES

The undersigned certifies that the following listed persons and entities as described in Rule 28.2.1 have an interest in the outcome of this case.

ACLU Foundation of Texas

ACLU of Texas

Austin Community College

Bernie, Andrew

Berroa Rodriguez, Marlene Nathalie

Brewer, Simon Christopher

Broder, Tanya

Cole, William Francis

Corning, Sarah

Correa, Andres

Democracy Forward Foundation

Desai, Yaman

Dolling, Zachary

Donatti, David A.

Ensign, Drew C.

Fascett, Lauren

Fleming, Angel

Gardner, Kyle Aaron

Gonzalez, Kassandra

Hatoum, Daniel

Johnson, Wade Allen

La Unión del Pueblo Entero

Lynn Pinker Hurst & Schwegmann

Kambli, Abhishek

Kercher, Ryan

La Union del Pueblo Entero

Lozada, Luis L.

Molina, Ralph Michael

National Immigration Law Center

Netter, Brian David

Nunez, Fernando

Olivares, Efren Carlos

Patton, Christopher W.

Perales, Nina

Perez, Elianis N.

Perryman, Skye L.

Petchenik, Molly

Pinon, Adriana Cecilia

Plemons, Nathaniel

Rhines, Zachary

Rodriguez, Marlene

Saldivar, Edgar

Salzman, Joshua Marc

Saen, Thomas

Silva, Oscar

Skedzielewski, Sean

State of Texas

Students for Affordable Tuition

Tenny, Daniel

Texas Civil Rights Project

United States of America

Walters, Ryan David

Wolfson, Paul

Woodward, Daniel

Xu, Zhenmain

/s/ Andrew M. Bernie
*Andrew M. Bernie*
*Counsel for the United States*

## STATEMENT REGARDING ORAL ARGUMENT

The United States takes no position on oral argument and defers to the Court on that question, but intends to participate if the Court schedules oral argument.

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED PARTIES ........................................................ ii

STATEMENT REGARDING ORAL ARGUMENT ............................................... v

TABLE OF CONTENTS ................................................................................... vi

TABLE OF AUTHORITIES ............................................................................ viii

INTRODUCTION ............................................................................................ 1

STATEMENT OF JURISDICTION .................................................................... 3

STATEMENT OF THE ISSUES ........................................................................ 4

STATEMENT OF THE CASE .......................................................................... 4

      A.     Statutory Background ................................................... 4

      B.     Factual Background ..................................................... 6

SUMMARY OF ARGUMENT .......................................................................... 8

STANDARD OF REVIEW .............................................................................. 12

ARGUMENT ............................................................................................... 12

I.     The district court correctly concluded that the challenged Texas Education Code provision are invalid ......................................................... 12

      A.     Section 1623(a) expressly preempts the challenged Texas provisions ............................................................... 13

      B.     Appellants' contrary arguments lack merit ........................ 15

             1.     Reduced in-state tuition is a postsecondary education benefit. .................................................... 15

2.    The challenged provisions provide benefits "on the basis of residence" within Texas. ...........................................20

3.    The challenged provisions do not provide the same benefits to citizens and nationals of the United States who are not residents of Texas. ......................................28

4.    Appellants' interpretive and constitutional arguments lack merit. ......................................................................32

II.    Appellants' additional challenges to the consent judgment lack merit.....38

III.    The district court correctly denied intervention as futile and, in any event, vacatur of the consent judgment is not warranted ................................... 45

CONCLUSION ................................................................................... 49

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Abramski v. United States*,
573 U.S. 169 (2014) ...................................................................34

*Atkins v. Gen. Motors Corp.*,
701 F.2d 1124 (5th Cir. 1983) ....................................................45

*Becerra v. U.S. Env't Prot. Agency*,
978 F.3d 708 (9th Cir. 2020) ......................................................45

*Bostock v. Clayton County*,
590 U.S. 644 (2020) ............................................................ 21, 22

*Clark v. Martinez*,
543 U.S. 371 (2005) ...................................................................38

*DBSI/TRI IV Ltd. Pship v. United States*,
465 F.3d 1031 (9th Cir. 2006) ....................................................49

*DeOtte v. State*,
20 F.4th 1055 (5th Cir. 2021) .....................................................49

*E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*,
575 U.S. 768 (2015) ...................................................................22

*Field v. Anadarko Petroleum Corp.*,
35 F.4th 1013 (5th Cir. 2022) ......................................................4

*Frost v. BNSF Ry. Co.*,
914 F.3d 1189 (9th Cir. 2019) ....................................................21

*Goldberg v. Kelly*,
397 U.S. 254 (1970) ............................................................ 42, 43

*In re Deepwater Horizon*,
546 F. App'x 502 (5th Cir. 2013) ...............................................48

*INS v. Chadha*,
462 U.S. 919 (1983) ............................................................ 11, 39

*King v. Flowers Foods, Inc.*,
  No. 21-579-BAJ-SDJ, 2023 WL 2731041 (M.D. La. Mar. 30, 2023) ................48

*League of United Latin Am. Citizens, Council No. 4434 v. Clements*,
  999 F.2d 831 (5th Cir. 1993) ...................................................................42

*Louisiana v. Burgum*,
  132 F.4th 918 (5th Cir. 2025) ..................................................................12

*Martinez v. Regents of Univ. of California*,
  241 P.3d 855 (Cal. 2010) ................................................ 19, 24, 25, 26

*Mullane v. Central Hanover Bank*,
  339 U.S. 306 (1950) ...............................................................................42

*Murphy v. National Collegiate Athletic Association*,
  584 U.S. 453 (2018) ........................................................... 10, 36, 37

*Murray v. UBS Sec., LLC*,
  601 U.S. 23 (2024) ................................................................................21

*N.Y. Life Ins. Co. v. Sahani*,
  730 F. App'x 45 (2d Cir. 2018) ..............................................................48

*National Labor Relations Board v. Constellium Rolled Prods. Ravenswood, LLC*,
  43 F.4th 395 (4th Cir. 2022) ..................................................................40

*Pin v. Texaco*,
  793 F.2d 1448 (5th Cir. 1986) ................................................................47

*Plyler v. Doe*,
  457 U.S. 202 (1982) ...............................................................................35

*Pool v. City of Houston*,
  87 F.4th 733 (5th Cir. 2023) ..................................................................40

*Printz v. United States*,
  521 U.S. 898 (1997) ...............................................................................10

*Rhode Island Federation of Teachers., AFL-CIO v. Norberg*,
  630 F.2d 850 (1st Cir. 1980) ..................................................................46

*Saavedra v. Murphy Oil U.S.A., Inc.*,
  930 F.2d 1104 (5th Cir. 1991) ....................................................45

*United States v. Blewett*,
  746 F.3d 647 (6th Cir. 2013) .....................................................38

*United States v. City of Miami, Fla.*,
  664 F.2d 435 (5th Cir. 1981) .....................................................42

*United States v. Richardson*,
  960 F.3d 761 (6th Cir. 2020) .....................................................38

*United States v. Windsor*,
  570 U.S. 744 (2013) ........................................................... 11, 39

*Young Conservatives of Texas Foundation v. Smatresk*,
  73 F.4th 304 (5th Cir. 2023) ................................. 1, 5, 14, 15, 28, 32, 35

## Statutes, Legislative Materials, and Court Rules

8 U.S.C. § 1101(a)(33) ...................................................................27

8 U.S.C. § 1621 .................................................................... 18, 34

8 U.S.C. § 1621(c)(1)(A) ................................................................18

8 U.S.C. § 1621(c)(1)(B) ................................................................19

8 U.S.C. § 1621(d) .......................................................................34

8 U.S.C. § 1623 ...........................................................................4

8 U.S.C. § 1623(a) ........................................ 1, 4, 13, 15, 17, 20, 29

28 U.S.C. § 1291 ..........................................................................4

28 U.S.C. § 3702(1) ......................................................................36

28 U.S.C. § 1331 ..........................................................................3

28 U.S.C. § 1345 ..........................................................................3

42 U.S.C. § 2000e–2(a) ..................................................................22

Texas Educ. Code § 54.0501(6) ..........................................................28

Texas Educ. Code § 54.051(c) ................................................................5

Texas Educ. Code § 54.051(d) ......................................................... 5, 14

Texas Educ. Code § 54.051(m) ............................................. 5, 7, 13, 20

Texas Educ. Code § 54.052(a) ......................................................6, 13, 20

Texas Educ. Code § 54.052(a)(3) ..........................................................24

Texas Educ. Code § 54.053(3)(B) .............................................. 6, 14, 27

Texas Educ. Code § 54.206 ...................................................................31

Texas Educ. Code § 54.214 ...................................................................31

Texas Educ. Code § 54.223 ...................................................................31

Texas Educ. Code § 54.231 ...................................................................31

Texas Educ. Code § 54.241 ...................................................................31

Texas Educ. Code § 54.251 ...................................................................31

Pub. L. No. 104-208, Div. C, §§ 306, 308, 110 Stat. 3009–546 (1996)...................4

H.R. Rep. No. 104–828, 2d Sess. p. 240 (1996)............................... 19, 23

Fed. R. App. P. 4(a)(1)(B) .....................................................................4

Fed. R. Civ. P. 60(b)(6)...................................................................12, 43

## Other Authorities

Black's Law Dictionary, Benefit (12th ed. 2024)....................................16

7C Federal Practice & Procedure, § 1914 (3d ed.) ................................46

Merriam-Webster Online Dictionary, https://www.merriam-
    webster.com/dictionary/benefit ........................................................16

Meriam-Webster's Collegiate Dictionary 106 (10th ed. 1997)..............16

Wikipedia, List of Colleges and Universities in Texas
  https://en.wikipedia.org/wiki/List_of_colleges_and_universities_in_Texas (last
  visited December 25, 2025)...................................................................................41

# INTRODUCTION

Federal law provides that "an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). Texas nonetheless provided in-state tuition rates at public state colleges to aliens who are not lawfully present but satisfy residence requirements, even as U.S. citizens from other states must pay higher tuition rates. *Young Conservatives of Texas Foundation v. Smatresk*, 73 F.4th 304, 307 (5th Cir. 2023). The conflict between Texas's scheme—set forth in Sections 54.051(m) and 54.052(a) of the Texas Education Code—and federal law is clear on the face of the statute, as the district court properly recognized.

The United States sought invalidation of Sections 54.051(m) and 54.052(a) as applied to aliens who are not lawfully present in the United States. Because Texas agreed with the United States that federal law expressly preempts these provisions, the parties requested that the district court enter a consent judgment. The district court granted the motion and issued a final judgment declaring the state provisions preempted and enjoining Texas from enforcing them as to aliens who are not lawfully present in the United States. Two groups of Proposed Intervenors (collectively, Appellants) then sought intervention. Although the district court had

entered a final judgment, the court did not sidestep the motion on procedural grounds. The court instead squarely addressed the merits, and held that, because the Texas provisions are preempted as a matter of law, the motion for intervention was legally futile.

Because the district court's legal conclusion that federal law preempts these state provisions was correct, the district court did not err in denying intervention as futile. And none of Appellants' additional arguments provides any basis for reversing the order denying intervention, let alone (as Appellants request) for vacating the underlying judgment. This Court should affirm.

The district court correctly held that Sections 54.051(m) and 54.052(a) are expressly preempted. The federal statute provides no basis for Appellants' counterintuitive contentions that substantially reduced (by approximately 90 percent) in-state college tuition does not qualify as a "benefit" or that providing in-state tuition based on both graduation from a Texas high school and continuous residence within Texas is not "on the basis of residence." Nor is there any merit to Appellants' argument that the federal statute has no effect whatsoever so long as *one* nonresident United States citizen is eligible for in-state tuition. Appellants' contention that Section 1623(a) violates the Tenth Amendment as well as their hodgepodge of jurisdictional and procedural challenges likewise provide no basis for disturbing the final judgment in this case.

As to the denial of intervention itself, the district court's disposition was well within the court's discretion and consistent with case law from this Court and others holding that a court may deny intervention as legally futile when a claim or defense fails as a matter of law. In any event, it is ultimately immaterial that the court chose to deny intervention as futile rather than grant intervention and then decline to disturb its final judgment on the exact same purely legal grounds. If this Court agrees with the district court on the underlying legal question—which it should—everything else is beside the point.

The district court's denial of intervention should be affirmed. But if the Court disagrees with the district court's denial of intervention—but does so on a ground that does not call into question the district court's subject-matter jurisdiction or its legal conclusion that the challenged Texas provisions are preempted—it should simply reverse the denial of intervention, which would allow Appellants to appeal the judgment. The Court should not also vacate the judgment itself.

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, *see* ROA.25, because this is an action brought by the United States and because this suit arises under federal law. *See also infra* pp. 38-41. Appellants filed timely notices of appeal on August 4, 2025 (protective notices as to the judgment itself), and on August 16 and 18 (as to the order denying intervention).

ROA.706,708,747,749; *see* Fed. R. App. P. 4(a)(1)(B) (60-day time limit). This Court has appellate jurisdiction over a decision denying intervention under 28 U.S.C. § 1291. *See Field v. Anadarko Petroleum Corp.*, 35 F.4th 1013, 1017 (5th Cir. 2022).

## STATEMENT OF THE ISSUES

1.     Whether the district court erred in denying intervention as legally futile.

2.     If so, whether any error in denying intervention warrants vacatur of the final judgment.

## STATEMENT OF THE CASE

### A.     Statutory Background

**1**. In 1996, Congress passed, and President Clinton signed, the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). *See* IIRIRA, Pub. L. No. 104-208, Div. C, §§ 306, 308, 110 Stat. 3009–546 (1996).

As relevant here, IIRIRA included a clear "[l]imitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." 8 U.S.C. § 1623. Section 1623(a) provides as follows:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

*Id.* § 1623(a).

**2**. Like many states, Texas charges its "residents one price for public college and charge[s] those who live elsewhere much more." *Young Conservatives*, 73 F.4th at 307. The tuition for resident students is generally limited to $50 per semester credit hour. Texas Educ. Code § 54.051(c). The tuition for nonresidents is based on an average of the undergraduate tuition charged to Texas residents in each of the five most populous states other than Texas, which results in tuition that, at least at some institutions, is higher by approximately an order of magnitude. *Id.* § 54.051(d); *see Young Conservatives*, 73 F.4th at 308 (stating that, at the university at issue in that case, out-of-state tuition was $458 per semester credit hour).

In 2001, Texas enacted House Bill 1403, commonly known as the Dream Act, under which all students, without regard to their immigration status, have access to in-state tuition rates at public colleges and universities if they establish residence in the state. The specific Texas provisions at issue are Sections 54.051(m) and 54.052(a) of the Texas Education Code. Section 54.051(m) provides that "*[u]nless the student establishes residency or is entitled or permitted to pay resident tuition* as provided by this subchapter, tuition for a student who is a citizen of any country other than the United States of America is the same as the tuition required of other nonresident students." Texas Educ. Code § 54.051(m) (emphasis added).

Section 54.052—titled "Determination of Resident Status"—provides three ways for a student to establish Texas residency:

(1) a person who: (A) established a domicile in this state not later than one year before the census date of the academic term in which the person is enrolled in an institution of higher education; and (B) maintained that domicile continuously for the year preceding that census date;

(2) a dependent whose parent: (A) established a domicile in this state not later than one year before the census date of the academic term in which the dependent is enrolled in an institution of higher education; and (B) maintained that domicile continuously for the year preceding that census date; and

(3) a person who: (A) graduated from a public or private high school in this state or received the equivalent of a high school diploma in this state; and (B) maintained a residence continuously in this state for: (i) the three years preceding the date of graduation or receipt of the diploma equivalent, as applicable; and (ii) the year preceding the census date of the academic term in which the person is enrolled in an institution of higher education.

*Id.* § 54.052(a). A separate provision requires applicants for resident status who are not citizens or permanent residents to file an "affidavit stating that the person will apply to become a permanent resident of the United States as soon as the person becomes eligible to apply." *Id.* § 54.053(3)(B).

## B.    Factual Background

**1.** Earlier this year, the United States filed suit seeking to permanently enjoin Texas from enforcing Sections 54.051(m) and 54.052(a)(3). The United States contended that, as applied to aliens not lawfully present in the United States, these provisions were preempted and thus unconstitutional under the Supremacy Clause. ROA.25, 31-34.

Texas "agree[d] that federal law [Section 1623(a)] expressly preempts the Texas Education Code provisions—§§ 54.051(m), 54.052(a)—that grant benefits to aliens, who are not lawfully present in the United States." ROA.47. Accordingly, the parties filed a Joint Motion for Entry of Consent Judgment the same day that the United States filed its complaint. The district court granted the motion the same day and issued a final judgment declaring that the challenged provisions violate the Supremacy Clause and permanently enjoining "Defendant as well as its successors, agents, and employees, from enforcing Texas Education Code § 54.051(m) and § 54.052(a), as applied to aliens who are not lawfully present in the United States." ROA.52.

**2.** One week later, Appellant Students for Affordable Tuition (SAT) filed a motion to intervene. ROA.53-55. Thirteen days after that, Appellants Austin Community College, Oscar Silva, and La Unión del Pueblo Entero (collectively, LUPE) filed a separate motion to intervene. ROA.115-48. Following full briefing on the intervention motions, the district court denied the motions to intervene. ROA.735-46. "Applying the Rule 12(b)(6) standard," the district court concluded that the motions to intervene were futile because Section 1623(a) expressly preempts Sections 54.051(m) and 54.052(a) of the Texas Education Code. ROA.741. The district court noted that, in *Young Conservatives*, this Court squarely held that Section 1623(a) contains an express preemption clause. ROA.742. And the district

court further pointed out that aliens who are not lawfully present are eligible for Texas resident tuition if they satisfy Texas's residence requirements while United States citizens who are not residents of Texas pay higher tuition. ROA.743. "Federal law—Section 1623(a)—bars such a disparity." ROA.743. "Accordingly," the district court concluded, the motions to intervene were "legally futile, because they fail to state a claim under Rule 12(b)(6)." ROA.745.

**3.** Appellants filed a motion to stay the district court's final judgment. Dkt. No. 93. The district court denied the motion. Dkt. No. 96. A panel of this court denied Appellants' motion for a stay pending appeal with no noted dissent.

## SUMMARY OF ARGUMENT

I.     The district court correctly held that intervention was legally futile because the challenged Texas provisions are preempted by federal law.

A.     Sections 54.051 and 54.052 of the Texas Education Code are preempted. Those provisions do precisely what federal law expressly prohibits, providing a benefit (in-state tuition) to aliens who are not lawfully present if they establish residence in Texas, while denying this same benefit to nonresident U.S. citizens. The plain language of Section 1623(a) expressly preempts these provisions, as this Court recognized in *Young Conservatives*.

B.     Appellants' counterarguments lack merit.

1.    Substantially reduced (by approximately 90 percent) in-state college tuition plainly qualifies as a "benefit." Appellants' contrary contention has no textual basis, and even Appellants' proposed atextual definition of benefit—payments and similar assistance—would encompass reduced in-state tuition. Appellants' position is also belied by legislative history explicitly stating that Congress's purpose in enacting Section 1623(a) was to preempt precisely the type of law at issue here.

2.    The challenged Texas provisions provide in-state tuition "on the basis of residence within" Texas. As a matter of plain text and context, "on the basis of" simply means that residence serves as the foundation of the benefit being provided; residence need not be the exclusive criterion or even the dominant one. Obviously, for example, a student must meet the other criteria for matriculation in order to obtain the benefit, and no postsecondary benefit will be awarded based on residence alone.

In any event, the Texas scheme provides benefits on the basis of Texas residence under any plausible standard. Section 54.052(a) is *titled* "Determination of Resident Status" and provides three ways for a student to establish Texas residency. Two of those ways are based on domicile and not even Appellants appear to contest that they are residence-based. The third requires both graduation from a Texas high school and continuous residence within Texas, and thus is plainly and expressly based on residence. Appellants' contrary arguments—in addition to lacking any textual basis—would deprive Section 1623(a) of virtually all effect.

3.    There should also be no serious dispute that Texas does not provide the same benefit to citizens and nationals of the United States who are not residents of Texas. The plain language of Section 1623(a) states that the prohibition on residence-based benefits for aliens who are not lawfully present applies unless *that* benefit is available *on the same terms and conditions* to an otherwise similarly situated citizen or national who is not a resident of Texas. That means that, as this Court stated in *Young Conservatives*, the categorical eligibility for in-state tuition at issue here can stand only if the same benefit were made available to all U.S. citizens irrespective of residence. Appellants' contrary position—that the mere existence of one U.S. citizen or national anywhere in the country who is not a state resident but nonetheless eligible for the same benefit, means that Section 1623(a) has no application—has no textual basis and, again, would make Section 1623(a) entirely ineffectual.

4.    Section 1623(a) does not violate the Tenth Amendment. Pursuant to its broad powers over immigration and foreign affairs, Congress may direct that aliens who are not lawfully present in the United States are ineligible for benefits based on their (unlawful) residence within a State. And Section 1623(a) does not have any other constitutionally problematic features. It does not commandeer state functions, *see Printz v. United States*, 521 U.S. 898 (1997), and does not issue any commands to state legislatures or any other organ of state government, *see Murphy v. National*

*Collegiate Athletic Association*, 584 U.S. 453 (2018). It just preempts conflicting state law. Nor do any of Appellants' other arguments—based on, inter alia, constitutional avoidance, and a supposed presumption against preemption—save the challenged Texas provisions from preemption.

II.    Appellants' additional challenges to the consent judgment lack merit.

A.    The district court had subject matter jurisdiction. Appellants contend that the district court lacked jurisdiction because the United States and Texas agreed on the merits. The Supreme Court has squarely rejected that argument. *See United States v. Windsor*, 570 U.S. 744, 758-59 (2013); *INS v. Chadha*, 462 U.S. 919, 939-40 (1983). The United States plainly had standing to challenge Texas's preempted law, which State institutions were continuing to apply, and does not lose its entitlement to judicial relief merely because Texas agrees with its position. Appellants' contrary authority—where the party purporting to seek relief from the courts had already received all the relief it sought—is plainly distinguishable.

B.    Appellants also contend that the final judgment was issued without constitutionally sufficient notice. But Appellants cite no authority for the proposition that a court must issue notice to nonparties before entering a consent judgment. And in any event, again, the district court ultimately decided the merits following adversarial briefing.

C.    Appellants contend that the district court abused its discretion by denying relief under Rule 60(b)(6), which allows vacatur for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). None of Appellants' arguments have merit, let alone demonstrate an abuse of discretion.

III.    Appellants otherwise provide no persuasive reason for disturbing the district court's denial of intervention. Contrary to Appellants' arguments, well-established case law permits a district court to deny intervention as futile where an asserted claim or defense would fail as a matter of law. In any event, if this Court were to conclude that intervention was improperly denied on a ground that does not call into question the district court's subject-matter jurisdiction or its merits analysis, it should at most reverse the denial of intervention—which would allow Appellants to appeal the final judgment—not vacate the judgment itself.

## STANDARD OF REVIEW

This Court reviews de novo a district court's denial of intervention as of right and reviews for abuse of discretion a district court's denial of permissive intervention. *Louisiana v. Burgum*, 132 F.4th 918, 921 (5th Cir. 2025)

## ARGUMENT

## I.    The district court correctly concluded that the challenged Texas Education Code provision are invalid.

The district court's denial of intervention was premised on its determination that intervention was legally futile because Section 1623(a) preempts the challenged

Texas provisions as a matter of law. *See supra* pp. 7-8. That conclusion was plainly correct, and disposes of this appeal.

**A.    Section 1623(a) expressly preempts the challenged Texas provisions.**

Section 1623(a) provides that "an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). That plain language makes clear that if a State's tuition structure distinguishes between residents or nonresidents for U.S. citizens, aliens who are not lawfully present are ineligible for the resident rate.

Sections 54.051 and 54.052 of the Texas Education Code are thus preempted. Section 54.051(m) allows a student to pay the lower in-state tuition rate if that student establishes residence. Texas Educ. Code § 54.051(m). And Section 54.052(a) states that, to establish residence (and thus qualify for in-state tuition), a student need only establish and maintain domicile continuously, graduate from a public or private Texas high school, or acquire the equivalent of a high school diploma and maintain a residence continuously for a set period. *Id.* § 54.052(a).

Section 54.052 thus makes aliens who are not lawfully present in the United States (but who qualify as Texas residents) eligible for the lower in-state rate of

tuition specified in Section 54.051(c). A separate provision directly references the availability of resident status to individuals who are neither citizens nor permanent residents by imposing a requirement that such individuals state that they will become permanent residents as soon as they are eligible to apply. Texas Educ. Code § 54.053(3)(B). As Appellants themselves note, providing in-state tuition "to all qualifying graduates of Texas high schools without imposing any exclusions based on federal immigration status" was the very purpose of the Dream Act. LUPE Br. at 6.

The invalidity of the Texas scheme is thus apparent from the plain text of Section 1623(a), but if there were any doubt, this Court's decision in *Young Conservatives* would eliminate it. As noted, this Court in that case confirmed that Section 1623(a) contains an express preemption clause. 73 F.4th at 312. It explained that the statute imposes "a condition precedent to granting a benefit to aliens," *id.*— i.e., it makes aliens who are not lawfully present ineligible for in-state tuition (or any other postsecondary education benefit) based on residence unless all U.S. citizens are eligible for that same benefit.

The Court in *Young Conservatives* ultimately held that a different provision of the Texas Education Code—Texas Educ. Code § 54.051(d)—was not preempted because that provision did "nothing more than set the tuition price for nonresident students, citizens or not," and took "no stance on whether illegal aliens are eligible

14

for a cheaper price." 73 F.4th at 313. The challenge to section 54.051(d) failed because Section "1623(a) doesn't impose *any* duty to grant the same benefits to U.S. citizens." *Id.* But this Court made clear that "a different, *unchallenged* portion of Texas' scheme seems to conflict with § 1623(a)." *Id.* at 314. And the Court was clearly referring to the provisions of Texas law at issue here, which do provide in-state benefits in contravention of Section 1623(a). *See id.* at 313 (noting that "the problem with Texas' system relevant to § 1623(a) is that it grants illegal aliens in-state benefits").

## B.    Appellants' contrary arguments lack merit.

Appellants argue that (1) reduced in-state tuition is not a "benefit"; (2) the Texas scheme does not provide benefits "on the basis of residence"; and (3) the Texas scheme is nonetheless not preempted because in certain highly limited cases United States citizens who are not residents of Texas are eligible for in-state tuition. Appellants also assert that (4) interpreting Section 1623(a) to preempt the challenged Texas provisions is contrary to federalism and clear-statement principles and that, so read, Section 1623(a) is unconstitutional. None of these arguments has merit.

### 1.    Reduced in-state tuition is a postsecondary education benefit.

Appellants' broadest contention is that reduced in-state tuition does not qualify as a "postsecondary education benefit" at all, because such a benefit purportedly "must involve 'payments' or similar 'assistance' by the State." LUPE

Br. at 43; *see also* LUPE Br. at 43 (contending that benefits must involve "monetary and other similar forms of assistance"). But this limitation has no textual basis and would not help Appellants even if it did.

As to the first point, reduced tuition is obviously a "benefit," in both the dictionary and everyday use of the term. It is an "advantage or privilege something gives." Black's Law Dictionary, Benefit (12th ed. 2024); *see also* Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/benefit ("something that produces good or helpful results or effects or that promotes well-being"). Dictionaries from around the time of IIRIRA's enactment provide similar definitions. *See, e.g.*, Meriam-Webster's Collegiate Dictionary 106 (10th ed. 1997) (defining the term as, inter alia, "ADVANTAGE" and "useful aid"). And it is a "postsecondary education" benefit—i.e., it is a benefit for education after high school.

The term "benefit" can of course be associated with "payments" in contexts where it is obviously *referring* to the payment of money. *See* Black's Law Dictionary, Benefit (12th ed. 2024) (secondary definition of "Profit or gain; esp., the consideration that moves to the promisee" and using as an example "a benefit received from the sale"); Meriam-Webster's Collegiate Dictionary 106 (10th ed. 1997) ("a payment or service provided for under an annuity, pension plan, or insurance policy"). But there is no textual or logical reason to read the term that way

16

in the context of "postsecondary education benefit." Appellants contend that Section 1623(a)'s specification that benefits may only be provided to aliens who are not lawfully in the United States if they are also provided to citizens "in no less an amount, duration, and scope," 8 U.S.C. § 1623(a), "can only sensibly be applied to monetary and other similar forms of assistance," LUPE Br. at 43. This is not so; many benefits that are not monetary are quantifiable in a way that would give meaning to that statutory phrase, which was plainly meant to be expansive. And in particular, these concepts apply quite straightforwardly to in-state tuition.[1] This purported textual argument goes nowhere.

In any event, Appellants' argument fails on its own terms. Even if the statute expressly applied to "monetary and other similar forms of assistance," substantially reduced tuition would plainly qualify. Appellants state that "[e]ligibility for in-state tuition is nothing more than a status" and "[a]ll payments are made by the student, not the state." But it is obviously not just an empty "status." It allows the individual to access higher education in the State at a significantly lower cost. And that reduced

---

[1] This language makes clear, for example, that an alien who is not lawfully present in the United States is not eligible for tuition reduced by a greater "amount" than is reduced for non-resident citizens and U.S. nationals, and that they are not eligible to be provided reduced tuition for a greater "duration" of time than non-resident citizens and U.S. nationals. And as discussed further below, the term "scope" is best read to mean that such aliens are eligible for reduced in-state tuition only under the terms and conditions that a citizen or national who is not a resident of the state would be eligible. *See infra* pp. 29-30.

in-state tuition is still a substantial monetary subsidy from the State to eligible individuals that is similar to—indeed, functionally identical to—a cash payment from the State to those individuals for the amount of the difference between in-state and out-of-state tuition.

Appellants' detour into a neighboring provision similarly comes up empty. Appellants reference 8 U.S.C. § 1621, which provides that nonqualifying aliens are ineligible for certain "State or local public benefits" and defines the term. That definition, if it is even relevant here, only reinforces that Appellants' argument is a non-starter. The definition encompasses numerous benefits that are obviously neither payments nor assistance analogous to payments. *See* 8 U.S.C. § 1621(c)(1)(A) (including "professional license," "commercial license," and "contract"). Section 1621 also makes clear that it does not apply to "the following State or local public benefits," and then lists a number of benefits that, again, are neither payments nor similar to payments (or at the very least, *less similar* to payments than reduced tuition). *Id.* § 1621(b)(3) (public health assistance for immunizations and testing and treatment of symptoms of communicable diseases); *id.* § 1621(b)(4) ("[p]rograms, services, or assistance," including "crisis counseling and intervention," if certain conditions are met). Appellants note a subsection of the definition, which includes "postsecondary education" among a lengthy list of benefits and also lists "any other similar benefit for which payments or assistance"

are made. *Id.* § 1621(c)(1)(B). But again, "assistance" readily encompasses reduced tuition. And even this subpart of the definition contemplates that benefits may be provided in a form that does *not* involve payments. *Id.* ("by an agency of a State or local government *or* by appropriated funds of a State or local government" (emphasis added)). Again, if a state or local government by statute reduces tuition, it is obviously providing a "benefit," in both the dictionary and ordinary use of the term.

Finally, although the text is clear and no recourse to legislative history is needed, that history simply could not be clearer that Congress intended for Section 1623 to encompass in-state tuition rates. Indeed, the principal purpose of the provision was to preempt precisely the scheme that Appellants defend. A House conference committee report, commenting on the language that was ultimately enacted as Section 1623, states that "[t]his section provides that illegal aliens are not eligible for in-state tuition rates at public institutions of higher education." H.R. Rep. No. 104–828, 2d Sess. p. 240 (1996). Even the California Supreme Court, in a decision on which Appellants rely, noted that this language demonstrates Congress's intent with respect to Section 1623—since, even though it concerned a related bill that was never enacted, "[t]he language the conference committee report considered was identical to section 1623's language." *Martinez v. Regents of Univ. of California*, 241 P.3d 855, 865 (Cal. 2010). Although *Martinez* held—wrongly—that

the statute in that case did not provide a benefit "based on residence," *see infra* pp. 25-26, not even that court suggested that such reduced tuition does not qualify as a "postsecondary education benefit" in the first place.

### 2.    The challenged provisions provide benefits "on the basis of residence" within Texas.

Appellants' primary argument on the merits is that, even though Section 54.052 provides that "the following persons are considered residents of this state for purposes of this title," Texas Educ. Code § 54.052(a)—and even though Section 54.051(m) allows a student to pay the lower in-state tuition rate if that student establishes residency, Texas Educ. Code § 54.051(m)—"no provision of Texas law grants persons without lawful presence access to in-state tuition on 'the basis of residence within' Texas." LUPE Br. at 39. This contention—obviously farfetched on its face—does not withstand even minimal scrutiny.

Before turning to the Texas scheme, a word about Section 1623(a)'s text. Again, the relevant language: "an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State." 8 U.S.C. § 1623(a). SAT insists that this language means such aliens are ineligible only if the relevant legislation provides "postsecondary benefits based *solely* on residence." SAT Br. at 7; SAT Br. at 34-35. LUPE adopts a similar framework, contending (to take just one example) that Texas's addition of the modest additional requirement to sign an affidavit promising to apply to become a permanent resident of the United

States when able to do so means that in-state tuition is not on the basis of residence. *See infra* pp. 26-27.

For the reasons set forth below, resolving this interpretive issue is unnecessary here because the Texas scheme is inextricably tied to residence at every step. But in any event, nothing in Section 1623(a) requires this tight a fit. "On the basis of"—or "based on"—simply means using a fact or object as the foundation of something. That is true in both ordinary parlance and the law. A movie may be "based on a novel" or "based on a true story" even if, as is almost always the case, there are aspects of the movie that were not contained in the novel or did not actually happen in real life. An author can say that an article is "based on my research over the last year," even if parts of the article involve information the author knew before the author started the relevant research. The same is true in the law. *See Murray v. UBS Sec., LLC*, 601 U.S. 23, 36-37 (2024) (noting Congress's judgment that "personnel actions against employees should quite simply not be based on protected whistleblowing activities—not even a little bit" (quotation marks and alteration omitted)); *Frost v. BNSF Ry. Co.*, 914 F.3d 1189, 1197 (9th Cir. 2019) ("Nor does the instruction's use of 'based on' foreclose the possibility that an impermissible factor or consideration contributed to the decision to discipline Frost.").

Indeed, "on the basis of" simply means "because of." *See generally Bostock v. Clayton County*, 590 U.S. 644 (2020) (using terms interchangeably). The precise

link that is necessary may be context-specific. Title VII—which bars certain types of discrimination "because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e–2(a)—prohibits "making a protected characteristic a 'motivating factor' in an employment decision," *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015). For whistleblower claims under the Sarbanes-Oxley Act, the plaintiff 's burden on intent is simply to show that the protected activity was a "contributing factor in the unfavorable personnel action." 49 U.S.C. § 42121(b)(2)(B)(i). But "on the basis of" does not naturally—let alone inevitably—mean that a given fact is the *sole* reason for what follows. *See, e.g.*, *Bostock*, 590 U.S. at 671 ("Nor does the statute care if other factors besides sex contribute to an employer's discharge decision.").

Here, Section 1623(a)'s context supports a broad reading of "on the basis of." Likely no benefit related to postsecondary education is provided solely on the basis of residence. Among other things, presumably individuals must satisfy the other basic requirements for matriculation at the school in order to receive the benefit. As SAT itself notes, "states have long conditioned benefits, such as tuition rates, on factors such as high school attendance and graduation, academic achievement, and financial need." SAT Br. at 37.

And the thrust of the provision is clear from its text: to ensure that U.S. citizens who are not residents of the relevant state are not treated worse than people

who live in the state but are not lawfully present in the United States. The suggestion that this fundamental purpose can be evaded by imposing some additional requirement has no basis in the statute's text. Moreover, as noted above, the most directly on point legislative history indicates that Congress intended it to be categorical: "This section provides that illegal aliens are not eligible for in-state tuition rates at public institutions of higher education."' H.R. Rep. No. 104–828, 2d Sess. p. 240 (1996). In-state tuition is of course almost always provided to residents of a state and not to residents of other states—that is what *in-state tuition is*. The only plausible reading of Section 1623(a) is that, when a state establishes a scheme under which state residents who are U.S. citizens are charged one price and those who live elsewhere are charged more, aliens who are not lawfully present in the United States are not eligible for the lower rate, regardless of the particulars of the state scheme.

In any event, the Texas scheme provides in-state tuition on the basis of residence under any plausible standard. For starters (and strikingly), neither group of Appellants appears to dispute that two of Section 54.052(a)'s three provisions— Section 54.052(a)(1), based on a person's domicile within Texas, and Section 54.052(a)(2), based on the domicile of a dependent's parent within Texas—are based on residence. So Appellants effectively concede that two thirds of the statutory criteria are based on residence. They likewise do not dispute that the statute itself is

phrased as, and *intended as*, a residence standard. LUPE Br. at 40 (asserting that it is "beside the point whether Texas provides in-state tuition to individuals that it 'consider[s]' to be residents 'for purposes' of the Education Code"). This is not an auspicious start.

Appellants' arguments based on the third criteria for residence (the only provision they do address)—graduation from a high school within Texas, *plus* continuous residence in Texas for three years prior to high school graduation, or residence in Texas for the year preceding enrollment, Texas Educ. Code § 54.052(a)(3)—fare no better. Again, this provision is on its face based on residence—as noted, it specifically requires continuous residence in Texas for a specified period. The court's analysis can stop there.

Appellants note that the California Supreme Court held in *Martinez* that a California provision that provided in-state tuition to individuals who attended high school in California for at least three years was not preempted. *Martinez*, 241 P.3d at 863. As noted below, that decision cannot be reconciled with the statute's text, but in any event it is inapplicable on its own terms. In *Martinez*, the relevant criterion did not expressly refer to residence at all, but instead provided for in-state tuition for graduates of California high schools. Here, as discussed, high-school graduation does not suffice without satisfying an explicit residence requirement: The person must have "maintained a residence continuously in [Texas] for… the year preceding

the census date of the academic term in which the person is enrolled in an institution of higher education," *id.* § 54.052(a)(3)(B)(ii), or have "maintained a residence continuously in [Texas] for…the three years preceding the date of" high school graduation or receipt of a diploma or equivalent. *id.* § 54.02(a)(3)(B)(i). Even in the (likely quite anomalous) case where an individual graduates from a Texas high school, lives continuously in Texas for the three years prior to graduation, subsequently moves out of state, and then applies to college in Texas with an out-of-state residence, that individual is still being permitted to pay lower in-state tuition based on his/her prior lengthy residence in the state. Nothing in Section 1623(a) requires in-state tuition to be provided based on an alien's current residence (or residence at any particular point in time).

This Court thus need not decide whether the California Supreme Court was correct to resolve this case. But in any event, that court's reasoning was incorrect and, at an absolute minimum, should not be extended here. Graduation from high school within a state for purposes of in-state college tuition is plainly a proxy for residence—indeed, almost a perfect proxy—even if it is theoretically possible to identify some marginal exceptions (such as residents of towns on state borders or individuals who subsequently move and apply to college later). Indeed, the California Supreme Court quite candidly acknowledged that the California legislature's purpose in granting in-state tuition based on graduation from a

California high school was to evade Section 1623. 241 P.3d at 866 ("Plaintiffs also argue that the history behind section 68130.5's enactment shows that the Legislature sought to avoid section 1623's prohibition. It does show that."). Federal law cannot be subverted this easily.

Relatedly, Appellants' contention that the district court should have considered severing an injunction to apply only to Section 54.052(a)(3)(A) but not to Section 54.052(a)(3)(B), LUPE Br. at 47, SAT Br. at 50, is wrong—and indeed, nonsensical. Even if the Court were to accept (contrary to our position) the proposition that granting in-state tuition based on graduation from a Texas high school is not based on residence, the proposed severed injunction would provide in-state tuition benefits to individuals that the Texas legislature intended to require to pay out-of-state rates, by eliminating one of two conjunctive conditions that the legislature required people to satisfy.[2] There is no basis, in the name of furthering Congress's effort to preclude aliens who are not lawfully present from benefitting from in-state tuition, to make it available to *more* such aliens.

Appellants do not advance their argument by pointing out that—in a provision titled "Information Required *to Establish Resident Status*" (emphasis added)—state law requires that a person who "applies for resident status under Section

---

[2] SAT is thus plainly incorrect in its contention that "[f]unctionally, either of the two provisions could operate alone." SAT Br. at 51.

54.052(a)(3)" and "who is not a citizen or permanent resident" to submit an "affidavit stating that the person will apply to become a permanent resident of the United States as soon as the person becomes eligible." *Id.* § 54.053(3)(B). This "condition" does not change the fundamental nature of the Texas law insofar as it provides benefits in precisely the manner that Congress deemed impermissible.

In addition, this condition does not even limit the class of eligible aliens in any significant way. There could be no plausible argument that a state could permissibly afford in-state tuition to all aliens who are subject to the restriction in Section 1623(a) merely by requiring them to sign an affidavit requiring to promise to apply for permanent residence as soon as they are allowed to do so (a time that, for many persons who are not here lawfully, may never come). Indeed, the logical consequence of Appellants' argument is that any additional condition, no matter how trivial—such as, for example, a condition that aliens not lawfully present in the United States affirm that they will comply with all federal, state and local laws while enrolled—means that the benefit is not being provided on the basis of residence. That only underscores the error of their contention that residence must be the sole eligibility criterion in order for Section 1623(a) to be triggered.

Finally, Appellants purport to identify a difference between Texas's definition of residence and the definition at 8 U.S.C. § 1101(a)(33). LUPE Br. at 40. It is not clear that there is any meaningful difference between the Texas definition ("a

person's home or other dwelling place," Texas Educ. Code § 54.0501(6)) and the definition in Section 1101 ("his principal, actual dwelling place in fact, without regard to intent"). In any event, it is absurd to contend that, to fall within Section 1623(a)'s preemptive scope for benefits "on the basis of residence," a state's definition of residence must precisely match federal law—and indeed, that a state's provision of benefits is not preempted if it uses a *broader* definition of residence (as Appellants claim Texas law does).

### 3. The challenged provisions do not provide the same benefits to citizens and nationals of the United States who are not residents of Texas.

There should be no room for serious dispute that in-state tuition is not a benefit that is available to out-of-state American citizens and nationals. As this Court recognized, nonresidents pay substantially higher tuition (perhaps approximately nine times higher, *see supra* p. 5). That differential treatment violates Section 1623(a).

That fundamental point does not change merely because, as Appellants note, some United States citizens who are not residents of Texas are able to pay in-state tuition. LUPE Br. at 45. As this Court noted in *Young Conservatives*, Section 1623(a) "requires that all U.S. citizens be eligible for a benefit, without regard to residency, before any alien be able to receive the same benefit (based on residency)." 73 F.4th at 312.

Appellants dispute this, noting that Section 1623(a) refers to "a citizen or national of the United States," not "all citizens or nationals." LUPE Br. at 45 (quotation marks omitted). But Section 1623(a) says that "*an* alien shall not be eligible on the basis of residence within a State" for a postsecondary education benefit unless "*a* citizen or national of the United States is eligible for *such* a benefit (*in no less an amount, duration, and scope*) without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) (emphases added). The meaning of that parallel structure is straightforward. Congress meant to prevent aliens who are not lawfully present from receiving better treatment than nonresident citizens or nationals who are similarly situated. It plainly does not mean that Section 1623(a) is entirely defeated by the presence of any nonresident U.S. citizen who receives the relevant benefit, regardless of the circumstances. Some nonresident U.S. citizens receive merit- or need-based scholarships, for example, and it would be absurd to suggest that the existence of one student who receives a scholarship that reduces the tuition obligation to the in-state level renders Section 1623(a) a dead letter.

By contrast, this language means that aliens who are not lawfully present remain eligible for in-state tuition under the same terms that non-resident citizens are. So, to take just a few of the examples discussed below, for the narrow circumstances where Texas allows U.S. citizens who are *not* Texas residents to pay in-state tuition—e.g., certain Olympic athletes, registered nurses authorized to

practice who are enrolled in a higher nursing degree program and who intend to teach in Texas in a program designed to prepare students for licensure as registered nurses—aliens who are not lawfully in the United States are eligible to receive benefits on the same terms (whether or not they reside in Texas). And the aliens would be subject to the same conditions (e.g., that qualifying Olympic athletes can only receive in-state tuition at the University of Texas Rio Grande Valley and Texas Southmost College).

Appellants do not actually provide an alternative interpretation, at least not expressly. Appellants' position appears to be that Section 1623(a) disappears entirely so long as a single non-resident citizen in the entire nation is also eligible for the relevant benefit. LUPE Br. at 45. Appellants are apparently reluctant to state this position expressly, and understandably so; in addition to being contrary to Section 1623(a)'s plain text, it is obviously untenable, as it would deprive the statute of virtually all practical effect. Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Texts 63 (2012) ("The presumption against ineffectiveness ensures that a text's manifest purpose is furthered, not hindered.").

Appellants' survey of the Texas Education Code underscores the point. Appellants contend that the "Texas Education Code grants many, varied groups of students—some residents, some not—access to the resident tuition rate at Texas institutions." LUPE Br. at 46. But those nonresident exceptions are, unsurprisingly,

extremely narrow. *See, e.g.*, Texas Educ. Code § 54.214 (individuals who have already earned a competitive academic scholarship or stipend in a clinical and biomedical research training program designed to lead to both doctor of medicine *and* doctor of philosophy degrees); *id.* § 54.206 (foreign service officer employed by the Department of State, but only if the foreign service officer is assigned to an office of the department of state that is located in a foreign nation that borders Texas); *id.* § 54.223 (certain Olympic athletes who, if they meet all the provision's requirements, are entitled to in-state tuition at in the University of Texas Rio Grande Valley and Texas Southmost College only); *id.* § 54.251 (a registered nurse who is already authorized to practice professional nursing in Texas, and who is enrolled in a program for a higher degree in nursing, and who intends to teach in a program in Texas designed to prepare students for licensure as registered nurses); *id.* § 54.241 (members of specified military components and their spouses and children, but only insofar as they are actually assigned to duty in Texas); *id.* § 54.231 (residents of Arkansas, Louisiana, New Mexico, and Oklahoma, only at Texas A&M University-Texarkana, Lamar State College-Orange, Lamar State College-Port Arthur, a Texas public junior college, or a public technical institute, only at an institution situated in a county immediately adjacent to the state in which the nonresident student resides).

More to the point, virtually all states likely have similar exceptions allowing non-residents to pay in-state tuition under exceedingly narrow circumstances.

Indeed, as Appellants note, some of Texas's exceptions are based on reciprocal agreements with other states. LUPE Br. at 45. Thus, Appellants' interpretation would make Section 1623(a) entirely ineffectual. It is that interpretation, and not the natural one applied by the district court, that is "absurd." LUPE Br. at 50.

### 4. Appellants' interpretive and constitutional arguments lack merit.

Appellants also make various interpretive and constitutional arguments, none of which save the challenged Texas provisions from preemption.

Appellants invoke a supposed presumption against preemption. But initially, there is no dispute that Section 1623(a) contains a preemption clause, which "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same." *Young Conservatives*, 73 F.4th at 313. And for the reasons explained above and contrary to Appellants, there is likewise no serious question that the express preemption clause encompasses in-state tuition, which not only follows from the plain text of the statute, but which was also the main reason for the provision in the first place. *See supra* p. 19. In any event, in construing Section 1623(a), this principle at most is a tool for choosing between competing plausible interpretations. For the reasons discussed above, Appellants' understanding of Section 1623(a), in addition to being flatly contrary to that statute's text, is decidedly not plausible. To summarize, in Appellants' telling, Section 1623(a) does not apply to in-state tuition rates at all but, if it does, preempts state

laws providing in-state tuition to aliens not lawfully present in the United States on the basis of residence only to the following extent:

- Such benefits must be provided *exclusively* on the basis of residence;

- Residence-adjacent criteria such as graduation from a state high school are not based on residency even if the criterion is an almost perfect proxy for residency and even if the State used the criterion expressly to subvert Section 1623(a);

- The Texas scheme is not based on residency even though the one subsection Appellants address requires *both* graduation from a Texas high school and continuous residence within Texas (and despite that Appellants do not appear to dispute that the other two subsections are based on residence);

- Whether the state in fact provides in-state tuition to those it considers residents of the state—indeed, whether the statute itself is phrased as a residence standard—is "beside the point";

- Any additional condition a state imposes means that the benefit is not provided on the basis of residence—even if, as here, the "condition" is wholly ministerial and does not meaningfully narrow the aliens eligible;

- Even if the state provides in-state tuition based on residence, the state's definition must precisely mirror the definition used under federal law; and

- In any event, all aliens who are not lawfully present in the United States are eligible for in-state tuition on the basis of residence so long as a single non-resident citizen or national in the entire country is also eligible.

Those restrictions would deprive Section 1623(a) of all practical meaning. Indeed, Appellants appear to suggest that Section 1623(a) should not be read to impose a

restriction on eligibility at all, but only as a defense a state could invoke against litigants seeking to force the state to expand postsecondary access. LUPE Br. at 51. No canon of construction supports reducing Congress's choice to nothing in this way. *See Abramski v. United States*, 573 U.S. 169, 181 (2014) (rejecting interpretation that would render statute "utterly ineffectual"); *see also supra* p. 30.

Appellants also contend that "a narrower reading would harmonize Section 1623 with Section 1621." LUPE Br. at 50. We have already explained why Section 1621 in no way supports Appellants' contention that the term "benefit" in Section 1623 does not encompass in-state tuition. *See supra* pp. 18-19. Appellants note that Section 1621 provides that a state can provide through enactment of a state law "that an alien who is not lawfully present in the United States is eligible for any State or local public benefit for which such alien would otherwise be ineligible under [8 U.S.C. § 1621] (a)." 8 U.S.C. § 1621(d). But the simple response is that Congress did not provide analogous authority in Section 1623(a).

Appellants also contend that "Congress could have been concerned about a scenario in which students would sue a state that has chosen not to expand postsecondary education access in an effort to obtain such access." LUPE Br. at 51. But in addition to the point above—that Congress obviously did not pass Section 1623(a) for this purpose, let alone solely for this purpose—this Court has already

held that Section 1623(a) cannot be used offensively by non-resident citizens to obtain the lower in-state rate. *Young Conservatives*, 73 F.4th at 313-14.

That leaves Appellants' claim that Section 1623(a), so construed, violates the Tenth Amendment. It does not. The constitutional authority for Section 1623(a) is straightforward. There is nothing constitutionally suspect about Congress—pursuant to its broad powers over immigration and foreign affairs—directing that aliens who are not lawfully present in the United States are ineligible for benefits based on their (unlawful) residence within a State that are denied to United States citizens. *See Plyler v. Doe*, 457 U.S. 202, 225 (1982) ("Although it is a routine and normally legitimate part of the business of the Federal Government to classify on the basis of alien status, and to take into account the character of the relationship between the alien and this country, only rarely are such matters relevant to legislation by a State." (quotation marks and citations omitted)). Indeed, SAT acknowledges that "Congress has the power to regulate on matters of immigration" and that Congress would have been "within its authority to completely foreclose benefits to students without lawful immigration status." SAT Br. at 42; *see also id.* ("A statute that did that would be nested within congressional power over immigration by specifically regulating the conduct of private actors."). There is thus no constitutional problem with Congress taking the lesser step of limiting the availability of such benefits in certain circumstances.

35

Appellants' counterarguments lack merit. SAT invokes the Supreme Court's decision in *Murphy v. National Collegiate Athletic Association*, 584 U.S. 453 (2018), for the proposition that Congress may not tell a state what it "'may and may not do,'" SAT Br. at 43 (quoting *Murphy*, 584 U.S. at 474) and that "'conspicuously absent from the list of powers given to Congress is the power to issue direct orders to the governments of the States,'" SAT Br. at 43 (quoting *Murphy*, 584 U.S. at 471). But the point of *Murphy* was that Congress could not force a state to legislate. Specifically, by providing that a State could "authorize by law or compact . . . a lottery, sweepstakes, or other betting, gambling, or wagering scheme based . . .on" competitive sporting events, 28 U.S.C. § 3702(1), Congress purported to require States to make certain conduct illegal under state law, 584 U.S. at 474-75; *see also id.* at 475 (characterizing law as "command[ing] state legislatures to enact or refrain from enacting state law"). The Court made clear, however, that Congress could preempt state law by providing or eliminating a right or obligation held by private citizens that the state would otherwise have afforded or withheld. *See id.* at 477 (explaining an ordinary, valid preemption law as follows: "Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with the federal law; and therefore the federal law takes precedence and the state law is preempted."). The logic of *Murphy* thus

confirms that Section 1623 is a valid exercise of Congress's power to preempt state law.

Appellants also assert in cursory fashion that Section 1623(a) runs afoul of anti-commandeering principles. LUPE Br. at 48. That too is plainly wrong. Section 1623(a) does not require Texas's government to enforce a federal regulatory scheme, or indeed, to do anything. It simply provides a substantive rule of law, preempting Texas law to the contrary. *Murphy*, 584 U.S. at 471.

SAT's assertion that Section 1623(a) undermines political accountability likewise lacks merit. Even assuming that "political accountability" were a relevant freestanding principle in this case, none of SAT's arguments on this point have merit. *Contra* SAT, Section 1623(a) does not require Texas to provide in-state tuition rates to all U.S. citizens and nationals, SAT Br. at 48-49—and indeed, it seems exceedingly unlikely that Texas will in fact take that step. Nor does it "force[] state legislatures to enact or maintain policies not of their choosing." SAT Br. at 48. And SAT does not explain how a judicial decision correctly holding that federal law preempts state law making aliens not lawfully present in the United States eligible for in-state tuition on the basis of residency means that "[c]itizens can no longer tell whether their state officials or Congress are to blame" for this outcome.

Finally, Appellants make constitutional avoidance arguments. LUPE Br. at 51 ("The constitutional-avoidance canon therefore counsels against reading Section

1623(a) as preempting the Texas Dream Act."); SAT Br. at 40 n.8. But constitutional avoidance "is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts." *Clark v. Martinez*, 543 U.S. 371, 381 (2005). For the reasons discussed above, Appellants' construction of Section 1623(a) is not plausible, and in any event, their constitutional arguments are insubstantial. And "a weak constitutional argument and a weak statutory argument do not add up to a strong constitutional avoidance argument." *United States v. Blewett*, 746 F.3d 647, 660 (6th Cir. 2013) (en banc), *superseded by statute on other grounds as stated in United States v. Richardson*, 960 F.3d 761, 763 (6th Cir. 2020).

## II.    Appellants' additional challenges to the consent judgment lack merit.

In addition to their unpersuasive efforts to defend the Dream Act's legality, Appellants make a number of jurisdictional and procedural challenges to the final judgment. None have merit.

1.    There should be no serious dispute that the district court had subject matter jurisdiction over this case. Appellants could not plausibly dispute—and do not dispute—that the United States had Article III standing to challenge a state law that interferes with the immigration policy set out by Congress. Instead, they effectively argue that Texas stripped the district court of jurisdiction by adopting a litigating position that aligned with the position taken by the United States. The

United States does not lose the right to a judicial remedy merely because its opponent agrees with its legal position. And because the law was continuing to be applied and enforced by Texas public institutions until the United States filed suit, its legal position neither redressed the United States' injury nor otherwise deprived the United States of standing.

The Supreme Court has thus squarely rejected that argument. *See United States v. Windsor*, 570 U.S. 744, 758-59 (2013) (parties' agreement that Defense of Marriage Act was unconstitutional did not deprive the district court or appellate courts of jurisdiction where, among other things, the United States continued to comply with the statute and would not pay money to plaintiff absent a court order requiring it to do so); *INS v. Chadha*, 462 U.S. 919, 939-40 (1983) (parties' agreement that statute allowing one House of Congress to order the Executive to deport the respondent did not deprive courts of jurisdiction where the Executive would in fact deport the respondent unless courts prohibited it from doing so). Indeed, not even the dissenters in *Windsor* doubted that the district court had jurisdiction notwithstanding the parties' agreement on the unconstitutionality of the Defense of Marriage Act; the dissent merely urged that there was no jurisdiction over the appeal once the parties got what they wanted. 570 U.S. at 781 (Scalia, J., dissenting) ("Windsor's injury was cured by the judgment in her favor."). That, of course, is not a point that Appellants raise here.

Appellants attempt to distinguish *Windsor* (and presumably *Chadha*, which neither group of Appellants discuss), by reasoning that public universities enforce the tuition rules rather than the state itself. LUPE Br. at 32. That misses the point. There is no dispute that the public universities are subject to the direction of the state such that the judgment here will redress the United States' injury. That is why Appellants filed this appeal.

And in the cases cited by Appellants postdating *Windsor*, jurisdiction was found lacking because the party purportedly seeking relief from the courts *had already obtained* relief such that the court's judgment would have no real-world effect. *See National Labor Relations Board v. Constellium Rolled Prods. Ravenswood, LLC*, 43 F.4th 395, 403 (4th Cir. 2022) ("The consent judgment the Board seeks only maintains this status quo by requiring Constellium to do what it is already bound to do, which all parties agree Constellium is already doing."); *Pool v. City of Houston*, 87 F.4th 733, 734 (5th Cir. 2023) (challenged ordinance was not in fact being enforced). Here, by contrast, the district court's judgment very obviously has real-world consequences. Appellants themselves observe that the judgment operates to deprive "[t]housands of students" of in-state tuition. LUPE Br. at 7; *see also* ROA.359-60 (single community college contending that the consent judgment affects approximately 440 of its students).

Appellants' position is also untenable. On Appellants' theory, the United States (or any other litigant) would lack a remedy against a state as to an unconstitutional law whenever its counterparty *expresses agreement* on the merits of the United States' legal position—even if the law continues to be enforced. Indeed, on this logic, a party could perhaps even immunize a law, regulation, or allegedly unlawful practice merely by purporting to agree with a plaintiff's legal position. Appellants imply that the United States could sue public universities that provide in-state tuition, LUPE Br. at 32-33, but such a suit—there are over 200 post-secondary institutions in Texas[3]—would be enormously complicated. And there is no Article III reason to require it. The State of Texas is a proper defendant in a suit challenging a Texas statute. And that Texas and the United States both agreed that federal law preempts requires the Texas statute simply does not implicate the district court's subject matter jurisdiction.

2.      Appellants next contend that the consent judgment was void because it was entered without due process. LUPE Br. at 33-34. But Appellants cite no authority for the proposition that, before entering a consent judgment, due process requires notice and opportunity to be heard to *non-parties* to that judgment. Appellants contend that "protections apply with particular force where a court's

---

[3] https://en.wikipedia.org/wiki/List_of_colleges_and_universities_in_Texas (last visited December 25, 2025).

decree carries severe practical consequences for affected nonparties." LUPE Br. at 34. But the only purported authority it can muster for that proposition is a more than 40-year-old concurring opinion—and that opinion was discussing "the circumstances under which, and the procedure by which, a court may enter a consent decree *in a multiparty suit* when some, but not all, of the litigants agree to the decree and parts, but not all, of the decree affect the rights of a nonconsenting party." *United States v. City of Miami, Fla.*, 664 F.2d 435, 436 (5th Cir. 1981) (Rubin, J., concurring) (emphasis added). The remainder of that opinion, and this Court's opinion in *League of United Latin Am. Citizens, Council No. 4434 v. Clements*, 999 F.2d 831 (5th Cir. 1993), simply reflects the proposition—with which the United States fully agrees—that a district court must analyze a proposed consent judgment, and ensure that it complies with the law as well as any applicable equitable considerations, and "must not merely sign on the line provided by the parties." *Id.* at 846 (quoting *City of Miami*, 664 F.2d at 440 (Rubin, J., concurring)).

The other cases on which Appellants rely are far afield. LUPE relies on the Supreme Court's decision in *Mullane v. Central Hanover Bank*, 339 U.S. 306 (1950), but that case involved notice requirements to beneficiaries of a common trust fund before judicial settlement of the accounts of that trust fund. SAT's reliance on *Goldberg v. Kelly*, 397 U.S. 254 (1970) is similarly inapt. The Court there determined that, when a state terminates welfare benefits to a particular individual,

it must provide at least some sort of evidentiary hearing. 397 U.S. at 260. That case involved the State's termination of benefits to an individual based on individualized determinations of fact. *Id.* at 269 (stating that "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses"). Neither of these cases suggests that due process requires nonparties to be provided notice and an opportunity to be heard when a state statute is challenged as unlawful on purely legal grounds. In any event, the Court in that case noted that "some governmental benefits may be administratively terminated without affording the recipient a pre-termination evidentiary hearing." *Id.* at 263. It simply held that the welfare benefits at issue in that case could not be because "[f]or qualified recipients, welfare provides the means to obtain essential food, clothing, housing, and medical care." *Id.* at 264.

Finally, even if some form of notice and opportunity to be heard were required here, the district court ultimately received adversarial briefing on the relevant merits issue (whether the Texas provisions are preempted) and resolved it on the merits. Indeed, the district court denied intervention on August 15 in an opinion resolving the merits, and Appellants do not suggest that they experienced any constitutionally actionable deprivation after the judgment issued but before August 15.

**3.**    Appellants next contend that the district court abused its discretion by denying relief under Rule 60(b)(6), which allows vacatur for "any other reason that

justifies relief." Fed. R. Civ. P. 60(b)(6). None of Appellants' arguments have merit, let alone demonstrate an abuse of discretion. Appellants first contend that "[t]he consent judgment, declaring a state law invalid without a real case or controversy, exceeds constitutional authority and violates the separation of powers." LUPE Br. at 36. This just reprises Appellants' argument that the district court lacked subject-matter jurisdiction over this case, and that argument fails for reasons previously explained. Appellants next contend that upholding the consent judgment risks injustice because that judgment purportedly "encourages collusive suits, allowing parties to bypass legislatures and secure judicial rulings without genuine opposition." LUPE Br. at 37. But again, that is not what happened here. Appellants were permitted to present their purely legal arguments that the Dream Act is not preempted, which the district court rejected on de novo review following adversarial briefing. And Appellants are now appealing that denial of intervention on futility grounds—and if successful on appeal, they at the very least will be entitled to challenge the underlying judgment on the merits. This is not a basis for relief under Rule 60.

Finally, Appellants contend that the equities support vacatur because, according to them, the Dream Act "has opened higher education to more than 57,000 Texas students" and has led to other positive outcomes. LUPE Br. at 37. But Appellants' policy arguments are not a basis for ignoring the preemptive language

of Section 1623(a). And this is certainly not a cognizable Rule 60 argument. Indeed, courts have generally required vacatur of an injunction or consent judgment when that order is no longer supported by law (because the law has been superseded or changed in relevant respects) *California by & through Becerra v. U.S. Env't Prot. Agency*, 978 F.3d 708, 713-14 (9th Cir. 2020) (collecting cases from the Supreme Court and courts of appeals). Here, by contrast, Appellants are suggesting that the district court should have vacated the consent judgment under Rule 60 and allowed the challenged Texas provisions to go back into effect, in the very opinion where it confirmed that the provisions are *unlawful*. No authority supports that argument.

### III. The district court correctly denied intervention as futile and, in any event, vacatur of the consent judgment is not warranted.

The district court's denial of intervention was otherwise correct. "[A] proper basis for denying leave to intervene may be a finding that the proposed intervention would fail to state a claim." *Saavedra v. Murphy Oil U.S.A., Inc.*, 930 F.2d 1104, 1109 (5th Cir. 1991) (quotation marks omitted); *accord Atkins v. Gen. Motors Corp.*, 701 F.2d 1124, 1130 n.5 (5th Cir. 1983) (district court properly denied certain plaintiffs intervention where their claims were barred by the applicable statute of limitations). As the district court correctly noted, this is analogous to a Rule 12 standard (under which a case can be resolved on the law, without factual development or discovery). ROA.740-41.

This is thus not a case, as Appellants suggest, where their inability to participate in the proceedings somehow prejudiced their ability to prove their assertions. LUPE Br. at 24 (faulting district court for "seemingly expecting prospective intervenors to prove (despite staying briefing of the stay and vacatur motions) that they have a winning argument on the merits before allowing them to participate in the litigation to make that very argument"). Where, as here, the relevant question is a pure question of law—of the sort that would be properly resolved at the motion-to-dismiss stage—denial of intervention is appropriate if the resolution to that question is clear. Indeed, SAT itself frames the issue as whether "the proposed defenses are *legally sufficient*…" SAT Br. at 6 (emphasis added); *see also* SAT Br. at 20 (framing issue as whether "a proposed claim or defense is facially frivolous *or legally insufficient*" (emphasis added)). But the problem here is that Appellants' defenses are not legally sufficient, since the relevant state provisions are preempted as a matter of law.

Appellants also contend that the motion-to-dismiss standard is inapplicable here because they sought to intervene as Defendants rather than Plaintiffs. LUPE Br. at 26. This is a distinction without a difference. At least where, as here, the underlying suit involves a pure question of law, a proposed intervention can be legally futile for failing to state a legally viable defense to a preempted law, just as it can be legally futile for failing to state a claim. *See, e.g.*, 7C Federal Practice &

Procedure, § 1914 (3d ed.) ("The proposed pleading must state a good claim for relief or a good defense." (footnotes omitted)); *Rhode Island Federation of Teachers., AFL-CIO v. Norberg*, 630 F.2d 850, 854-55 (1st Cir. 1980) (parents not entitled to intervene as of right in a suit for declaratory and injunctive relief against Rhode Island statute where they did not plead a colorable defense to the challenged statute). Appellants do not explain how a contrary rule would make any practical sense: if the intervenor has no viable defense, there is no reason to prolong or complicate proceedings. Here, Appellants have no viable defense of Sections 54.051 and 54.052. The district court appropriately denied intervention on that basis.

Relatedly, Appellants appear to suggest that intervention may be denied as legally futile only if the claim or defense is sanctionably frivolous (or some similar standard). LUPE Br. at 25. That is also not correct, and in any event makes no practical difference in this case. While this Court ultimately upheld the district court's imposition of sanctions in *Pin v. Texaco*, 793 F.2d 1448, 1455 (5th Cir. 1986), the Court's conclusion that the claims were sanctionable was not necessary to (or part of) its preceding discussion that the complaint in fact failed to state a claim, *id.* at 1451-55. And in *Rhode Island Federation*, the Court's conclusion that the proposed intervenor failed to raise even a colorable defense is best read as an explanation for the Court's action—the court of appeals affirmed the denial of intervention on this basis, even though it was not the ground on which the district

court relied—not as a suggestion that legal futility requires the absence of an even colorable claim or defense. Similarly, in the other cases SAT cites, the courts simply affirmed denial of intervention because the putative intervenor lacked viable claims; the courts did not hold that the claims were frivolous or suggest any similar requirement. *In re Deepwater Horizon*, 546 F. App'x 502, 506 (5th Cir. 2013) ("[W]hen a motion to intervene would be futile because the district court is without power to grant the relief sought by the movant, we have held that the motion to intervene must be denied."); *N.Y. Life Ins. Co. v. Sahani*, 730 F. App'x 45, 50 (2d Cir. 2018) ("The district court did not abuse its discretion by denying Singh's motion on behalf of the Estate to intervene pursuant to Rule 24 on the grounds of futility, as the Estate asserted no viable claims.").[4]

But even if Appellants were correct that futility is not a basis for denying intervention—or that futility requires the absence of even a colorable defense, as opposed to a meritorious one—that would *at most* suggest that the district court should have granted intervention and then denied the Rule 60(b) motion on the

---

[4] Similarly, in the district court case on which SAT relies, the court noted that a motion for intervention can be denied as futile and that the relevant question is whether the putative intervenor has a legally sufficient claim or defense. *King v. Flowers Foods, Inc.*, No. 21-579-BAJ-SDJ, 2023 WL 2731041, at *2 (M.D. La. Mar. 30, 2023). The court ultimately held that the motion for permissive intervention was not futile because it concluded that the question of timeliness depended on a factual issue that could not be resolved based on the pleadings (whether the movant no longer contracted with the defendant). *Id.* at *4. That reasoning has no application here.

merits because the judgment reflected an accurate statement of the law, confirmed after adversary presentation. There is no practical difference between that outcome and denying intervention after squarely addressing the merits.

Relatedly, this underscores that, even if this Court concludes that the district court incorrectly denied intervention for some technical reason, it should not vacate the underlying judgment. *Contra* LUPE Br. at 53-54. Where a court of appeals reverses a district court's denial of intervention and a final judgment has been entered, "then the applicant [has] standing to appeal the district court's judgment." *DeOtte v. State*, 20 F.4th 1055, 1067 (5th Cir. 2021) (quoting *DBSI/TRI IV Ltd. Pship v. United States*, 465 F.3d 1031, 1037 (9th Cir. 2006)). But the court need not vacate the underlying judgment *before* that appeal is taken, and it should not do so here if it reverses the intervention denial on this basis—or on some other basis that does not call into question the district court's conclusion that the Texas provisions are unlawful (such as, for example, Appellants' argument that the judgment was not preceded by sufficient notice, *see supra* pp. 41-43).

## CONCLUSION

The Court should affirm the district court's denial of intervention.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. McARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL TENNY

 */s/ Andrew M. Bernie*
ANDREW M. BERNIE
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7539*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3511*

December 2025

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 12,046 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Times New Roman 14-point.

*/s/ Andrew M. Bernie*
ANDREW M. BERNIE

**CERTIFICATE OF SERVICE**

I certify that on December 26, 2025, a true and correct copy of this Brief was filed with the Clerk for the United States Court of Appeals for the Fifth Circuit via the Court's electronic filing system, which will forward a copy to all counsel of record.

*/s/ Andrew M. Bernie*

ANDREW M. BERNIE