No. 25-10898

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
                            Plaintiff – Appellee,

v.

STATE OF TEXAS,
                            Defendant – Appellee,

STUDENTS FOR AFFORDABLE TUITION; LA UNION DEL PUEBLO
ENTERO; AUSTIN COMMUNITY COLLEGE; OSCAR SILVA,
                            Movants – Appellants.

# BRIEF FOR *AMICUS CURIAE*
# FEDERATION FOR AMERICAN IMMIGRATION REFORM
# IN SUPPORT OF APPELLEES

On Appeal from the United States District Court for the Northern District of Texas, Case No. 7:25-cv-00055, Hon. Reed C. O'Connor, U.S. District Judge

MATT A. CRAPO
CHRISTOPHER J. HAJEC
DAVID L. JAROSLAV
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Suite 330
Washington, DC 20001
Telephone: (202) 328-7004
mcrapo@fairus.gov

Attorneys for *Amicus Curiae*

# SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rule 28.2.1 and Fed. R. App. P. 26.1, *amicus curiae* Federation for American Immigration Reform makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

3) The following entity has an interest in the outcome of this case: Federation for American Immigration Reform.

DATED: January 2, 2026                Respectfully submitted,

                                             /s/ Matt Crapo

# TABLE OF CONTENTS

                         **Page**

SUPPLEMENTAL STATEMENT OF INTERESTED PERSONS

TABLE OF AUTHORITIES ................................................................................. ii

IDENTITY AND INTEREST OF *AMICUS CURIAE* ...............................................1

INTRODUCTION .....................................................................................................1

ARGUMENT .............................................................................................................2

 I. Congress has prohibited providing instate tuition benefits to illegal aliens that are not also offered to out-of-state U.S. citizens ................................2

 II. Texas's DREAM Act is preempted ............................................................7

CONCLUSION ..........................................................................................................9

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000) ............................................................................................. 3

*Gibbons v. Ogden*,
22 U.S. (9 Wheat.) 1 (1824) ................................................................................ 3

*Hines v. Davidowitz*,
312 U.S. 52 (1941) ............................................................................................. 3

*Kansas v. Garcia*,
589 U.S. 191 (2020) ........................................................................................... 3

*Lorillard Tobacco Co. v. Reilly*,
533 U.S. 525 (2001) ........................................................................................... 3

*Medtronic, Inc. v. Lohr*,
518 U.S. 470 (1996) ........................................................................................... 5

*Murphy v. NCAA*,
584 U.S. 453 (2018) ........................................................................................... 7

*N. Nat. Gas Co. v. Iowa Utils. Bd.*,
377 F.3d 817 (8th Cir. 2004) .............................................................................. 3

*Plyler v. Doe*,
457 U.S. 202 (1982) ........................................................................................... 8

*Savage v. Jones*,
225 U.S. 501 (1912) ........................................................................................... 3

*United States v. Hayes*,
555 U.S. 415 (2009) ........................................................................................... 5

*Wyeth v. Levine*,
555 U.S. 555 (2009) ........................................................................................... 4

## STATUTES

Illegal Immigration and Immigrant Responsibility Act ("IIRIRA"),
 Pub. L. 104-208, 110 Stat. 3009-546 (1996) .......................................................... 4

Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA"),
 Pub. L. No. 104-193, 110 Stat. 2105 (1996) .......................................................... 6

8 U.S.C. § 1601(6) ............................................................................................................ 6

8 U.S.C. § 1621(a) ............................................................................................................ 6

8 U.S.C. § 1621(c) ............................................................................................................ 6

8 U.S.C. § 1621(d) ............................................................................................................ 6

8 U.S.C. § 1623(a) ............................................................................................... 2, 4, 5, 7

8 U.S.C. § 1623(b) ............................................................................................................ 4

Tex. Educ. Code. § 54.051(m) .......................................................................................... 2

Tex. Educ. Code. § 54.052(a) ........................................................................................... 2

Tex. Educ. Code. § 54.052(a)(3) ....................................................................................... 7

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. VI, cl. 2 ................................................................................................... 2

## MISCELLANEOUS

Conf. Rep. 104-828, H.R. 2202 (Sept. 24, 1996) .............................................................. 5

Fed. R. App. P. 29(a)(2) .................................................................................................... 1

# IDENTITY AND INTEREST OF *AMICI CURIAE*[1]

*Amicus curiae* Federation for American Immigration Reform (FAIR) is a non-profit 501(c)(3) public interest organization dedicated to informing the public about the effects of both unlawful and lawful immigration, and to defending in court the interests of Americans in limiting overall immigration, enhancing border security, and ending illegal immigration. FAIR has been involved in more than 100 legal cases since 1980, either as a party or as *amicus curiae*. The decision in this case will likely have an impact on the incentive structures for illegal aliens to remain unlawfully in the United States as well as the ability of the federal government to identify and deal efficiently, fairly, and safely with an illegal alien population estimated to exceed 18 million people. *Amicus* FAIR has direct and vital interests in discouraging illegal immigration and in defending the executive branch's ability to address the current illegal alien crisis.

# INTRODUCTION

A principal aim of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") was to remove state-level incentives that

---

[1] Pursuant to Fed. R. App. P. 29(a)(2), all parties have consented to the filing of this *amicus* brief. No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

encourage unlawful immigration by denying public benefits to aliens not lawfully present. To that end, Congress enacted 8 U.S.C. § 1623(a), which provides that "[n]otwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence … for any postsecondary education benefit unless a citizen … is eligible for such a benefit … without regard to … residence." The relevant provisions of the Texas DREAM Act, Tex. Educ. Code. §§ 54.051(m) and 54.052(a), flout that clear command. These provisions confer instate tuition rates on illegal aliens "on the basis of residence" by expressly conferring this benefit only on those who establish three years of Texas residence, leaving U.S. citizens who reside elsewhere, and who by definition cannot satisfy the residence requirement, ineligible for instate tuition rates. Those residency-based benefits are therefore expressly preempted by § 1623(a) and void under the Supremacy Clause; Texas should therefore be enjoined from enforcing them, as the State itself has recognized and conceded.

## ARGUMENT

### I. Congress has prohibited providing instate tuition benefits to illegal aliens that are not also offered to out-of-state U.S. citizens.

The Supremacy Clause of the Constitution provides that federal law is "the Supreme law of the land, … any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Thus, "[a] fundamental principle of the Constitution is that Congress has the power to preempt state law."

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). When a state enactment "contradict[s]" federal law, it is "without effect." *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 211 (1824).

There are three types of preemption: express, conflict, and field preemption. *E.g., N. Nat. Gas Co. v. Iowa Utils. Bd.*, 377 F.3d 817, 821 (8th Cir. 2004). Express preemption is "where Congress has expressly stated that it intends to prohibit state regulation in an area." *Id.* (citing *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001)). Conflict preemption lies whenever the "ordinary meaning of federal and state law directly conflict" so that the two are in "logical contradiction." *Kansas v. Garcia*, 589 U.S. 191, 214 (2020) (Thomas, J., concurring) (internal quotation marks and citation omitted). Conflict preemption also takes place when a state law stands as an obstacle to federal law. "If the purpose of the act cannot otherwise be accomplished—if its operation within its chosen field else must be frustrated and its provisions be refused their natural effect—the state law must yield to the regulation of Congress within the sphere of its delegated power." *Savage v. Jones*, 225 U.S. 501, 533 (1912), *quoted in Hines v. Davidowitz*, 312 U.S. 52, 67 n.20 (1941). The judgment of courts about what constitutes an unconstitutional obstacle to federal law is "informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby*, 530 U.S. at 373.

In 1996, as part of the Illegal Immigration and Immigrant Responsibility Act ("IIRIRA"), Pub. L. 104-208, 110 Stat. 3009-546, Congress enacted a variety of measures to discourage illegal immigration and strengthen the enforcement of federal immigration laws. One such provision, codified at 8 U.S.C. § 1623(a), is a one-sentence prohibition that forbids a state from providing resident tuition rates to any illegal alien unless that state provides resident tuition rates to all United States citizens, regardless of their states of residence:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a).[2] Section 1623(a) thus confers on every U.S. citizen a federal right to receive any instate tuition benefit a State extends to unlawfully present aliens, regardless of the citizen's state of residency.

The Supreme Court has long held that legislative intent is the "ultimate touchstone in every pre-emption case." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quotation omitted). Congressional intent "primarily is discerned from the language of the pre-emption statute and the statutory framework surrounding it,"

---

[2] 8 U.S.C. § 1623(b) merely adds that subsection (a) "appl[ies] to benefits provided on or after July 1, 1998."

4

including the "structure and purpose of the statute as a whole." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996) (quotations omitted).

The legislative intent behind, and context of, 8 U.S.C. § 1623 confirms its objective of denying public benefits to illegal aliens unless such benefits are extended to all U.S. citizens regardless of their state of residence. And Congress expressed its intent to preempt contrary state laws by making its restriction on postsecondary education benefits in section 1623(a) applicable "[n]otwithstanding any other provision of law."

In passing 8 U.S.C. § 1623, Congress sought to make it cost-prohibitive for states to grant instate tuition benefits to illegal aliens. The Conference Committee Report states: "This Section provides that illegal aliens are not eligible for in-state tuition rates at public institutions of higher education." Conf. Rep. 104-828, H.R. 2202, 240 (Sept. 24, 1996). Statements by leading proponents of the measure in both the House and the Senate further confirm this purpose. In fact, every Member of Congress who made a recorded statement concerning the text that would become 8 U.S.C. § 1623 agreed with the description contained in the Committee Report. *See United States v. Hayes*, 555 U.S. 415, 428-29 (2009) (rejecting a party's interpretation of a statute's text where the legislative record supported a contrary reading and contained "no suggestion" supporting the party's interpretation).

5

In the same year Congress enacted IIRIRA, it also passed the Personal Responsibility and Work Opportunity Reconciliation Act ("PRWORA"), Pub. L. No. 104-193, 110 Stat. 2105 (1996), in which Congress explicitly codified its objective in denying public benefits to illegal aliens: "It is a compelling government interest to remove the incentive for illegal immigration provided by the availability of public benefits." 8 U.S.C. § 1601(6). PRWORA therefore included a provision intended to stop the flow of state and local public benefits to illegal aliens. 8 U.S.C. § 1621(a). The proscribed "public benefits" include "any … postsecondary education … or any other similar benefit …." 8 U.S.C. § 1621(c). Congress did, however, create a savings clause: if a state nevertheless wanted to give a public benefit to illegal aliens, Congress would not stop the state from doing so, so long as the state enacted a new law that "affirmatively provided" the public benefit to illegal aliens, to assure accountability to state taxpayers. 8 U.S.C. § 1621(d). Taken together, while Section 1621(d) allows states to provide discounted postsecondary tuition to unlawfully present aliens, section 1623(a) prohibits such a benefit from being based on residence within the state such that it excludes nonresident citizens or nationals of the United States. Thus, while States are free to provide post-secondary education benefits to unlawfully present aliens, they must extend the same benefits to U.S. citizens regardless of residency. No one argues otherwise.

## II. Texas's DREAM Act is preempted.

Sections 54.051(m) and 54.052(a) of Texas Education Code violate the purpose and text of § 1623(a). Under the Texas DREAM Act, a person qualifies for instate tuition benefits if he or she:

> (A) graduated from a public or private high school in this state or received the equivalent of a high school diploma in this state; and
> (B) maintained a residence continuously in this state for:
>    (i) the three years preceding the date of graduation or receipt of the diploma equivalent, as applicable; and
>    (ii) the year preceding the census date of the academic term in which the person is enrolled in an institution of higher education.

Tex. Educ. Code § 54.052(a)(3). By tying eligibility for instate tuition expressly to a three-year state residence requirement, this provision, combined with Texas's denial of instate tuition to out-of-state U.S. citizens, violates the federal right of the latter to be charged the same instate tuition that is charged to illegal aliens based on their residence in Texas. 8 U.S.C. § 1623(a). *See, e.g., Murphy v. NCAA*, 584 U.S. 453, 478-79 (2018) (holding that a federal law has "preemptive effect" if it can be read as "confer[ring] on private entities … a federal right to engage in certain conduct").

An *amicus* attempts to argue that the DREAM Act does not base instate tuition on residence, because, the *amicus* claims, some nonresidents—such as out-of-state students who go to boarding school in Texas, or live out-of-state close to the Texas border and attend high school in Texas—are eligible for instate tuition

7

under the Act. *See* Giveducation *Amicus* Br. at 20-21. By the Act's terms, however, such nonresident students are clearly not eligible for instate tuition, if indeed they have failed to establish Texas residency for three years. On its face, the DREAM Act bases instate tuition on residence, and is applied to confer it even on "resident" illegal aliens, and therefore violates the above-mentioned federal right of out-of-state U.S. citizens.

Nothing in *Plyler v. Doe*, 457 U.S. 202 (1982), is to the contrary. *Plyler*'s holding that children of unlawfully present aliens could not be denied access to public K–12 education cannot reasonably be extended to postsecondary education benefits. *Plyler* addressed the unique and humanitarian imperative of K–12 education—preventing children from becoming illiterate public charges. 457 U.S. at 221-23. That rationale is inapposite to subsidizing non-compulsory postsecondary education for unlawfully present aliens. And even more importantly, no statute enacted by Congress restricts K-12 education benefits to illegal aliens as § 1623(a) does here with respect to postsecondary education benefits. Accordingly, *Plyler* cannot justify Texas's postsecondary tuition scheme.

In sum, Congress enacted § 1623(a) to prevent unlawfully present aliens from receiving postsecondary education benefits that are not available to U.S. citizens and nationals regardless of their residency. Texas's instate tuition statutes confer benefits to unlawfully present aliens on the basis of residence and deny the

same benefits to nonresident U.S. citizens in violation of § 1623(a), as Texas itself has recognized and conceded. Accordingly, Texas's statutes are expressly and conflict-preempted by 8 U.S.C. § 1623(a).

## CONCLUSION

For the foregoing reasons, the district court's judgment should be affirmed.

DATED: January 2, 2026

Respectfully submitted,

/s/ Matt Crapo
MATT A. CRAPO
CHRISTOPHER J. HAJEC
DAVID L. JAROSLAV
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Suite 330
Washington, DC 20001
Telephone: (202) 328-7004
mcrapo@fairus.org

Attorneys for *Amicus Curiae*

# CERTIFICATE OF SERVICE

I certify that on January 2, 2026, I electronically filed the foregoing *amicus* brief with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ Matt Crapo

# CERTIFICATE OF COMPLIANCE

The foregoing brief complies with Fed. R. App. P. 29(a)(5) because it contains 1,984 words, as measured by Microsoft Word software, which is fewer than one-half of the 13,000 word limit for a party's principal brief under Fed. R. App. P. 32(a)(7)(B). The brief also complies with the typeface and style requirements of Fed. R. App. P. 32(a)(5) & 32(a)(6) because it has been prepared in a proportionally spaced, Roman-style typeface of 14 points or more.

DATED: January 2, 2026          Respectfully submitted,

                                                  /s/ Matt Crapo