No. 25-10898

# In the United States Court of Appeals for the Fifth Circuit

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

STATE OF TEXAS,
*Defendant-Appellee*

STUDENTS FOR AFFORDABLE TUITION, LA UNION DEL PUEBLO ENTERO; AUSTIN COMMUNITY COLLEGE; OSCAR SILVA,
*Movants – Appellants.*

On Appeal from the United States District Court
for the Northern District of Texas

## APPELLEE THE STATE OF TEXAS'S RESPONSE BRIEF

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

WILLIAM R. PETERSON
Solicitor General

WILLIAM F. COLE
Principal Deputy Solicitor General

NATHANIEL A. PLEMONS
Assistant Solicitor General
Nathaniel.Plemons@oag.texas.gov

*Counsel for Defendant-Appellee*

# Certificate of Interested Persons

No. 25-10898

United States of America,

*Plaintiff-Appellee,*

*v.*

State of Texas,

*Defendant-Appellee.*

Students for Affordable Tuition, *et al.*,

*Movants - Appellants*

Under Fifth Circuit Rule 28.2.1, appellee, as a governmental party, need not furnish a certificate of interested persons.

/s/ Nathaniel A. Plemons
Nathaniel A. Plemons
*Counsel of Record for*
*Defendant-Appellee*

## STATEMENT REGARDING ORAL ARGUMENT

The State submits that oral argument will not significantly aid the Court in its decision-making process because this case presents straightforward questions of law. Specifically, 8 U.S.C. § 1623(a)'s plain text, as well as clear precedent from this Court, demonstrates that the challenged portions of the Texas Dream Act are preempted. That means the district court properly denied Appellants' motions to intervene, and there is no basis for this Court to vacate the consent judgment. But should the Court schedule oral argument, the State requests to participate.

# TABLE OF CONTENTS

Page

Certificate of Interested Persons .................................................................i

Statement Regarding Oral Argument ..........................................................ii

Table of Authorities ....................................................................................v

Introduction ................................................................................................1

Statement of Jurisdiction ............................................................................2

Statement of the Issues ...............................................................................3

Statement of the Case .................................................................................3

Summary of Argument ................................................................................6

Standard of Review .....................................................................................8

Argument.....................................................................................................8

I.   The District Court Correctly Denied Appellants' Motions to Intervene. ..........................................................................................8

A.   Appellants' efforts to intervene would be futile because the Challenged Provisions are expressly preempted. ..............................8

1.   Futility is the first step of intervention analyses and applies to putative defense-side intervenors. ...........................................9

2.   Intervention is futile because federal law preempts the Challenged Provisions. ........................................................... 12

a.   The Challenged provisions are preempted. .......................... 12

b.   Appellants' counterarguments lack merit. ........................... 14

i.   The Challenged Provisions grant in-state tuition benefits to illegal aliens on the basis of residency. .......... 14

ii.   Discounted tuition rates constitute a "postsecondary educational benefit" within the meaning of section 1623(a). ........................................... 17

iii.   Discrete exceptions to Texas's in-state tuition rules do not disable application of § 1623(a). ................. 19

iv.   The presumption against preemption is inapplicable. ................................................................. 23

v.    Preemption of the Challenged Provisions does not violate the Tenth Amendment. ...............................24

vi.    Appellants' severability arguments lack merit. ..............25

B.    Appellants were not entitled to intervene under Rule 24. .................26

1.    Appellants do not qualify for Rule 24(a) intervention as of right. ..........................................................................27

2.    Appellants do not qualify for Rule 24(b) permissive intervention. ...................................................................33

II.    This Court Cannot Vacate the Consent Judgment. ...................................36

A.    This Court lacks appellate jurisdiction to grant Appellants' request to vacate the consent judgment. ...........................................37

B.    The Court should reject the LUPE Group's request to reverse the denial of their motion to alter or amend the judgment. ................40

Conclusion .............................................................................................. 47

Certificate of Compliance ....................................................................... 48

# Table of Authorities

**Page(s)**

**Cases:**

*8fig, Inc. v. Stepup Funny, L.L.C.*,
  135 F.4th 285 (5th Cir. 2025) ............................................................. 8

*Acuff v. United Papermakers & Paperworkers, AFL-CIO*,
  404 F.2d 169 (5th Cir. 1968) ............................................................ 35

*Akridge v. Alfa Ins. Cos.*,
  93 F.4th 1181 (11th Cir. 2024) ......................................................... 17

*Arizona v. United States*,
  567 U.S. 400 (2012) ......................................................................... 23

*Asadi v. G.E. Energy (USA), L.L.C.*,
  720 F.3d 620 (5th Cir. 2013) ............................................... 20, 21, 22

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................... 10

*BLOM Bank SAL v. Honickman*,
  605 U.S. 204 (2025) ................................................................... 46, 47

*Bostock v. Clayton County*,
  590 U.S. 644 (2020) ................................................................... 16, 17

*Bridas S.A.P.I.C. v. Gov't of Turkm.*,
  345 F.3d 347 (5th Cir. 2003) ............................................................ 33

*Bridgeport Music, Inc. v. Smith*,
  714 F.3d 932 (6th Cir. 2013) ............................................................ 40

*Brumfield v. Dodd*,
  749 F.3d 339 (5th Cir. 2014) ............................................... 10, 11, 27

*Brumfield v. La. State Bd. of Educ.*,
  806 F.3d 289 (5th Cir. 2015) ....................................................... 10, 11

*Cajun Elec. Power Coop., v. Gulf States Utilities, Inc.*,
940 F.2d 117 (5th Cir. 1991) ............................................................ 34

*Castillo v. Cameron County*,
  238 F.3d 339 (5th Cir 2001) ............................................................. 39

*City of Houston v. American Traffic Solutions, Inc.*,
  668 F.3d 291 (5th Cir. 2012) ....................................................... 31, 32

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ......................................................................... 33

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
  589 U.S. 327 (2020) ........................................................ 17

*Daniel v. Univ. of Tex. Sw. Med. Ctr.*,
  960 F.3d 253 (5th Cir. 2020) ............................................ 43

*Deanda v. Becerra*,
  96 F.4th 750 (5th Cir. 2024).............................................. 23

*Deep S. Ctr. for Env't Just. v. FDA*,
  138 F.4th 310 (5th Cir. 2025) ............................................ 31

*Demahy v. Schwarz Pharma, Inc.*,
  702 F.3d 177 (5th Cir. 2012) .............................................. 8

*Seth B. ex rel. Donald B. v. Orleans Par. Sch. Bd.*,
  810 F.3d 961 (5th Cir. 2016) ............................................. 21

*Edmonson v. U.S. Steel Corp.*,
  659 F.2d 582 (5th Cir. Unit B 1981) ...................................40

*Edwards v. City of Houston*,
  78 F.3d 983 (5th Cir. 1996) (en banc) ......................37, 39, 40

*U.S. ex rel. Eisenstein v. City of New York*,
  556 U.S. 928 (2009) ........................................................ 37

*FDA v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024) ....................................................31, 32

*Franciscan All., Inc. v. Cochran*,
  No. 17-10135 (5th Cir. Jun. 30, 2017) (per curiam) .........................38

*Friberg v. Kansas City S. Ry. Co.*,
  267 F.3d 439 (5th Cir. 2001) .............................................. 8

*Gen. Land Off. v. Biden*,
  71 F.4th 264 (5th Cir. 2023) ............................................. 35

*Gentry v. E.W. Partners Club Mgmt. Co.*,
  816 F.3d 228 (4th Cir. 2016) .......................................16, 17

*Golberg v. Kelly*,
  397 U.S. 254 (1970) ....................................................... 45

*Harrison v. Young*,
  103 F.4th 1132 (5th Cir. 2024).............................................8

*Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs*,
  493 F.3d 570 (5th Cir. 2007) ............................................. 27

*United States ex rel. Hernandez v. Team Fin., L.L.C.*,
  80 F.4th 571 (5th Cir. 2023) ............................................. 34

*Hill v. Tex. Water Quality Bd.*,
    568 S.W.2d 738 (Tex. App.—Austin 1978, writ ref'd n.r.e.) ............................ 35

*Hispanic Soc'y of the N.Y.C. Police Dep't v. N.Y.C. Police Dep't*,
    806 F.2d 1147 (2d Cir. 1986) ............................ 11

*Hollingsworth v. Perry*,
    570 U.S. 693 (2013) ............................ 35, 36

*Ingebretsen v. Jackson Pub. Sch. Dist.*,
    88 F.3d 274 (5th Cir. 1996) ............................ 34

*Jennings v. Rodriguez*,
    582 U.S. 281 (2018) ............................ 24

*Kem Mfg. Corp. v. Wilder*,
    817 F.2d 1517 (11th Cir. 1987) ............................ 40

*Kornman & Assocs., Inc. v. United States*,
    527 F.3d 443 (5th Cir. 2008) ............................ 23

*La Union del Pueblo Entero v. Abbott*,
    151 F.4th 273 (5th Cir. 2025) ............................ 20, 31, 33

*League of United Latin Am. Citizens, Council No. 4434 v. Clements*,
    999 F.2d 831 (5th Cir. 1993) ............................ 43-44

*Lewis v. Humboldt Acquisition Corp.*,
    681 F.3d 312 (6th Cir. 2012) ............................ 16

*Morris v. Livingston*,
    739 F.3d 740 (5th Cir. 2014) ............................ 45

*Murphy v. NCAA*,
    584 U.S. 453 (2018) ............................ 25

*Murray v. Mayo Clinic*,
    934 F.3d 1101 (9th Cir. 2019) ............................ 17

*Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*,
    647 F.3d 202 (5th Cir. 2011) ............................ 25, 26

*Natofsky v. City of N.Y.*,
    921 F.3d 337 (2d Cir. 2019) ............................ 16, 17

*Nelson v. Adams USA, Inc.*,
    529 U.S. 460 (2000) ............................ 10

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
    732 F.2d 452 (5th Cir. 1984) ............................ 28, 34

*Nielsen v. Preap*,
    586 U.S. 392 (2019) ............................ 24

*Pin v. Texaco, Inc.*,
   793 F.2d 1448 (5th Cir. 1986) .................................................................*passim*

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
   748 F.3d 583 (5th Cir. 2014) .................................................................... 25

*Pool v. City of Houston*,
   ---F.4th---, 2026 WL 16046 (5th Cir. 2026) ........................................ 42

*Pool v. City of Houston*,
   87 F.4th 733 (5th Cir. 2023) ............................................................. 41, 42

*Pool v. City of Houston*,
   978 F.3d 307 (5th Cir. 2020) .................................................................. 42

*Puerto Rico v. Franklin Cal. Tax-Free Tr.*,
   579 U.S. 115 (2016) ................................................................................ 23

*R.I. Fed'n of Teachers. v. Norberg*,
   630 F.2d 850 (1st Cir. 1980) ................................................................ 9, 11

*Richardson v. Tex. Sec'y of State*,
   978 F.3d 220 (5th Cir. 2020) .................................................................. 27

*Robert Ito Farm, Inc. v. County of Maui*,
   842 F.3d 681 (9th Cir. 2016) ................................................................. 38

*Robinson v. Shell Oil Co.*,
   519 U.S. 337 (1997) ................................................................................ 21

*Ross v. Marshall*,
   426 F.3d 745 (5th Cir. 2005) .................................................................. 40

*Saavedra v. Murphy Oil U.S.A., Inc.*,
   930 F.2d 1104 (5th Cir. 1991) .............................................................. 9, 11

*Saldano v. Roach*,
   363 F.3d 545 (5th Cir. 2004) ............................................................ 35, 44

*Schaeffler v. United States*,
   889 F.3d 238 (5th Cir. 2018) .................................................................. 23

*Sierra Club v. City of San Antonio*,
   115 F.3d 311 (5th Cir. 1997) .................................................................. 35

*Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Ctrs., Inc.*,
   200 F.3d 307 (5th Cir. 2000) .................................................................. 44

*Stripling v. Jordan Prod. Co., LLC*,
   234 F.3d 863 (5th Cir. 2000) ................................................................... 9

*Taylor Commcn's Grp., Inc. v. Sw. Bell Tel. Co.*,
   172 F.3d 385 (5th Cir. 1999) .................................................................. 30

*Texas v. United States*,
    126 F.4th 392 (5th Cir. 2025) ...............................................................28-29

*Texas v. United States*,
    679 F. App'x 320 (5th Cir. 2017) (per curiam) ................................. 38

*Texas v. United States*,
    805 F.3d 653 (5th Cir. 2015) ..............................................................*passim*

*Toronto-Dominion Bank v. Cent. Nat'l Bank & Tr. Co.*,
    753 F.2d 66 (8th Cir. 1985) ................................................................. 38

*United States v. Allegheny-Ludlum Industries, Inc.*
    517 F.2d 826 (5th Cir. 1975) ........................................................ 44, 45

*United States v. City of Chicago*,
    908 F.2d 197 (7th Cir. 1990), *cert. denied*, 498 U.S. 1067 (1991) ....................... 38

*United States v. City of Milwaukee*,
    144 F.3d 524 (7th Cir. 1998) ............................................................... 38

*United States v. Hardman*,
    297 F.3d 1116 (10th Cir. 2002) ......................................................... 33

*United States v. Palomares*,
    52 F.4th 640 (5th Cir. 2022) ............................................................... 16

*United States v. Peterson*,
    414 F.3d 825 (7th Cir. 2005) ............................................................... 29

*United States v. Quintanilla-Matamoros*,
    ---F.4th---, 2026 WL 74273 (5th Cir. Jan. 9, 2026) ................................... 42, 43

*Utah v. Su*,
    109 F.4th 313 (5th Cir. 2024) ............................................................. 41

*Va. House of Delegates v. Bethune Hill*,
    587 U.S. 658 (2019) .................................................................... 31, 33

*Vielma v. Eureka Co.*,
    218 F.3d 458 (5th Cir. 2000) ......................................................... 21, 22

*Warger v. Shauers*,
    574 U.S. 40 (2014) ........................................................................... 24

*Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*,
    922 F.2d 92 (2d Cir. 1990) ................................................................. 30

*Weber v. BNSF Ry. Co.*,
    989 F.3d 320 (5th Cir. 2021) ............................................................... 27

*Williams & Humbert Ltd. v. W. & H. Trade Marks (Jersey) Ltd.*,
    840 F.2d 72 (D.C. Cir. 1988) .............................................................. 11

*Wilson v. Birnberg,*
 667 F.3d 591 (5th Cir. 2012) ................................................. 45

*Young Conservatives of Texas Foundation v. Smatresk,*
 73 F.4th 304 (5th Cir. 2023) ......................................... *passim*

**Constitutional Provisions, Statutes, and Rules:**

1 U.S.C. § 1 ............................................................................... 21

8 U.S.C.:
 § 1101(a)(33) ...................................................................... 15
 § 1621(c)(1)(B) ............................................................. 17, 18
 § 1623 ................................................................................. 18
 § 1623(a) ..................................................................... *passim*

28 U.S.C.:
 § 1291 ............................................................................ 2, 39
 § 1331 ................................................................................... 2

Fed. R. App. P.:
 3(c) ..................................................................................... 37
 3(c)(1)(A) ........................................................................... 37
 8(a)(1)(A) ........................................................................... 37

Fed. R. Civ. P.:
 12(b) ..................................................................................... 9
 12(b)(6) ........................................................................... 9, 10
 24 ................................................................... 3, 7, 9, 26
 24(a) ............................................................................ *passim*
 24(a)(2) ...................................................... 27, 28, 30, 31
 24(b) ............................................................................ *passim*
 24(b)(1)(B) ........................................................................ 35
 24(b)(3) ........................................................................ 34, 35
 24(c) ............................................................................... 9, 10
 59 ........................................................................................... 6
 59(e) ............................................................................ *passim*
 60 ........................................................................................... 6
 60(b) ............................................................................ *passim*
 60(b)(1) .......................................................................... 7, 46
 60(b)(4) .............................................................................. 41
 60(b)(6) .................................................................... 7, 46, 47

Tex. Educ. Code:

§ 54.051(c) ................................................................ 3, 20
§ 54.051(d) ......................................................... 3, 12, 13, 20
§ 54.051(m) .......................................................... 4, 5, 6, 13
§ 54.052 ................................................................ 13, 14, 15
§ 54.052(a) ............................................................ 3-4, 5, 6, 14
§ 54.052(a)(1)-(3) ........................................................ 14
§ 54.052(a)(1)(A)-(B) ................................................. 14-15
§ 54.052(a)(2) ............................................................ 15
§ 54.052(a)(3) ....................................................... 15, 16, 17, 25
§ 54.052(a)(3)(A) ........................................................ 26
§ 54.052(a)(3)(B) ........................................................ 26
§ 54.053 ................................................................ 42
§ 54.0501(6) ............................................................ 15

**Other Authorities:**

*Assistance*, Black's Law Dictionary (12th ed. 2024) .............................. 18
*Assistance*, Merriam-Webster Online Dictionary,
    https://www.merriam-webster.com/dictionary/assistance
    (last visited Jan. 12, 2026) ..................................................... 18
*Assistance*, Oxford Learner's Dictionaries,
    https://www.oxfordlearnersdictionaries.com/us/definition/english
    /assistance (last visited Jan. 12, 2026) ........................................ 18

# Introduction

This past June, the United States sued Texas, contending that federal law preempts provisions of Texas law authorizing illegal aliens residing in Texas to pay in-state tuition rates. The lawsuit closely tracked this Court's observations in *Young Conservatives of Texas Foundation v. Smatresk*, 73 F.4th 304 (5th Cir. 2023) ("*Young Conservatives*"). There, this Court explained that 8 U.S.C. § 1623(a) "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same," and that Texas's "rule allowing illegal aliens to qualify for resident tuition" does just that because non-Texas residents must pay higher tuition rates than resident illegal aliens. 73 F.4th at 313, 314.

Faced with on-point precedent and the statutes' plain language demonstrating the correctness of the United States's claim, Texas settled. The parties then entered a consent judgment, which the district court approved. Four strangers to the litigation (two advocacy groups, a community college, and a student) then attempted to intervene and unravel that judgment. The district court denied those intervention motions on the ground that, because the statute was clearly preempted, any attempt to intervene would be futile.

The Court should affirm. This Court's precedent has long required putative intervenors to demonstrate that they can establish a legally sufficient claim or defense before they may intervene. *See Pin v. Texaco, Inc.*, 793 F.2d 1448, 1450 (5th Cir. 1986). And given the plain statutory language and this Court's directly applicable precedent, the district court correctly concluded that Appellants could not plausibly defend the preemption claim. Appellants' arguments to the contrary distort the text

of federal and state law and attempt to inject inapplicable federalism arguments into the case.

Even if the Court looked past that threshold defect, Appellants cannot satisfy Rule 24 (a) or (b)'s intervention requirements. They cannot show concrete, legally protected interests of their own implicated by the consent judgment. Instead, their interests are impermissibly ideological and economic. And to the extent some Appellants assert that their interests in obtaining reduced tuition rates are impaired, the record shows those persons remain eligible for reduced tuition rates.

The Court should also reject Appellants' request to vacate the district court's consent judgment. As nonparties they lack standing to appeal that consent judgment, and this Court lacks appellate jurisdiction to review it. Nor can Appellants obtain vacatur by appealing the district court's denial of their motion to alter or amend the judgment under Rules 59(e) and 60(b). As nonparties Appellants lacked standing to file such motions, and in any event they identify no ground to support this Court disturbing the judgment.

## Statement of Jurisdiction

The district court had jurisdiction under 28 U.S.C. § 1331. The district court issued its order denying Appellants' motions to intervene on August 15, 2025, and the LUPE Group's Rule 59(e) and 60(b) motion on August 18, 2025. ROA.735, 753. Both sets of Appellants timely noticed their appeals on August 16 and 18, 2025. ROA.747, 749. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## Statement of the Issues

**1.** Did the district court correctly deny Appellants' motions to intervene, where Appellants could not establish any plausible defense to the United States' preemption claim?

**2.** Were Appellants entitled to intervene under Rule 24 where they can only assert ideological and economic interests and any individual Appellants remain eligible for in-state tuition notwithstanding the consent judgment?

**3.** Does this Court have appellate jurisdiction to order vacatur of the district court's consent judgment where no Appellant was a party to the case in the district court with standing to appeal it?

**4.** Did the district court abuse its discretion in denying the LUPE Group's motion to alter or amend the judgment?

## Statement of the Case

**A.** Like many States, Texas charges its "residents one price for public college and charge[s] those who live elsewhere much more." *Young Conservatives*, 73 F.4th at 307. Resident students pay a discounted rate—typically $50 per credit hour. Tex. Educ. Code § 54.051(c). Nonresidents pay full price, and that price is based on an average of undergraduate tuition charged to Texas residents in each of the five most populous non-Texas states. *Id.* § 54.051(d). Consequently, nonresident tuition can sometimes be nearly *ten* times more. *See Young Conservatives,* 73 F.4th at 308 (stating that out-of-state tuition was $458 per credit hour).

The Education Code provides three ways students can establish residency, each keyed to establishing a "domicile" or "residence" within Texas. Tex. Educ. Code

§ 54.052(a) (titled "Determination of Resident Status"). And the Code further states that "*[u]nless the student establishes residency or is entitled or permitted to pay resident tuition* as provided by this subchapter, tuition for a student who is a citizen of any country other than the United States . . . is the same as the tuition required of other nonresident students." *Id.* § 54.051(m) (emphasis added).

Together, Sections 54.051(m) and 54.052(a) (the "Challenged Provisions")—enacted in the Texas Dream Act—authorize illegal aliens who meet certain residency requirements to obtain discounted tuition rates at public universities. And they do so without ensuring that all other US citizens can access such rates too.

**B.**  Last June, the United States sued Texas last June to stop the Challenged Provisions' enforcement. ROA.24-25. The United States' complaint alleged that Texas "ignored" federal law "for years" by authorizing its public universities to allow illegal aliens to pay in-state resident tuition while forcing out-of-state U.S. citizens to pay higher nonresident rates. ROA.24, 31. That federal law forbids "an alien who is not lawfully present in the United States" to be "eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). Alongside section 1623(a)'s plain language, ROA.27-31, the complaint relied on *Young Conservatives*, which held that § 1623(a) "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same." 73 F.4th at 312-13; ROA.33-34. Although *Young Conservatives* found that a different Texas Education Code provision was not preempted, it observed that "a different,

*unchallenged* portion of Texas' scheme seems to conflict with § 1623(a)"—referencing the Challenged Provisions—because they "allo[w] illegal aliens to qualify for resident tuition." 73 F.4th at 314.

Faced with plain statutory text and directly applicable precedent from this Court, the Attorney General exercised his judgment to settle the case rather than litigate a plainly preempted statute. *See* ROA.47. The parties thus moved for entry of a consent judgment, ROA.46-48, which was granted before the entry of a final judgment permanently enjoining Texas "from enforcing Texas Education Code § 54.051(m) and § 54.052(a)." ROA.52.

**C.**  Subsequently, Austin Community College ("ACC"), La Union del Pueblo Entero ("LUPE"), and Oscar Silva (together, the "LUPE Group"), as well as Students for Affordable Tuition ("SAT"), moved to intervene post-final judgment. ROA.53-73, 115-44. The LUPE Group separately filed a motion for relief from the final judgment, or to alter or amend it, under Rules 59(e) and 60(b). ROA.150-78.

After receiving briefing on the motions to intervene, the district court entered an order denying both groups' motions. ROA.735-46. It explained that this Court has held that a proper basis to deny a litigant leave to intervene is that "their intervention is legally futile." ROA.740. And it held that this was the case here "because federal law—specifically, 8 U.S.C. § 1623(a)—preempts the challenged Texas provisions." ROA.741. Quoting *Young Conservatives*, it explained that, under the Challenged Provisions, "illegal aliens are eligible for Texas resident tuition" but "[o]ut-of-state, nonresident American citizens are not," and "[f]ederal law—section 1623(a)—bars such a disparity," ROA.743 (quoting 73 F.4th at 308). The district court thus held

that "[s]ections 54.051(m) and 54.052(a) are expressly preempted," ROA.744, and the intervention motions "are legally futile," ROA.745. It separately dismissed as moot the LUPE Group's motion to vacate the final judgment under Rules 59 and 60. ROA.753.

After Appellants noticed their appeal, the LUPE Group filed a motion requesting that this Court stay the district court's entry of the consent judgment pending appeal. Dkt. 59. A motions panel unanimously rejected it. Dkt. 114.

## Summary of Argument

**I.**    The district court correctly denied Appellants' motions to intervene. This Court's precedent requires testing would-be intervenors' proposed pleadings at the threshold; if the proposed claim or defense is futile, intervention is denied without reaching Rule 24(a) or (b). That requirement applies equally to defense-side intervenors. Accordingly, the district court began and ended with futility.

Futility is clear here because section 1623(a) preempts the Challenged Provisions vis-à-vis illegal aliens. Section 1623(a) bars States from conferring postsecondary education benefits on illegal aliens based on residence unless the same benefit is available to U.S. citizens and nationals regardless of residency. The Court confirmed this in *Young Conservatives*, holding that § 1623(a) "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same." 73 F.4th at 312-13. Appellants' attempts to narrow § 1623(a)'s application to benefits based "solely" on residence, or to avoid its "benefit" and "unless" terms, fail. The Challenged Provisions each turn on domicile and residence, and receiving a discount through in-state tuition is a postsecondary education benefit.

Even if the Court assessed intervention under Rule 24, Appellants still fail. Rule 24(a) demands (1) a direct, substantial, and legally protectable interest, (2) concrete impairment, and (3) inadequate representation for mandatory intervention. But Appellants offer only ideological preferences and economic concerns—neither of which satisfy Rule 24(a). To the extent some Appellants claim a personal interest in paying reduced tuition, those interests are not impaired because the record shows they remain eligible notwithstanding the consent judgment.

Appellants also cannot qualify for permissive intervention. Although Appellants claim common legal issues, Rule 24(b) is discretionary and requires courts to guard against undue delay and prejudice. Intervention here would undermine the Attorney General's exclusive authority to represent Texas and settle disputes. Private parties cannot hijack the State's defense of its statutes, and the district court acted within its broad Rule 24(b) discretion in denying intervention.

**II.** The district court also correctly declined to vacate the consent judgment. Because Appellants are not parties to the litigation, they lack standing to appeal from the consent judgment's entry, and this Court lacks appellate jurisdiction to entertain any challenge to it. The district court also correctly denied the LUPE Group's motion to alter or amend the consent judgment under Rules 59(e) and 60(b) because, as nonparties, they lacked standing to file those motions. Regardless, none of the grounds they identify as justifying vacatur—lack of Article III adversity, a lack of notice of the consent judgment under the Due Process Clause, and "surprise" or "extraordinary circumstances" under Rules 60(b)(1) and 60(b)(6)—has merit.

## STANDARD OF REVIEW

Denials of intervention as of right are reviewed *de novo*. *Texas v. United States*, 805 F.3d 653, 656 (5th Cir. 2015). So are inquiries into whether state statutes are preempted by federal law. *Friberg v. Kansas City S. Ry. Co.*, 267 F.3d 439, 442 (5th Cir. 2001). But denials of permissive intervention are reviewed for "clear abuse of discretion." *8fig, Inc. v. Stepup Funny, L.L.C.*, 135 F.4th 285, 291 (5th Cir. 2025). So too are district court orders denying relief under Rules 59(e) and 60(b). *Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 181 (5th Cir. 2012). The Court "may also affirm on any ground supported by the record, including one not reached by the district court." *Harrison v. Young*, 103 F.4th 1132, 1135 (5th Cir. 2024).

## ARGUMENT

## I.  The District Court Correctly Denied Appellants' Motions to Intervene.

The Court should affirm the district court's order denying Appellants' intervention because they are not entitled to intervene for two independent reasons: (A) intervention would be futile because § 1623(a) expressly preempts the Challenged Provisions, and (B) Appellants do not qualify for either mandatory or permissive intervention.

### A.  Appellants' efforts to intervene would be futile because the Challenged Provisions are expressly preempted.

The district court correctly held that Appellants were not entitled to intervene because any such effort would be futile given that section 1623(a) preempts the

Challenged Provisions. Appellants mistakenly attempt to evade a futility inquiry altogether and erroneously dispute the Court's preemption analysis.

### 1. Futility is the first step of intervention analyses and it applies to putative defense-side intervenors.

**a.**  This Court has long held that that "a proper basis for denying leave to intervene may be a finding that the proposed intervention would fail to state a claim." *Saavedra v. Murphy Oil U.S.A., Inc.*, 930 F.2d 1104, 1109 (5th Cir. 1991). And it evaluates a would-be intervenor's pleadings under the "general rules on testing a pleading; the factual allegations of the complaint are assumed to be true, and the pleading is construed liberally in support of the pleader," *Pin*, 793 F.2d at 1450 (citation modified). That is, Rule 12(b) standards apply. *See id.* (discussing Rule 12(b)(6) as analogous); *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) ("[T]o determine futility, we will apply the same standard of legal sufficiency as applies under Rule 12(b)(6).") (citation modified).

Indeed, futility analyses are "threshold matter[s that a] district judge must [conduct] . . . *before* he turns to a consideration of the factors listed in Rule 24(a) and (b)." *Pin*, 793 F.2d at 1450 (emphasis added). In other words, courts "must" apply "general rules on testing a pleading" to intervention motions "before" turning to Rule 24(a) and (b) analyses. *Id*. Or as the First Circuit put it, "'intervention under Rule 24 is conditioned by the Rule 24(c) requirement that the intervenor state a well-pleaded claim or defense to the action.'" *R.I. Fed'n of Teachers. v. Norberg*, 630 F.2d 850, 854-55 (1st Cir. 1980) (footnote omitted).

**b.** Appellants' attempts to evade a futility analysis fail. *First*, Appellants claim that requiring intervenors to demonstrate their intervention would not be futile amounts to wrongly requiring them to "prove . . . they have a winning argument on the merits before allowing them to participate" in the case. LUPE Br. 24, 25; SAT Br. 20, 22-23. But futility analyses are "threshold matter[s]" that merely require plaintiff- and defense-side intervenors to pass Rule 12(b)(6) muster. *Pin*, 793 F.2d at 1450. Appellants need not show they will win their case, but instead that they assert a "plausible claim" or defense. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). This "plausibility standard is not [even] akin to a 'probability requirement,' but it asks for more than a sheer possibility." *Id.* at 678. That hardly requires Appellants to demonstrate assured victory. Appellants' argument that they are being improperly asked to prove they have a winning case is as wrong "as it would be if made in the context of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Pin*, 793 F.2d at 1450.

Appellants' authorities are not to the contrary. SAT merely points to Rule 24(c) to argue that it does not include an express futility-analysis provision, but in the next paragraph discusses cases in which "[t]his Court and others have recognized futility['s]" application in intervention analyses. SAT Br. 20. Neither of the cases the LUPE Group cites—*Nelson v. Adams USA, Inc.*, 529 U.S. 460, 471 (2000), and *Brumfield v. La. State Bd. of Educ.*, 806 F.3d 289, 301 (5th Cir. 2015) ("*Brumfield II*")—holds that futility is inapplicable to intervention analyses, either. LUPE Br. 24-25. *Nelson* did not concern intervention; it considered a dispute over amending a complaint. 529 U.S. at 462-63. And *Brumfield II* never discussed futility. Indeed, intervention was only meaningfully at issue in *Brumfield I*—where only the

Rule 24(a) analysis, not futility, was at stake—and *Brumfield II* concerned a dispute over vacatur. *See Brumfield II*, 806 F.3d at 295-97; *Brumfield v. Dodd*, 749 F.3d 339, 343-46 (5th Cir. 2014) ("*Brumfield I*").

*Second*, SAT briefly suggests that a futility analysis is appropriate "only where a proposed claim or defense is facially frivolous." SAT Br. 20. Yet it points to no case limiting futility analyses' applicability in this way, and nothing in *Pin*, *Saavedra*, or *Rhode Island Federation of Teachers* does so. That is why Appellants later admit that futility analyses are appropriate where claims or defenses are "legally insufficient," "clearly barred as a matter of law," SAT Br. 20, 24, or not "colorable." LUPE Br. 25-26. That is precisely what the district court found and what Texas argues here.

*Third*, the LUPE Group argues that, because they wish to become defense-side intervenors, futility analyses do not apply to them. LUPE Br. 26. But this Court's sister circuits have for decades held the need to enforce futility rules on both plain-tiff- *and* defense-side intervenors. *See, e.g.*, *Williams & Humbert Ltd. v. W. & H. Trade Marks (Jersey) Ltd.*, 840 F.2d 72, 75 (D.C. Cir. 1988) ("An application to in-tervene should be viewed on . . . whether [would-be intervenor's] pleadings allege a legally sufficient claim or defense"); *Hispanic Soc'y of the N.Y.C. Police Dep't v. N.Y.C. Police Dep't*, 806 F.2d 1147, 1154 (2d Cir. 1986) (dismissing nonparty appeal of consent decree after finding intervention requires would-be intervenors to "set[] forth the claim or defense for which intervention is sought."); *R.I. Fed'n of Teachers*, 630 F.3d at 851 (affirming "denial of intervention . . . on the grounds that [nonpar-ties] failed to plead a colorable defense to the challenged statute."). Appellants sup-ply no contrary authority exempting defense-side intervenors from futility analyses.

\*   \*   \*

Nothing Appellants provide counters *Pin*'s categorical command that courts "must" conduct futility analyses "before" proceeding to Rule 24(a) and (b) inquiries. The district court, far from "g[etting] things backwards," LUPE Br. 24, correctly conducted a futility analysis first. And it did so because futility analyses apply to defense-side would-be intervenors like Appellants.

### 2. Intervention is futile because federal law preempts the Challenged Provisions.

The district court also correctly held that Appellants' intervention would be futile because the Challenged Provisions are preempted by federal law under this Court's precedent. And because *Pin* requires would-be intervenors to clear the futility hurdle before moving on to Rule 24(a) and (b), it then rightly denied intervention.

### a. The Challenged provisions are preempted.

In *Young Conservatives*, students sued a state university arguing that a Texas law setting tuition rates for nonresidents, Tex. Educ. Code § 54.051(d), was preempted by 8 U.S.C. § 1623(a) because it required out-of-state students to pay higher tuition rates while permitting illegal aliens to pay lower rates. 73 F.4th at 307. This Court held that "[s]ection 1623(a) contains an express preemption clause," providing that an illegal alien "shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." *Id.* at 312 (quoting 8 U.S.C. § 1623(a)). But it declined to find that section 54.051(d) was preempted because "[i]t does nothing more than set the

tuition price for nonresident students, citizens or not," and "[i]t takes no stance on whether illegal aliens are eligible for a cheaper price." *Id.* at 313.

The Court nevertheless underscored that other Dream Act sections were problematic: "even though a different, *unchallenged* portion of Texas' scheme seems to conflict with § 1623(a), it is entirely possible to follow both § 1623(a) and § 54.051(d) at the same time." *Id.* at 314. And in rejecting an implied-preemption challenge, this Court explained that "[u]nlike Texas' rule allowing illegal aliens to qualify for resident tuition (which implicates *every* IIRIRA objective, often in the negative), § 54.051(d) speaks only to the price nonresidents pay," and "Congress's objectives are not thwarted by that higher price." *Id.*

This case concerns those other "unchallenged" provisions that "allow[] illegal aliens to qualify for resident tuition," which this Court repeatedly indicated were fraught with express and implied preemption problems. *Id.* at 312, 314. Following this Court's lead, the district court held that those provisions were preempted by section 1623(a). ROA.744-45. It did so correctly: *Young Conservatives* makes plain that the section 1623(a) preemption question is whether a "state rule[] . . . grant[s] illegal aliens benefits when U.S. citizens haven't received the same." 73 F.4th at 313. If a rule does so, it is preempted. *Id.* The Challenged Provisions do this.

Section 54.051(m) requires "tuition for a student who is a citizen of any country other than the" United States to be "the same as the tuition required of other nonresident students" — "[u]nless the student establishes residency." Tex. Educ. Code § 54.051(m). In turn, section 54.052 describes three ways in which a person may establish residency in Texas, none of which require lawful presence. *See id.*

§ 54.052(a)(1)-(3). Thus, under these two provisions, "[s]o long as they satisfy the statute's residency requirements, illegal aliens are eligible for Texas resident tuition. Out-of-state, nonresident American citizens are not." *Young Conservatives*, 73 F.4th at 308. As the district court held below, section 1623(a) "bars such a disparity." ROA.743.

### b.  Appellants' counterarguments lack merit.

Appellants raise six challenges to the district court's preemption analysis. The first three focus on the interpretation of sections 1623(a) and 54.052. The last three invoke the presumption against preemption, the Tenth Amendment, and severability principles to overcome the preemptive effect of section 1623(a). None succeeds.

### i.  The Challenged Provisions grant in-state tuition benefits to illegal aliens on the basis of residency.

Appellants first contend that the Challenged Provisions are not preempted because they base in-state tuition eligibility on factors beyond residency, and section 1623(a) only preempts state laws that afford illegal aliens postsecondary education benefits "on the basis of residence within a state." LUPE Br. 39-42; SAT Br. 34-36. That argument cannot be squared with the letter of sections 54.052(a) or 1623(a).

Section 54.052(a) describes three circumstances under which "persons are considered residents of this state." *First*, when a person "established a domicile in this state not later than one year before the census date of the academic term in which the person is enrolled in an institution of higher education" and "maintained that domicile continuously for the year preceding that census date." Tex. Educ. Code

§ 54.052(a)(1)(A)-(B). *Second*, when a "dependent['s] . . . parent" meets those same "domicile" requirements. *Id.* § 54.052(a)(2). And *third*, when a person "graduated from a public or private high school in this state or received the equivalent of a high school diploma in this state" and "maintained a residence continuously in this state" for "three years preceding the date of [high school] graduation or receipt of the diploma" and "the year preceding the census date of the academic term" for the "institution of higher education." *Id.* § 54.052(a)(3). Each of these three pathways is unambiguously keyed to establishing a "domicile" or "residence" within Texas; indeed, the section is titled "Determination of Resident Status." *Id.* § 54.052.

Appellants do not dispute that two out of these three pathways concerns residency and are therefore preempted by section 1623(a). Instead, they focus on the third pathway. Appellants argue that, because section 54.052(a)(3) does not make the residency determination[1] turn "solely" upon residence but also includes a high-school graduation component, residency is not "*the* basis of" the provision of post-

---

[1] The LUPE Group obliquely suggest (at 40-41) that the Challenged Provisions are not preempted because section 1623(a) uses the phrase "residence" in a narrower sense than does section 54.052(a)(3). That is, while Texas law defines residence as "a person's home or other dwelling place," Tex. Educ. Code § 54.0501(6), federal law defines that term as a person's "principal, actual dwelling place in fact, without regard to intent," 8 U.S.C. § 1101(a)(33). It is quite unclear that there is any material difference between these two definitions. To the extent the LUPE Group imagine a situation where a person would try to satisfy Texas's residency definition with a secondary, non-"principal" residence that is not "in fact" his "actual dwelling place," *id.* § 1101(a)(33), it is doubtful that such a place could qualify as a "home or other dwelling place," Tex. Educ. Code § 54.0501(6), under that phrase's ordinary meaning.

secondary educational benefits for purposes of section 1623(a). SAT Br. 34-37; LUPE Br.41. Not so.

Section 54.052(a)(3) makes residency turn on two elements: (A) graduation from a public or private high school (or a high school diploma) in Texas "and" (B) continuous residency requirements. The conjunction "and" indicates that both elements must be present to establish residency. *See United States v. Palomares*, 52 F.4th 640, 643 (5th Cir. 2022) (describing "[t]he ordinary meaning of 'and'"). Consequently, residency cannot be established under section 54.052(a)(3) without satisfying the continuous residence requirements; it is in every sense "the basis" for the provision of postsecondary educational benefits, 8 U.S.C. § 1623(a).

Nothing in section 1623(a) limits the statute's preemptive effect to state-law residency determinations made based on a single factor. "No doubt Congress could have taken a more parsimonious approach. As it has in other statutes, it could have added 'solely' to indicate that actions taken 'because of' the confluence of multiple factors do not violate the law." *Bostock v. Clayton County*, 590 U.S. 644, 656 (2020). "But none of this is the law we have." *Id.* at 657; *cf. Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 314-18 (6th Cir. 2012) (en banc) (declining to read "solely" into the ADA to modify "because of" language).[2] "In the language of the law, this means

---

[2] Although *Bostock* interpreted the statutory phrase "because of" rather than "on the basis of," "there is [no] meaningful difference between 'on the basis of,' 'because of,' or 'based on,' which would require courts to use a causation standard other than 'but-for.'" *Natofsky v. City of N.Y.*, 921 F.3d 337, 349 (2d Cir. 2019); *Gentry v. E.W. Partners Club Mgmt. Co.*, 816 F.3d 228, 235-36 (4th Cir. 2016) (same).

that" section 1623(a)'s on-the-basis-of test "incorporates the simple and traditional standard of but-for causation." *Bostock*, 590 U.S. at 656. "This ancient and simple 'but for' common law causation test . . . supplies the 'default' or 'background' rule against which Congress is normally presumed to have legislated." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 332 (2020). The Supreme Court has held that the phrase "*on the basis of*" is "strongly suggestive of a but-for causation standard." *Id.* at 335. And several of this Court's sister circuits have affirmatively held that the language "on the basis of" requires a but-for test. *See*, *e.g.*, *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1192 (11th Cir. 2024); *Murray v. Mayo Clinic*, 934 F.3d 1101, 1106 (9th Cir. 2019); *Natofsky*, 921 F.3d at 349; *Gentry*, 816 F.3d at 235-36.

"That form of causation is established whenever a particular outcome would not have happened 'but for' the purported cause." *Bostock*, 590 U.S. at 656. That test is easily met here: because continuous residency is one of the two requirements to establish residency under section 54.052(a)(3), it is a but-for cause of the provision of postsecondary education benefits and therefore "the basis of" their provision within the meaning of § 1623(a).

### ii. Discounted tuition rates constitute a "postsecondary educational benefit" within the meaning of section 1623(a).

The LUPE Group also contend (at 42-44) that the Challenged Provisions are not preempted by section 1623(a) because discounted tuition rates do not constitute a "postsecondary education benefit" within the meaning of the statute. To make this argument, the LUPE Group borrows the definition of "State or local public benefit" from 8 U.S.C. § 1621(c)(1)(B), which defines the phrase to include "any . . .

postsecondary education . . . benefit, or any other similar benefit for which payments or assistance are provided to an individual, household, or family eligibility unit by an agency of a State or local government." And they conclude that "[e]ligibility for in-state tuition does not fit" because it is "nothing more than a status" and does not involve government "payments" or "assistance." LUPE Br. 43.

Even assuming section 1621(c)(1)(B)'s definition applies to section 1623, it does not aid Appellants. Receiving a discount by being permitted to pay the lower in-state tuition rate, rather than the higher out-of-state tuition rate, qualifies as "assistance" to pay for postsecondary education (*i.e.*, receiving a postsecondary education benefit) under any ordinary meaning of the term "assistance." *See Assistance*, Black's Law Dictionary (12th ed. 2024) ("[t]he act of helping or aiding"); *Assistance*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/assistance (last visited Jan. 12, 2026) (defining "assistance" as "the act of helping or assisting someone or the help supplied"); *Assistance*, Oxford Learner's Dictionaries, https://www.oxfordlearnersdictionaries.com/us/definition/english/assistance (last visited Jan. 12, 2026) (defining "assistance" as "help or support").

The Challenged Provisions confer far more than a hollow "status," LUPE Br. 43, but instead afford recipients a financial subsidy allowing them to pay discounted tuition. That is in all relevant senses a "monetary . . . form of assistance," which the LUPE Group concede qualifies as a postsecondary educational benefit. LUPE Br. 43. Appellants acknowledge this truth. For example, Silva claims that if he is "no longer eligible for in-state tuition . . . it will cause extreme financial

duress . . . and likely result in [his] withdrawal from UNT because . . . [his] household cannot afford to pay out-of-state tuition rates." ROA.356. LUPE claims that its "undocumented members currently in college . . . are uncertain if they will be able to [remain enrolled] if they are charged out of state tuition." ROA.336. And ACC claims that the "abrupt increase" of paying out-of-state rather than in-state tuition is "unaffordable for the vast majority of [its Affected S]tudents." ROA.360 (using phrase "Affected Students" to refer to "undocumented students.").

Construing discounted tuition rates as a "benefit" that takes the form of a fiscal subsidy is thus entirely consistent with section 1623(a)'s describing benefits in relation to their "amount, duration, and scope." The amount is the difference between discounted and full-price tuition, the duration is the number of semesters (or years) that the recipient may pay the discounted rate, and the scope relates to the types of costs covered.

### iii. Discrete exceptions to Texas's in-state tuition rules do not disable application of § 1623(a).

Appellants also argue that the Challenged Provisions are not preempted because the Texas Education Code authorizes some out-of-state U.S. citizens to pay the in-state tuition rate in certain discrete circumstances. LUPE Br.45-47 (collecting examples); SAT Br. 35 n.6. Per Appellants, this means that "a citizen or national of the United States is eligible for" the in-state tuition benefit "without regard to" residence and thus illegal aliens may be eligible for the in-state rates consistent with federal law. 8 U.S.C. § 1623(a).

19

But the fact that Texas—like many other States—grants "waivers, [and] exemptions" from its in-state tuition rules to certain "qualifying U.S. citizens regardless of residency" in narrow circumstances, SAT Br. 35 n.6, hardly means that U.S. citizens or nationals are *generally* eligible for in-state tuition rates regardless of residence. To the contrary, Texas law has long provided different tuition rates based upon whether students are Texas residents or nonresidents. *Compare* Tex. Educ. Code § 54.051(c), *with id.* § 54.051(d); *see Young Conservatives*, 73 F.4th at 308 (observing that "Texas resident tuition is pegged at $50 per semester credit hour" while "[n]onresident tuition instead totals $458 per semester credit hour").

In arguing to the contrary, the LUPE Group fixate (at 45) on the indefinite article "a" in the clause "unless *a* citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident," 8 U.S.C. § 1623(a) (emphasis added). They therefore argue that, so long as they can identify even a single U.S. citizen who might pay in-state tuition regardless of residence, section 1623(a) is inapplicable. But the LUPE Group's attempt to extract dispositive meaning from the indefinite article "a" ("a citizen or national") reprises the kind of "abstruse grammatical debate" this Court rejects; the proper unit of interpretation is the full statutory phrase in its context, not a single article in isolation. *La Union del Pueblo Entero v. Abbott*, 151 F.4th 273, 292 n.18 (5th Cir. 2025) ("*LUPE*"). And this Court makes clear that textual "plainness or ambiguity" is assessed by "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole," which makes Appellants' "a-not-all" argument incomplete on its own terms. *Asadi v. G.E. Energy (USA), L.L.C.*, 720

F.3d 620, 622 (5th Cir. 2013) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

To start, the Dictionary Act provides that "words importing the singular include and apply to several persons, parties, or things," unless context indicates otherwise, and this Court applies that rule in construing federal statutes. *See*, *e.g.*, *Seth B. ex rel. Donald B. v. Orleans Par. Sch. Bd.*, 810 F.3d 961, 975 n.52 (5th Cir. 2016) (citing 1 U.S.C. § 1). Applying that default, section 1623(a)'s reference to "a citizen or national" naturally reads generically (*i.e.*, every citizen or national), not as a permission slip to satisfy the "unless" proviso by identifying a single citizen somewhere who can obtain the benefit on different terms. *Seth B.*, 810 F.3d at 975 n.52; *Asadi*, 720 F.3d at 622. More than that, this Court holds that when the surrounding text and structure show that overreading an indefinite article would distort a statute's operation, the presence of the indefinite article "a" can "give[] way" to the reading demanded by the statute's phrasing and overall structure. *Vielma v. Eureka Co.*, 218 F.3d 458, 465 (5th Cir. 2000).

The "broader context," *Asadi*, 720 F.3d at 622, demonstrates that Appellants misconceive the statute's basic structure. Section 1623(a) is a categorical prohibition with a narrow exception: an illegal alien "shall not be eligible . . . for any postsecondary education benefit *unless* a citizen or national of the United States is eligible for such a benefit . . . without regard to whether" the citizen or national is a resident. 8 U.S.C. § 1623(a) (emphasis added). Read in context, the "unless" clause describes a parity condition that must be satisfied *before* states may confer residence-based postsecondary education benefits on illegal aliens: nonresident U.S. citizens or

nationals should be treated no worse in terms of tuition rates than illegal aliens, and if nonresident citizens are generally ineligible for reduced in-state tuition rates, then so too are illegal alien residents. Thus, the text does not compel (and the context strenuously resists) Appellants' premise that eligibility for one citizen or national unlocks preferential in-state tuition for illegal aliens even when other citizens and nationals are excluded from consideration.

Appellants' "a-not-all" construction also runs headlong into the anti-surplusage canon: courts should, if possible, "give effect . . . to every word and every provision Congress used," and avoid interpretations under which statutory words become "superfluous, void, or insignificant." *Asadi*, 720 F.3d at 622. If "a citizen or national" could be satisfied by some subset of persons, however small—as Appellants' construction of section 1623(a) permits—the "unless" condition would do no real work in constraining a state's provision of postsecondary education benefits to illegal aliens. That is because states could always point to some U.S. citizen or national made eligible under another path while still denying in-state benefits to the rest of the citizenry. *Id.* at 622-23; *Vielma*, 218 F.3d at 464-65.

Read alongside the Dictionary Act, whole-text/context requirement, and canon against surplusage, section 1623(a)'s proviso is best understood to require that the same in-state tuition benefit conferred on illegal aliens be equally available to all U.S. citizens and nationals without regard to residency. *See Young Conservatives of Tex. Found. v. Smatresk*, 78 F.4th 159, 160 (5th Cir. 2023) (Ho, J., dissenting from denial of rehearing en banc) ("Put simply, states can't treat illegal aliens better than they treat U.S. citizens."). At minimum, this Court does not endorse the sort of wooden

literalism promoted by Appellants that defeats a statute's evident design or produces absurd results. *See Schaeffler v. United States,* 889 F.3d 238, 242 (5th Cir. 2018) (quoting *Kornman & Assocs., Inc. v. United States*, 527 F.3d 443, 451 (5th Cir. 2008)).

### iv. The presumption against preemption is inapplicable.

The LUPE Group next pivot to an argument that the presumption against preemption should apply to defeat preemption here. LUPE Br. 48-51. But when a statute "contains an express preemption clause" this Court "does not indulge 'any presumption against preemption but instead focus[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' preemptive intent.'" *Young Conservatives*, 73 F.4th at 311 (quoting *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016) (alteration original). "Section 1623(a) contains an express preemption clause," so the presumption is inapplicable here. *Id.* at 312.

But even if the Court were to consider the preemption question through the lens of implied conflict preemption—an analysis that "begins with the presumption," *id.* at 313—Congress can "overcome the presumption-against-preemption by 'clear[ly] and manifest[ly]' showing its intent to preempt." *Deanda v. Becerra*, 96 F.4th 750, 765 (5th Cir. 2024) (quoting *Arizona v. United States*, 567 U.S. 400, 387 (2012)). It did so here.

Start with the text. As this Court explained, section 1623(a)'s language that an illegal alien "shall not" be eligible for a postsecondary education benefit based on residence if U.S. citizens or nationals are not eligible for such benefit regardless of residence "is entirely prohibitory and *limits* what can properly be done" by states.

*Young Conservatives*, 73 F.4th at 312, 313. It thus "expressly preempts state rules that grant illegal aliens benefits when U.S. citizens haven't received the same." *Id.* at 313.

As for statutory purposes, "Congress made explicit its aims for the Illegal Immigration Reform and Immigrant Responsibility Act," which include "promoting immigrant self-sufficiency, reducing immigrant reliance on public assistance, and ensuring that public benefits aren't incentives to enter illegally." *Id.* at 314. But "Texas' rule allowing illegal aliens to qualify for resident tuition . . . implicates *every* IIRIRA objective, often in the negative." *Id.* Thus, even if the Court were to entertain the presumption against preemption here, Congress's clear and manifest preemptive intent overcomes it.

### v.   Preemption of the Challenged Provisions does not violate the Tenth Amendment.

Appellants also claim that the district court's plain-text reading of section 1623(a) implicates the Tenth Amendment by directly regulating states' authority over education, thus triggering the constitutional avoidance canon of construction. LUPE Br. 51-53; SAT Br. 40-49. That is doubly wrong. "The [first] trouble with th[eir] argument is that constitutional avoidance 'comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction.'" *Nielsen v. Preap*, 586 U.S. 392, 419 (2019) (quoting *Jennings v. Rodriguez*, 582 U.S. 281, 296 (2018)). "The canon 'has no application' absent 'ambiguity.'" *Id.* (quoting *Warger v. Shauers*, 574 U.S. 40, 50 (2014)). And "[h]ere the text of [§ 1623(a)] cuts clearly against" Appellants' position, "making constitutional avoidance irrelevant." *Id.*; *see supra* 12-26.

Even if that were not so, Appellants' Tenth Amendment argument still misses the mark. As this Court clarified, section 1623(a) "declare[s] a limitation on illegal alien eligibility itself;" it does not "regulate[] states directly." *Young Conservatives*, 73 F.4th at 313. Yet "[t]he anticommandeering doctrine . . . is simply the expression of a fundamental structural decision incorporated into the Constitution, *i.e.*, the decision to withhold from Congress the power to issue orders directly to the States." *Murphy v. NCAA*, 584 U.S. 453, 470 (2018). Section 1623(a)'s regulation of illegal alien eligibility for state-provided postsecondary education benefits thus does not implicate the Tenth Amendment.

### vi. Appellants' severability arguments lack merit.

Appellants last claim that the district court should not have found all of section 54.052(a)(3) preempted but instead severed subsections (A) and (B) because (A) discusses Texas high school attendance and (B) discusses length of residence, so only (B) should have been enjoined. SAT Br. 50-52; LUPE Br. 47-48. Not so.

This Court, applying Texas severability law, asks whether—after the "unconstitutional portion is stricken out"—the remainder is "complete in itself" and is "capable of being executed in accordance with the apparent legislative intent," "*wholly* independent" of what was removed. *Nat'l Fed'n of the Blind of Tex., Inc. v. Abbott*, 647 F.3d 202, 215 (5th Cir. 2011) (emphasis added). The objective is not to rewrite legislative work but to "preserve the valid scope of the provision" consistent with the State's severability rules. *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 748 F.3d 583, 589-90 (5th Cir. 2014).

Appellants' proposal (enjoining section 54.052(a)(3)(B) while leaving (A) untouched) fails the "complete-in-itself" requirement because it would not preserve the statute's "apparent legislative intent" but instead materially transform the enacted eligibility rule. *Nat'l Fed'n of the Blind*, 647 F.3d at 215. Sections 54.052(a)(3)(A) and (B) were expressly written to work in tandem: applicants under these sections must have "(A) graduated from a [Texas] high school . . . *and* (B) maintained a [Texas] residence continuously" for a period of years. Tex. Educ. Code. § 54.052(a)(3)(A), (B) (emphasis added). While subsection (A) is a proxy for residence—graduating from a high school in Texas—subsection (B) ensures that the high-school graduate was in fact a Texas resident both during high school and one year after and not merely present temporarily or transiently at that particular point in time.

Severing (A) would not "preserve" a valid subset of the Legislature's chosen criteria; it would expand eligibility by deleting a substantive condition that the Legislature placed alongside other requirements, thereby changing who qualifies and on what terms. Put otherwise, Appellants' approach would require the Court to do more than "strike" offending text; it would require the Court to adopt a different policy choice: a broader, high-school-graduation-only eligibility pathway to residency that Texas never enacted.

## B.   Appellants were not entitled to intervene under Rule 24.

Besides contesting the propriety and accuracy of the district court's futility analysis, Appellants separately argue that the district court should have engaged in a Rule 24(a) and (b) analysis, and that the district court "short-circuited the ordinary

course of litigation by denying intervention" on futility grounds. LUPE Br. 23; SAT Br. 9, 18. But again, *Pin* provides that intervention futility analyses "must" be conducted "before" proceeding to Rule 24(a) or (b). 793 F.2d at 1450; *supra* 9-12. And because that analysis was outcome determinative, there was no need to assess Appellants' Rule 24(a) and (b) arguments. *See, e.g.*, *Weber v. BNSF Ry. Co.*, 989 F.3d 320, 326, 330 n.30 (5th Cir. 2021) (holding that the court "need not address" a litigant's other arguments because he failed to satisfy a requisite element of his claim); *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 228 (5th Cir. 2020) (holding that outcome-determinative holding on one argument meant that the court "need not address the others."). The Court's analysis should thus begin and end with futility for the reasons discussed above.

But should the Court nevertheless engage with Appellants' Rule 24(a) and (b) arguments, the ending remains the same: Appellants are entitled to neither Rule 24(a) nor (b) intervenor status, so the Court should affirm.

### 1. Appellants do not qualify for Rule 24(a) intervention as of right.

To intervene by right Appellants must show (1) that their attempted intervention was timely, and that they (2) have an interest subject to this action, (3) which will be impaired or render them unable to protect their interest absent intervention, and (4) that the parties do not adequately represent their interests. *Brumfield*, 749 F.3d at 341; Fed. R. Civ. P. 24(a)(2). "Failure to satisfy [even] one requirement precludes intervention of right." *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs*, 493 F.3d 570, 578 (5th Cir. 2007). Appellants cannot meet the second and third requirements.

Rule 24(a) requires that "the applicant must have an interest relating to the property or transaction which is the subject of the action[.]" *Texas*, 805 F.3d at 657. In other words, "[w]hat is required is that the interest be one which the *substantive* law recognizes as belonging to or being owned by the applicant." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.* ("*NOPSI*"), 732 F.2d 452, 464 (5th Cir. 1984) (en banc). That interest must be "direct, substantial, [and] legally protectable[.]" *Texas*, 805 F.3d at 657. Such interests, however, cannot be "ideological, economic, or precedential" in nature; merely "*prefer*[*ing*] one outcome to [an]other" is not enough to justify intervention. *Id*. Appellants cannot meet these standards.

**a.** Start with SAT. It is an "unincorporated association" of college students "without lawful immigration status" who pay in-state tuition rates at "public colleges and universities in Texas." ROA.92. The organization seeks intervention to "protect" its members' ability to continue to receive those in-state tuition rates. SAT Br. 13. But this interest would not be "impaired," Fed. R. Civ. P. 24(a)(2), by the consent judgment because section 1623(a) only precludes illegal aliens "not lawfully present in the United States" from receiving in-state tuition rates. *See* ROA.52 (holding Challenged Provisions "invalid" only "as applied to aliens who are not lawfully present in the United States[.]").

Each of the three members identified in SAT's motion to intervene is, however, a DACA recipient. *See* ROA.92-93. And aliens who qualify for DACA have "lawful presence" within the country. *Texas v. United States*, 126 F.4th 392, 402, 421 (5th Cir. 2025). Though this Court has held DACA to be unlawful, it has stayed that ruling, thus preserving the lawful-presence status of "existing [DACA] recipients." *Id*.

28

at 422. This is fatal to SAT's efforts to intervene here. Unless and until "this court or the Supreme Court" lifts the stay, *id.*, SAT's members remain entitled to discounted in-state tuition at Texas universities consistent with section 1623(a).[3]

Citing a news article, SAT contends (at 15) it is "false" that DACA recipients will continue to be entitled to in-state tuition. They argue (at 15) that "several Texas colleges and universities have begun classifying DACA recipients as 'unlawfully present' and requiring them to pay out-of-state tuition rates." And they complain (at 15-16) that the Texas Higher Educating Coordinating Board has refused to define "lawful presence," which "leav[es] DACA recipients and other protected immigrants vulnerable to arbitrary misclassifications and loss of access to regular tuition rates." But to the extent that some colleges or universities have misconstrued the district court's order, section 1632(a), or this Court's decision in *Texas v. United States*, it proves only that those universities' misapprehension of applicable law has

---

[3] SAT's counsel, confronted with this fact's fatal application to SAT's intervention efforts, ROA.494-96, attempted to backfill that hole by filing a self-serving declaration on SAT's behalf obliquely claiming that he "determined that SAT has members who are not lawfully present in the United States" based on "communications with SAT members." ROA.576. But such counsel affidavits recounting what clients allegedly said are "no evidence at all." *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005) (Easterbrook, J.) (rejecting as evidence counsel declaration comprised of supposed statements from clients as hearsay). SAT thus only proffers unsupported, conclusory allegations that it has non-DACA members. Regardless, this declaration—improperly introduced in support of a reply brief—should have been stricken for the reasons the State explained below. ROA.604-11; *cf.* ROA.746 (denying motion to strike as moot).

impaired SAT's members' interest in paying in-state tuition rates—not that the absence of intervention in this lawsuit has impaired those interests.

**b.** Austin Community College also cannot satisfy Rule 24(a)'s requirements. It claims that it faces "institutional concerns," LUPE Br. 19, through "losing talented applicants (and revenue)," LUPE Br. 21. But ACC's fiscal concerns are, at most, "economic" interests that cannot support intervention. *Texas*, 805 F.3d at 657. And conspicuously absent is any discussion of the possibility that raised tuition would result in *increased* revenue.

Moreover, ACC's interest in a potential loss of applicants is, as it argued below, just another way for ACC to complain of the consent judgment's potential fiscal impact; that cannot support intervention. *Id.*; *see* ROA.125-26 ("Tuition revenue is a large portion of [ACC's] budget essential to its operations; the loss of such payments will significantly and directly impact ACC."). And ACC's speculation that it may lose applicants (and thus revenue) reflects a supposed interest "that is contingent upon the occurrence of a sequence of events"—the independent decision-making of unknown third parties not to attend ACC post-consent judgment—that "will not satisfy . . . [R]ule [24(a)(2)]." *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990); *see also Taylor Commc'n's Grp., Inc. v. Sw. Bell Tel. Co.*, 172 F.3d 385, 389 (5th Cir. 1999) (holding that "speculative" interests cannot "support intervention as of right."). Thus, ACC's sole remaining interest in this litigation is an impermissible "ideological . . . *prefer*[*ence of*] one outcome to the other." *Texas*, 805 F.3d at 657.

**c.** LUPE fares no better. LUPE claims that its "organizational interests," LUPE Br. 19, are impacted because it "is forced to devote resources to address the fallout from the consent judgment and to counsel members," LUPE Br. 21. Put otherwise, LUPE's proffered interest is impermissibly "economic" because it concerns resource allocation. *Texas*, 805 F.3d at 657.

Moreover, LUPE's choice to divert resources to address the consent judgment does not create an interest justifying intervention—such an argument would not even confer Article III standing to get into federal court, and as the party "seeking to invoke this Court's jurisdiction" to "appeal a decision that the primary party does not challenge, an intervenor must independently demonstrate standing." *Va. House of Delegates v. Bethune Hill*, 587 U.S. 658, 663 (2019). The Supreme Court rejected the proposition that "standing exists when an organization diverts its resources in response to a defendant's actions." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024). And "diverting 'resources to litigation and legal counseling in response to actions or inactions of another party'" does not confer standing. *Deep S. Ctr. for Env't Just. v. FDA*, 138 F.4th 310, 318 (5th Cir. 2025) (citation omitted); *LUPE*, 151 F.4th at 287 (same). So just as organizations "cannot spend [their] way into standing" simply by re-allocating money for advocacy purposes, *All. for Hippocratic Med.*, 602 U.S. at 394, LUPE cannot manufacture a Rule 24(a)(2) interest by voluntarily re-allocating advocacy resources.

LUPE's sole citation here—*City of Houston v. American Traffic Solutions, Inc.*, 668 F.3d 291 (5th Cir. 2012)—is inapposite. The *American Traffic Solutions* "intervenors [we]re *unique* because they engineered the drive" to promote and defend a

charter amendment, spending "money and time" to do so *before* the litigation they wished to intervene in was filed. *Id.* at 292-94 (emphasis added). But LUPE's supposed interest arose *after* this suit was filed, and it spent no "money and time" connected with the issues here beforehand. As LUPE concedes, it voluntarily reallocated resources in response to the consent judgment. LUPE Br. 11. Moreover, to the extent that *American Traffic Solutions* depends upon a diversion-of-resources theory, that is no longer a theory that can support LUPE's standing to intervene here. *All. for Hippocratic Med.*, 602 U.S. at 394-95.

**d.**    Last, Oscar Silva—a student enrolled at the University of North Texas currently finishing his last semester in college and paying in-state tuition rates under the Challenged Provisions, ROA.355—claims an interest in this litigation because this litigation casts a pall of "uncertainty" over his "educational access." LUPE Br. 19, 20-21. Silva asserts, in broad terms, that he cannot afford tuition without receiving the postsecondary education benefit of in-state tuition. ROA.355-57. And he contends that, while he "still qualif[ies] for in-state tuition rates" he is "afraid that the consent order in this case will obligate UNT to reassess [his] status and [he] will be forced to pay higher rates." ROA.356. To be sure, Silva states he has not "received any notifications from [the] university about how this will impact [him]." ROA.356. But he claims that "if asked to provide documentation showing [his] lawful presence in the United States [he] will not be able to provide such documentation to UNT." ROA.653.

If Silva "still qualif[ies] for in-state tuition rates," ROA.356, however, his interest in "educational access" will not be "impaired," LUPE Br. 21, by "disposing of

32

th[is] action" without his involvement. Fed. R. Civ. P. 24(a). Silva speculates that: (a) someday in the future he may be asked by his school to provide documentation showing his legal status, (b) he will not be able to do so, (c) he will have to pay higher tuition, and (d) he will not be able to afford that tuition and instead withdraw from school. That "highly attenuated chain of possibilities" is not a cognizable, imminent injury sufficient to confer standing upon him to pursue this appeal. *See LUPE*, 151 F.4th at 286 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013)); *Bethune-Hill*, 587 U.S. at 662-63. That is especially true because Silva is now in his last semester of college and any request to provide documentation and pay higher tuition would have already come to pass. ROA.355. Thus, Silva's sole remaining interest in this litigation is an insufficient "ideological . . . *prefer*[*ence* of] one outcome to the other." *Texas*, 805 F.3d at 657.

### 2. Appellants do not qualify for Rule 24(b) permissive intervention.

Appellants alternatively argue that the district court abused its discretion by not granting them permissive intervention. SAT Br. 7-18; LUPE Br. 23 n.2. But the LUPE Group made no effort to meaningfully argue permissive intervention, relegating it to a footnote which baldly asserts that they "have met each factor" without any discussion in their brief's body whatsoever. LUPE Br. 23 n.2. "Arguments that are insufficiently addressed in the body of [a] brief . . . are waived." *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 356 n.7 (5th Cir. 2003); *see also e.g.*, *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived").

SAT, for its part, fails to show that not receiving permissive intervention was an abuse of discretion. Permissive intervention is "wholly discretionary" and can be denied even if there is a common question of law or fact. *NOPSI*, 732 F.2d at 470–71. Rule 24(b) provides that courts "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). In exercising that discretion, district courts consider whether the proposed intervenor "will significantly contribute to full development of the underlying factual issues in the suit." *NOPSI*, 732 F.2d at 472. District court decisions on Rule 24(b) motions receive an "exceedingly deferential" standard of review. *Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 281 (5th Cir. 1996). Absent a "clear abuse of discretion," the district court's ruling will stand. *Cajun Elec. Power Coop. v. Gulf States Utilities, Inc.*, 940 F.2d 117, 121 (5th Cir. 1991). This Court has "*never*" fully and finally "reversed a denial of permissive intervention." *Ingebretsen*, 88 F.3d at 281 (emphasis added). Indeed, the sole case Appellants provide from this Court reversing a denial of permissive intervention and remanding for the district court's reconsideration held that the final "decision to grant or deny [would-be intervenor]'s intervention is firmly in the district court's hands." *United States ex rel. Hernandez v. Team Fin., L.L.C.*, 80 F.4th 571, 579 (5th Cir. 2023); *see* LUPE Br.23 n.2 (citing *Hernandez*, 80 F.4th at 579); SAT Br. 19 (same).

Under this Court's "clear abuse of discretion" standard, a trial court's ruling on a motion for permissive intervention will only be disturbed under the most "extraordinary circumstances." *NOPSI*, 732 F.2d at 471. Courts must engage in a two-step inquiry to determine whether to permit intervention. *First*, courts must

determine whether a would-be intervenor's claims or defenses share questions of fact or law with the main action. Fed. R. Civ. P. 24(b)(1)(B). And *second*, courts must exercise their discretion to determine "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). That SAT's defenses share questions of fact or law with the original action is not disputed. But Appellants' attempted intervention prejudices Texas's exclusive right to defend state law.

"Under Texas law, the Attorney General enjoys an exclusive right to represent state agencies; other attorneys who may be permitted to assist the Attorney General are subordinate to his authority." *Sierra Club v. City of San Antonio*, 115 F.3d 311, 314 (5th Cir. 1997) (citing *Hill v. Tex. Water Quality Bd.,* 568 S.W.2d 738, 741 (Tex. App.—Austin 1978, writ ref'd n.r.e.)). Indeed, "only 'the Attorney General or a county or district attorney may represent the State' *qua* state." *Gen. Land Off. v. Biden*, 71 F.4th 264, 271 (5th Cir. 2023) (quoting *Saldano v. Roach*, 363 F.3d 545, 552 (5th Cir. 2004)); *cf. Acuff v. United Papermakers & Paperworkers, AFL-CIO*, 404 F.2d 169, 172 (5th Cir. 1968) (denying intervention because "the collective bargaining agent is the exclusive representative of the unit," so "cases such as this differ entirely from situations in which intervention is ordinarily appropriate.").

The Supreme Court has thus "*never* before upheld the standing of a private party to defend the constitutionality of a state statute when state officials have chosen not to." *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013) (emphasis added). Indeed, *Hollingsworth* explicitly rejected the notion that private parties may intervene to appeal

a ruling declaring a state law unconstitutional absent independent bases for intervention. *Id.* at 708-09. But Appellants seek to do exactly this.

As in *Hollingsworth*, Appellants are the only parties seeking to defend a state law on appeal after the Attorney General declined to do so. And like the *Hollingsworth* intervenors, Appellants' "only interest in having the District Court order reversed [is] to vindicate the constitutional validity of a generally applicable [state] law." *Id.* But that interest lies entirely with the State, and Appellants are "plainly not agents of the State." *Id.* at 713. Appellants "answer to no one; they decide for themselves, with no review, what arguments to make and how to make them . . . they are not elected at regular intervals—or elected at all." *Id.* The Supreme Court made clear that States, and States alone, have the right to defend a state statute's constitutionality. Appellants thus may not step into the Attorney General's shoes to assert some amorphous interest in the defense of the Challenged Provisions. *Id.*

This Court, like the Supreme Court in *Hollingsworth*, should "decline to" decide otherwise "for the first time here." *Id.* at 715. And the district court's declining to do so was no "clear abuse of discretion."

## II. This Court Cannot Vacate the Consent Judgment.

Appellants also contend that this Court should vacate the district court's order entering the consent judgment. LUPE Br. 29-37; SAT Br. 26-52. But because Appellants are not parties to this case, they lacked authority to appeal that judgment. This Court therefore lacks appellate jurisdiction to alter it. Nor did the district court err in denying the LUPE Group's motion to alter or amend the judgment under Rules 59(e) and 60(b). As nonparties, the LUPE Group lacked standing to file that motion.

But even if they were parties, they offer no persuasive ground for this Court to grant them relief in the first instance.

## A. This Court lacks appellate jurisdiction to grant Appellants' request to vacate the consent judgment.

At the outset, because the district court properly denied intervention, this Court lacks appellate jurisdiction to vacate the consent judgment.

**1.** "It is well-settled that one who is not a party to a lawsuit, or has not properly become a party, has no right to appeal a judgment entered in that suit." *Edwards v. City of Houston*, 78 F.3d 983, 993 (5th Cir. 1996) (en banc). "[I]ntervention is the requisite method for a nonparty to become a party to a lawsuit." *U.S. ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009). But the only Appellants here "are would-be intervenors whose attempts to join the case . . . were unsuccessful." *Edwards*, 78 F.3d at 993. And because they "were denied leave to intervene, and thus never obtained the status of party litigants in this suit," the Court must "dismiss their appeals, insofar as they seek review of the district court's final judgment . . . approving the Consent Decree." *Id.*

The reason is straightforward: "Having been denied intervention," no Appellant "is a party to this suit" and none "can appeal the judgment approving the Consent Decree." *Id.* at 994; *see also* Fed. R. App. P. 3(c)(1)(A) (requiring notice of appeal to "specify the *party* or parties taking the appeal") (emphasis added); *id.* R. 8(a)(1)(A) ("A *party* must ordinarily move first . . . [for] a stay of the judgment or order of a district court pending appeal.") (emphasis added); *see Edwards*, 78 F.3d at 993 n.17 (looking to the text of Federal Rule of Appellate Procedure 3(c)).

Appellants' nonparty status dooms their request for vacatur of the consent judgment. This Court routinely dismisses appeals of orders by nonparties who have not become parties through intervention. *See, e.g.*, *Texas v. United States*, 679 F. App'x 320, 324 (5th Cir. 2017) (per curiam) (explaining that appellant "has not cited any authority, and we have found none (outside of those involving collateral orders), in which this court has allowed a nonparty to appeal without intervening and without having actually participated in the proceedings below"); Order at 3, *Franciscan All., Inc. v. Cochran*, No. 17-10135 (5th Cir. Jun. 30, 2017) (per curiam), ECF No. 82-1 (holding "that because appellants have not been granted intervention and are not parties to this case, we lack jurisdiction to adjudicate the merits of the protective appeal from the preliminary injunction order").

This Court's sister circuits, too, "have recognized repeatedly that, until a movant for intervention is made a party to an action, it *cannot* appeal any orders entered in the case other than an order denying intervention." *United States v. City of Milwaukee*, 144 F.3d 524, 531 (7th Cir. 1998) (emphasis added) (citing *United States v. City of Chicago*, 908 F.2d 197, 200 (7th Cir. 1990), *cert. denied*, 498 U.S. 1067 (1991)); *see also Robert Ito Farm, Inc. v. County of Maui*, 842 F.3d 681, 687 (9th Cir. 2016) (explaining that "a prospective intervenor does not become a party to the suit unless and until he is allowed to intervene"); *cf. Toronto-Dominion Bank v. Cent. Nat'l Bank & Tr. Co.*, 753 F.2d 66, 68 (8th Cir. 1985) ("Because the motion to intervene has not yet been granted or denied, BNB's status remains uncertain and it has no standing to take an appeal or appear as a party.").

**2.**    The LUPE Group made two responses to this argument in their reply before the motions panel, but neither has merit. *See* Dkt. 86 at 4-5. *First*, the LUPE Group invoke the narrow test for non-party standing to appeal set out in *Castillo v. Cameron County*, 238 F.3d 339, 349 (5th Cir 2001). Yet the LUPE Group cannot satisfy that test because they cannot show a "personal stake in the outcome" of the appeal. *Id.* ACC does not assert its own organizational interests but those of its members, who are not affected by the consent decree since they are DACA recipients who remain eligible for in-state tuition notwithstanding the consent judgment. *Supra* 28-30. Silva has alleged that he currently "still qualif[ies] for in-state tuition rates," ROA.356, and offers only speculation that he might someday be asked to pay out-of-state rates, so he too remains unaffected by the consent judgment. *Supra* 32-33. And LUPE offers only abstract ideological objections and a diversion-of-resources theory of economic injury that is no longer viable under current law. *Supra* 31-32.

*Second*, the LUPE group suggest that, because this Court has appellate jurisdiction over their appeal of the order denying intervention under 28 U.S.C. § 1291, its jurisdiction extends to the consent judgment itself. Dkt. 86 at 5. They cite no authority for this proposition, nor could they. As discussed, "[i]t is well-settled that one who is not a party to a lawsuit, or has not properly become a party, has no right to appeal a judgment entered in that suit." *Edwards*, 78 F.3d at 993. Without first being made party to the suit by intervention, Appellants lack standing to take an appeal from the separate order entering a consent judgment. *See id.* at 994.

*Edwards* is not to the contrary. *See* Dkt. 86 at 4. There, the en banc court vacated an order entering a consent decree only *after* concluding that certain appellants were

entitled to intervene. *Edwards*, 78 F.3d at 1006. In other words, once they were made parties, appellants were entitled to challenge the consent judgment in the district court. But the en banc court had jurisdiction to vacate a separate order entering the consent decree not because a group of appellants successfully appealed an order denying them intervention but because a *different* group of appellants who were parties to the case—and therefore did not "need[] to intervene in th[e] case"—had already noticed an appeal from the final judgment entering the consent decree. *Id.* at 993-94, 1006 n.29. The State therefore does not argue that "this Court's appellate jurisdiction expanded" when it reversed the denial of intervention. Dkt. 86 at 4.

## B. The Court should reject the LUPE Group's request to reverse the denial of their motion to alter or amend the judgment.

To the extent that the LUPE Group asks the Court to review, not the consent judgment itself, but the district court's denial on mootness grounds of their motion to alter or amend the judgment under Rule 59(e) or 60(b), the Court should affirm.

To start, the district court correctly denied that motion. A district court may "relieve" only "a *party* or its legal representative from a final judgment, order, or proceeding" under Rule 60(b). *See* Fed. R. Civ. P. 60(b) (emphasis added); *Bridgeport Music, Inc. v. Smith*, 714 F.3d 932, 938-42 (6th Cir. 2013); *Kem Mfg. Corp. v. Wilder*, 817 F.2d 1517, 1519-21 (11th Cir. 1987); *cf. Edmonson v. U.S. Steel Corp.*, 659 F.2d 582, 585 (5th Cir. Unit B 1981) (Clark, J., specially concurring). The same is true of Rule 59(e) motions. *See Ross v. Marshall*, 426 F.3d 745, 752-53 (5th Cir. 2005). Because they are not parties or the legal representative of any party, the LUPE Group lacked standing to file motions under Rules 59(e) or 60(b).

Nevertheless, even if the Court were to reverse the district court's order on intervention and thus clear the way for Appellants to attain party status, it should, at most, vacate the district court's order denying as moot the LUPE Group's Rule 59(e) and Rule 60(b) motion and remand for the district court to consider the merits of those arguments in the first instance. This is "a court of *re*view, not first view," *Utah v. Su*, 109 F.4th 313, 318 (5th Cir. 2024), and the district court did not pass on the merits of the LUPE Group's motion since it thought that motion moot following its order denying intervention.

But should this Court decide to adjudicate the merits of the LUPE Group's arguments for the first time on appeal, it should reject each of their three challenges to the district court's entry of the consent judgment.

**1.**    The LUPE Group first contend that the consent judgment was void under Rule 60(b)(4) because the district court lacked subject-matter jurisdiction. They reason that, because the United States and Texas ultimately entered into a consent judgment resolving the case, the lawsuit was a "faux" dispute without sufficient Article III adversity under *Pool v. City of Houston*, 87 F.4th 733 (5th Cir. 2023) ("*Pool II*"). Not so. In *Pool II*, this Court held that the district court lacked jurisdiction to enter a declaratory judgment holding voter-registration provisions in Houston's City Charter unconstitutional because, "all parties have agreed from the beginning" that the

challenged provisions were "unconstitutional" and "[t]he City also agreed that it 'would and could not enforce the provisions.'" *Id.* at 734 (citation modified).[4]

But here, while the Attorney General agreed that the Challenged Provisions were preempted under this Court's precedent, he could not and did not "agree" the State "would and could not enforce the provisions." *Id.* After all, the tuition rules are not enforced by the Attorney General, but by the public universities who charge and collect those funds. *See, e.g.*, Tex. Educ. Code § 54.053 ("A person shall submit the following information to an institution of higher education to establish resident status under this subchapter."). So, absent the district court's permanent injunction, universities would continue to charge lower tuition rates to illegal aliens.

Moreover, this Court "determine[s] Article III jurisdiction at the outset of the suit." *Quintanilla-Matamoros*, 2026 WL 74273, at *6 (Ho, J., concurring) (collecting authorities). And the parties here "quite plainly ha[d] conflicting interests at the moment of the suit." *Id.* The United States has an interest "in vindicating federal law and deterring illegal entry into our country. Likewise, Texas has an obvious interest in enforcing its law." *Id.* Thus, it "shouldn't matter whether the parties subsequently agree on some or all of the contested issues [because] . . . as long as there is

---

[4]     It is doubtful that *Pool II* is even good law. *Pool II* contradicted *Pool I* in its holding concerning party agreement contrary to the rule of orderliness. *Compare Pool v. City of Houston*, 978 F.3d 307, 311–14 (5th Cir. 2020) ("*Pool I*"), *with Pool II*, 87 F.4th at 734; *see also Pool v. City of Houston*, ---F.4th---, 2026 WL 16046 (5th Cir. 2026) ("*Pool III*") (noting concern that *Pool II* "makes no reference to . . . *Pool I*," "in violation of [the] . . . rule of orderliness, and the law of the case doctrine"); *United States v. Quintanilla-Matamoros*, ---F.4th---, 2026 WL 74273, at *5-6 (5th Cir. Jan. 9, 2026) (Ho, J., concurring) (explaining same).

a conflict of party interests at the moment the suit is filed, Article III jurisdiction exists." *Id.* Indeed, "the Supreme Court has repeatedly affirmed the jurisdiction of Article III courts to issue judgments in cases of party agreement." *Id.* at *7-8 (collecting authorities).

The LUPE Group then contend (at 32-33) that the fact that public universities enforce the tuition rules, rather than the State *qua* State, means that "the United States is not adverse to the State itself." Yet there can be little question that public universities are arms of the State subject to its general direction and control. *See Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253, 257-60 (5th Cir. 2020). As a result, these universities would comply with injunctions running against the State with respect to rules they enforce, thus supplying the requisite Article III adversity.

The LUPE Group nevertheless protest that adversity is lacking because the parties "seemingly choreographed this lawsuit before it was even filed." LUPE Br. 31 (citing ROA.434-36). Yet the same article they cite makes clear that DOJ's "standard" policy is "to notify state attorneys general of federal lawsuits ahead of time" to try to "resolve matters ahead of litigation." ROA.436. The Attorney General, after carefully evaluating the merits of the United States' suit, exercised his settlement authority rather than expend state and judicial resources fighting a futile battle over a plainly preempted statute by entering the consent judgment.

The LUPE Group's true complaint appears centered on the Attorney General's exercise of judgment about the legal merits of the United States' complaint and his decision to settle. But "[t]he Attorney General's power to settle for his clients is certainly no less than that of other lawyers." *League of United Latin Am. Citizens,*

*Council No. 4434 v. Clements*, 999 F.2d 831, 842 (5th Cir. 1993). And this Court has acknowledged that this power includes entering consent judgments.

For example, in *United States v. Allegheny-Ludlum Industries, Inc.*, this Court denied intervention and upheld a consent decree in a similar case where "[s]imultaneously with the filing of the complaint, the parties announced . . . that a tentative nationwide settlement had been reached," "multilaterally reduced their agreement to the form of two extensive written consent decrees," and the district court "signed and entered the documents later that same day." 517 F.2d 826, 834 (5th Cir. 1975).

Likewise, this Court denied intervention in a case where nonparties argued that

> The Attorney General's representation of [Texas]' interest is inadequate because the Attorney General aligned himself with [the opposing party] and joined [him] in urging the district court to vacate [the opposing party's] sentence and because the Attorney General did not appeal the district court's order granting habeas relief to [him].

*Saldano*, 363 F.3d at 553 (internal quotation marks omitted). In neither case did the Court suggest a lack of Article III adversity.

**2.**   Appellants next argue that the district court's entry of the consent judgment violated their rights under the Due Process Clause[5] because they were not given "notice" of the settlement.[6] LUPE Br. 33-34; SAT Br. 27-31. But "[i]n order for a person

---

[5] SAT also attempts to press the notice argument as a First Amendment violation, SAT Br. 27-31, but its intervention motion below never mentioned the First Amendment. *See* ROA.115-44. The argument should not be considered for the first time on appeal. *Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Ctrs., Inc.*, 200 F.3d 307, 316-17 (5th Cir. 2000).

[6] For the avoidance of doubt, SAT's due process claims are not properly before this Court. Unlike the LUPE Group, SAT did not file a motion to alter or amend the judgment and their appeal of the denial of their intervention motion does not give

to have a procedural due process claim that damages or other relief can remedy, he must have been denied life, liberty, or property protected by the Fourteenth Amendment." *Wilson v. Birnberg*, 667 F.3d 591, 597 (5th Cir. 2012). "[N]otice and an opportunity for the individual to be heard" are only required if such a deprivation occurs. *Morris v. Livingston*, 739 F.3d 740, 750 (5th Cir. 2014). None occurred here.

This Court has explained that it "cannot conceive of how" a consent decree "deprive[s] the appellants of life, liberty, or property," since "no private person has a 'right' to advancement of his or her specific claim in litigation brought by the government, or to representation by the government in court in a capacity comparable to attorney and client." *Allegheny-Ludlum Indus.*, 517 F.2d at 877 n.80. Regardless, the LUPE Group make no effort whatsoever to define the nature of the interest they claim has been deprived by the consent judgment, so their claim fails at the first step of the analysis. SAT analogizes (at 29-30) in-state tuition benefits to welfare subsistence benefits, which *Golberg v. Kelly*, 397 U.S. 254 (1970), treated as a protected property interest. But even if in-state tuition rates could be analogized to welfare subsistence benefits—an argument LUPE expressly disclaims, LUPE Br. 43-44— Appellants have not demonstrated how they have been *deprived* of such benefits; as explained, to the extent any of the Appellants are recipients of such benefits the consent judgment does not disturb their eligibility for them. *Supra* 29-33. And without any deprivation, no procedural due process violation is in view.

---

this Court appellate jurisdiction to review the district court's order entering the consent judgment. *See supra* 37-38.

**3.** Last, the LUPE Group contend that the consent judgment should have been altered or amended under Federal Rule of Civil Procedure 60(b)(1) because it "surprise[d]" them or under Rule 60(b)(6) for various policy reasons that they pitch as "extraordinary circumstances." Neither argument withstands scrutiny.

As to the former, the LUPE Group cite (at 35) two cases granting relief under Rule 60(b)(1) where courts entered default judgments against intervenors or parties without notice—not when a district court entered judgment against a third party and an intervenor claims to have an interest relating to that judgment. Those cases are plainly distinguishable: here the district court did not enter any judgment or other coercive relief against Appellants.

As to the latter, "relief under Rule 60(b)(6) is available only in narrow circumstances," and it must be "stringen[tly]" applied. *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 211, 212 (2025). "Rule 60(b)(6) provides only grounds for relief not already covered by the preceding five paragraphs." *Id.* at 211. The LUPE group argue (at 36-37) that "extraordinary circumstances" are present here because (a) the consent judgment "undermines 'the public's confidence in the judicial process'" since it is little more than an "advisory opinion" that did not implicate any "genuine dispute" and was entered "in the absence of a real case or controversy"; (b) the consent judgment will encourage collusive suits in future cases; and (c) the preempted Dream Act provisions had the salutary effect of "opening higher education to more than 57,000 Texas students," so the "equities" support vacatur.

The LUPE Group do not cite a single case requiring vacatur of a judgment under Rule 60(b) based on such abstract policy arguments. Nor is the State aware of such

a case. To the contrary, the Supreme Court recently confirmed that the provision's reach must be limited to truly unique circumstances affecting the movant in a personal and concrete way. *See Honickman*, 605 U.S. at 211-13. Were the articulation of abstract concerns enough to demand vacatur under Rule 60(b)(6), there would be little limit to that provision's reach. That is not the law. *See id.*

## Conclusion

The Court should affirm both the district court's order denying Appellants' motions to intervene and its order denying the LUPE Group's motion to alter or amend the consent judgment.

Respectfully submitted,

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General


Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

William R. Peterson
Solicitor General

William F. Cole
Principal Deputy Solicitor General

/s/ Nathaniel A. Plemons
Nathaniel A. Plemons
Assistant Solicitor General
Nathaniel.Plemons@oag.texas.gov

Counsel for Defendant-Appellee

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,988 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Nathaniel A. Plemons
NATHANIEL A. PLEMONS