No. 25-10898

# IN THE UNITED STATES COURT OF
# APPEALS FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

STATE OF TEXAS,

*Defendant-Appellee*,

v.

STUDENTS FOR AFFORDABLE TUITION; LA UNION DEL PUEBLO
ENTERO; AUSTIN COMMUNITY COLLEGE; OSCAR SILVA,

*Movants-Appellants*.

On Appeal from the United States District Court for the Northern District of Texas,
Wichita Falls Division, No. 7:25-cv-00055, Hon. Reed O'Connor

## REPLY BRIEF OF MOVANT-APPELLANT
## STUDENTS FOR AFFORDABLE TUITION

Thomas A. Saenz
Fernando Nuñez
Luis L. Lozada
MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND
634 South Spring Street, Floor 11
Los Angeles, CA 90014
(213) 629-2512

*Counsel for Movant–Appellant Students for Affordable Tuition*

# TABLE OF CONTENTS

Page(s)

INTRODUCTION…………………………………………………………………1

ARGUMENT……………………………………………………………………….2

I.    SAT Satisfies the Requirements to Intervene for Purposes of Appeal………..2

    A. SAT Is Entitled to Intervene as of Right…………………………………..3

    B. The District Court Abused its Discretion in Denying Permissive Intervention………………………………………………………………5

    C. Futility Does Not Preclude SAT's Intervention…………………………..7

II.   The District Court Violated Due Process by Entering an Order Affecting SAT's Interests Without Any Notice or Hearing…………………………..9

III.  The Texas Dream Act Complies with 1623(a)………………………………13

IV.   Section 1623(a) Violates the Tenth Amendment……………………………17

V.    The District Court Failed to Consider Severability…………………………20

    A. The Residency and High School Graduation Provisions Are Independent and Complete in Themselves…………………………………………………21

    B. Legislative Intent Favors Severability to Preserve the Statute…………..22

    C. Severability Requires the District Court to Conduct Fact-Intensive Inquiry into the Texas Dream Act and Legislative Intent………………………...23

CONCLUSION………………………………………………………………...25

CERTIFICATE OF SERVICE…………………………………………………26

CERTIFICATE OF COMPLIANCE…………………………………………...26

# TABLE OF AUTHORITIES

Cases                                                                    Page(s)

*Ackerley Commc'ns of Massachusetts, Inc. v. City of Cambridge,*
    135 F.3d 210 (1st Cir. 1998) ....................................................24

*Astoria Fed. Sav. & Loan Ass'n v. Solimino,*
    501 U.S. 104 (1991) .............................................................15

*Ayotte v. Planned Parenthood of N. England,*
    546 U.S. 320 (2006) .............................................................20

*Benjamin ex rel. Yock v. Dep't of Pub. Welfare,*
    701 F.3d 938 (3d Cir. 2012) .....................................................6

*Bostock v. Clayton Cnty., Georgia,*
    590 U.S. 644 (2020) .............................................................16

*Bradley v. Vil. of Univ. Park, Illinois,*
    59 F.4th 887 (7th Cir. 2023).....................................................3

*Brumfield v. Dodd,*
    749 F.3d 339 (5th Cir. 2014) ....................................................4

*Ciechon v. City of Chicago,*
    686 F.2d 511 (7th Cir. 1982) ...................................................12

*Deanda v. Becerra,*
    96 F.4th 750 (5th Cir. 2024)....................................................16

*Franciscan All., Inc. v. Azar,*
    414 F. Supp. 3d 928 (N.D. Tex. 2019) ............................................3

*Fuentes v. Shevin,*
    407 U.S. 67 (1972) .............................................................12

*Geeslin v. State Farm Lloyds,*
    255 S.W.3d 786 (2008) ..........................................................20

*Goldberg v. Kelly,*
    397 U.S. 254 (1970) ............................................................11

*Hollingsworth v. Perry,*
    570 U.S. 693 (2013) .............................................................6

*Joint Anti-Fascist Refugee Comm. v. McGrath,*
    341 U.S. 123 (1951) ............................................................12

*Kelly v. Foti,*
    77 F.3d 819 (5th Cir. 1996)......................................................9

*Long Beach Area Peace Network v. City of Long Beach,*
    574 F.3d 1011 (9th Cir. 2009) ..................................................24

*Lopez-Anaya v. Palacios-de-Miranda,*
    No. 06-2085CCC, 2007 WL 2254501 (D.P.R. Aug. 6, 2007) ..........................12

*Minnesota v. Mille Lacs band of Chippewa Indians*,
  526 U.S. 172 (1999) ...................................................................................23

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ...................................................................................10

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
  584 U.S. 453 (2018) .............................................................................16, 18

*Nelson v. Adams USA, Inc.*,
  529 U.S. 460 (2000) .....................................................................................9

*Pin v. Texaco, Inc.*,
  793 F.2d 1448 (5th Cir. 1986) ......................................................................8

*Rollins v. Home Depot USA*,
  8 F.4th 393 (5th Cir. 2021) ...........................................................................9

*Rosbottom v. Schiff*,
  589 B.R. 63 (W.D. La. 2018) ........................................................................9

*Sharber v. Florence*,
  131 Tex. 341 (1938) .....................................................................................21

*Sierra Club v. Espy*,
  18 F.3d 1202 (5th Cir. 1994) .........................................................................7

*Texas v. United States.*,
  805 F.3d 653 (5th Cir. 2015) .........................................................................7

*Texas v. United States*,
  126 F.4th 392 (5th Cir. 2025) ........................................................................4

*TRW, Inc. v. Andrews*,
  534 U.S. 19 (2001) ......................................................................................14

*U.S. Dept. of Treasury v. Fabe*,
  508 U.S. 491 (1993) ....................................................................................24

*United States ex rel Hernandez v. Team Fin., L.L.C.*,
  80 F.4th 571 (5th Cir. 2023) ..........................................................................5

*United States v. Benson*,
  No. 1:25-CV-1148, 2025 WL 3520406 (W.D. Mich. Dec. 9, 2025) ...................6

*Vargas v. Trainor*,
  508 F.2d 485 (7th Cir. 1974) .......................................................................11

*Viaids Labs., Inc. v. U.S. Postal Serv.*,
  464 F. Supp. 976 (S.D.N.Y. 1979) ..............................................................10

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*,
  834 F.3d 562 (5th Cir. 2016) .....................................................................6, 7

*Young Conservatives of Texas Found. v. Smatresk*,
  73 F.4th 304 (5th Cir. 2023) ..........................................................................9

Statutes

8 U.S.C. § 1623(a) ................................................................................1, 2
42 U.S.C. § 2000e–2(m) ...........................................................................16
Tex. Educ. Code §§ 54.052(a)(3)(A) and (B) ....................................21, 22
Tex. Gov't Code § 311.032(c) ...................................................................21

Rules

Fed. R. Civ. P. 24 ...................................................................................2, 7
Fed. R. Civ. P. 24(a) ...........................................................................1, 3, 4

# INTRODUCTION

This appeal concerns the fundamental right of interested parties to be heard before their livelihoods and educations are dismantled by a hurried consent judgment. Appellant Students for Affordable Tuition ("SAT") includes the very individuals whose access to higher education was stripped away. SAT satisfies the four requirements for intervention under Federal Rule of Civil Procedure 24(a). In denying SAT's motion to intervene based on "futility," the district court did not merely screen for facially frivolous or legally insufficient pleadings; it improperly decided the merits of an appeal on behalf of this Court without the benefit of full adversarial briefing and argument.

The statutory construction principles raised by SAT support an interpretation of 8 U.S.C. § 1623(a) that preserves the Texas Dream Act. Ignoring those principles, Appellees the United States and the State of Texas urge this Court to instead borrow from the anti-discrimination and whistle-blower protection contexts. But the broad approach that justifies statutory interpretation in those contexts does not apply in the Tenth Amendment context involving federal intrusion into state powers.

Appellees understate the implications of their interpretation of Section 1623(a) as a simple regulation of immigration. But their reading transforms it from a modest limitation on immigrant entitlement to higher education benefits into a loophole that bypasses the Tenth Amendment by allowing the federal government

to coerce state legislatures to achieve federal goals—in direct opposition to the Constitution.

Appellees also brush aside the serious constitutional concerns raised by SAT regarding the district court's hurried entry of a consent judgment without any notice or hearing. According to them, SAT's members received all the process and protections due under the Constitution by having this Court consider SAT's motion to intervene *after* the district court had already entered an order stripping SAT's members of access to regular tuition rates. Yet Appellees offer no legal support for their position.

Finally, the district court's failure to consider severability or the serious federalism implications of its ruling underscores why SAT's participation is essential. For those reasons, and those further discussed below, SAT respectfully asks this Court to grant SAT's motion to intervene, lift the district court's consent judgment order, and remand the case for further proceedings.

## ARGUMENT

### I.     SAT Satisfies the Requirements to Intervene for Purposes of Appeal

SAT—whose membership consists of the very people targeted by this action, and who moved to intervene within seven days—meets the Rule 24 intervention requirements. SAT's arguments in defense of Section 1623(a) are substantial and

warrant full consideration.  Indeed, the robust responses by Appellees underscore the complexity of the issues and why SAT's participation is necessary.

### A. SAT Is Entitled to Intervene as of Right

SAT satisfies the requirements to intervene as of right under Federal Rule of Civil Procedure 24(a).  The United States does not address whether SAT satisfied any of the four requirements for intervention as of right.  *See generally* USA Br.  Accordingly, the United States concedes and has waived this issue.  *See Bradley v. Vil. of Univ. Park, Illinois*, 59 F.4th 887, 897 (7th Cir. 2023) ("An appellee may [] waive argument by . . . by failing to respond to an appellant's argument at all . . . .") (collecting cases).  As for Texas, it only challenges the second and third requirements.  *See* Texas Br. at 40[1].  Thus, Texas concedes that SAT's motion to intervene was timely, and that none of the existing parties, including itself, can adequately represent SAT's interests.

Regarding the second and third requirements, SAT's interests plainly have been impaired by this action.  SAT's membership—as clarified during the district court proceedings—consists of members with and without Deferred Action for Childhood Arrivals ("DACA").[2]  *See* ROA.564.  And both of their interests in

---

[1] References to page numbers are based on the docket entry.

[2] Appellant's counsel's declaration on this fact must be accepted as alleged at the early stage of litigation.  Moreover, factual contentions are inappropriate on appeal, especially when the district court declined to strike the declaration that Texas challenges.  *See* ROA.746; *accord Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 936 (N.D. Tex. 2019) (O'Connor, J.) (accepting declaration

accessing regular tuition rates have been impaired.  Indeed, even members with DACA have been affected by the consent judgment, as described in SAT's opening brief and further confirmed by *amici*.  *See* SAT Br. at 26–27; Dkts. 126-1 at 28; 134 at 22–23.  Had SAT participated in the litigation before the consent judgment was entered, it would have at least properly presented the question of whether DACA recipients remain eligible for regular tuition rates for the district court's consideration.  Instead, the purported protections for DACA recipients are buried within a legal brief in opposition to SAT's motion to intervene.

For DACA recipients that have not yet been misclassified, they still face a looming risk of losing what little assurances Texas has provided.  Texas itself admits that DACA recipients will be affected by the consent judgment once the stay in *Texas v. United States*, 126 F.4th 392 (5th Cir. 2025) is lifted.  *See* Texas Br. at 41.  This risk—that would otherwise not exist—is enough to satisfy the Rule 24(a) requirements.  *See, e.g., Brumfield v. Dodd*, 749 F.3d 339, 343 (5th Cir. 2014) (possibility of losing vouchers was enough to support intervention).

Accordingly, SAT satisfies the Rule 24(a) requirements for intervention as of right.

---

challenged on evidentiary grounds because the court must accept facts asserted at the intervention stage).

**B. The District Court Abused its Discretion in Denying Permissive Intervention**

SAT also satisfies the requirements for permissive intervention. The United States does not address whether the district court abused its discretion in denying permissive intervention. Accordingly, it concedes and waives this issue. Texas's post-hoc justification for denial of permissive intervention was not discussed at all by the district court.[3] Even if it had, Texas incorrectly states the law, which would still warrant reversal for abuse of discretion. *See United States ex rel Hernandez v. Team Fin., L.L.C.*, 80 F.4th 571, 575 (5th Cir. 2023) (denial premised on erroneous statements of law warrant reversal).

SAT is not attempting to intervene to uphold a generally applicable state law. As described above, SAT's membership consists of students with and without DACA. *See supra* Section I.A. And both have been particularly harmed. *See id.* Further, SAT is not seeking to "represent" the State of Texas or any of its agencies, which is what the authority cited by Texas precludes. SAT is only seeking to defend the Texas Dream Act, on which it has a particular interest.[4]

---

[3] The district court did not discuss permissive intervention. *See generally* ROA.735–46.

[4] Texas cannot argue that its attorney general can adequately represent SAT's interests when it previously conceded that it is an inadequate representative. *See* Texas Br. at 39.

The Supreme Court's decision in *Hollingsworth v. Perry*, 570 U.S. 693 (2013), does not prohibit private parties from intervening to defend laws that impact them directly.[5] *Hollingsworth* considered an intervention by private proponents of Proposition 8 to defend the initiative when the state of California refused to do so. *See id.* at 701. The Supreme Court held that the private intervenors did not have standing to appeal the district court's order because the district court "had not ordered them to do or refrain from doing anything." *Id.* at 705. The Supreme Court emphasized that the private intervenors only had a "generalized grievance," which did not confer standing. *Id.* at 706.

The Supreme Court, then, did not announce a categorical rule banning interventions by private parties to defend laws that specifically affect them.[6] Texas's argument, taken to its logical conclusion, would preclude interventions by affected third parties whenever a state is named as a defendant. But courts have consistently allowed parties to intervene in such circumstances. *See, e.g., Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 569 (5th Cir. 2016); *Benjamin ex rel. Yock v. Dep't of Pub. Welfare*, 701 F.3d 938, 951 (3d Cir. 2012); *United States v. Benson*, No. 1:25-CV-1148, 2025 WL 3520406, at *6 (W.D. Mich. Dec. 9,

---

[5] Texas raises this argument only to support the district court's denial of permissive intervention. *See* Texas Br. at 47–48.

[6] Texas's citation to dicta in *Hollingsworth* is immaterial in this case that concerns intervenors who possess a particularized interest.

2025); *see also Texas v. United States.*, 805 F.3d 653, 660 (5th Cir. 2015) (private parties allowed to intervene to defend federal policy).

### C. Futility Does Not Preclude SAT's Intervention

When a district court adjudicates questions of significant constitutional importance, the preservation of the right to appeal that decision is paramount to ensure that the district court applied the law correctly. A "futility" assessment cannot serve as a substitute for a full appeal on the merits. Here, the district court did not conclude that SAT failed to meet the requirements of intervention, nor that SAT did not have standing to pursue an appeal. What it did—because SAT only sought intervention for purposes of appeal—was decide the merits of an appeal. That is not the proper function of any futility analysis.

Rule 24 does not identify "futility" as a basis for denying intervention. As a result, courts have applied a limited screening to determine legal sufficiency—not whether the intervenor is likely to succeed on the merits. *See* SAT Br. at 32–33 (collecting cases). But the district court went beyond the minimal screening required for adequate pleadings and imposed a "likelihood of success on the merits" requirement on SAT. That contravenes this Court's directive to liberally allow intervention. *See* SAT Br. at 20 (citing *Wal-Mart Stores*, 834 F.3d at 565); *see also Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) ("Federal courts should

allow intervention when no one would be hurt and the greater justice could be attained.") (internal quotation marks omitted).

*Pin v. Texaco, Inc.*, 793 F.2d 1448 (5th Cir. 1986), is illustrative of the type of interventions rejected by courts. In *Pin*, this Court upheld the denial of intervention because the plaintiff intervenor filed a frivolous motion to intervene. *See* 793 F.2d at 1449–55. This Court also upheld sanctions against the plaintiff intervenor for bringing claims that were "not warranted by existing law, nor could it be reasonably argued that the claims [were] warranted by an extension of the law . . . in light of . . . numerous cases . . . ." *Id.* at 1455. That is markedly different from this case, which concerns complex issues regarding the constitutionality of both the Texas Dream Act and Section 1623(a); issues that this Court has not addressed directly. Further, *Pin* did not discuss what constitutes a sufficiently pleaded defense for a defendant intervenor, or whether the screening procedure differs for defendant intervenors.

Even if the district court applied the correct futility standard, its analysis is at best incomplete because it did not address SAT's affirmative defenses. For example, the district court did not consider the arguments presented by this appeal regarding

Section 1623(a)'s constitutionality despite SAT raising the Tenth Amendment and federalism principles as affirmative defenses in its proposed answer.[7]

Finally, as SAT argued in its opening brief, this Court's decision in *Young Conservatives of Texas Found. v. Smatresk*, 73 F.4th 304 (5th Cir. 2023), does not compel the district court's decision and does not resolve the important Tenth Amendment issues raised in this appeal. *See* SAT Br. at 37–38. The fact that *Young Conservatives* left these issues unresolved weighs in favor of SAT's intervention so that this Court may address its own precedent as it may be applicable here.

Accordingly, the district court's denial of intervention based on futility was improper and SAT should be granted intervention and allowed to proceed with its appeal on the merits.[8]

## II.   The District Court Violated Due Process by Entering an Order Affecting SAT's Interests Without Any Notice or Hearing

Appellees mischaracterize both the requirements of due process and SAT's arguments.[9] The Due Process Clause of the Fifth Amendment prohibits depriving

---

[7] Neither party challenged SAT's Tenth Amendment and federalism affirmative defenses in their opposition to SAT's motion to intervene.

[8] Alternatively, this Court may vacate the consent judgment and remand if it determines that SAT meets the requirements for intervention to become a party in this action.

[9] Contrary to Texas's assertion, SAT adequately raised its First Amendment arguments for purposes of putting the district court on notice. In its motion to intervene, SAT expressly challenged the district court's entry of the consent judgment without a hearing and without any opportunity to object, which was entered mere hours after the filing of the complaint. SAT was

any person of liberty or property without notice and a meaningful opportunity to be heard. As the Supreme Court has held, "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *see also Viaids Labs., Inc. v. U.S. Postal Serv.*, 464 F. Supp. 976, 981 (S.D.N.Y. 1979) ("Due process requires not that the [party] be given a hearing, but rather merely that they be given the opportunity for a hearing.").

Here, the procedural posture and circumstances surrounding the district court's consent judgment entry are unprecedented. It entered the order a few hours after the United States filed its complaint against Texas, and Texas declined to defend its own laws. The invalidation of the Texas Dream Act immediately, and without warning, reclassified SAT's members as out-of-state students, subjecting them to tuition rates several times higher than what they previously paid under

---

not required to invoke specific talismanic words to preserve the issue. Rather, "[t]he raising party must present the issue so that it places the opposing party and the court on notice that [the] issue is being raised." *Kelly v. Foti*, 77 F.3d 819, 823 (5th Cir. 1996); *see also Nelson v. Adams USA, Inc.*, 529 U.S. 460, 469 (2000) ("[T]his principle does not demand the incantation of particular words; rather, it requires that the lower court be fairly put on notice as to the substance of the issue."). Moreover, due process presents a purely legal question, and failure to consider it would result in a miscarriage of justice. *See Rollins v. Home Depot USA*, 8 F.4th 393, 398 (5th Cir. 2021) (citation omitted); *Rosbottom v. Schiff*, 589 B.R. 63, 73 (W.D. La. 2018) (recognizing that due process is a question of law and that failure to address it constitutes a miscarriage of justice). Therefore, this Court should certainly consider SAT's arguments on appeal.

regular tuition rates.  As a result, some members were forced to defer their education or abandon their programs altogether.  Because of the unprecedented nature of these circumstances, there are no analogous cases regarding such a truncated timeline for considering an issue.

SAT agrees that *Goldberg v. Kelly*, 397 U.S. 254 (1970), does not control the outcome of this appeal.  However, the general principles articulated in *Goldberg* still apply even though this case involves policy affecting a group rather than individual denial of benefits.  In *Goldberg*, the Supreme Court held that due process requires individuals to receive notice and a meaningful opportunity to be heard before they are deprived of welfare benefits.  *See Vargas v. Trainor*, 508 F.2d 485, 489 (7th Cir. 1974) ("[T]hese principles require that a recipient have timely and adequate notice detailing the reasons for a proposed termination…").  The principles of *Goldberg* apply when benefits are involved: due process requires notice and a meaningful opportunity to be heard so that those affected may challenge the invalidation of benefits before the deprivation occurs.  Simply put, due process protections are not limited to individuals, but apply whenever benefits, such as regular tuition rates, are directly affected.  The district court's failure to provide any notice or reasonable opportunity to be heard before it deprived SAT's members of critical, reliance-based benefits violates the Due Process Clause.

11

Further, any post-hoc "adversarial briefing" is an inadequate substitute for due process after the deprivation had already occurred.[10]    The Supreme Court has consistently emphasized that "opportunity for [a] hearing must be provided before the deprivation at issue takes effect." *Fuentes v. Shevin*, 407 U.S. 67, 82 (1972).  As highlighted, the consent judgment order was entered only hours after the complaint was filed, without any hearing, and without affording SAT a meaningful opportunity to intervene or to contest the consent judgment before it was entered.

Due process demands substantive procedures rather than an illusory opportunity to be heard via a motion to intervene.  "[D]ue process requires that a hearing […] 'be a real one, not a sham or a pretense.'"  *Ciechon v. City of Chicago*, 686 F.2d 511, 517 (7th Cir. 1982) (quoting *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 164 (1951)); *see also Lopez-Anaya v. Palacios-de-Miranda*, No. 06-2085CCC, 2007 WL 2254501, at *2 (D.P.R. Aug. 6, 2007) ("[H]earing must be more than a mere sham" and if "the decision makers reached their conclusion prior to the hearing and refused to consider the evidence then due process would not be satisfied.").  An expedited process that affords no meaningful opportunity to challenge the deprivation cannot satisfy the constitutional requirements of an opportunity to be heard at a meaningful time.  This constitutional defect cannot be

---

[10] The adversarial briefing referenced by the United States came in the procedural context of SAT's motion to intervene.  The futility arguments presented by the parties there are not true adversarial briefing on the merits, as the more substantive arguments presented in this appeal demonstrate.

cured by subsequent briefing regarding a motion to intervene for purposes of appeal because the harm had already materialized by the time the district court adjudicated SAT's motion to intervene.

Texas's assertion that SAT's members were not affected or deprived is also misplaced for the reasons stated above. *See supra* Section I.A. Texas's suggestion that SAT should instead seek relief against colleges and universities ignores the procedural posture of this case and Texas's role in creating the conditions that led to the confusion and unjustified treatment of DACA recipients. Therefore, the district court violated the Due Process Clause by entering an order that deprived SAT's members of significant rights and interests without providing a reasonable time to become aware of the challenge or a meaningful opportunity to be heard. This constitutional deficiency cannot be cured by a post-hoc briefing because due process requires a hearing at a meaningful time *before* the deprivation occurs.

Accordingly, this Court should reverse the district court's order and remand the case to allow SAT to have a meaningful opportunity to be heard before any further determinations are made.

## III.    The Texas Dream Act Complies with 1623(a)

The statutory-construction principles presented in SAT's opening brief compel a reading of Section 1623(a) that preserves the Texas Dream Act. Rather

than address those principles, Appellees attempt to rewrite the statute contrary to Congress's intentions and established rules of statutory construction.[11]

For example, neither Appellee refutes that Section 1623(a) lists residency as the sole criterion that is prohibited.  Thus, under the canon of *expressio unius*, the inclusion of residency as the sole restricted factor confirms that other criteria remain permissible.  *See* SAT Br. at 48.  Instead of addressing this statutory construction principle, Appellees attempt to tie residency to everything.  *See, e.g.,* USA Br. at 33.  And anything that they cannot tie to residency, such as a requirement to sign an affidavit, they discard as "trivial."  USA Br. at 39.  The result is a categorical ban on the involved benefit.  But the plain language of Section 1623(a) cannot be expanded to encompass criteria that Congress chose to omit.    Indeed, an expansive interpretation that renders "on the basis of residence" superfluous violates the "cardinal principle" that no clause or word should be rendered superfluous or insignificant.[12]  *TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001).  It is the statutory text—not a preference for a broader application—that must govern the outcome of this analysis.

---

[11] Appellees also fail to address Congressional ongoing acquiescence in Section 1623(a)'s interpretation in light of the Texas Dream Act and similar laws that have proliferated across the country since Section 1623(a) was enacted.

[12] It would also render Section 1623(a) unconstitutional, as shown below.

Established severability principles further compel a construction of Section 1623(a) that preserves the Texas Dream Act.[13]   Appellees overlook a critical presumption: when it legislates, Congress is aware of the law, including state severability law. *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) ("Congress is understood to legislate against a background of common-law adjudicatory principles."). And, it was aware that state laws granting regular tuition rates can survive through severability if they include residency as only one of several criteria.

For example, a state legislature seeking to provide regular tuition rates to students without lawful immigration status might pass a law that includes two criteria, one of which requires residence within the state, but one that does not. In that situation, Congress's wording of Section 1623(a) does not achieve the purported goal to invalidate the entire statutory scheme. Thus, the reasonable reading of Section 1623(a) is that it only invalidates entire statutory schemes if they provide benefits based *solely* on residence.  Had Congress desired to invalidate entire statutory schemes that took residence into consideration in any way, it would have drafted the statute in a manner to overcome established severability principles.

---

[13] Although Appellees present their arguments regarding the severability of the Texas Dream Act, they do not address severability in the context of statutory interpretation of Section 1623(a).

A narrow construction of Section 1623(a) is also warranted to avoid superseding the "historic police powers of the States." *See Deanda v. Becerra*, 96 F.4th 750, 761 (5th Cir. 2024) ("Preemption analysis begins with the assumption that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.") (cleaned up). While alternative frameworks, such as those used in anti-discrimination or whistleblower-protection doctrines, rely on broad "but-for" causation, such expansive doctrines do not apply in the preemption context.

Indeed, the Supreme Court in *Bostock* noted that instead of narrowing Title VII liability, Congress had "moved in the opposite direction" by allowing a plaintiff "to prevail merely by showing that a protected trait . . . was a 'motivating factor' in a defendant's challenged employment practice." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 657 (2020) (citing 42 U.S.C. § 2000e–2(m)). The same cannot be said in the context of the Tenth Amendment. *See Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 475 (2018) (expanding anticommandeering doctrine to preclude federal prohibitions instead of limiting it to affirmative commands). Appellees do not explain why the Court should adopt an expansive interpretation that would broaden federal power and intrude into the realm of states' rights.

Finally, SAT's proposed reading of Section 1623(a) will not deprive the statute of "virtually all effect." USA Br. at 21. The statute would still prohibit Texas

16

from providing regular tuition rates to people without lawful immigration status that did not graduate from a Texas high school and were simply present in the state. That is precisely what Section 1623(a) was worded to do. Accordingly, reading Section 1623(a) in a way that preserves the Texas Dream Act is the only reasonable way to read the statute.[14]

## IV.    Section 1623(a) Violates the Tenth Amendment

A reading of Section 1623(a) that invalidates the Texas Dream Act results in federal intrusion into a domain wholly reserved to the states. Contrary to the United States's characterization of this as a "lesser step of limiting availability of such benefits in certain circumstances,"[15] the statute functions as a direct mandate to state legislatures. USA Br. at 47. To be clear, the "limit" the United States is referring to is a condition that states cannot provide regular tuition to students without lawful immigration status within the state unless states change their laws to confer regular tuition on all U.S. citizens and residents. Thus, Congress is using its power over immigration to force states to legislate in a particular manner, with the major effect on education policy regarding citizens. It uses Section 1623(a) as a tool to insert

---

[14] Appellees take issue with reading "solely" into Section 1623(a), but their interpretation asks this Court to read "in any way" or "in any part" into the statute. They cannot have it both ways.

[15] This contention is fundamentally at odds with the United States' own contention that virtually everything is a proxy for residency, and that states are exceedingly unlikely to provide regular tuition to every U.S. citizen and resident. *See* USA Br. at 49.

itself into state legislatures and arms itself "with the authority to stop legislators from voting on any offending proposals." *Murphy*, 584 U.S. at 474.

By operating in this manner, Section 1623(a) is a direct regulation of state functions—not a mere eligibility requirement for individuals. Section 1623(a)'s condition to provide benefits to all U.S. citizens and residents cannot be a regulation of immigrants because they have no power to satisfy the condition. In every practical sense, it is a condition placed on states because only a state can satisfy the condition. The United States's assertion that Section 1623(a) does not require Texas's government to do anything is a distinction without a difference. *See* USA Br. at 49. As the Supreme Court stated, it is an empty distinction between telling a state to do something versus prohibiting it from doing something. *See Murphy*, 584 U.S. at 475.

Here, the Texas Legislature sought to provide regular tuition to students without lawful immigration status that meet certain criteria, such as high school graduation and three years of residence in Texas. That is why it passed the Texas Dream Act. *See, e.g.,* Dkts. 126-1 (benefits of providing regular tuition to students without lawful immigration status); 134 at 29–30 (Texas' efforts to increase college access to its high school graduates). However, Congress—through Section 1623(a)—prohibits the Texas Legislature from doing so unless it also provides regular tuition to every U.S. citizen and resident—something the Texas Legislature

does not want to do. *See* Dkt. 149 at 49 (it is "exceedingly unlikely" that Texas will provide regular tuition rates to all U.S. citizens).

Appellees do not point to anything that gives Congress the power to impose a condition that intrudes on state education policy. As SAT raised in its opening brief, if Congress can impose this condition, there would be no limiting principle on Congress's ability to use its power over immigration to coerce states in areas Congress has no recognized authority to regulate. Congress could simply condition certain immigrant activity based on states passing certain laws that Congress desires, such as lower state sales-tax rates or purchasing American-made automobiles. *See* SAT Br. at 56.

That issue is further compounded by the lack of political accountability. *See* SAT Br. at 60. Indeed, voters in Texas that understandably want regular tuition for all of Texas high school graduates will have limited political recourse. The United States minimizes the lack of political accountability as a non-existent issue or irrelevant. *See* USA Br. at 49. But its argument is premised on its misunderstanding that Texas is not required to do anything. *See id.* However, as discussed, there is no difference between Congress issuing an affirmative command or imposing a negative restriction.

Ultimately, what Section 1623(a) accomplishes is to deprive Texas of students that possess the state's educational and social values that make them ideal students

to contribute to Texas higher education, unless it extends regular tuition to all U.S. citizens and residents. Such an intrusion into Texas's education policy contravenes the Tenth Amendment.

## V.    The District Court Failed to Consider Severability

The district court erred by failing to determine whether the residency requirement in Section 54.052(a)(3)(B) is severable from the Texas Dream Act. Appellees gloss over the district court's failure to conduct this analysis and fail to present any evidence that severing the residency requirement while maintaining the high school graduation requirement would significantly broaden the eligibility for regular tuition rates beyond what the Texas Legislature intended. Regardless, any fact finding of legislative intent is better suited for the district court to conduct on remand, considering that there is no record before this Court to make that determination.

As noted in SAT's opening brief, courts have a duty to sever invalid provisions of a statute rather than invalidate an entire statutory scheme where the remaining provisions can operate independently and completely according to legislative intent. *See* SAT Br. at 62 (citing *Ayotte v. Planned Parenthood of N. England*, 546 U.S. 320, 328–29 (2006)). And under Texas law, "[w]hen a part of a statutory scheme is unconstitutional, a court should—where possible—sever out the unconstitutional aspects and save the balance of the scheme." *Geeslin v. State Farm*

*Lloyds*, 255 S.W.3d 786, 797 (2008). Even in the absence of an express severability clause, Texas law presumes severability where the remaining provisions "can be given effect without the invalid provision or application, and to this end the provisions of the statute are severable." *See* Tex. Gov't Code § 311.032(c). Severability, thus, in part depends on functionality.

When severing a provision, the remaining portions of the statute must be complete, recognizing that the Texas Legislature would have preferred the statute to remain operative absent the invalid provision. *See Sharber v. Florence*, 131 Tex. 341 (1938) ("[I]n the construction of statutes, if it can be lawfully done, it is the duty of the court to construe a statute so as to render it valid.").

Accordingly, if the residency provision is not essential to the statutory scheme and the remaining high school graduation provision is independently enforceable, the district court was required to sever the invalid provision and preserve the remainder of the Texas Dream Act.

### A.    The Residency and High School Graduation Provisions Are Independent and Complete in Themselves

The Texas Dream Act contains two distinct eligibility requirements for students to receive regular tuition rates. The statute contains a residency requirement and a high school graduation requirement. *See* Tex. Educ. Code §§ 54.052(a)(3)(A) and (B). Subsection (A) only requires high school graduation in Texas. *See id.*

Subsection (B) requires residence in Texas for three years during high school and one year before enrollment in an institution of higher education. *See id.* Each provision is complete and enforceable on its own. Invalidating the residency requirement would not disturb the high school graduation requirement. Each of them are worded in a manner that renders them independently functional. Thus, the question now becomes whether the Texas Legislature would have preferred the statutory scheme to remain operative by severing the invalid provision rather than frustrating its objective by invalidating the entire statute.

### B.    Legislative Intent Favors Severability to Preserve the Statute

Legislative intent supports severability. The Texas Legislature enacted the Texas Dream Act to expand access to public education for students who have established ties to Texas through graduation from Texas high schools. There is no indication that the Texas Legislature would have preferred wholesale invalidation of the Texas Dream Act if the residency requirement became invalid. To the contrary, the Texas legislature has kept the law intact for decades and decided to keep the law last year despite calls to repeal. *See* Dkt. 133 at 17–24 (Texas Dream Act's history).

Thus, the Texas Dream Act reflects the Legislature's decision that students who graduate from Texas high schools have established substantial ties to Texas and should have access to higher education at regular tuition rates. *See, e.g.,* Dkt. 134 at 29–30 (Texas's efforts to increase college access to its high school graduates). That

laudable purpose is fully realized and served by the high school graduation provision standing alone. Invalidation of the entire Texas Dream Act would undermine that purpose.

Further, the concern that preserving only the high school graduation requirement would provide access to more immigrants than what the Texas Legislature intended is also unfounded. Appellees do not offer any evidence demonstrating that it would result in a significant increase of new students being eligible for regular tuition rates. Simply put, their assertion is speculative and requires a factual determination not present here.[16] Accordingly, severance preserves the statute's objective and respects legislative intent.

## C.   Severability Requires the District Court to Conduct a Fact-Intensive Inquiry into the Texas Dream Act and Legislative Intent

Regardless of Appellees' arguments against severability, the fact remains that the district court never conducted any severability analysis or determined whether the residency provisions could be severed from the Texas Dream Act. As briefly demonstrated above, severability determinations require a fact-intensive inquiry into whether the legislature would have preferred the severed statute to remain enforceable without the invalid provision. *See Minnesota v. Mille Lacs band of*

---

[16] That argument is also belied by their own contention that high school graduation is a "perfect proxy" for residency. USA Br. at 45.

*Chippewa Indians*, 526 U.S. 172, 191 (1999) ("[I]nquiry into whether a statute is severable is essentially an inquiry into legislative intent."). Consequently, because severability demands such an inquiry, it is best addressed by the trial court. Indeed, appellate courts routinely remand severability questions where the record has not been properly developed below. *See, e.g., U.S. Dept. of Treasury v. Fabe*, 508 U.S. 491, 510 (1993) ("[A]ny issue of severability—is a question of state law to be addressed upon remand."); *Ackerley Commc'ns of Massachusetts, Inc. v. City of Cambridge*, 135 F.3d 210, 214 (1st Cir. 1998) ("As severability disputes usually turn on fact-intensive inquiries best left to the trial court in the first instance . . . ."); *Long Beach Area Peace Network v. City of Long Beac*h, 574 F.3d 1011, 1016 (9th Cir. 2009) ("We remand to allow the district court to determine whether the unconstitutional provisions are severable . . . .").

Accordingly, because severability requires a proper inquiry into legislative intent that was not conducted by the district court, this Court should vacate the district court's order and remand the case so that the district court can determine whether the residency provision is severable and whether the Texas Dream Act remains operative on the basis of the high school graduation provision standing alone.

///

///

# CONCLUSION

For the foregoing reasons, SAT respectfully asks this Court to reverse the denial of intervention, lift the district court's consent judgment order, and remand the case for further proceedings.

Dated: February 13, 2026

Respectfully submitted,

*/s/ Fernando Nuñez*
Thomas A. Saenz (Cal. Bar No. 159430)
Fernando Nuñez (Cal. Bar No. 327390)
Luis L. Lozada (Cal. Bar No. 344357)
**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**
634 South Spring Street, 11th floor
Los Angeles, CA 90014
Facsimile: (213) 629-0266
Email: tsaenz@maldef.org
fnunez@maldef.org
llozada@maldef.org

Nina Perales (Tex. Bar No. 24005046)
**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**
110 Broadway, Suite 300
San Antonio, Texas 78205
Facsimile: (210) 224-5382
Email: nperales@maldef.org

*Attorneys for Students for Affordable Tuition*

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2026, I filed this reply brief with the Clerk of the Court via CM/ECF, which will deliver electronic copies to all counsel of record in this appeal.

Dated: February 13, 2026                    Respectfully submitted,

*/s/ Fernando Nuñez*
Fernando Nuñez (Cal. Bar No. 327390)
*Attorney for Students for Affordable Tuition*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. 32(a)(7)(B)(ii) because this brief contains 6,398 words excluding the parts of the brief exempted by Fed. R. App. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman font size 14.

Dated: February 13, 2026                    Respectfully submitted,

*/s/ Fernando Nuñez*
Fernando Nuñez (Cal. Bar No. 327390)
*Attorney for Students for Affordable Tuition*