**No. 25-10898**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff - Appellee

v.

STATE OF TEXAS,
Defendant - Appellee

STUDENTS FOR AFFORDABLE TUITION; LA UNION DEL PUEBLO ENTERO; AUSTIN COMMUNITY COLLEGE; OSCAR SILVA
Movants - Appellants

On Appeal from the United States District Court for the Northern District of Texas, No. 7:25-cv-00055
The Hon. Reed O'Connor, U.S. District Judge

# PETITION FOR REHEARING EN BANC BY MOVANT-APPELLANTS LA UNIÓN DEL PUEBLO ENTERO, AUSTIN COMMUNITY COLLEGE, AND OSCAR SILVA

Andrés Correa
LYNN PINKER HURST & SCHWEGMANN, LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Tel.: (214) 981-3800
Fax: (214) 981-3839
acorrea@lynnllp.com

## CERTIFICATE OF INTERESTED PARTIES

**No. 25-10898, *United States v. Students***

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

ACLU Foundation of Texas

ACLU of Texas

Asian Texans for Justice

Austin Community College

Bernie, Andrew

Berroa Rodriguez, Marlene Nathalie

Brewer, Simon Christopher

Broder, Tanya

Children at Risk

Children's Defense Fund-Texas

Cole, William Francis

Corning, Sarah

Correa, Andres

Crapo, Matt A.

Democracy Forward Foundation

Desai, Yaman

Dolling, Zachary

Donatti, David A.

Duggins-Clay, Paige

EdTrust

Ensign, Drew C.

Eta Alpha Chapter of Sigma Lambda Beta International Fraternity

Ethnic Studies Network of Texas

Etter, Kristin M.

Every Texan

FaithWorks

Fascett, Lauren

Federation for American Immigration Reform

Fleming, Angel

FWD.us

Gardner, Kyle Aaron

Giveducation

Gonzalez, Kassandra

Hatoum, Daniel

Hines, Barbara

ImmSchools

Intercultural Development Research Association

Johnson, Wade Allen

La Unión del Pueblo Entero

Latino Texas Policy Center

Lawyers Defending American Democracy

Lynn Pinker Hurst & Schwegmann

Kambli, Abhishek

Kercher, Ryan

Marek, Stan

MASBA-School Board Members for Latino Equality

Mexican American Legal Defense & Educational Fund

Molina, Ralph Michael

Moreno, Celina Y.

National Immigration Law Center

Netter, Brian David

Nunes, Fernando

Olivares, Efren Carlos

Patton, Christopher W.

Perales, Nina

Perez, Elianis N.

Perryman, Skye L.

Petchenik, Molly

Pinon, Adriana Cecilia

Plemons, Nathaniel Anson

Presidents' Alliance on Higher Education and Immigration

Rational Middle

Rhines, Zachary Lewis

Rodriguez, Madeleine

Saenz, Thomas Andrew

Saldivar, Edgar

Salzman, Joshua Marc

Silva, Oscar

Skedzielewski, Sean

Stautner, John

Students Engaged in Advancing Texas

Students for Affordable Tuition

Tenny, Daniel

Terwey, Margaret Dunlay

Texans for Economic Growth

Texas AFT

Texas Association for Bilingual Education

Texas Association of Chicanos in Higher Education

Texas Association of Diversity Officers in Higher Education

Texas Association of Mexican American Chambers of Commerce

Texas Civil Rights Project

Texas Immigration Law Council

Texas Impact

Texas State Teachers Association

United We Dream

Walters, Ryan

Wolfman, Brian

Wolfson, Paul

Woodward, Daniel

Xi Chapter of Sigma Lambda Gamma National Sorority

Xu, Zhenmian

/s/ Andrés Correa

*Attorney of record for Movant-Appellants LUPE, ACC, and Oscar Silva*

## STATEMENT PURSUANT TO FEDERAL RULE OF APPELLATE PROCEDURE 40(b)(2)

The panel's decision, which prevented movant-appellants from defending Texas's longstanding in-state tuition statute when the Texas Attorney General refused to do so, satisfies the Rule 40(b)(2) criteria for multiple independent reasons.

*First*, the panel's decision conflicts with decisions of other courts of appeals. The panel held that intervention was properly denied solely because, the panel concluded, intervenors' defense of the challenged statute would ultimately fail on the merits. Other circuits have held that courts generally should not consider the merits when considering whether the standards for intervention have been satisfied. *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 800–01 (2d Cir. 2022); *Nat'l Parks Conservation Ass'n v. U.S. EPA*, 759 F.3d 969, 973–74 (8th Cir. 2014).

*Second*, the panel's decision allows a judgment to stand despite the lack of true adversity between the parties, conflicting with *Pool v. City of Houston*, 87 F.4th 733, 733–34 (5th Cir. 2023) (*Pool II*), and Article III.

*Third*, this case presents a question of exceptional importance because the panel facially invalidated a state statute on which tens of thousands of Texans have relied in a manner that upsets the Tenth Amendment's allocation of federal and

state authority. Further, the question is not confined to Texas. The panel's opinion is the first federal appellate decision construing Section 1623. The United States has now sued 17 states over comparable tuition laws, and some district courts have already begun following the panel's reasoning.

## TABLE OF CONTENTS

STATEMENT PURSUANT TO FEDERAL RULE OF APPELLATE PROCEDURE 40(b)(2) .......... viii

INTRODUCTION .......... 1

ISSUES FOR EN BANC CONSIDERATION .......... 3

SUMMARY OF PROCEEDINGS AND DISPOSITION .......... 3

STATEMENT OF FACTS .......... 4

REASONS FOR GRANTING *EN BANC* REVIEW .......... 7

I. The Panel's Decision Creates A Circuit Split Regarding The Standard For Intervention .......... 7

II. The Panel's Decision Sustains A Judgment In Conflict With Circuit Precedent and Article III .......... 12

III. This Court Should Review The Exceptionally Important Question Whether Section 1623 Validly Preempts Texas's Longstanding Tuition Laws. .......... 14

CONCLUSION .......... 16

CERTIFICATE OF COMPLIANCE .......... 18

CORPORATE DISCLOSURE STATEMENT .......... 19

CERTIFICATE OF SERVICE .......... 20

# TABLE OF AUTHORITIES

## Cases

*Brackeen v. Bernhardt*, 937 F.3d 406 (5th Cir. 2019) .......... 14

*Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022) .......... 11

*Chicago & Grand Trunk Ry. Co. v. Wellman*, 143 U.S. 339 (1892) .......... 12

*Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416 (5th Cir. 2002) .......... 9

*In re N.Y.C. Policing During Summer 2020 Demonstrations*, 27 F.4th 792 (2d Cir. 2022) .......... viii, 10

*Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27 (1993) .......... 8

*Martinez v. Regents of Univ. of Cal.*, 241 P.3d 855 (Cal. 2010) .......... 12

*Murphy v. NCAA*, 584 U.S. 453 (2018) .......... 15, 16

*Nat'l Parks Conservation Ass'n v. U.S. EPA*, 759 F.3d 969 (8th Cir. 2014) .......... viii, 10

*Phillips v. Marine Concrete Structures, Inc.*, 895 F.2d 1033 (5th Cir. 1990) .......... 8

*Pin v. Texaco, Inc.*, 793 F.2d 1448 (5th Cir. 1986) .......... 8

*Pool v. City of Houston*, 87 F.4th 733 (5th Cir. 2023) (*Pool II*) .......... viii, 2, 12, 13

*Pool v. City of Houston,* 978 F.3d 307 (5th Cir. 2020) (*Pool I*) .......... 13

*Printz v. United States*, 521 U.S. 898 (1997) .......... 16

*R.I. Fed'n of Teachers, AFL-CIO v. Norberg*, 630 F.2d 850 (1st Cir. 1980) .......... 10

*Saavedra v. Murphy Oil U.S.A., Inc.*, 930 F.2d 1104 (5th Cir. 1991) .......... 10

*Sierra Club v. City of San Antonio*, 115 F.3d 311 (5th Cir. 1997) ....................................9

*Sommers v. Bank of Am., N.A.*, 835 F.3d 509 (5th Cir. 2016) ....................................8

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ....................................11

*Texas v. United States*, 805 F.3d 653 (5th Cir. 2015) ....................................9

*Texas v. United States*, 809 F.3d 134 (5th Cir. 2015) ....................................9

*Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080 (8th Cir. 1999) ....................................10

*United States v. Hansen*, 599 U.S. 762 (2023) ....................................15

*United States v. Illinois*, 2026 WL 2137256 (S.D. Ill. July 24, 2026) ....................................16

*United States v. Lopez*, 514 U.S. 549 (1995) ....................................15

*United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829 (8th Cir. 2009) ....................................8

*United States v. Quintanilla-Matamoros*, 164 F.4th 366 (5th Cir. 2026)......... 13, 14

*United States v. Texas*, No. 15-674 (U.S.) ....................................9

*United States v. Walz*, 825 F. Supp. 3d 897 (D. Minn. 2026) ........................ 12, 15

*Williams & Humbert Ltd. v. W. & H. Trade Marks (Jersey) Ltd.*, 840 F.2d 72 (D.C. Cir. 1988) ....................................10

**Other Authorities**

8 U.S.C. § 1623(a) .................................... 3, 4, 7, 14

Tex. Educ. Code § 54.052(a)(3) ....................................4

**Rules**

Federal Rule of Civil Procedure 24(a)(2) ....................................1

## INTRODUCTION

Two days after the State legislature declined to repeal the Texas Dream Act, the United States and Texas submitted a consent judgment seeking to invalidate the Dream Act. Six hours later, the State's law was permanently enjoined. By carefully choreographing this suit, in less than 24 hours the parties jointly achieved the judicial invalidation of a law that enabled a generation of Texans to qualify for in-state tuition at state postsecondary schools. When the district court approved the consent judgment, the Attorney General issued a press release celebrating the invalidation of one of Texas's own laws as a "major victory."

In light of the Attorney General's refusal to defend Texas's law, two separately represented groups of parties adversely affected by the judgment sought to intervene to defend the statute. But the district court denied intervention. The court did not question that the student, school, and organizations had satisfied the intervention criteria in Federal Rule of Civil Procedure 24(a)(2). The prospective intervenors timely sought to participate and identified cognizable interests adversely affected by the judgment. The court nonetheless concluded that intervention would be "futile" based on its determination that the challenged statute is, in fact, preempted.

A divided panel of this Court affirmed. The panel majority concluded that intervenors could not intervene because it agreed with the United States on the

merits. The panel majority refused, for "want of appellate jurisdiction," Op. 18, to consider intervenors' contention that the district court entered judgment without Article III jurisdiction. This was despite jurisdiction being "intertwined with [the intervenors'] argument that intervention is not futile." Op. 26 (Ramirez, J., dissenting). As a result, a judgment of dubious validity that injures thousands of Texas students, schools, and organizations has been immunized from judicial scrutiny.

*En banc* review is warranted for several reasons. The panel decision splits with decisions of other circuits, which have properly recognized that parties who satisfy the Rule 24(a) intervention factors and assert non-frivolous arguments should not have to demonstrate that they will ultimately prevail on the merits to intervene. The result also defies this Court's admonition that "faux disputes do not belong in federal court," meaning that "where the parties agree on a constitutional question, there is no adversity and hence no Article III case or controversy." *Pool II*, 87 F.4th at 733–34. Finally, whether Texas's longstanding tuition statute is valid is a question of exceptional importance to both adversely affected students and the people of Texas, whose democratically enacted law was summarily enjoined.

## ISSUES FOR EN BANC CONSIDERATION

1. Whether putative intervenors who satisfy the requirements of Rule 24(a) may nonetheless be denied intervention solely because the court concludes their arguments will ultimately fail on the merits.

2. Whether a federal court has Article III jurisdiction over litigation in which the nominally adverse parties act to obtain precisely the same result by agreeing to the institution of the lawsuit and entry of a consent judgment.

3. Whether 8 U.S.C. § 1623(a) validly preempts Texas's in-state tuition law, or instead impermissibly commands the States in violation of the Tenth Amendment.

## SUMMARY OF PROCEEDINGS AND DISPOSITION

The United States sued Texas, alleging that its in-state tuition laws are preempted. The district court immediately entered a consent judgment and two separately represented groups promptly moved to intervene to seek relief from judgment or to appeal.[1] The district court denied intervention. The intervenors appealed this denial along with the underlying consent judgment. On July 9, 2026, a divided panel affirmed the denial of intervention and dismissed the appeal from the consent judgment.

---

[1] This petition is filed by Austin Community College, Oscar Silva, and La Unión del Pueblo Entero (collectively, the LUPE Intervenors). Intervenor Students for Affordable Tuition (SAT) is separately represented.

## STATEMENT OF FACTS

1. In 2001, the Texas legislature overwhelmingly passed a law commonly known as the Texas Dream Act, which then-Governor Rick Perry promptly signed into law. The Dream Act allows students to qualify for in-state tuition if they (1) graduated from a Texas high school; (2) maintained a residence in Texas for at least three years prior to their high-school graduation; and (3) maintained a residence in Texas for the year preceding enrollment in a higher education institution. Tex. Educ. Code § 54.052(a)(3). Additionally, if the student is not already a citizen or permanent resident of the United States, they must attest that they will apply for permanent residency as soon as they are eligible. *Id.* § 54.053(3)(B). Since 2001, thousands of students who call Texas home have relied on the Dream Act to afford higher education and have expanded the Texas workforce and contributed to the State's economy. ROA.321.

2. In 2025, the United States sued Texas, alleging that the Dream Act is preempted by a federal statute stating "an alien ... not lawfully present in the United States" cannot be eligible on the basis of "residence within a State" for "postsecondary education benefit[s]" unless "a citizen or national" is eligible without regard to residence. ROA.440 (quoting 8 U.S.C. § 1623(a)). Texas waived service and joined a motion seeking entry of a consent judgment enjoining the law, which the district court entered six hours later, without inviting adversarial

briefing. Op. 21, 23 (Ramirez, J., dissenting). Texas officials celebrated their collaboration with the U.S. Justice Department, and a Justice Department official acknowledged that the parties "talk[ed] in advance" to eliminate "a statute that's been a problem for the state." ROA.339, 350, 435.

3. LUPE Intervenors—a Texas public postsecondary school, a then-current graduate student, and a nonprofit organization that provides services to students who would lose in-state tuition eligibility—moved to intervene. In opposing intervention, Texas and the United States argued (among other things) that intervention would be futile because the Dream Act is preempted. In their reply, LUPE Intervenors argued against incorporating a truncated merits review into the intervention analysis and explained that they could offer substantial statutory and constitutional defenses against preemption. ROA.636–38. They separately noted that "the Court lacked jurisdiction to enter the Consent Decree" because of the absence of a case or controversy and argued that "[a]t a minimum, Proposed Intervenors should be allowed to intervene to make that argument." ROA.634.

The district court denied intervention despite never questioning that LUPE Intervenors satisfied the Rule 24(a)(2) factors. The court rested its holding solely on its determination that the Dream Act conflicts with Section 1623, rendering intervention futile. ROA.745. The court's analysis did not acknowledge

Intervenors' jurisdictional argument and never addressed the argument that Section 1623 conflicts with the Tenth Amendment.

4. A divided panel affirmed the denial of intervention on the same grounds as the district court. The panel rejected the Intervenors' argument that Rule 24 does not require would-be intervenors to demonstrate that they will ultimately prevail on the merits. Instead, the panel concluded that it is appropriate to fully adjudicate contested questions of law on an intervention motion. Op. 6–7. The panel rejected arguments that Section 1623 may be construed to avoid conflict with both the Dream Act and the Tenth Amendment and held that the Tenth Amendment is not implicated. Op. 9–15, 16–17.

Having concluded that intervention was properly denied, the majority dismissed Intervenors' appeal from the underlying consent judgment. Op. 18–20. On that basis, the panel never addressed Intervenors' extended argument that the district court lacked jurisdiction.

5. Judge Ramirez dissented because the district court "conducted an incomplete futility analysis that overlooked issues relating to both its subject matter jurisdiction and Appellants' meritorious defenses to the United States' express preemption claim." Op. 42. She first explained that the Court could not skip past the alleged jurisdictional defects in the case, both because courts must always confirm their subject-matter jurisdiction and because Intervenors'

jurisdictional argument is intertwined with their argument that intervention is not futile. Op. 25–26. She concluded that, at a minimum, there is ambiguity about the district court's jurisdiction and would have remanded to the district court to consider jurisdiction in the first instance. Op. 26–31.

Judge Ramirez then identified flaws in the panel's futility analysis. While she agreed that futility may be considered on an intervention motion, she explained that the panel erred in evaluating only the strength of the United States' claim, without considering the sufficiency of the proposed defenses (including jurisdictional defenses). Op. 34.

Finally, she concluded that Section 1623 is an impermissible direct command to States that runs afoul of the Supreme Court's anti-commandeering doctrine. Op. 35–41. "As a result, § 1623(a) is not a valid preemption provision, so intervention was not futile." Op. 41.

## REASONS FOR GRANTING *EN BANC* REVIEW

### I. The Panel's Decision Creates A Circuit Split Regarding The Standard For Intervention

The panel adopted a novel futility standard that requires a court to delve into the merits of a prospective intervenor's claim or defense to determine whether intervention should be permitted. That approach is inconsistent with Rule 24 and this Court's own precedent. It also splits with the Second and Eighth Circuits, which recognize that intervention is logically antecedent to the merits.

The plain text of Rule 24(a) sets forth the relevant standards for intervention of right. The Rule directs courts to consider whether the motion is timely; whether the movant has a cognizable interest; whether the disposition of the case may impair that interest; and whether the movant is inadequately represented. *See, e.g.*, *Sommers v. Bank of Am., N.A.*, 835 F.3d 509, 512 (5th Cir. 2016). Nothing in the text of Rule 24 mentions "futility" or otherwise authorizes a court to resolve the merits of an intervenor's claim to deny intervention. *See Phillips v. Marine Concrete Structures, Inc.*, 895 F.2d 1033, 1035 (5th Cir. 1990) (en banc) (recognizing that courts "give the Federal Rules of Civil Procedure their plain meaning").[2]

Nonetheless, the panel required a merits analysis "before" considering the Rule 24(a) factors. Op. 6 (emphasis omitted) (quoting *Pin v. Texaco, Inc.*, 793 F.2d 1448, 1450 (5th Cir. 1986)). That is backwards. Intervention is not a dress rehearsal for a case's merits. Intervention is "akin to" standing, in that it is a "'threshold inquiry' that 'in no way depends on the merits.'" *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 31 (1993) (per curiam). That

[2] Rule 24(c) also does not require evaluation of the merits. It merely requires notice of "the claim or defense for which intervention is sought," which allows the court to evaluate the relevant standards for intervention. *See, e.g.*, *United States v. Metro. St. Louis Sewer Dist.*, 569 F.3d 829, 834 (8th Cir. 2009) (Rule 24(c) satisfied by statement that "provides sufficient notice to the court and the parties of [the proposed intervenor's] interests").

is why denial of a motion to intervene of right is immediately appealable as a collateral order: it is "separable completely from the merits of the action." *Sierra Club v. City of San Antonio*, 115 F.3d 311, 313 (5th Cir. 1997).

Consistent with this understanding, this Court has previously allowed parties to intervene without resolving the underlying merits. *See, e.g.*, *Heaton v. Monogram Credit Card Bank of Ga.*, 297 F.3d 416, 426–27 (5th Cir. 2002) (holding that the court "need not resolve [merits] questions" to reverse the denial of intervention). The Court also has permitted intervention even when the intervenors could not prevail on the merits in this Circuit. For instance, in a case challenging the legality of the Deferred Action for Parents of Americans (DAPA) policy, this Court simultaneously permitted intended beneficiaries to intervene and rejected DAPA's legality. *Compare Texas v. United States*, 805 F.3d 653 (5th Cir. 2015) (reversing the denial of intervention), *with Texas v. United States*, 809 F.3d 134 (5th Cir. 2015) (rejecting the legality of DAPA in an opinion originally issued on the same day). That allowed the unsuccessful intervenors to participate as parties upon further review. *See United States v. Texas*, No. 15-674 (U.S.). To the extent this Court has considered the merits in the intervention posture, the circumstances were extreme: *Pin*, 793 F.2d 1448, involved claims so patently insufficient that Rule 11 sanctions were warranted, while *Saavedra v. Murphy Oil*

*U.S.A., Inc.*, 930 F.2d 1104, 1109 (5th Cir. 1991), involved a claim "wholly derivative" of an already-dismissed claim.

The panel's holding that the threshold question of intervention depends on the substantive merits of the proposed intervenor's claim or defense conflicts with decisions of the Second and Eighth Circuits, which hold that a motion to intervene "cannot be resolved by reference to the ultimate merits" of the prospective intervenor's claims. *In re N.Y.C. Policing*, 27 F.4th at 800; *accord Nat'l Parks Conservation Ass'n*, 759 F.3d at 974 (deeming "not relevant" whether the "applicable regulations actually support" the proposed intervenors' arguments). Only when prospective intervenors present claims "frivolous on their face" may intervention be denied on the merits. *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999); *cf. R.I. Fed'n of Teachers, AFL-CIO v. Norberg*, 630 F.2d 850, 855 (1st Cir. 1980) (requiring a "colorable defense"). But the panel opinion explicitly stated that, under its rule, "a claim need not be frivolous to be futile." Op. 6. The result is an open circuit split.[3]

[3] The D.C. Circuit has indicated that a motion to intervene should be evaluated on whether it presents "a legally sufficient claim or defense and not whether the applicant is likely to prevail on the merits." *Williams & Humbert Ltd. v. W. & H. Trade Marks (Jersey) Ltd.*, 840 F.2d 72, 75 (D.C. Cir. 1988). But even that case appears to consider only whether the movant stated a "[c]ognizable [i]nterest," and did not conduct a dispositive inquiry into the merits. *Id.*

The panel's approach creates significant practical difficulties. Intervention motions must double as merits briefs. And replies in support of intervention must double as oppositions to motions to dismiss, complicating the intervention process and requiring courts to make premature merits judgments based on insufficient briefing.

These problems are evident in the disposition of this case. Had this case proceeded to summary judgment in the ordinary course, the district court (and this Court) would have needed to resolve questions of Article III jurisdiction before deciding whether federal law validly preempted the Dream Act. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–94 (1998). But by deciding that intervention would be futile, the panel reached the merits of the parties' preemption and Tenth Amendment arguments without ever resolving the threshold jurisdictional question.[4] And it did so even though the LUPE Intervenors presented merits arguments substantial enough to persuade multiple federal and state judges.

[4] It is not clear why the panel majority thought that this procedural posture allowed the Court to sidestep jurisdiction. After all, the LUPE Intervenors' lead argument why intervention was not futile was that the district court lacked jurisdiction. *See* Op. 26 (Ramirez, J., dissenting) ("[T]he LUPE Group's jurisdictional argument is intertwined with their argument that intervention is not futile; they moved to intervene to seek vacatur of the consent judgment in part on jurisdictional grounds."). The result is a decision fully adjudicating the merits of a claim without ever considering jurisdiction, even though "[j]urisdiction is always first," *Carswell v. Camp*, 54 F.4th 307, 310 (5th Cir. 2022).

*See, e.g.*, Op. 35–41 (Ramirez, J., dissenting) (concluding that Section 1623(a) as construed violates Tenth Amendment); *United States v. Walz*, 825 F. Supp. 3d 897 (D. Minn. 2026) (holding Minnesota's in-state tuition statute not preempted by Section 1623), *appeal filed*, No. 26-1886 (8th Cir.); *Martinez v. Regents of Univ. of Cal.*, 241 P.3d 855 (Cal. 2010) (same, for California). Because LUPE Intervenors offered non-frivolous arguments in defense of the Texas Dream Act, they should have been granted intervention and allowed to defend the statute in the ordinary course, including by challenging the district court's jurisdiction.

## II. The Panel's Decision Sustains A Judgment In Conflict With Circuit Precedent and Article III

The panel's decision sustains a judgment that is void under this Court's precedents. In *Pool II*, this Court explained that "it is well settled that, where the parties agree on a constitutional question, there is no adversity and hence no Article III case or controversy." 87 F.4th at 733–34. After all, absent vigorous enforcement of the adversity requirement, "by means of a friendly suit, a party beaten in the legislature could transfer to the courts an inquiry as to the constitutionality of the legislative act." *Chicago & Grand Trunk Ry. Co. v. Wellman*, 143 U.S. 339, 345 (1892).

This case is a paradigmatic example of coordinated litigation between fully aligned parties designed to circumvent the democratic process. The Parties evidently choreographed this lawsuit before it was filed, only days after the Texas

Legislature declined to repeal the Dream Act. ROA.434–37. In addition to waiving service and joining a proposed judgment, the Texas Attorney General issued a press release claiming credit for "[s]uccessfully [s]trik[ing] [d]own" what he described as an "un-American provision" of Texas law. ROA.339. Thus, from the outset, the nominal adversaries in this case were working together to achieve a shared political end. If *Pool II* is good law, the district court had no jurisdiction to enter the consent decree that invalidated longstanding Texas laws and stripped in-state tuition eligibility from thousands of students. *Cf.* Op. 30 (Ramirez, J., dissenting) ("As in *Pool*, Article III jurisdiction may be lacking.").

Although *Pool II* is a recent, published decision of this Court that has not been overruled, its validity was recently called into question. Judge Ho has suggested that *Pool II* "may not be good law" on the theory that it is inconsistent with a prior decision in the same litigation (*Pool I*), which assertedly controls over *Pool II*. *See United States v. Quintanilla-Matamoros*, 164 F.4th 366, 376 (5th Cir. 2026) (Ho, J., concurring). Those doubts are misplaced: *Pool I* addressed "standing and mootness," whereas *Pool II* concerned the distinct jurisdictional requirement of "adversity." *Compare Pool v. City of Houston,* 978 F.3d 307, 311 (5th Cir. 2020) (*Pool I*), *with Pool II*, 87 F.4th at 733–34. The *en banc* Court's review is necessary to affirm *Pool II*.

More generally, as Judge Ho further observed, the controversy over *Pool II* is part of a larger rift within this Court regarding the "power to grant relief in cases of party agreement," an issue that "has divided members of [this] [C]ourt in recent years." *Quintanilla-Matamoros*, 164 F.4th at 375 (Ho, J., concurring) (collecting cases). This case would provide the *en banc* court with an ideal vehicle to resolve this recurring issue and offer much-needed guidance to district courts.

## III. This Court Should Review The Exceptionally Important Question Whether Section 1623 Validly Preempts Texas's Longstanding Tuition Laws.

Finally, this case warrants rehearing *en banc* because it presents questions of exceptional importance regarding the scope and validity of Section 1623(a). The effect of the panel majority's disposition is to affirm a judgment invalidating a longstanding state law in an area of traditional state control. That holding raises grave constitutional concerns under the Tenth Amendment, *see* Op. 35–41 (Ramirez, J., dissenting), which itself warrants rehearing *en banc*. *See, e.g.*, *Brackeen v. Bernhardt*, 937 F.3d 406, 441–46 (5th Cir. 2019) (Owen, J., dissenting in part), *reh'g en banc granted*, 942 F.3d 287 (5th Cir. 2019).

The panel opinion construes Section 1623(a) to forbid a State from choosing how to set its tuition rates for its own public universities. *See* Op. 2 (concluding that Section 1623 "bar[s] *states* from conferring postsecondary education benefits" in the manner Texas has (emphasis added)). But as the Supreme Court has held,

Congress lacks "the power to issue direct orders to the governments of the States." *Murphy v. NCAA*, 584 U.S. 453, 471 (2018). That is even clearer when the federal law would intrude on public education, a field in which "States historically have been sovereign." *United States v. Lopez*, 514 U.S. 549, 564 (1995). If the panel's interpretation were accepted, then the federal government would be empowered to dictate how State law sets tuition for public universities, vitiating core federalism principles.

Given those grave constitutional concerns, the panel should have adopted a narrower construction of Section 1623. *See, e.g.*, *United States v. Hansen*, 599 U.S. 762, 781 (2023). Several textual and contextual features of Section 1623 demonstrate that it can and should be read in a way that does not conflict with the Texas Dream Act. *See* Blue Br. 38–47. For example, because the Texas statute may allow some U.S. citizen residents of other states to qualify for in-state tuition, it satisfies Section 1623's requirement that "a citizen or national of the United States"—not necessarily *all* citizens—be eligible for the same benefit without regard to residence. *See Walz*, 825 F. Supp. 3d at 908–12.

Correcting this error is particularly important given the proliferation of cases asserting the same flawed interpretation of Section 1623. The government has sued 17 states seeking to overturn state laws regarding in-state tuition. *See* Press Release, U.S. Dep't of Just. (Aug. 10, 2026), https://perma.cc/F47V-EYH8. The

panel opinion here is the first federal appellate decision on the topic, and it has already led other courts considering these challenges astray. *See, e.g.*, *United States v. Illinois*, 2026 WL 2137256, at *8 (S.D. Ill. July 24, 2026). Rehearing *en banc* will allow the Court to correct its precedent before more courts wrongly conclude that Section 1623 allows the federal government to prescribe tuition rates at state universities in unprecedented fashion.

The Tenth Amendment serves as "one of the Constitution's structural protections of liberty." *Murphy*, 584 U.S. at 473 (quoting *Printz v. United States*, 521 U.S. 898, 921 (1997)). The panel opinion erodes that structural safeguard to strike down a longstanding, democratically enacted Texas state law. For the reasons set forth in Judge Ramirez's panel dissent, that erroneous decision should be corrected by the Court *en banc*.

## CONCLUSION

The Court should grant rehearing *en banc*.

Dated: August 24, 2026

Respectfully submitted,

*/s/ Andrés Correa*

David Donatti
Adriana Pinon
Edgar Saldivar
**ACLU FOUNDATION OF TEXAS**
P.O. Box 8306
Houston, TX 77288
(713) 942-8146

Andrés Correa
Christopher Patton
Yaman Desai
Zhenmian Xu
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700

ddonatti@aclutx.org

Kassandra Gonzalez
Daniel Woodward
Zachary Dolling
**TEXAS CIVIL RIGHTS PROJECT**
P.O. Box 17757
Austin, TX 78760
(512) 474-5073 ext. 182 Telephone
(512) 474-0726 Facsimile
kassandra@texascivilrightsproject.org

Daniel Hatoum
**TEXAS CIVIL RIGHTS PROJECT**
1017 W. Hackberry Ave.
Alamo, TX 78516
(512) 474-5073 ext. 182 Telephone
(512) 474-0726 Facsimile
daniel@texascivilrightsproject.org

Efrén C. Olivares
**NATIONAL IMMIGRATION LAW CENTER**
P.O. Box 34573
Washington, DC 20005-9997
(213) 674-2817 Telephone
olivares@nilc.org

Dallas, Texas 75201
(214) 981-3800 Telephone
(214) 981-3839 Facsimile
acorrea@lynnllp.com

Joshua M. Salzman
Simon C. Brewer
Brian D. Netter
Paul R.Q. Wolfson
Skye L. Perryman
**DEMOCRACY FORWARD FOUNDATION**
P.O. Box 34553
Washington, D.C. 20043
Tel: (202) 448-9090
jsalzman@democracyforward.org

Tanya Broder
**NATIONAL IMMIGRATION LAW CENTER**
3450 Wilshire Blvd.
Los Angeles, CA 90010
510-663-8282
broder@nilc.org

**ATTORNEYS FOR MOVANT-APPELLANTS LA UNIÓN DEL PUEBLO ENTERO, AUSTIN COMMUNITY COLLEGE, AND OSCAR SILVA**

**CERTIFICATE OF COMPLIANCE**

This petition complies with the typeface and type-volume limitations in Federal Rule of Appellate Procedure 40(d)(3) because it contains 3897 words, excluding the portions exempted by rule. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: August 24, 2026

*/s/ Andrés Correa*
Andrés Correa

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, I state that no Plaintiffs have any parent company and that no publicly held company has a 10% or greater ownership interest in any Plaintiffs.

Dated: August 24, 2026 *<u>/s/ Andres Correa</u>*
Andrés Correa

## CERTIFICATE OF SERVICE

I certify that on August 24, 2026, a true and correct copy of this Petition was filed with the Clerk for the United States Court of Appeals for the Fifth Circuit via the Court's electronic filing system, which will forward a copy to all counsel of record.

Dated: August 24, 2026

*/s/ Andrés Correa*
Andrés Correa